Jacob M. Harper (SBN 259463)
*jacobharper@dwt.com*
Heather F. Canner (SBN 292837)
*heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
*josepheliemeyers@dwt.com*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

GT'S LIVING FOODS, LLC,

Defendant.

Case No. 2:19-cv-10920-FMO-DSR

Assigned to the Hon. Fernando M. Olguín
Magistrate Judge Daniel S. Roberts

**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL] DECLARATION OF JOSEPH-ELIE MEYERS IN SUPPORT OF JOINT STIPULATION PURSUANT TO LOCAL RULE 37 FOR DEFENDANT'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO REQUESTS FOR PRODUCTION**

SAC Filed: December 17, 2024
Discovery Cutoff: March 5, 2026



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# DECLARATION OF JOSEPH ELIE-MEYERS

I, Joseph Elie-Meyers, declare as follows:

1. I am an associate with the law firm of Davis Wright Tremaine LLP, counsel for GT's Living Foods, LLC ("GT's" or "Defendant"). I make this declaration in support of GT's Motion to Compel the Plaintiffs' Further Responses to Requests for Production. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify to them.

**Case Documents**

2. Attached as **Exhibit 1** is a true and correct copy of the Second Amended Complaint in this action, obtained from the Docket (Dkt. 168).

3. Attached as **Exhibit 2** is a true and correct copy of the Court's June 21, 2024 order denying Plaintiffs' Motion for Class Certification, obtained from the Docket (Dkt. 129).

4. Attached as **Exhibit 3** is a true and correct copy of the Court's September 30, 2025 order granting in part GT's motion to dismiss and for judgment on the pleadings, obtained from the Docket (Dkt. 178).

5. Attache as **Exhibit 4** is a true and correct copy of the Court's March 20, 2020 scheduling order, obtained from the Docket (Dkt. 24).

6. Attached as **Exhibit 5** is a true and correct copy of the Court's order granting the joint stipulated request to extend the deadline for completion of limited discovery for March 5, 2026, obtained from the Docket (Dkt. 185).

**Discovery Correspondence and Conferrals**

7. On November 13, 2025, GT's served its First Set of Requests for Production on Plaintiffs Patel, Schmidt, and Nunez.

8. GT's discovery requests sought, as relevant here, documents relating to the terms by which Plaintiffs retained attorneys in this action, documents related to any agreements Plaintiffs have with their attorneys, and any agreements Plaintiff's



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

attorneys have with any other persons or entities, including agreements concerning fee sharing, payment of costs and expenses, and advancement of attorneys fees and costs in this litigation.

9. Plaintiffs Patel, Schmidt, and Nunez served their responses and objections on December 15, 2025.

10. On December 18, 2025, the parties jointly stipulated to extend the discovery deadline to March 5, 2026, to avoid the necessity of holding the depositions of Plaintiffs during the holiday season and to allow sufficient time to raise any remaining discovery objections with the Court. Dkt. 184. The Court granted this stipulated request. Dkt. 185.

11. Pursuant to the Joint Stipulation, the depositions of Plaintiffs Nunez, Schmidt, and Patel were held on, respectively, January 8, 2026, January 14, 2026, and January 16, 2026.

12. On January 23, 2026, GT's sent a letter detailing the deficiencies in Plaintiffs' responses to the First Set of Requests for Production. Attached as **Exhibit 6** is a true and correct copy of GT's January 23, 2026 conferral letter.

13. The parties subsequently exchanged emails in an attempt to schedule a conferral call. Plaintiffs stated that their earliest available time to confer was at 3:30 p.m. on Monday, February 2, 2026—that is, the final hour and a half of the final day of the 10 day conferral period. GT's agreed to this date only after requesting and earlier conferral. At 3:04 p.m. on Monday, February 2, Plaintiffs sent a letter response. The parties held met and conferred by videoconference at 4:00 p.m. that day. Attached as **Exhibit 7** is a true and correct copy of Plaintiffs' February 2, 2026 response letter. Notwithstanding the late arrival of this letter, the Parties conferred regarding Plaintiffs responses therein on their conferral call.

14. During the February 2, 2026 conferral, GT's offered to narrow Request for Production (RFP) 21 to seek only retainer agreements between Plaintiffs and counsel. GT's counsel explained that any retainer agreements are relevant and non-



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

privileged materials that Plaintiffs are required to disclose. Plaintiff's counsel admitted that such retainer agreements exist, but maintained that they would not produce such documents because, in their view, such documents are privileged and irrelevant absent evidence of impropriety.

15. Also during the February 2, 2026 conferral, GT's offered to narrow RFP 22 to seek only joint prosecution agreements and fee sharing agreements. GT's counsel explained that these documents are relevant and non-privileged and required to be disclosed. GT's counsel further explained that, while Plaintiffs had produced copies of a "Joint Prosecution Agreement" and "Agreement Concerning *Sharpe* Litigation," Plaintiffs had not produced any copies of these agreements that were signed by the current named Plaintiffs, who are the putative class representatives. Plaintiffs' counsel maintained that they would not produce such documents because, in their view, client signatures and consent to such agreements are privileged.

16. During her deposition, Ms. Schmidt testified that she could not recall if she signed either the Joint Prosecution Agreement or the Agreement Concerning *Sharpe* Litigation, and that she could not recall if she had ever reviewed the Agreement Concerning *Sharpe* Litigation. Attached as **Exhibit 8** is a true and correct copy of the relevant excerpts of the deposition transcript of Ms. Schmidt, pages 63–70.

17. During his deposition, Mr. Patel testified that he did not "[redacted]" whether he had signed the Joint Prosecution Agreement and that he did not "[redacted]" of retention agreements that he had signed related to this matter. Attached as **Exhibit 9** is a true and correct copy of the relevant excerpts of the deposition transcript of Mr. Patel, pages 97–98, 107.

//

//

//





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

//

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of February 2026, at Los Angeles, California.

*<u>/s/ Joseph Elie-Meyers</u>*
Joseph Elie-Meyers



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Gabriel Z. Doble (Cal. Bar No. 335335)
gabe@dovel.com
Stephen Andrews (Cal. Bar No. 354327)
stephen@dovel.com
**DOVEL & LUNER, LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>Defendant. | Case No. 2:19-cv-10920-FMO-GJS<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Delaney Sharpe, Erin Weiler, Jenna Leder, Adriana DiGennaro, Amit Patel, Lauren Schmidt, and Christopher Nunez ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant GT's Living Foods, LLC ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1. GT's Living Foods, LLC has passed off millions of bottles of its wildly successful Enlightened Kombucha[1] beverages as non-alcoholic, when, in fact, the beverages contain 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages. Having been caught selling alcoholic kombucha beverages to unsuspecting customers in 2006 and 2010, Millennium decided to market and distribute an alcoholic version of its kombucha products (the "Classic" kombucha line) and a so called "non-alcoholic" version (the "Enlightened" line), knowing that omitting information on true alcohol content to give the impression there is a non-alcoholic line provides much greater market appeal and enables sales in far more retail locations. But the purported distinction between the "Classic" and "Enlightened" lines is a sham designed to confuse the public and government

[1] Enlightened Kombucha refers to every flavor of Defendant's Enlightened Synergy and Enlightened Kombucha beverages sold nationwide, as described herein, including, but not limited to, the following flavors: Original, Gingerade, Laveder Love, Hibiscus Ginger, Lemonade, Multi-Green, Bilberry Blessing, Cayennade, Tantric Turmeric, Heart Beet, Golden Sage, Cucumber Mint Lime, Karma Citra, Koffee, Strawberry Lemonade, Pomegranate Power, Rose Berry, Pink Lady Basil, Watermelon Wonder, Trilogy, Mystic Mango, Cosmic Cranberry, Guava Goddess, Gingerberry, Passionberry Bliss, Strawberry Serenity, Cherry Chia, Grape Chia, Raspberry Chia, and Black Chia. The various flavors of Enlightened Kombucha are substantially identical other than their flavor profile, as each flavor is above the 0.5 percent alcohol by volume threshold and understates the amount of sugar in the beverages. None of the flavors has the requisite government warning required for alcoholic beverages.

regulators, as both lines of products contain alcohol levels far surpassing the legal limit for non-alcoholic beverages.

2. Further, Defendant greatly understates by omission the sugar content of its Enlightened Kombucha beverages on the products' labels, making consumers believe the beverages are healthier than they really are. Independent testing shows that Defendant's Enlightened Kombucha contains more than 15 percent more sugar than listed on the beverages' labels. Indeed, the undeclared high sugar content of Defendant's Enlightened Kombucha beverages contributes to the continued fermentation of the beverages after bottling. As discussed herein, such continued fermentation causes the Enlightened Kombucha line to cross the .5 percent alcohol by volume threshold set for non-alcoholic beverages.

3. Plaintiffs purchased numerous bottles of Defendant's Enlightened Kombucha beverages based on Defendant's misleading advertising and labeling of the products.

4. Plaintiffs seek relief in this action individually, and on behalf of all purchasers of Defendant's Enlightened Kombucha beverages, for Defendant's violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq*., and New York's Deceptive and Unfair Trade Practices Act, New York General Business Law § 349 ("NYGBL"), for breach of express and implied warranties, fraud, and unjust enrichment.

**PARTIES**

5. Plaintiff Adriana DiGennaro is a citizen of New York, residing in Brooklyn. Between February 28, 2017 and the end of 2018, Ms. DiGennaro purchased Enlightened Kombucha in at least the following flavors: Trilogy, Cayennade, Gingerade, Watermelon Wonder, and Multi-Green. Plaintiff DiGennaro

Case 2:19-cv-10920-FMO-JSSR Document 188 Filed 12/14/22 Page 4 of 104 Page ID #:5655

purchased Enlightened Kombucha at Fine Fare Supermarket in Brooklyn, New York. Plaintiff DiGennaro purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enlightened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff DiGennaro did not have to show any identification of her age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail location at which she made her purchases. Plaintiff DiGennaro would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff DiGennaro would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

6. Plaintiff DiGennaro had been sober (had not knowingly consumed alcohol) since 2012, and would not have risked breaking her sobriety by purchasing Enlightened Kombucha had she known that it contained spiked levels of alcohol.

7. Plaintiff DiGennaro will be unable to rely on Enlightened Kombucha beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha in the future, although she would like to. Plaintiff DiGennaro continues to purchase kombucha products, although she does not currently purchase Enlightened Kombucha beverages, and intends on continuing purchasing kombucha products in the future.

8. Plaintiff Jenna Leder is a citizen of New Jersey, residing in Red Bank. Within the past seven years (including after February 28, 2017), Plaintiff Leder purchased Enlightened Kombucha in at least the following flavors: Trilogy, Cayennade, Lemonade, Guava Goddess, Strawberry Serenity, and Cosmic

Cranberry. Plaintiff Leder purchased Enlightened Kombucha at Whole Foods, Deans Natural Food Market, Wegmans, and Target in New Jersey, New York, and Delaware. Plaintiff Leder purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enlightened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff Leder did not have to show any identification of her age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases. Plaintiff Leder would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Leder would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

9. Due to medical and health reasons, Plaintiff Leder does not knowingly consume any alcohol. When she consumed the Enlightened Kombucha she purchased, she experienced feeling "buzzed," as if from alcohol. However, because Enlightened Kombucha is marketed as a non-alcoholic beverage, she did not know that those feelings were in fact from the alcohol in Enlightened Kombucha. Accordingly, Enlightened Kombucha put her health and recovery from a prior medical procedure in peril.

10. Plaintiff Leder will be unable to rely on Enlightened Kombucha beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha in the future, although she would like to. Plaintiff Leder continues to purchase kombucha products, although she does not currently purchase

Case 2:19-cv-01920-FMO-JDSR Document 188 Filed 12/14/22 Page 6 of 42 Page ID #:5657

Enlightened Kombucha beverages, and intends on continuing purchasing kombucha products in the future.

11. Plaintiff Erin Weiler is a citizen of California, residing in Beverly Hills. Within the past seven years (including after February 28, 2017), Plaintiff Weiler purchased Enlightened Kombucha in at least the following flavors: Trilogy, Guava Goddess, Gingerade, Cayennade, Multi-Green, and Original. Plaintiff Weiler purchased Enlightened Kombucha at Whole Foods, Trader Joe's, and Erewhon Market in in the Los Angeles area. Plaintiff Weiler purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enlightened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff Weiler did not have to show any identification of her age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases. Plaintiff Weiler would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Weiler would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

12. Plaintiff Weiler has been sober (has not knowingly consumed alcohol) since 2006, and would not have risked breaking her sobriety by purchasing Enlightened Kombucha had she known that it contained spiked levels of alcohol.

13. Plaintiff Weiler will be unable to rely on Enlightened Kombucha beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha in the future, although she would like to. Plaintiff Weiler continues to purchase kombucha products, although she does not currently purchase

Enlightened Kombucha beverages, and intends on continuing purchasing kombucha products in the future.

14. Plaintiff Delaney Sharpe is a citizen of California, residing in Los Angeles. Within the past six years, Plaintiff Sharpe purchased Enlightened Kombucha in at least the following flavors: Pink Lady Basil, Guava Goddess, Watermelon Wonder, and Trilogy. Plaintiff Sharpe purchased Enlightened Kombucha at Whole Foods, Ralphs, and Sprouts in in the Los Angeles area and in Colorado. Plaintiff Sharpe purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enlightened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff Sharpe did not have to show any identification of her age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases. Plaintiff Sharpe would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Sharpe would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

15. Plaintiff Sharpe was under the age of 21 (and over the age of 18) when she purchased Enlightened Kombucha, and was under 21 years of age as of the date of the filing of the original Complaint. Had Enlightened Kombucha been properly labeled as an alcoholic beverage, it would have been illegal for her to purchase the beverages. Because Enlightened Kombucha is an alcoholic beverage, it was unlawful for Defendant to manufacture and label the beverage as a non-alcoholic product and cause the beverage to be sold to Plaintiff Sharpe. At the time of the

relevant purchases, Plaintiff Sharpe could not lawfully purchase alcoholic beverages, and, accordingly, would not have purchased Enlightened Kombucha had she known that it is an alcoholic beverage.

16. Plaintiff Sharpe will be unable to rely on Enlightened Kombucha beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha in the future, although she would like to. Plaintiff Sharpe continues to purchase kombucha products, although she does not currently purchase Enlightened Kombucha beverages, and intends on continuing purchasing kombucha products in the future.

17. Plaintiff Amit Patel is a citizen of California, residing in Santa Monica, California. Beginning in 2021, Plaintiff Patel purchased Enlightenment Kombucha in at least the following flavors: Trilogy, Ginger, Kiwi Strawberry. Plaintiff Patel purchased Enlightened Kombucha at Whole Foods in the San Francisco and Los Angeles areas. Plaintiff Patel purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enlightened Kombucha beverages he purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff Patel did not have to show any identification of his age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which he made his purchases. Plaintiff Patel drinks alcohol very rarely. He would not have purchased the products had he known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Patel is a health-conscious individual and would not have purchased Enlighted Kombucha had he known that the products mischaracterized the level of sugar in the bottles.

18. Plaintiff Patel will be unable to rely on Enlightened Kombucha beverages' labeling and advertising in the future, and so he will be unable to purchase Enlightened Kombucha in the future, although he would like to. Plaintiff Patel continues to purchase kombucha products, although he does not currently purchase Enlightened Kombucha beverages, and he intends on continuing purchasing kombucha products in the future.

19. Plaintiff Christopher Nunez is a citizen of California, residing in Citrus Heights, California. Beginning after the COVID-19 pandemic, in approximately 2020 or 2021, Plaintiff Nunez purchased Enlightenment Kombucha in at least the following flavors: Pineapple, Watermelon, Mango, Lavender, Guava, Cranberry, and Trilogy. Plaintiff Nunez purchased Enlightened Kombucha at retail locations, such as Safeway in the Citrus Heights area and at local bodegas/markets (such as Morton Williams, Westside Market, and Apple Tree Deli) in the New York City area. Plaintiff Nunez purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enlightened Kombucha beverages he purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff Nunez did not have to show any identification of his age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which he made his purchases; in fact, the Enlightened Kombucha beverages were sold in the "health food" area of the stores. Plaintiff Nunez would not have purchased the products at the time had he known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Nunez is a health-conscious individual who began drinking Enlightened Kombucha as an alternative to soda, and he would not

have purchased the products had he known that the products mischaracterized the level of sugar in the bottles.

20. Plaintiff Nunez was under the age of 21 (and over the age of 18) when he purchased Enlightened Kombucha, and he was under 21 years of age as of the date of the filing of the original Complaint. Had Enlightened Kombucha been properly labeled as an alcoholic beverage, it would have been illegal for him to purchase the beverages. Because Enlightened Kombucha is an alcoholic beverage, it was unlawful for Defendant to manufacture and label the beverage as a non-alcoholic product and cause the beverage to be sold to Plaintiff Nunez. At the time of the relevant purchases, Plaintiff Nunez could not lawfully purchase alcoholic beverages and, accordingly, would not have purchased Enlightened Kombucha had he known that it is an alcoholic beverage.

21. Plaintiff Nunez will be unable to rely on Enlightened Kombucha beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha in the future, although he would like to. Plaintiff Nunez continues to purchase kombucha products, although he does not currently purchase Enlightened Kombucha beverages, and he intends on continuing purchasing kombucha products in the future.

22. Plaintiff Lauren Schmidt is a citizen of New York, residing in Northport. Beginning during the COVID-19 pandemic, in approximately 2019 or 2020, Plaintiff Schmidt purchased Enlightenment Kombucha in at least the following flavors: Trilogy, Blueberry, Guava Goddess, and Cranberry. Plaintiff Schmidt purchased Enlightened Kombucha at retail locations, such as Stop and Shop in the Northport area. Plaintiff Schmidt purchased the products with the belief and on the basis that the products were non-alcoholic. The labels of the Enlightened Kombucha beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning

regarding the beverages' high-alcohol content. Plaintiff Schmidt did not have to show any identification of her age in order to purchase the Enlightened Kombucha products. The Enlightened Kombucha beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases; in fact, the Enlightened Kombucha beverages were sold in the "health food" area of the stores. Plaintiff Schmidt would not have purchased the products had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Schmidt is a health-conscious individual, and she would not have purchased the products had she known that the products mischaracterized the level of sugar in the bottles.

23. Plaintiff Schmidt was sober (she did not knowingly consume alcohol) in 2021, and she relied on kombucha products as an alternative to alcohol. She would not have risked breaking her sobriety by purchasing Enlightened Kombucha had she known that it contained spiked levels of alcohol.

24. Plaintiff Schmidt will be unable to rely on Enlightened Kombucha beverages' labeling and advertising in the future, and so she will be unable to purchase Enlightened Kombucha in the future, although she would like to.

25. Defendant GT's Living Foods, LLC is a Delaware corporation headquartered at 4646 Hampton St., Vernon, California 90058. Defendant manufactures, advertises, sells, distributes, and markets Enlightened Kombucha as alleged herein nationwide, including in California. Defendant's incomplete misleading marketing, advertising and product information concerning the sugar and alcohol content in Enlightened Kombucha was conceived, reviewed, approved, and otherwise controlled from Defendant's California headquarters. Defendant's misleading marketing concerning the alcohol and sugar content of Enlightened Kombucha was coordinated at, emanated from, and was developed at its California

headquarters. All critical decisions regarding the misleading sugar and alcohol marketing of Enlightened Kombucha were made in California.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and Plaintiffs DiGennaro, Leder, and Schmidt, as well as most members of the proposed class, are citizens of states different from the state of Defendant. Defendant has sold hundreds of thousands, if not millions, of bottles of Enlightened Kombucha.

27. This Court has general jurisdiction over Defendant because it is headquartered in California. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged mislabeling, misbranding, and marketing practices have been disseminated and committed in this District and because Defendant is headquartered in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Defendant's "Non-Alcoholic" Kombucha Beverages Are Greater Than .5% Alcohol By Volume

29. Defendant's GT's Kombucha Beverages – comprised of the "G.T.'s Kombucha" and "Synergy" brands - are nearly identical products, with nearly identical advertising, using different names. The name "kombucha" itself comes from the common name for what is essentially a fermented tea drink. Kombucha is made of tea that ferments for up to a month while a "blob" of bacteria known as "scoby" (for symbiotic colony of bacteria and yeast) floats on top. The scoby

purportedly "eats the sugar, tannic acids, and caffeine in the tea, and creates a cocktail of live microorganisms." Basic chemistry explains that the scoby converts the sugar into carbon dioxide and alcohol. Defendant's "G.T.'s Kombucha" brand is advertised as 98 percent kombucha and 2 percent juice, while the bottles of the "Synergy" brand purportedly consist of 95 percent kombucha and 5 percent juice added for taste.

30. In 2010, major retailers throughout the country, including Whole Foods, were forced to immediately stop selling GT's kombucha beverages because it was discovered that the beverages contained alcohol levels as high as 2.5 percent by volume, roughly five times the legal limit for non-alcoholic beverages. In response, Defendant released an "Enlightened" line of the products, named "Enlightened Synergy" and "GT's Enlightened Kombucha," and a "Classic" line of kombucha products. The Enlightened line was purportedly slightly altered to ensure that the products did not exceed the 0.5 percent alcohol by volume threshold, while the Classic retained the original alcoholic formula. Around the time of the labeling change, the labels of the "Classic" line stated:

> NOTE TO OUR BELOVED FANS: GT's Kombucha is raw and alive, hand-crafted by nature and made with the best intentions. We refuse to do anything that could compromise our product's integrity or effectiveness. That's why we have chosen to modify our labeling instead of changing the way we make our products.

31. A display on Defendant's website summarized that the "Classic" line retained the "Original" alcoholic formula:

Once An Original…Now A Classic.

We're proud to bring back the formula that started it all. Must be 21 years or older to purchase.







32. Currently, Defendant's website explains the difference between the "Classic" and "Enlightened" lines as follows:

**What's the difference between GT's Enlightened Kombucha, GT's Classic Kombucha, and GT's Classic Gold Kombucha?**

Did you know that we make two lines of Kombucha? We do! The main difference is the level of alcohol in each offering and the color of the glass we bottle it in.

***GT's Enlightened Kombucha*** is served in clear glass bottles with white caps and available for people of all ages.

> ***GT's Classic Kombucha*** is served in dark amber bottles with black caps and contains over 0.5 – 1 % alcohol-by-volume. For this reason, GT's Classic Kombucha is only available to those over 21…
>
> ***GT's Classic Gold Kombucha*** is our take on hard Kombucha. Each offering contains 3 % ABV, making it a better-for-you happy hour alternative for those over 21…[2]

33. Defendant's transition from a single line of kombucha beverages to two separate lines of kombucha beverages, the "Classic" and "Enlightened" lines, however, is a sham. In fact, both the Classic and Enlightened versions of the products contain alcohol above the 0.5 percent by volume threshold set by Federal and State laws regulating the sale, marketing, labeling, and distribution of alcoholic beverages.

34. The front of the labels of the Classic line, including Classic Kombucha and Classic Synergy, have, at various time, bore a prominent display stating, in capitalized letters, "CONTAINS ALCOHOL MUST BE 21 OR OLDER TO PURCHASE." The beverages' caps or lids are wrapped in a removable wrapping stating "over 21." The Classic line of beverages also include the following federally mandated government warning on their labels:

> GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS. (2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

Just below the government warning, the Classic labels have stated: "Kombucha is a cultured tea that is low in alcohol however federal law requires a warning statement on any product that may contain more than 0.5% of alcohol per volume."

---

[2] https://gtslivingfoods.com/faq/raw-kombucha/ (last accessed on November 15, 2019) (bolding and emphasis in original).




35. Just below the Nutrition Facts section, the Classic labels have stated: "**This product is considered a beer** and contains a natural effervescence. Please open carefully." (emphasis added).

36. The labels of the Enlightened line, however, do not contain any of the aforementioned displays, warnings, or markings concerning the alcohol content of the beverages. Unlike the Classic line, Defendant sells Enlightened Kombucha to persons of any age, including those under the age of 21.

37. Indeed, Defendant actively promotes Enlightened Kombucha as non-alcoholic and promotes its consumption even for children and pregnant women. The Frequently Asked Questions section of Defendant's website states:

> **Can children drink GT's Enlightened Kombucha?**
>
> Our Enlightened Kombucha can be safe for children and can also be a better-for-you alternative to sugary juices and soda…
>
> **Can I drink GT's Enlightened Kombucha if I'm pregnant or breastfeeding?**
>
> We have heard from many mothers who continue to drink Kombucha during pregnancy and while breastfeeding…
>
> **I heard that there is alcohol in Kombucha. Why is this?**

> Alcohol is a natural byproduct of fermentation and can be found in all fermented foods, like miso, kefir, sauerkraut, and kimchi. This alcohol is very beneficial, as it provides a natural form of food preservation – Nature's self-defense against contamination and bacteria.
>
> Sometimes people mistake the feeling they get from drinking Kombucha for a "buzzed" feeling, yet this is not the case with our Enlightened Kombucha. It's simply the detoxifying effect that can occur from the influx of probiotics…[3]

38. As discussed above, however, the "buzzed" feeling people feel from drinking Enlightened Kombucha is from the alcohol in the beverages, not from a purported "detoxifying effect," as stated on Defendant's website. Defendant's marketing is incredibly dangerous as it attempts to convince people that the "buzz" they feel from drinking Defendant's alcoholic beverages is not actually due to alcohol, and, accordingly, that there is nothing to worry about. Defendant, in effect, actively encourages people to distrust their own feelings of alcohol intoxication and convince them that their feelings of alcohol intoxication are not real.

39. While pasteurized versions of kombucha products are non-alcoholic, as the pasteurization kills the yeast in the kombucha, the raw (unpasteurized) versions of kombucha become alcoholic over time as the living yeast in the beverage converts sugars into alcohol. Such natural conversion of sugar to alcohol in unpasteurized kombucha beverages can result in alcohol levels as high as 4 percent alcohol by volume, roughly the same alcohol content as regular beer.

40. Because both the "Classic" and "Enlightened" versions of Defendant's kombucha beverages are unpasteurized, each set of beverages predictably undergoes a natural fermentation process where the yeast in the beverages converts the sugar in the products into alcohol. While Defendant claims that it has found a way to brew its Enlightened line of products such that the products never cross the 0.5 percent alcohol threshold post-bottling, many rigorous independent tests uniformly show that

[3] *Id*. (underlining added).

each of the beverages in the Enlightened line contains greater than 0.5 percent alcohol by volume, and are often as alcoholic as their "alcoholic" "Classic" counterpart.

41. One of the major reasons that both the Enlightened and Classic lines become alcoholic is because the beverages' labels vastly underreport the amount of sugar in the products. As discussed above, the yeast in these raw kombucha beverages converts the high sugar content into alcohol. Aside from causing the Enlightened Kombucha beverages to become alcoholic, the misrepresented sugar content of Enlightened Kombucha causes the beverages to be less healthy than advertised.[4] The misrepresented amount of sugar in Enlightened Kombucha, by omitting to disclose the full amount, is misleading to consumers and misled the Plaintiffs, and causes the products to be misbranded.

**<u>Defendant's History Of Fraudulently Manufacturing Kombucha Beverages With Alcohol Levels Above The 0.5 Percent Alcohol By Volume Threshold</u>**

42. Defendant's fraudulent marketing and labeling of its kombucha beverages as non-alcoholic, when in fact they contain substantial amounts of alcohol, stretches back at least several years before the 2010 recall, and likely to the formation of the company in 1995.

43. For example, on September 1, 2006, Defendant (through a related entity) reached a settlement with the Bureau of Alcohol, Tobacco and Firearms (currently operating as the Alcohol and Tobacco Tax and Trade Bureau or "TTB") for selling kombucha beverages "that contained over 0.5% alcohol without having a basic permit, a violation of 27 U.S.C. 203(b)(1)&(2) and 27 CFR 24.106" and for selling such beverages "without the proper labels [or] labels approvals," and for

[4] *See, e.g.*, KRISTIN KIRKPATRICK, M.S., R.D., L.D., 10 THINGS YOU DON'T KNOW ABOUT SUGAR (The Huffington Post, 2013) (summarizing that high sugar diets can be the source of obesity, heart failure, and cancer).

distributing the products "without the government warning statement, a violation of 27 U.S.C. 215(a) and 27 CFR 16.21."[5]

44. In 2010, an inspector from the Maine Department of Agriculture noticed that some bottles of kombucha were leaking and bubbling in one of Whole Foods' Portland stores, sparking Federal Drug Administration ("FDA") and TTB investigations concerning the alcohol content of various kombucha products, including GT's Kombucha. After it was discovered that many kombucha products had alcohol levels as high as 2.5 percent by volume, Whole Foods pulled kombucha products, including GT's Kombucha products, off the shelves.

45. Several other manufacturers of kombucha beverages, such as Honest Tea, owned and operated by the Coca-Cola Company, were unable to reformulate their kombucha beverages to ensure that the products never crossed the 0.5 alcohol by volume threshold at retail or consumption. "Despite reformulating its kombucha drinks in August 2010, Honest Tea found that the level of alcohol in Honest Kombucha – when left at room temperature – increased beyond 0.5 percent. Citing the difficulty in maintaining legal alcohol levels, Honest Tea discontinued the line in December 2010."[6]

46. Defendant's C.E.O., GT Dave, however, "was unwilling to radically change [its] process." While "[s]ome brewers use pasteurization to help control the alcohol content in their products, or ferment for shorter periods and add forced carbonation," GT Dave claimed that Defendant "changed the potential for alcohol by controlling the chemistry of the fermentation" for its Enlightened line of kombucha

---

[5] A copy of the charge and settlement agreement is attached to this Complaint as Exhibit 1.

[6] Ray Latif, *Kombucha Class Action Suits Settled with GT's, Honest Tea*, BevNet.com, Nov. 8, 2011. Available at http://www.bevnet.com/news/2011/kombucha-class-action-suits-settled-with-gts-honest-tea (last accessed December 26, 2019).

beverages.[7] As described above, the Enlightened line is a "raw" and "unpasteurized" kombucha, necessarily meaning that the beverages continue to ferment and increase in alcohol over time, especially if left unrefrigerated for even short periods of time. Whatever changes Defendant made to its Enlightened line, if any, are ineffective at curbing the accumulation of alcohol in the products past 0.5 percent alcohol by volume through the normal and expected use of the products.

**Testing from TTB Accredited Laboratories Shows that Enlightened Kombucha has Greater than 0.5 Percent Alcohol by Volume**

47. Brewing & Distilling Analytical Services, LLC ("BDAS"), an Alcohol and Tobacco Tax and Trade Bureau certified laboratory, conducted tests on multiple batches of Enlightened Kombucha. BDAS utilized scientifically valid, TTB approved methodology for testing kombucha beverages. Each test showed that every bottle of the products tested contained a level of alcohol by volume greater than 0.5 percent. Specifically, in February 2018, BDAS tested the alcohol by volume content of the following flavors of Defendant's Enlightened Kombucha: Multi-Green, Strawberry Serenity, and Original. The alcohol by volume content of these samples ranged between 0.59 - 1.40 percent alcohol by volume. Then, in September 2019, BDAS tested the alcohol by volume content of the following flavors of Defendant's Enlightened Kombucha: Gingerberry, Strawberry Serenity, Watermelon Wonder, Passionberry Bliss, Guava Goddess, Pink Lady Basil, Trilogy, Lavender Love, Heart Beet, Tantric Tumeric, Gingerade, Original, Hibiscus Ginger, Cayennade, Lemonade, Multi-Green, Raspberry Chia, Cosmic Cranberry, and Mystic Mango. The alcohol by volume content of these samples ranged between 0.71 and 2.21 percent alcohol by volume. At the time of the testing, none of the products had

[7] Tom Foster, *Meet the King of Kombucha*, Inc., March 2015. Available at http://www.inc.com/magazine/201503/tom-foster/the-king-of-kombucha.html (last accessed December 26, 2019).

passed their stated expiration date. Not a single product tested was below the federally mandated 0.5 percent alcohol by volume limit.

48. In September 2019, BDAS also tested all of the same samples of Enlightened Kombucha (as discussed above) to determine the beverages' sugar content. BDAS's test results showed that Enlightened Kombucha beverages contain more than 15 percent more sugar than declared on the beverages' labels.

49. Multiple other independent laboratories have tested Defendant's Enlightened Kombucha products and have seen nearly identical results. For instance, in February 2019, Blake Ebersole, one of the foremost experts in kombucha alcohol testing in the United States, tested 29 samples of Defendant's Enlightened Kombucha products using AOAC Official Method of Analysis AOAC 2016.12, a gas chromatography with flame ionization detection (GC-FID) with headspace autosampling methodology, run by Covance-Eurofins Laboratory. Mr. Ebersole found that "[a]ll 29 [Enlightened Kombucha] samples tested contained greater than 0.5 percent alcohol by volume (% ABV), with results ranging from 0.64 – 1.85% ABV. This is between 28% and 370% higher than the legal limit of 0.5% ABV." A copy of Mr. Ebersole's declaration, which discusses his testing methodology and results, are attached to the Complaint as Exhibit 2.

50. Mr. Ebersole also "conducted testing in December 2015 and July 2016 using the same analytical method (AOAC 2016.12) at Covance on 21 [Enlightened Kombucha] samples. All 21 [Enlightened Kombucha] samples contained greater than 0.5% ABV, ranging from 1.09 – 1.96% ABV. This is between 218 and 392% higher than the legal limit of 0.5% ABV." *See* Exhibit 2, at ¶ 12(b).

51. Mr. Ebersole also "conducted testing in March 2016 within a method verification and round-robin study that yielded four candidate methods from three laboratories (including the headspace GC-FID method). [Mr. Ebersole] found consistency in results among the laboratories on four [Enlightened Kombucha]

samples that all contained greater than 0.5% ABV. In this round of testing, alcohol in [Enlightened Kombucha] ranged from 1.27-1.51% ABV. This is between 254 and 302% higher than the legal limit of 0.5% ABV." *See* Exhibit 2, at ¶ 12(c).

52. For all of Mr. Ebersole's testing, the samples were purchased directly from retailers' refrigerated shelves, from non-alcoholic beverage refrigerated sections of the stores that were separate from the alcoholic beverage sections. The samples were not expired. Samples were transported in refrigerated conditions, ensuring that the samples were kept cold at all times. *See* Exhibit 2, at ¶¶ 35-40, 61-72.

53. Mr. Ebersole also reported that Enartis Vinquiry conducted testing of 46 bottles of Enlightened Kombucha in 2017 and 2018 using GC-FID. "The samples contained an average of 1.16% ABV, ranging from 0.60 to 2.05%." *See* Exhibit 2, at ¶ 12(d).

54. Mr. Ebersole also reported that these results "for alcohol in [Enlightened Kombucha] are consistent with results independently reported by others in the published literature:"

> For example, in 2015 John Edwards, Ph.D. from Process NMR Associates analyzed three samples of [Enlightened Kombucha] in 2015 using a nuclear magnetic resonance method. He found all three samples had alcohol levels higher than 0.5% ABV, ranging from 1.23-1.40 % ABV, reflecting alcohol levels 246%-280% higher than the 0.5% limit. In 2017, Daniel Armstrong, Ph.D. and colleagues at the University of Texas analyzed eight samples of [Enlightened Kombucha] using headspace GC-FID, and found they all exceeded 0.5% alcohol, reporting a range of 1.1%-1.8% ABV in the drinks. This reflects an amount that is 220%-360% higher than the 0.5% ABV limit for non-alcoholic beverages.

**Every Enlightened Kombucha Bottle Violates A Host of Federal and State Laws Regulating The Labeling Of Alcoholic Beverages**

55. Prior to a recent update, the Alcohol and Tobacco Tax and Trade Bureau's website stated that "TTB's initial testing of kombucha in the marketplace reveals that many of these products contain at least 0.5 percent alcohol by volume. These products are alcohol beverages and are consequently subject to regulation."[8] The TTB stated that its "primary concern is to ensure that consumers are not misled about the nature of alcohol beverage products that might be marketed as non-alcoholic beverages. It is important that consumers are adequately informed about the nature of these products."

56. The TTB's current website shows that the concern over alcohol in kombucha beverages persists. "Some kombucha products contain 0.5% or more alcohol by volume. These products are alcohol beverages ... It is important to note that regardless of the alcohol content of the finished beverage, when kombucha reaches 0.5% alcohol or more by volume at any time during the production process, it must be produced on a TTB-qualified premises and is subject to TTB regulation. Thus, for example, a producer of a kombucha-style beer that reaches an alcohol content of 1.2% alcohol by volume during production must qualify as a brewer and comply with TTB regulations in 27 CFR part 25, even if the finished product is a non-alcoholic beverage (containing less than 0.5% alcohol by volume)."[9]

57. According to the TTB, "[e]ven though a kombucha beverage may have less than 0.5% alcohol by volume at the time of bottling, fermentation may continue in the bottle after it leaves the production facility, depending on how the kombucha beverage is made and stored. As a result, the alcohol content may increase to 0.5% or more alcohol by volume. Such a product is an alcohol beverage, which is subject

---

[8] https://web.archive.org/web/20150818084444/http://www.ttb.gov/faqs/kombucha-faqs.shtml
[9] https://www.ttb.gov/kombucha/kombucha-general#testing

to the laws and regulations governing the production, taxation, labeling, marketing, and distribution of alcohol beverages."[10]

58. The TTB makes clear that distributors and manufacturers (such as Defendant) cannot escape liability for failing to include the required alcohol warning statement even if the beverages become alcoholic *after* they are sold downstream to retailers or consumers that fail to refrigerate the beverages. "Refrigeration of the product is not an adequate method of ensuring that the alcohol content will not increase while in the original container after removal because, among other things, you cannot control whether the product will be refrigerated after removal."[11]

59. In the Frequently Asked Questions portions of its website, the TTB explains in a series of questions and answers the various labeling requirements kombucha beverages must meet if they have more than 0.5 percent alcohol by volume. One of the questions is "Are kombucha containers required to bear a health warning statement?" The TTB answers, "Yes, if the kombucha beverage contains 0.5 percent or more alcohol by volume. The container of any alcohol beverage sold or distributed in the United States with an alcohol content of 0.5 percent or more must bear the health warning statement required by the Alcoholic Beverage Labeling Act of 1988," citing 27 C.F.R. § 16. In turn, 27 C.F.R. § 16.10 defines "Alcoholic beverage" as "any beverage in liquid form which contains not less than one-half of one percent (.5%) of alcohol by volume and is intended for human consumption." 27 C.F.R. § 16.20 goes on to state that "no person shall bottle for sale or distribution in the United States any alcoholic beverage unless the container of such beverage bears the health warning statement required by § 16.21."

60. 27 C.F.R. § 16.21 states that "[t]here shall be stated on the brand label or separate front label, or on a back or side label, separate and apart from all other

---

[10] *Id.*
[11] *Id.*

information, the following statement: GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems." The labels of Enlightened Kombucha do not bear this warning.

61. Within the past year, the TTB's website has also stated that certain "beers," including kombucha products, "that [are] made without both malted barley and hops .... must ... comply with FDA labeling requirements. Such products are still subject to the marking requirements of the IRC and the health warning statement requirements of ABLA."[12] The FDA clarifies that such alcoholic beverages are subject to the nutrition labeling requirements set out at 21 C.F.R. 101.9, and the general requirements of 21 C.F.R. 101.3 and 21 C.F.R. 101.4.[13] Because Enlightened Kombucha is "made without both malted barley and hops," Enlightened Kombucha is also subject to the general nutrition labeling requirements set out by the FDA. Accordingly, the labels of Enlightened Kombucha are subject to the "false and misleading" standard of 21 U.S.C. § 343(a)(1) and the corresponding state law counterparts that track the federal standards. *See, e.g.*, Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act … shall be the food labeling regulations of this state."); 1 N.Y.C.R.R. § 259.1 (same). Because Enlightened Kombucha contains alcohol above 0.5 percent by volume, it is misbranded under the FDA's labeling requirements, and the corresponding state law counterparts that track the federal standards.

[12]https://web.archive.org/web/20180726103232/https://www.ttb.gov/kombucha/kombucha-general.shtml (last accessed November 15, 2019).

[13] U.S. Food and Drug Administration, *Guidance for Industry: Labeling of Certain Beers Subject to the Labeling Jurisdiction of the Food and Drug Administration*, December 2014. Available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-labeling-certain-beers-subject-labeling-jurisdiction-food-and-drug-administration (last accessed November 15, 2019).

62. Defendant's sale and marketing of Enlightened Kombucha as a non-alcoholic beverage also violates a host of State consumer health and safety regulations. For example, California Health & Safety Code Section 25249.2 provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10." The method of warning should be a warning that appears on the product's label. *See* 27 Cal. Code of Reg. § 25603(c). Pursuant to Proposition 65, the Safe Drinking Water and Toxic Enforcement Act ("Proposition 65"), California recognizes "Ethyl alcohol in alcoholic beverages" as a chemical known to cause reproductive toxicity. 27 Cal. Code of Reg. § 27001(c). "Alcoholic beverage" includes "every liquid or solid containing alcohol, spirits, wine, or beer, and which contains one-half of one percent or more of alcohol by volume and which is fit for beverage purposes either alone or when diluted, mixed, or combined with other substances." *Consumer Cause, Inc. v. Arkopharma, Inc*. (2003) 106 Cal. App. 4th 824, 829 (citing Cal. Bus. & Prof. Code § 23004). Because Enlightened Kombucha in fact contains "one-half of one percent or more of alcohol by volume," but the labels do not bear the appropriate warning, the products violate Proposition 65. A warning statement identical to the one prescribed by 27 C.F.R. § 16.21 would suffice to comply with the law and to notify consumers.

63. Under federal law, Defendant cannot turn a blind eye to what happens to Enlightened Kombucha products after they leave Defendant's facilities. Considering that Defendant has repeatedly been caught selling kombucha beverages that contained elevated amounts of alcohol, Plaintiff alleges on information and belief that Defendant knowingly and willfully distributes Enlightened Kombucha in

violation of Federal and State laws that require such beverages to contain the government warning, as set out above.

64. Defendant's sale and marketing of Enlightened Kombucha as non-alcoholic, low sugar beverages, by omitting to disclose their true content, is highly misleading to a reasonable consumer, including Plaintiffs. Because Enlightened Kombucha does not include the required warnings concerning the significant presence of alcohol, consumers, including Plaintiffs, are led to believe that the products are safe to consume when driving a car, operating machinery, and taking with potentially a deadly cocktail of incompatible medications.

65. Defendant made, and continues to make, unlawful and misleading claims on the labels of Enlightened Kombucha that are prohibited by identical federal and state laws, and which render these products misbranded. Under federal and state law, Enlightened Kombucha cannot legally be manufactured, distributed, held, or sold.

66. Defendant's unwillingness to treat the 0.5 alcohol by volume threshold seriously can be seen through Defendant's C.E.O.'s statements in 2010 concerning being forced to release the Enlightened line due to the recall. Defendant's C.E.O. stated in an interview:

> The whole .5% alcohol threshold is so arbitrary. It's acting like .4% is not going to do anything but .6% is gonna get you wasted. It's not. A lot of these laws and regulations were created in the 1920's. You can get more alcohol in your system from mouthwash, cough syrup, vanilla extract, cooking wine, an herbal tincture or a dozen other products…It's a little distorted.[14]

In another interview given around the same time, Defendant's C.E.O. stated:

---

[14] Kombuchakamp.com, *GT Dave – Exclusive Interview*, 2010. Available at https://www.kombuchakamp.com/update-gts-original-enlightened-kombucha-on-the-way-will-stay-raw-and-true-to-ourselves (last accessed on November 15, 2019).

> Most of these laws [regarding alcohol content of store-sold beverages] were written around the prohibition period, and the .5 percent threshold is very arbitrary – **there is really no difference with a product that is slightly below or above**…Our long-term goal is to change legislation, a mission that will take some time. **We are being asked to control something that is out of our control**…That's why it was a confusing time.[15]

(emphasis added). But whatever long-term goals Defendant may have about changing legislation are irrelevant to the fact that the 0.5 alcohol by volume threshold is the law of the land. There is a very big difference between a beverage under and over this limit, as underscored throughout federal and state law in this field going back to the 1930's, the fall of prohibition, and before. One is lawful and the other is not. Further, as discussed above, the Enlightened line is not "slightly" above the legal limit. In fact, many, if not most, of the beverages in the Enlightened line are at least double the legal limit, with some reaching over four times the legal limit. If the natural fermentation of the Enlightened line, such that the beverages become more alcoholic than permitted by law, is "something that is out of [Defendant's] control," Defendant cannot and should not sell the products.

67. Defendant's marketing of the Enlightened line as the non-alcoholic version of its Classic line is highly misleading to a reasonable consumer. Because the Enlightened products omit the appropriate warnings and are sold to consumers of all ages, consumers, including Plaintiffs, are led to believe that the products are safe to consume when driving a car or operating machinery and pose no safety concerns. Like any other forms of alcohol, Enlightened Kombucha may in fact cause health problems, is not safe to consume while driving or operating machinery, and may increase the chance of birth defects if consumed during pregnancy. For these

---

[15] Kelly Green, *What Happened to GT Dave's Kombucha?*, Phoenix New Times, Oct. 21, 2010. Available at http://www.phoenixnewtimes.com/restaurants/what-happened-to-gt-daves-kombucha-6533129 (last accessed on November 15, 2019).

reasons, Enlightened Kombucha must bear the government warning mandated by 27 C.F.R. § 16.21 and is misbranded under State and Federal law.

68. Defendant made, and continues to make, unlawful and misleading claims on the labels of Enlightened Kombucha that are prohibited by identical federal and state laws, and which render these products misbranded. Under federal and state law, Enlightened Kombucha cannot legally be manufactured, distributed, held, or sold.

## CLASS REPRESENTATION ALLEGATIONS

69. Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, between February 28, 2017 and the date that class notice is disseminated, purchased Enlightened Kombucha.

70. Plaintiffs Weiler, Sharpe, Patel, and Nunez also seek to represent a subclass defined as all members of the Class who purchased Enlightened Kombucha in California (the "California Subclass").

71. Plaintiffs Leder, DiGennaro, Schmidt, and Nunez also seek to represent a subclass defined as all members of the Class who purchased Enlightened Kombucha in New York (the "New York Subclass").

72. Plaintiffs Sharpe and Nunez also seek to represent a subclass defined as all members of the Class who purchased Enlightened Kombucha and were between the ages of 18 to 21 (not including persons aged 21 or older, or under the age of 18) at the time of purchase (the "Under 21 Subclass").

73. Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

74. Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their

legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

75. Also excluded from the Class are persons or entities that purchased Enlightened Kombucha for purposes of resale.

76. Plaintiffs are members of the Class they seek to represent.

77. Defendant sell hundreds of thousands, if not millions, of bottles of Enlightened Kombucha. Enlightened Kombucha is available in major supermarkets nationwide, including in California and New York. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, third party retailers, and vendors.

78. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Enlightened Kombucha is misbranded, and whether the labeling, marketing and promotion of Enlightened Kombucha is false and misleading.

79. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to and relied on Defendant's false, misleading and misbranded labels (and were influenced by the material omissions on the labels), purchased Enlightened Kombucha, and suffered losses as a result of those purchases.

80. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class

actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

81. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**

**Violation Of California's Consumers Legal Remedies Act,**

**California Civil Code §§ 1750, et seq.**

82. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

83. Plaintiffs bring this claim individually and on behalf of members of the proposed Class against Defendant. Plaintiffs Weiler, Sharpe, Patel, and Nunez also bring this claim individually and on behalf of members of the proposed California Subclass against Defendant. Plaintiffs Sharpe and Nunez also bring this claim individually and on behalf of members of the proposed Under 21 Subclass.

84. Plaintiffs and Class members are consumers who purchased Enlightened Kombucha for personal, family or household purposes. Plaintiffs and the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

85. The Enlightened Kombucha that Plaintiffs and Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

86. Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

87. Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the omission or absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy. The omission and lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

88. Further, Defendant's omission on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs.

The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised.

89. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular characteristics, benefits and quantities of the goods.

90. Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular standard, quality or grade of the goods.

91. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant advertises goods with the intent not to sell the goods as advertised.

92. Plaintiffs and the Class acted reasonably when they purchased Enlightened Kombucha based on their belief that Defendant's representations were accurate, true and lawful.

93. Plaintiffs and the Class suffered injuries caused by Defendant because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

94. More than thirty-days prior to filing this action, CLRA notice letters were served on Defendant which comply in all respects with California Civil Code § 1782(a). Plaintiffs, collectively, on behalf of themselves and the proposed Class, served letters via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. True and correct copy of Plaintiffs' letters are attached hereto as Exhibits 3 and 4.

95. Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT II

## Violation Of California's Unfair Competition Law, California Business & Professions Code §§ 17200, et seq.

96. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

97. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

98. Plaintiff Weiler, Sharpe, Patel, and Nunez also bring this claim individually and on behalf of members of the proposed California Subclass against

Defendant. Plaintiffs Sharpe and Nunez bring this claim individually and on behalf of members of the proposed Under 21 Subclass.

99. Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

100. Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the omission and absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy. The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

101. Further, Defendant's omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs. The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised.

102. Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the FDCA [21 U.S.C.

Case 2:19-cv-10920-FMO-GJS Document 118-1 Filed 10/24/22 Page 36 of 104 Page ID #:4356

343(r)(1)(a)], California Health & Safety Code § 110670, 27 C.F.R. § 16, California Health & Safety Code Section 25249.2, the CLRA, the FAL and other applicable law as described herein.

103. Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers, and has been declared misleading and harmful to consumers by the TTB and the FDA. Creating consumer confusion regarding the amount of sugar and alcohol in Enlightened Kombucha is of no benefit to consumers. Defendant's advertising of Enlightened Kombucha as the non-alcoholic version of Millennium's "Classic" line and the fact that the labels of Enlightened Kombucha do not bear the requisite government warnings concerning the presence of significant amounts of alcohol causes the products to pose a threat to public health, safety, and morality. Consumers are unwittingly purchasing and consuming Enlightened Kombucha products prior to driving a car or operating machinery and while pregnant or under 21 years of age. Such practices are of no benefit to consumers.

104. Defendant violated the "fraudulent" prong of the UCL through omitting the required government warning concerning alcohol and selling the products alongside non-alcoholic beverages when, in fact, the products contain a substantial amount of alcohol. Defendant also violated the fraudulent prong by omitting the fact that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels.

105. Plaintiffs and the Class acted reasonably when they purchased Enlightened Kombucha based on their belief that Defendant's representations were not misleading, true and lawful.

106. Plaintiffs and the Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

## COUNT III

## Violation Of California's False Advertising Law, California Business & Professions Code §§ 17500, et seq.

107. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

108. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

109. Plaintiffs Weiler, Sharpe, Patel, and Nunez also bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant. Plaintiffs Sharpe and Nunez also bring this claim individually and on behalf of members of the proposed Under 21 Subclass.

110. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

111. Defendant engaged in a scheme of offering misbranded bottles of Enlightened Kombucha for sale to Plaintiffs and the Class members by way of product packaging, labeling, and other promotional materials. These materials misrepresented and/or omitted the true content and nature of the misbranded bottles of Enlightened Kombucha. Defendant's advertisements, labeling, and inducements were made in and originated from California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the product packaging, labeling, and promotional materials were intended as inducements to purchase Enlightened Kombucha, and are statements disseminated by Defendant to Plaintiffs and Class members. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

112. Further, Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy. The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale.

113. Further, Defendant's omission on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels

makes such advertising false and misleading to a reasonable consumer, including Plaintiffs. The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised.

114. Defendant violated § 17500, *et seq*. by misleading Plaintiffs and the Class to believe that Enlightened Kombucha is a non-alcoholic beverage when, in fact, it contains a substantial amount of alcohol, and by omitting the true amount of sugar in the beverages.

115. Defendant knew or should have known, through the exercise of reasonable care that Enlightened Kombucha was and continues to be misbranded, and that their omissions about the sugar and alcohol content of the beverages were unauthorized, inaccurate, and misleading. Defendant also knew or should have known, through the exercise of reasonable care that Enlightened Kombucha is an alcoholic beverage and that Defendant's omissions are misleading.

116. Plaintiffs and the Class lost money or property as a result of Defendant's FAL violation because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

## COUNT IV

## Violation of New York's Deceptive and Unfair Trade Practices Act, New York General Business Law § 349, et seq.

117. Plaintiffs DiGennaro, Leder, and Schmidt hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

118. Plaintiffs DiGennaro, Leder, Schmidt, and Nunez bring this claim individually and on behalf of the members of the proposed New York Subclass against both Defendants.

119. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

120. Defendant's marketing and labeling of Enlightened Kombucha as a non-alcoholic beverage, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiffs, because Enlightened Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Enlightened Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy. The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Enlightened Kombucha is an unreasonably dangerous product that is unfit for sale. Defendant's failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the alcohol content of Enlightened Kombucha offends the public policy advanced by the Act "to protect the public health" by

ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). Accordingly, Defendant's practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that Enlightened Kombucha is misbranded.

121. Further, Defendant's omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs. The excess amount of sugar in the beverages also makes Enlightened Kombucha less healthy than advertised. Defendant's failure to comply with FDCA and parallel New York labeling requirements and deceptive advertising concerning the sugar content of Enlightened Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). Accordingly, Defendants' practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that Enlightened Kombucha is misbranded.

122. The foregoing deceptive acts and practices were directed at consumers.

123. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of Enlightened Kombucha to induce consumers to purchase same.

124. Plaintiffs DiGennaro, Leder, Schmidt, and Nunez and the New York Subclass members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiffs DiGennaro, Leder, Schmidt, and Nunez and the New York Subclass members suffered monetary losses associated with the purchase of Enlightened Kombucha because (a) they would not have purchased Enlightened Kombucha absent Defendant's omission of a government warning concerning the

Case 2:19-cv-10920-FMO-DSR Document 163-2 Filed 10/24/21 Page 42 of 87 Page ID #:5693

product's alcohol content; (b) they would not have purchased Enlightened Kombucha on the same terms absent Defendant's representations and omissions; (c) they paid a price premium for Enlightened Kombucha due to Defendant's misrepresentations and omissions; and (d) Enlightened Kombucha did not have the characteristics, benefits, or quantities as promised.

## **COUNT V**

## **Breach of Express Warranty**

125. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all of the Subclasses) against Defendant.

126. In connection with the sale of Enlightened Kombucha, Defendant issues an express warranty that Enlightened Kombucha contains 15 percent less sugar (listed in explicit grams of sugar per serving) than is actually present in the beverages.

127. Defendant's affirmation of fact and promise on Enlightened Kombucha's labels that the products contained at least 15 percent less sugar than actually present in the beverages became part of the basis of the bargain between Defendant and Plaintiffs and Class members, thereby creating express warranties that the products would conform to Defendant's affirmation of fact, representations, promise, and description.

128. Defendant breached its express warranty because Enlightened Kombucha in fact contains at least 15 percent more sugar than promised on the labels. In short, Enlightened Kombucha does not live up to Defendant's express warranty.

129. Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Enlightened Kombucha if they had known the true facts; (b) they paid for Enlightened Kombucha due to the mislabeling of the products; (c) they would not have purchased

Enlightened Kombucha on the same terms if they had known the true facts; (d) they paid a price premium for Enlightened Kombucha due to Defendant's false warranties and affirmations of fact; and (e) Enlightened Kombucha did not have the characteristics or qualities as promised.

130. Plaintiffs served Defendant with written notice of Defendant's breach of warranties at least 30 days prior to the filing of the Complaint.

**COUNT VI**

**Breach of Implied Warranty of Merchantability**

131. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all of the Subclasses) against Defendant.

132. The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, *inter alia*, "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label if any."

133. Defendant, through their acts and omissions set forth herein, in their sale, marketing, and promotion of Enlightened Kombucha, impliedly warranted that (a) Enlightened Kombucha was a non-alcoholic beverage that could be lawfully purchased and safely consumed by anyone; and that (b) Enlightened Kombucha was a low-sugar beverage.

134. Defendant was a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable.

135. However, Defendant breached that warranty implied in the contract for the sale of Enlightened Kombucha in that the products do not contain the "quality and quantity" of kombucha beverages as impliedly warranted, and because Enlightened Kombucha do not conform to the promises made on their labels, as described herein. Defendant also breached that implied warranty because Enlightened Kombucha is an unreasonably dangerous product that cannot be used or sold without the necessary government warnings concerning alcohol.

136. As a result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods and because the goods were unreasonably dangerous and could not be used.

137. Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Enlightened Kombucha if they had known the true facts; (b) they paid for Enlightened Kombucha due to Defendant's implied warranties; (c) they would not have purchased Enlightened Kombucha on the same terms if they had known the true facts; (d) they paid a price premium for Enlightened Kombucha due to Defendant's implied warranties; and (e) Enlightened Kombucha did not have the characteristics or qualities as impliedly warranted.

## COUNT VII

## Fraud

138. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all Subclasses) against Defendant.

139. As discussed above, Defendant failed to disclose material facts about Enlightened Kombucha, including by failing to include the government mandated alcohol warning on the products' labels and by failing to disclose the fact that the

beverages contain at least 15 percent more sugar than listed on the products' labels. These omissions were made with knowledge that the labels are misleading.

140. The omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended and actually induced Plaintiffs and Class members to purchase Enlightened Kombucha.

141. The fraudulent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII

## Unjust Enrichment

142. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class (and all Subclasses) against Defendant.

143. Plaintiffs and members of the Class conferred benefits on Defendant by purchasing Enlightened Kombucha.

144. Defendant has knowledge of such benefits.

145. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of Enlightened Kombucha. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misleadingly omitted the required government alcohol warning on the labels of Enlightened Kombucha and misrepresented and omitted the true amount of sugar in Enlightened Kombucha. These misrepresentations caused injuries to Plaintiffs and members of the Class because they would not have purchased Enlightened Kombucha had the true facts been known.

146. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for their unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b) For an order certifying the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Weiler, Sharpe, Patel, and Nunez as representative of the California Subclass and Plaintiffs' attorneys as Class Counsel to represent the California Subclass members;

c) For an order certifying the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs DiGennaro, Leder, Schmidt, and Nunez as representatives of the New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the New York Subclass members;

d) For an order certifying the Under 21 Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Sharpe and Nunez as representative of the Under 21 Subclass and Plaintiffs' attorneys as Class Counsel to represent the Under 21 Subclass.

e) For an order declaring that Defendant's conduct violates the statutes referenced herein;

f) For an order finding in favor of Plaintiffs, the Class and the Subclasses on all counts asserted herein;

g) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

h) For prejudgment interest on all amounts awarded;

i) For an order of restitution and all other forms of equitable monetary relief;

j) For equitable or injunctive relief, including for restraining sales without truthful labeling, or as the Court may deem proper including public injunctive relief as may be permitted by applicable law; and

k) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated: December 17, 2024

Respectfully submitted,

**DOVEL & LUNER, LLP**

By: *__/s/ Simon Franzini__*
Simon Franzini

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Gabriel Z. Doble (Cal. Bar No. 335335)
gabe@dovel.com
Stephen Andrews (Cal. Bar No. 354327)
stephen@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

| | |
|---|---|
| Present: The Honorable | Fernando M. Olguin, United States District Judge |

| | | |
|---|---|---|
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorney Present for Plaintiff(s): | Attorney Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order Re: Motion for Class Certification [99]**

Having reviewed all the briefing filed with respect to plaintiffs' Motion for Class Certification (Dkt. 99, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.[1] Although the Court's Order Re: Class Certification Motions required each issue or sub-issue raised by a party to be immediately followed by the opposing party's response, and that all evidentiary objections be made in the joint brief, (see Dkt. 26, Court's Order of March 20, 2020, at 1-3), the parties' papers did not fully comply with these requirements. (See, e.g., Dkt. 113, Joint Brief on Plaintiffs' Motion for Class Certification ("Jt. Br.") at 13-17) (addressing all Rule 23(a) requirements in one fell swoop); (Dkt. 103, Plaintiffs' Supplemental Memorandum in Support of Motion for Class Certification ("Plf. Supp. Br.") at 1-7) (challenging qualifications and reliability of defendant's experts in Supplemental Brief); (Dkt. 104, GT's Supplemental Brief in Opposition to Plaintiffs' Motion for Class Certification 2-6) (challenging plaintiffs' expert's qualifications). Also, the Motion was filed in August, 2021, (see Dkt. 99, Motion), and since then, the Ninth Circuit has issued several class certification decisions, including Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022) (en banc), that bear on the issues in this case. Finally, this court has addressed class certification in the consumer food, beverages, and supplements context. See Capaci v. Sports Research Corp., 2022 WL 1133818 (C.D. Cal. 2022); Lytle v. Nutramax Laboratories, Inc., 2022 WL 1600047 (C.D. Cal. 2022). Under the circumstances, the court will deny the Motion without prejudice to plaintiffs filing a renewed motion.

In considering whether to file a renewed motion, plaintiffs should note that, in light of Retta v. Millennium Products, Inc.,[2] Case No. CV 15-1801 PSG ("Retta Action"), the court has concerns

[1] Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

[2] Defendant GT's Living Foods, LLC was named Millennium Products between 1995 and 2017. (See Dkt. 113, Jt. Br. at 6).

regarding the named plaintiffs'[3] and proposed class counsel, Bursor & Fisher, P.A.'s ("Bursor") ability to adequately represent the class in this case. The Retta Action involved the same allegations regarding the alcohol and sugar levels in defendant's kombucha,[4] asserted the same claims for relief under California and New York law, and was filed by the same attorneys as in this action, i.e., Bursor & Fisher, including Yeremey Krivoshey. (See Retta Action, Dkt. 68, Fifth Amended Complaint ("Retta 5AC") ¶¶ 5, 86-149, 159-171).[5]

On August 22, 2017, Judge Gutierrez granted final approval of the settlement in the Retta Action. See Retta, 2017 WL 5479637, at *1 & *19. In addition to monetary relief, the Retta settlement provided for injunctive relief which, among other things, required defendant to: (1) "[a]dd a warning label that 'the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[,]'" id., at *2; (Retta Action, Dkt. 103-3, Exh. 1, Stipulation of Class Action Settlement ("Retta Settlement Agreement") at ¶ 47(b)); (2) "regularly test samples from every [s]ubject [p]roduct line (at the time of bottling and the time of expiration) using a third-party laboratory[,]" (Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 47(c)); Retta, 2017 WL 5479637, at *2; (3) "test the sugar content of multiple product samples, drawn from every [s]ubject [p]roduct line, using a third-party laboratory" every three months, (Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 47(e)); Retta, 2017 WL 5479637, at *2; and (4) "adopt any new industry wide methodology for testing the alcohol content of kombucha, should one be developed." Retta, 2017 WL 5479637, at *2; (Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 47(d)).

In seeking approval of the settlement, plaintiffs made several representations to the Retta Court that not only appear to undermine the instant action but also call into question the ability of Bursor to "fairly and adequately represent the interests of the class[,]" see Fed. R. Civ. P. 23(g)(B), i.e., to vigorously and effectively litigate the present action. For example, in Retta, Bursor touted the settlement's "expansive injunctive relief," which included "a warning on its labels that 'the

---

[3] Although the named plaintiffs, who were class members in the Retta Action, (see Dkt. 113, Jt. Br. at 16) (citing responses to interrogatories); Retta v. Millennium Products, Inc. 2017 WL 5479637, *3 (C.D. Cal. 2017) (The class period in Retta was March 11, 2011 to February 26, 2017), appear to be inadequate class representatives, as they would be subject to unique defenses, the majority of the court's concerns relate to counsel. Thus, the court's reference to "plaintiffs" throughout this Order is generally intended to refer to class counsel, specifically Bursor.

[4] This action and Retta involved defendant's Enlightened and Synergy line of kombucha. (See Dkt. 29, First Amended Complaint ("FAC") at ¶ 1 n. 1); (Retta Action, Dkt. 68, 5AC at ¶ 2 n. 1). For ease, the court will refer to the products simply as kombucha or defendant's kombucha.

[5] The Retta 5AC asserted an additional claim for negligent misrepresentation. (See Retta Action, Dkt. 68, 5AC at ¶¶ 150-58).

Case 2:19-cv-10920-FMO-GJS Document 188 Filed 02/12/25 Page 57 of 104 Page ID #:14215

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[.]'" (Retta Action, Dkt. 103-1, Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement at 2); (id. at 23) (stating that the settlement "provides precisely the injunctive relief sought in the Complaint" which consists of "the addition of an alcohol warning on the labels of [] Enlightened kombucha products"); Retta, 2017 WL 5479637, at *2. Indeed, a copy of the alcohol warning label that is the subject of this lawsuit was submitted as part of the settlement approval process in the Retta Action. (See Retta Action, Dkt. 136-1, Declaration of George Thomas Dave at ¶ 3 & Exh. 1) (Enlightened Kombucha Label). Yet, in this case, plaintiffs claim that this alcohol warning label is inadequate. (See Dkt. 29, FAC at ¶¶ 1, 5, 8, 11, 14, 25, 32). As defendant notes, plaintiffs "are collaterally attacking the injunctive relief from a class settlement that their counsel negotiated and obtained on their behalf." (Dkt. 113, Jt. Br. at 15) (emphasis omitted). In other words, plaintiffs are challenging the alcohol warning label they negotiated in Retta.

In seeking to challenge the Retta alcohol warning label in this action, plaintiffs contend that they have "put forth evidence that neither they, nor any reasonable consumers, would have purchased Enlightened Kombucha had they known that doing so exposed them to criminality, and if they knew that they could not rely on Defendant's marketing and labeling of the products as non-alcoholic beverages." (Dkt. 113, Jt. Br. at 29) (citing Ex. B at ¶¶ 32, 58-59). According to plaintiffs, "[t]he unwitting consumption of alcoholic beverages is . . . obviously inherently dangerous, and can cause, inter alia, birth defects, accidents, and health complications." (Id.). But it is difficult to give much credence to such contentions since it was Bursor that negotiated and, indeed, advocated for the subject alcohol warning label during the settlement process in the Retta Action. Significantly, an objector to the Retta settlement questioned whether the settlement was fair to minors, and whether it "provide[d] adequate protections to minors going forward" because "Defendant's failure to properly label and advertise its products caused minors to purchase and consume Defendant's alcoholic beverages." (Retta Action, Dkt. 135-1, Declaration of Yeremey Krivoshey in Support of Plaintiffs' Response to Objections to Settlement ("Krivoshey Retta Decl."), Exh. 2 (Objection to Proposed Class Action Settlement ("Retta Obj.") at 2-3). In response to the objection, Bursor argued that the objector "overlooked entirely that the Settlement provides injunctive relief with respect to the alcohol claims[,]" and relied on the warning label – i.e., that "the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs" – it negotiated as part of the settlement and that would be included on defendant's kombucha going forward. (See Retta Action, Dkt. 135, Plaintiffs' Response to Objections to Settlement ("Retta Response") at 8). In overruling the objection, the Retta Court accepted Bursor's representations, stating that "all class members, including minors, stand to receive their fair share of the settlement and the injunctive relief will adequately ensure that consumers are informed about the alcohol content in" defendant's kombucha. Retta, 2017 WL 5479637, at *8.

Moreover, despite the allegations in Retta that defendant's kombucha continues to ferment and produce alcohol after bottling, (see, e.g., Retta Action, Dkt. 68, 5AC at ¶ 29) ("[T]he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
| --- | --- | --- | --- |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

Enlightened line is a 'raw' and 'unpasteurized' kombucha, necessarily meaning that the beverages continue to ferment and increase in alcohol over time, especially if left unrefrigerated for even short periods of time. Whatever changes Millennium made to its Enlightened line, if any, are ineffective at curbing the accumulation of alcohol in the products past 0.5 percent alcohol by volume through the normal and expected use of the products."), there is nothing in the Retta settlement, (see, generally, Retta Action, Dkt. 103-3, Retta Settlement Agreement), that required defendant to conduct alcohol tests at the point of sale. Instead, Bursor accepted the testing regime (and alcohol disclosure label) that it now challenges in this action.

Finally, with respect to plaintiffs' damages model, Bursor acknowledged in plaintiffs' motion for final approval that a full-refund model is "typically foreclosed" at class certification, in part because beverages provide "benefits in the form of calories, hydration, vitamins, and minerals," (Retta Action, Dkt. 117-1, Motion for Final Approval at 11) (citing In re POM Wonderful LLC, 2014 WL 1225184, *2-3 (C.D. Cal. 2014)), and conceded that defendant's kombucha "contain[s] multiple vitamins, enzymes and probiotics, and provide[s] hydration and calories." (Id.). Notwithstanding that concession, plaintiffs advance a full-refund damages model here. (See Dkt. 113, Jt. Br. at 29-36).

Plaintiffs' responses to defendant's contentions regarding the impact of the Retta Action, (see Dkt. 103, Plf. Supp. at 8-10), are largely unsatisfactory. First, whether the statements made in Retta are admissible is beside the point in addressing the adequacy of counsel. See Fed. R. Civ. P. 23(g)(1)(B) (providing that a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"). Second, plaintiffs' argument that it "never agreed that the label disclosure would be sufficient if [defendant] decided to continue selling booze to children,"[6] (Dkt. 103, Plf. Supp. at 10), is non-responsive to the issue here because the record indicates that plaintiffs agreed that the alcohol warning label they negotiated in the Retta Action would be adequate to address claims regarding the sale of defendant's kombucha to minors. As noted above, in addressing an objection that the Retta settlement failed to"provide[] adequate protections to minors going forward[,]" (Retta Action, Dkt. 135-1, Krivoshey Retta Decl, Exh. 2 (Retta Obj.) at 3), Bursor directed the court to the injunctive relief language relating to the "alcohol claims" and set out verbatim the negotiated alcohol warning language.[7]

---

[6] As noted earlier, the Retta settlement provided monetary relief by which class members could elect to receive a cash payment or a product voucher redeemable for free Enlightened Kombucha. (See Retta Action, Dkt. 103-3, Exh. 1, Retta Settlement Agreement at ¶ 45). But nothing in the Retta Settlement Agreement limited the voucher option to class members 21 years of age and over. (See, generally, id. at ¶ 45(b)); (see also id. at Exh. C, Claim Form).

[7] Bursor's reliance on Slusher v. Big Lots Stores, Inc., 2018 WL 10164064 (N.D. Cal. 2018) is misplaced. In that case, the defendant argued that the doctrine of claim splitting barred a subsequently filed class action. See id. at *1-2. Significantly, Slusher involved simultaneous class actions, see id. at *1, rather than the situation here, i.e., where class counsel negotiated label

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

(Retta Action, Dkt. 135, Retta Response at 8).

Third, plaintiffs contend that they had "hoped that the new formulation" of using kiwi juice instead of cane sugar in defendant's kombucha coupled with the requirement for future testing "would have led to corrective behavior." (See Dkt. 103, Plf. Supp. at 9). Plaintiffs also contend that "no claims in Retta (of either Plaintiffs or Class Members) are being re-litigated here" because "[t]he class period in Retta ended on February 26, 2017." (Id.). Plaintiffs' contentions are unpersuasive.

As an initial matter, plaintiffs' contentions regarding the temporal scope of the class and the claims that are (or are not) being litigated in this action may be accurate as to plaintiffs' damages claims, but it does not apply to the injunctive relief issued by the Retta Court.[8] Indeed, plaintiffs acknowledge that "[t]he Retta settlement had no requirement for how long [defendant] needed to use the proposed labeling[.]" (Id. at 9). In other words, the injunctive relief issued by the Retta Court was permanent. Putting aside the fact that the alcohol warning label Bursor negotiated has been used by defendant since the Retta settlement, it appears that plaintiffs simply aren't satisfied with the injunctive relief they negotiated and had approved by the Retta Court. But when a court issues permanent injunctive relief that a party believes is insufficient or needs to be modified (i.e., if the new formulation of defendant's kombucha turned out to be insufficient or inadequate), the remedy isn't to file a new action – before a different judge – seeking to challenge the injunctive relief. Rather, the remedy is to seek to modify or challenge the injunctive relief through a proper motion filed with the judge who issued the injunctive relief,[9] cf., e.g., Flores v. Lynch, 828 F.3d 898, 905 (9th Cir. 2016) (noting use of motion to enforce settlement), or, seek to have the case transferred as a related case to the judge who issued the injunctive relief.

---

language in a prior action that it subsequently contends is inadequate in a subsequent action.

[8] The court is not persuaded by plaintiffs' contention that "the main benefits of the Retta settlement was the $8.25 million cash consideration." (Dkt. 103, Plt. Supp. at 9). A review of the final approval order and the underlying settlement documents in the Retta Action indicate that the injunctive relief was a significant part of the Retta settlement and, indeed, some of the injunctive relief was intended to address claims in a related class action. See Retta, 2017 WL 5479637, at *2 & n. 1 (setting forth injunctive relief provisions and noting that one provision is intended to address claim from related class action).

[9] This procedure, arguably, would not apply to a non-party or non-class member to the Retta case. However, a case filed by a non-party or non-class member would still be subject to transfer, as a related case, to the Retta Court which issued the subject injunctive relief. See L.R. 83-1.3.1 (providing that a notice of related case shall be filed "whenever two or more civil cases filed in this District[] . . . arise from the same or a closely related transaction, happening, or event" or "call for determination of the same or substantially related or similar questions of law and fact[.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **June 21, 2024** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

The issues and concerns raised in this Order perhaps could have been avoided if Bursor had simply filed a Notice of Related Case pursuant to Local Rule 83-1.3 as to the Retta Action at the time it filed this action. Instead, Bursor filed a Local Rule 83-1.3 Notice of Related Case (Dkt. 8), as to the then-pending action, Tortilla Factory, LLC v. GT's Living Foods, LLC, Case No. CV 17-7539 FMO, contending that this case contained largely the same allegations as in Tortilla Factory. (Id. at 1). While Bursor acknowledged that Tortilla Factory was a competitor case, it claimed that discovery and motion practice would cover many overlapping issues, and that it "would be far more efficient for the two cases to be heard by the same judge." (Id. at 2). However, given that the Retta Court approved the alcohol warning label that is being challenged here, see Retta, 2017 WL 5479637, at *19, and that Court "retain[ed] exclusive jurisdiction over Defendant[] and the Settlement Class Members for all matters relating to this litigation, including the . . . interpretation, effectuation, or enforcement of the Settlement Agreement and th[e] Order[,]" id., counsel should have filed a notice of related case as to the Retta Action which, like the instant case, was a consumer case. Though Retta was closed at the time the notice of related case was filed, nothing in the applicable Local Rule prohibits the filing of a notice of related case with respect to a closed case. See, generally, L.R. 83-1.3.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Class Certification **(Document No. 99)** is **denied without prejudice**.

2. No later than **August 22, 2024**, plaintiffs shall file a renewed motion for class certification.

3. With respect to any renewed motion, the parties shall: (1) apply updated applicable case law; (2) strictly comply with the Court's Order Re: Motions for Class Certification (Dkt. 26); (3) address whether plaintiffs and class counsel, including Bursor & Fisher, are adequate representatives and class counsel; (4) address whether res judicata and/or judicial estoppel apply and at what stage, i.e., the class certification or the merits stage of the litigation; and (5) address whether a full refund damages model is viable in light of the court's rulings in other cases, given that this case does not involve the sale of pills or supplements and, if such a model is not available, whether this is an issue for the class certification or the merits stage of litigation.

00 : 00

Initials of Preparer vdr

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

| | | |
|---|---|---|
| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorney Present for Plaintiffs: | | Attorney Present for Defendant: |
| None Present | | None Present |

**Proceedings: (In Chambers) Order Re: Pending Motion [171]**

Having reviewed all the briefing filed with respect to defendant GT's Living Foods, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint and for Judgment on the Pleadings (Dkt. 171, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND[1]

On December 27, 2019, Delaney Sharpe ("Sharpe"), Erin Weiler ("Weiler"), Jenna Leder ("Leder"), and Adriana DiGennaro ("DiGennaro") filed this putative class action against GT's Living Foods, LLC ("GTLF" or "defendant"), (see Dkt. 1, Complaint), and subsequently filed a First Amended Complaint ("FAC") asserting claims for: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (4) violation of New York's Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law §§ 349, et seq.; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) fraud; and (8) unjust enrichment. (See Dkt. 29, FAC at ¶¶ 74-138).

This action arises from allegations that defendant falsely labels its "Enlightened Kombucha" line of beverages as non-alcoholic when, in fact, the subject beverage[2] contains more than .5 percent alcohol by volume, exceeding the legal limit for non-alcoholic beverages. (See Dkt. 29,

[1] Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

[2] The Enlightened Kombucha line refers to every flavor of GTLF's Enlightened Synergy and Enlightened Kombucha beverages. (See Dkt. 29, FAC at ¶ 1 n. 1). For purposes of the pending Motion, the court will at times simply refer to the product as "defendant's kombucha."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

FAC at ¶¶ 1-2). In addition, plaintiffs allege that GTLF "greatly understates by omission the sugar content of its Enlightened Kombucha beverages on the products' labels, making consumers believe the beverages are healthier than they really are." (Id. at ¶ 2). According to plaintiffs, the "undeclared high sugar content of [GTLF's] Enlightened Kombucha beverages contributes to the continued fermentation of the beverages after bottling" which "causes the Enlightened Kombucha line to cross the .5 percent alcohol by volume threshold set for non-alcoholic beverages." (Id.).

In June 2024, the court denied plaintiffs' motion for class certification without prejudice primarily due to procedural issues. (See Dkt. 129, Court's Order of June 21, 2024, at 1). But the court also expressed concern regarding the adequacy of named plaintiffs and proposed class counsel given the settlement in a previously filed class action against defendant – Retta v. Millennium Products, Inc., CV 15-1801 PSG ("Retta Action"). (See id. at 2-5). On August 22, 2017, Judge Gutierrez (Ret.) granted final approval of the settlement in that case. See Retta v. Millennium Products, Inc., 2017 WL 5479637, *10 (C.D. Cal. 2017).

In its order denying class certification, the court explained that the Retta Action involved the same allegations regarding the alcohol and sugar levels in defendant's kombucha, asserted the same claims for relief under California and New York law, and was filed by the same attorneys that filed the instant action, i.e., Bursor & Fisher ("Bursor"). (See Dkt. 129, Court's Order of June 21, 2024, at 2). The court noted that Bursor had made representations to the Retta court regarding the settlement terms that appeared to undermine the instant action and Bursor's ability to "'fairly and adequately represent the interests of the class[,]' [] i.e., to vigorously and effectively litigate the present action." (See id.) (quoting Fed. R. Civ. P. 23(g)(B)). In response to court's order denying class certification, Bursor withdrew and new counsel appeared. (See Dkt. 130, 131, 134, 141-144). To address the concerns raised by the court, plaintiffs, via new counsel, sought leave to file a Second Amended Complaint ("SAC") to add three new named plaintiffs who were not Retta class members. (See Dkt. 150, Plaintiffs' Motion for Leave to File SAC at 1). The court granted plaintiffs' motion, (see Dkt. 167, Court's Order of December 17, 2024, at 2), and on December 17, 2024, plaintiffs filed the SAC, which added the new named plaintiffs: Amit Patel ("Patel"), Christopher Nunez ("Nunez"), and Lauren Schmidt ("Schmidt") (collectively "Patel plaintiffs"). (See Dkt. 168, SAC at ¶¶ 17-24). Other than the allegations specific to the Patel plaintiffs, the SAC does not materially differ from the FAC. (Compare Dkt. 29, FAC, with Dkt. 168, SAC); (see, generally, Dkt. 150-3, Pls.' Exh. 2, Redlined SAC). Now pending is defendant's Motion, by which defendant seeks dismissal of the action based on lack of jurisdiction and for failure to state a claim.

## LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[3] Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when

[3] Here, defendant filed its Answer on February 12, 2021. (See Dkt. 54, Answer).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
|---|---|---|---|
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). The court must accept all facts in the complaint as true, and construe them in the light most favorable to the non-moving party. See Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog[,]" because the motions are "functionally identical[.]" Dworkin v. Hustler Mag., Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

As with a Rule 12(b) motion to dismiss, a Rule 12(c) motion should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted). "Specific facts are not necessary; the [complaint] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks omitted); see Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. See Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984), abrogated on other grounds by, Neitze v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989); 2 Moore's Federal Practice § 12.34[4][b] ("Dismissal under Rule 12(b)(6) . . . is also appropriate when a successful affirmative defense or other bar to relief on the claim is conclusively established on the face of the complaint.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

## DISCUSSION

I. RETTA SETTLEMENT.

Defendant contends that the court lacks jurisdiction over the initial plaintiffs – Sharpe, Weiler, Leder, and DiGennaro (collectively "Sharpe plaintiffs") – because they were Retta class members and are therefore covered by the settlement in that case. (See Dkt. 171, Motion at 7-11). The court agrees. The Retta court "retain[ed] exclusive jurisdiction over Defendant[] and the Settlement Class Members for all matters relating to this litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this Order." Retta, 2017 WL 5479637, at *19. In denying plaintiffs' motion for class certification, this court found that the Sharpe "plaintiffs are challenging the [same] alcohol warning label [that their prior counsel, Bursor,] . . . negotiated in Retta." (See Dkt. 129, Court's Order of June 21, 2024, at 3). Indeed, the court noted that the Retta plaintiffs "touted the settlement's 'expansive injunctive relief,' which included 'a warning on its labels that 'the products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[.]'" (Id. at 2-3). In other words, it appears that the Sharpe plaintiffs are improperly seeking to enforce or challenge the Retta Settlement. (See Dkt. 129, Court's Order of June 21, 2024, at 3) (finding that the Sharpe "plaintiffs are challenging the alcohol warning label they negotiated in Retta"). Thus, for the reasons set forth in the Court's Order of June 21, 2024 (Dkt. 129), the court finds that the Sharpe plaintiffs should be dismissed from this action.[4]

However, GTLF's contention that the Patel plaintiffs' claims should also be dismissed for similar reasons, (see Dkt. 171, Motion at 11-12), is without merit. The Patel plaintiffs were not Retta class members, and are not bound by the settlement in that case. See Asghari v. Volkswagen Grp. of America, Inc., 2015 WL 12732462, *38 (C.D. Cal. 2015) ("Non-class members are not bound by the settlement; their rights and interests are not impacted by the release of claims."). Contrary to defendant's contention, (Dkt. 171, Motion at 11), it cannot be said that the Patel plaintiffs are "in privity with the Retta plaintiffs" since they were not Retta class members and because their claims did not arise until after the Retta settlement. That is, they did not begin

[4] Plaintiffs' contention that this action is not implicated by Retta because the claims here involve "subsequent conduct," (see Dkt. 173, Plaintiffs' Opposition to Defendant's Motion ("Opp.") at 4), is unpersuasive because the gist of the SAC is that the label on defendant's kombucha is inadequate. But this is the label that was negotiated in the Retta settlement and touted to the Retta court in seeking approval of the settlement. In any event, even if the court declined to dismiss the Sharpe plaintiffs, the court would be unable to approve them as class representatives for the reasons set forth in the court's order denying class certification, i.e., they would be inadequate under Rule 23(a)(3)-(4) as they would be subject to unique defenses. (See Dkt. 129, Court's Order of June 21, 2024, at 2 & n. 3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

purchasing and drinking defendant's kombucha until after the close of the Retta class period.[5]

II. JUDGMENT ON THE PLEADINGS.

Defendant contends that plaintiffs' claims fail on the merits because the "labels are not deceptive." (See Dkt. 171, Motion at 18). It argues that no reasonable consumer could be misled as to alcohol content "since each Enlightened Kombucha label includes a clear warning that the product contains alcohol – a warning Judge Gutierrez held sufficient as a matter of law[.]" (Id. at 20). It further argues that courts in the Ninth Circuit "consistently dismiss comparable claims when the product label actually discloses the allegedly omitted information." (Id.). Defendant's arguments are unpersuasive.

The product label added to defendant's kombucha states: "[T]he products contain naturally occurring alcohol and should not be consumed by individuals seeking to avoid alcohol due to pregnancy, allergies, sensitivities or religious beliefs[.]" Retta, 2017 WL 5479637, at *2. But the SAC does not take issue with the fact that defendant's kombucha contains alcohol per se. (See, generally, Dkt. 168, SAC). Rather, plaintiffs allege that defendant's kombucha "contain[s] 18 to 442 percent more alcohol than the legal limit for non-alcoholic beverages[,]" (id. at ¶ 1), and because it has greater than .5 percent alcohol by volume, (see id. at ¶¶ 33, 47-54), it is required to, but does not, include the mandatory Surgeon General warning required for alcoholic beverages. (See id. at ¶¶ 36, 60). According to plaintiffs, because "alcoholic beverages are illegal to consume while driving, illegal to purchase by or for minors, illegal to consume by minors, and subject to numerous other restrictions that non-alcoholic beverages are not[,] . . . whether [d]efendant's kombucha qualifies as alcoholic (0.5% or more alcohol) or non-alcoholic (less than 0.5% alcohol) has serious legal implications for consumers of those beverages." (Dkt. 173, Opp. at 16-17); (see Dkt. 168, SAC at ¶ 64). That no reasonable consumer could be misled to believe that defendant's kombucha contains some alcohol is different from saying that no reasonable consumer could be misled to believe that defendant's kombucha is an alcoholic beverage containing more than 0.5% alcohol by volume.

---

[5] Defendant cites Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 322 F.3d 1064, 1084 n. 18 (9th Cir. 2003) for the proposition that Retta binds non-class members who are in privity with class members. (See Dkt. 171, Motion at 11). Tahoe-Sierra is inapposite. As an initial matter, the case did not involve a class action and the issue of non-class members. Instead, the court was dealing with successive suits by an association representing its members. See Tahoe-Sierra, 322 F.3d at 1084. The court explained that the plaintiff association "should not be able to evade preclusion continually by averring that unidentified members are not bound and bringing successive suits by claiming injury to different identified members." Id. (internal quotation marks omitted); see also id. at 1082 ("One of the relationships that has been deemed 'sufficiently close' to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members."). Retta involved individual consumer plaintiffs and class members, not an association and its members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10920 FMO (GJSx)** | Date | **September 30, 2025** |
| Title | **Delaney Sharpe, et al. v. GT's Living Foods, LLC** | | |

Finally, defendant contends that the sugar-related claims are expressly preempted by the Federal Food, Drug, and Cosmetics Act ("FDCA") because the "claims are based on an alleged 15% excess of sugar beyond what is indicated on the label," which falls within the applicable safe-harbor provision. (See Dkt. 171, Motion at 21-22). It points out that FDA regulations permit "a 20% margin of error for nutrient disclosures." (Id.) (citing 21 C.F.R. § 101.9(g)(5)). However, the court agrees with plaintiffs that the SAC's allegations can reasonably be read to encompass claims that defendant's kombucha contains 20% more sugar than listed on the labels, particularly since the SAC cites a study reporting that "54 out of 60 GT's Kombucha contained sugar content more than 20% higher than the claimed amount on the label." (Dkt. 168, SAC at ¶ 15); (Dkt. 168-2, Exh. 2, Declaration of Blake Ebersole at ¶ 15).

**CONCLUSION**

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis**.

Based on the foregoing, IT IS ORDERED THAT defendant's Motion **(Document No. 171)** is **granted in part and denied in part**. The Motion is granted as to plaintiffs Sharpe, Weiler, Leder, and DiGennaro who are dismissed with prejudice. The Motion is denied in all other respects.

00 : 00

Initials of Preparer vdr

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DELANEY SHARPE, et al., on behalf on themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GT'S LIVING FOODS, LLC,<br><br>Defendant. | Case No. CV 19-10920 FMO (GJSx)<br><br>**SCHEDULING AND CASE MANAGEMENT ORDER RE: CLASS ACTION & REPRESENTATIVE ACTIONS** |

**PLEASE READ THIS ORDER CAREFULLY. IT GOVERNS THIS CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

**The term "Counsel," as used in this Order, includes parties appearing pro se.**

The court has scheduled the dates set forth on the last two pages of this Order after review of the parties' Joint Rule 26(f) Report. Therefore, the court deems a Scheduling Conference unnecessary and hereby **vacates** the hearing. The dates and requirements set forth in this Order are firm. The court is unlikely to grant continuances, even if stipulated by the parties, unless the parties establish good cause through a proper showing.

In an effort to comply with Fed. R. Civ. P. 1's mandate "to secure the just, speedy, and inexpensive determination of every action[,]" the court **orders** as follows.

I. JOINDER OF PARTIES AND AMENDMENT OF PLEADINGS.

Any stipulation or motion to amend as to any claims, defenses, or parties shall be filed by the deadline set forth in the attached schedule, failing which it shall be deemed that the party has waived any such amendments. All unserved parties not timely served shall be dismissed without prejudice. In addition, all "Doe" defendants are to be identified and named on or before the date set forth below, on which date all remaining "Doe" defendants will be dismissed, unless otherwise ordered by the court upon a showing of good cause.

II. DISCOVERY.

A. Generally.

Discovery is governed by the Federal Rules of Civil Procedure and applicable Local Rules of the Central District of California. Pro se litigants are entitled to discovery to the same extent as are litigants represented by counsel. The court allows discovery to commence as soon as the first answer or motion to dismiss is filed. The court does not bifurcate discovery. The parties should note that absent exceptional circumstances, **discovery shall not be stayed** while any motion is pending, including any motion to dismiss or motion for protective order. **The parties are directed to conduct any necessary discovery as soon as possible, as the court is not inclined to grant any extensions of the discovery or other case-related deadlines**.

Counsel are expected to comply with the Federal Rules of Civil Procedure and all Local Rules concerning discovery. Whenever possible, the court expects counsel to resolve discovery disputes among themselves in a courteous, reasonable and professional manner. The court expects that counsel will adhere strictly to the Civility and Professionalism Guidelines (available on the Central District's website under Information for Attorneys > Attorney Admissions).

B. Discovery Cut-Off.

The court has established a cut-off date for discovery, including expert discovery, if applicable. This is not the date by which discovery requests must be served; it is the date by which all discovery, **including all hearings on any related motions**, is to be completed.

C. Discovery Motions.

Any motion relating to a deposition or challenging the adequacy of discovery responses

must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained and the deposition to be completed before the discovery cut-off if the motion is granted. Given the requirements set forth in the Local Rules (e.g., “meet and confer” and preparation of the Joint Stipulation), any party seeking to file a discovery motion must usually initiate meet and confer discussions at least seven (7) weeks before the discovery cut-off, i.e., by preparing and serving the letter required by Local Rule 37-1.

D. Expert Discovery.

All disclosures must be made in writing. The parties should begin expert discovery shortly after the initial designation of experts. The final pretrial conference and trial dates will not be continued because expert discovery is not completed. Failure to comply with these or any other orders concerning expert discovery may result in the expert being excluded as a witness.

III. MOTIONS.

The court has established a cut-off date for the filing and service of motions for the court’s law and motion calendar. Counsel should consult the court’s Initial Standing Order and related procedures, located on the Central District’s website,[1] to determine the court’s requirements concerning motions and other matters. Any motion that is noticed more than 42 days beyond the date the motion is filed shall be stricken or advanced to an earlier motion date. If the motion is advanced to an earlier motion date, counsel shall comply with the briefing scheduled dictated by the new hearing date. See Local Rules 7-9 & 7-10.

If documentary evidence in support of or in opposition to a motion exceeds 50 pages, the evidence must be separately bound and tabbed and include an index. If such evidence exceeds **300 pages**, the documents shall be placed in a **three-ring binder**, with an index and with each item of evidence separated by a tab divider on the right side. In addition, counsel shall provide an electronic copy (i.e., cd, dvd, or flash drive) of the documents in a single, OCR-scanned PDF file with each item of evidence separated by labeled bookmarks. Counsel shall ensure that all

[1] http://www.cacd.uscourts.gov > Judges’ Requirements > Judges’ Procedures and Schedules > Hon. Fernando M. Olguin (http://www.cacd.uscourts.gov/honorable-fernando-m-olguin).

documents are legible. Counsel are strongly encouraged to cite docket numbers (and sub-numbers) when citing to the record.

IV. SETTLEMENT.

Pursuant to Local Rule 16-15, the parties must complete a settlement conference. **No case will proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference**.

If the case settles, counsel shall file a Notice of Settlement no later than 24 hours after the case is settled, stating when they expect to file their dismissal papers. If the parties wish to dismiss class allegations prior to class certification, the parties must address in their Notice of Settlement whether there is: (1) potential prejudice to the class; or (2) evidence of a collusive settlement agreement. See Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1041, 1047 n. 3 (9th Cir. 1989). Otherwise, **the parties must, no later than 48 hours after the settlement proceeding is completed, file a Status Report Re: Settlement** in accordance with the requirements set forth on the last two pages of this Order.

V. TRIAL PREPARATION.

A. Final Pretrial Conference.

Unless excused for good cause, each party appearing in this action shall be represented at the final pretrial conference by the attorney who is to serve as lead trial counsel. Counsel must be prepared to discuss streamlining the trial, including presentation of testimony by deposition excerpts or summaries, time limits, stipulations as to undisputed facts, and qualification of experts by admitted resumes.

B. Pretrial Documents.

The filing schedule for pretrial documents is set forth on the last two pages of this Order. **Unless otherwise indicated, compliance with Local Rule 16 is required. The court does not exempt pro se parties from the requirements of this Order or Local Rule 16**. Carefully prepared memoranda of contentions of fact and law, witness lists, a pretrial exhibit stipulation, and a proposed pretrial conference order shall be submitted in accordance with the Local Rules and the requirements set forth in this Order. All pretrial document copies shall be delivered to the court

"binder-ready" (three-hole punched on the left side, without blue-backs, and stapled only in the top left corner). Failure to comply with these requirements may result in the imposition of sanctions as well as the pretrial conference being taken off-calendar or continued.

1. **Witness Lists**.

In addition to the requirements of Local Rule 16-5, the witness lists must include a brief description (one or two paragraphs) of the testimony and a time estimate for both direct and cross-examination (separately stated).

2. **Pretrial Exhibit Stipulation**.[2]

No later than fourteen (14) days before the deadline set forth below to file the Pretrial Exhibit Stipulation, counsel shall conduct a good faith meet and confer in person to discuss all the trial exhibits and each party's position with respect to the admissibility of each exhibit. The Pretrial Exhibit Stipulation shall contain each party's numbered list of trial exhibits, with objections, if any, to each exhibit, including the basis of the objection and the offering party's brief response. All exhibits to which there is no objection shall be deemed admitted. The parties shall stipulate to the authenticity and foundation of exhibits whenever possible, and the Pretrial Exhibit Stipulation shall identify any exhibits to which authenticity or foundation have not been stipulated and the specific reasons for the parties' failure to stipulate.

The Pretrial Exhibit Stipulation shall be substantially in the following form:

**Pretrial Exhibit Stipulation**

**Plaintiff(s)'/Defendant(s)' Exhibits**

| **Exhibit No.** | **Description** | **Stip. to Adm.?**[3] | **Objection** | **Response to Objection** |
|---|---|---|---|---|

Failure to comply with this section may be deemed a waiver of all objections. Each objection must include the grounds for the objection (e.g., a Federal Rule of Evidence) and an

[2] It is not necessary to file the Joint Exhibit List required by Local Rule 16-6.1.

[3] The Pretrial Exhibit Stipulation shall indicate in this column whether an exhibit is admitted for identification purposes only.

explanation of why the disputed exhibit is not admissible. **Do not submit** blanket or boilerplate objections to the opposing party's exhibits. These will be disregarded and overruled.

3. **Proposed Pretrial Conference Order**.

The format of the proposed final pretrial conference order shall conform to the format set forth in Appendix A to the Local Rules. In drafting the proposed pretrial conference order, the parties shall attempt to agree on and set forth as many undisputed facts as possible. The court will usually read the undisputed facts to the jury at the start of trial. A carefully drafted and comprehensively stated stipulation of facts will reduce the length of trial and increase the jury's understanding of the case.

C. Joint Statement of the Case.

No later than the date set forth below, counsel shall file an objective, non-argumentative statement of the case, which the court shall read to all prospective jurors at the beginning of voir dire. The statement should not exceed one page.

D. Motions in Limine.

Each party is allowed a maximum of five motions in limine, which must filed no later than the deadline set forth below. In the event a party believes that more than five motions in limine are necessary, the party must obtain leave of court to file additional motions in limine. The court will not hear or resolve motions in limine that are disguised summary judgment motions.

Before filing any motion in limine, counsel for the parties shall confer in a good faith effort to eliminate the necessity for the filing of the motion in limine or to eliminate as many of the disputes as possible. Counsel for the moving party shall be responsible for arranging this conference. The conference shall take place in person, with a court reporter present, within seven (7) calendar days of service upon opposing counsel of a letter requesting such conference, but in no event later than fourteen (14) days before the deadline for filing motions in limine. Unless counsel agree otherwise, the conference shall take place at the office of counsel for the moving party. The moving party's letter shall: identify the testimony, exhibits, or other specific matters alleged to be admissible or inadmissible; state thoroughly with respect to each such matter the moving party's position (and provide any legal authority which the moving party believes is

dispositive); and specify the terms of the order to be sought.

If counsel are unable to resolve their differences, they shall prepare and file a separate, sequentially numbered joint motion in limine for each issue in dispute. Each joint motion in limine shall consist of one document signed by all counsel. The joint motion in limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be admissible or inadmissible, and a statement of the specific prejudice that the moving party will suffer if the motion is not granted. The identification of the matters in dispute shall be followed by each party's contentions and each party's memorandum of points and authorities. The title page of the joint motion in limine must contain a clear caption identifying the moving party and the nature of the dispute (e.g., "Plaintiff's Motion in Limine No. 1 to Exclude the Testimony of Defendant's Expert") and state the pretrial conference date, hearing date for the motion, and trial date.

Each separately-represented party shall be limited to ten (10) pages, exclusive of tables of contents and authorities. Repetition shall be avoided and, as always, brevity is preferred. Leave for additional space will be given only in extraordinary cases. The excessive use of footnotes in an attempt to avoid the page limitation shall not be tolerated. All substantive material, other than brief argument on tangential issues, shall be in the body of the brief.

The moving party must provide its portion of the joint motion in limine to the nonmoving party, via e-mail, no later than nine (9) days before the deadline set forth below for filing motions in limine. The nonmoving party shall then provide the integrated joint motion in limine, along with any exhibits, to the moving party no later than two (2) days before the filing deadline. The moving party may not make any further revisions to the joint motion in limine other than finalizing it for filing. The moving party shall be responsible for filing the joint motion in limine and preparing and filing any supporting exhibits.

The moving party may file a reply memorandum of points and authorities no later than the deadline set forth below. The reply memorandum shall not exceed five pages, unless otherwise ordered by the court.

A motion in limine made for the purpose of precluding the mention or display of inadmissible matter in the presence of the jury shall be accompanied by a declaration that includes the

following: (A) a clear identification of the specific matter alleged to be inadmissible; (B) a representation to the court that the subject of the motion in limine has been discussed with opposing counsel, and that opposing counsel has either indicated that such matter will be mentioned or displayed in the presence of the jury before it is admitted in evidence or that counsel has refused to stipulate that such matter will not be mentioned or displayed in the presence of the jury unless and until it is admitted in evidence; and (C) a statement of the specific prejudice that will be suffered by the moving party if the motion in limine is not granted.

Any challenge to expert testimony pursuant to Daubert v. Merrell Dow Pharm., 509 U.S. 579, 113 S.Ct. 2786 (1993), or Federal Rules of Evidence 702-704, must be lodged in the form of a joint motion in limine. The court generally does not hold Daubert hearings.

The mandatory chambers copy of all evidence in support of or in opposition to a motion in limine, including declarations and exhibits to declarations, shall be submitted in a separately bound volume and shall include a Table of Contents. **The transcript of the meet and confer session shall be included as an exhibit to the motion in limine**. If the supporting evidence exceeds 50 pages, then each copy of the supporting evidence shall be placed in a three-ring binder with each item of evidence separated by a tab divider on the right side, and shall include a label on the spine of the binder identifying its contents.

The court will not consider any motion in limine in the absence of a joint motion or a declaration from counsel for the moving party establishing that opposing counsel: (A) failed to confer in a timely manner; (B) failed to provide the opposing party's portion of the joint motion in a timely manner; or (C) refused to sign and return the joint motion after the opposing party's portion was added.

E. Jury Instructions and Verdict Forms.

1. No later than thirty-five (35) days before the deadline to file the required jury instructions and verdict forms, the parties shall exchange their respective proposed jury instructions and verdict forms. No later than twenty-eight (28) days before the filing deadline, each party shall serve objections to the other party's instructions and verdict forms. No later than twenty-one (21) days before the deadline to file the required jury

instructions and verdict forms, lead counsel for the parties shall meet and confer in person at an agreed-upon location within the Central District of California and attempt to come to agreement on the proposed jury instructions and verdict forms.

2. No later than the deadline set forth below, counsel shall submit both general and substantive jury instructions in the form described below. Counsel must provide the documents described below in WordPerfect (the court's preference) or Word format. The parties should use the most recent version of the Ninth Circuit's Manual of Model Civil Jury Instructions, which is available on the Ninth Circuit's website,[4] for all applicable jury instructions. If there is no applicable Ninth Circuit model jury instruction, the parties should consult the current edition of O'Malley, et al., Federal Jury Practice and Instructions. If neither the Ninth Circuit nor O'Malley provides an applicable jury instruction, the parties should consult the model jury instructions published by other Circuit Courts of Appeal. Where California law applies, counsel should use the current edition of the Judicial Council of California Civil Jury Instructions ("CACI"), which is available on the California Judicial Branch website.[5] **The parties shall not modify or supplement a model instruction's statement of applicable law** unless absolutely necessary and strongly supported by controlling case law or other persuasive authority. Each requested instruction shall: (a) cite the authority or source of the instruction; (b) be set forth in full; (c) be on a separate page; (d) be numbered; (e) cover only one subject or principle of law; and (f) not repeat principles of law contained in any other requested instruction.

The proposed jury instructions shall be submitted as follows:

a. **Joint Jury Instructions:** Counsel shall file a **joint set of jury instructions** on which the parties agree. Model jury instructions should be modified as necessary to fit the facts of the case, i.e., inserting names of defendant(s) or witness(es) to whom an instruction applies. Where language appears in brackets

[4] http://www3.ce9.uscourts.gov/jury-instructions/model-civil.

[5] http://www.courts.ca.gov/partners/317.htm/civiljuryinstructions/.

in the model instruction, counsel shall select the appropriate text and eliminate the inapplicable bracketed text. The court expects counsel to agree on the substantial majority of jury instructions, particularly when pattern or model instructions provide a statement of applicable law. If one party fails to comply with the provisions of this section, the other party must file a unilateral set of jury instructions.

b. **Disputed Jury Instructions:** Counsel shall file a separate **joint set of disputed jury instructions** propounded by one party to which another party objects. On a separate page following each disputed jury instruction, the party opposing the instruction shall briefly state the basis for the objection, any authority in support thereof and, if applicable, an alternative instruction. On the following page, the party proposing the disputed instruction shall briefly state its response to the objection, and any authority in support of the instruction. Each requested jury instruction shall be numbered and set forth in full on a separate page, citing the authority or source of the requested instruction.

3. For both the Joint Jury Instructions and Disputed Jury Instructions, counsel must provide an index of all instructions submitted, which must include the following:

a. the number of the instruction;

b. the title of the instruction;

c. the source of the instruction and any relevant case citations; and

d. the page number of the instruction.

For example:

| Number | Title | Source | Page Number |
|---|---|---|---|
| 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 8.5.1 | 1 |

F. Voir Dire.

1. The court will conduct the voir dire. Counsel may, but are not required to, file a list of proposed case-specific voir dire questions no later than the date set forth below.

2. In most cases, the court will conduct its initial voir dire of 16 prospective jurors

who will be seated in the jury box. Generally, the court will select eight jurors.

3. Each side will have three peremptory challenges. After all peremptory challenges have been exercised, the eight jurors in the lowest numbered seats will be the jury. The court will not necessarily accept a stipulation to a challenge for cause. If one or more challenges for cause are accepted, and all six peremptory challenges are exercised, the court may decide to proceed with six or seven jurors.

G. Trial Exhibits.

Exhibits must be placed in three-ring binders indexed by exhibit number with tabs or dividers on the right side. The spine portion of the binder shall indicate the volume number **and** contain an index of each exhibit included in the volume. Plaintiff shall be responsible for submitting hard copies of all trial exhibits as follows:

1. **No later than 12:00 p.m. on the day before trial**, plaintiff shall submit to the Courtroom Deputy Clerk ("CRD") one (1) three-ring binder containing all **original exhibits** to be used at trial (except those to be used for impeachment only) with official exhibit tags attached and bearing the same number shown on the exhibit list.

2. **Plaintiff shall also submit to the CRD** two (2) three-ring binders with **copies** of each exhibit, tabbed with exhibit numbers, for use by the court and the witness.

3. Exhibit tags may be obtained from the Clerk's Office, located on the fourth floor of the First Street Courthouse. Plaintiff shall use yellow tags and defendant shall use blue tags. The parties should staple the tags to the upper right-hand corner of each exhibit with the case number, case name, and exhibit number placed on each tag. Exhibits shall be numbered 1, 2, 3, etc., **not** 1.1, 1.2, 1.3, etc. The defense exhibit numbers shall not duplicate plaintiff's numbers. Counsel shall designate any "blow-up" enlargement of an existing exhibit with the number of the original exhibit followed by an "A."

4. Admitted exhibits will be given to the jury during deliberations. Counsel shall review all admitted exhibits with the CRD before the jury retires to begin deliberations.

5. Where a significant number of exhibits will be admitted, the court encourages counsel, preferably by agreement, to consider ways in which testimony about exhibits may

be made intelligible to the jury while it is presented. For example, counsel should consider using courtroom technology or other devices, such as jury notebooks for admitted exhibits. Information concerning the availability, training, and use of courtroom technology is available on the Central District's website. The court does not permit exhibits to be "published" by passing them up and down the jury box. Exhibits may be displayed briefly using the screens in the courtroom, unless the process becomes too time-consuming.

VI. JURY TRIAL.

A. Generally.

On the first day of trial, **counsel must appear at 8:45 a.m.** to discuss preliminary matters with the court. The jury panel will be called when the court is satisfied that the matter is ready for trial. Jury selection usually takes only a few hours. Counsel should be prepared to proceed with opening statements and witness examination immediately after jury selection.

B. Advance Notice of Unusual or Difficult Issues.

If any counsel have reason to anticipate that a difficult question of law or evidence will necessitate legal argument requiring research or briefing, counsel must give the court advance notice. Counsel are directed to notify the CRD at the day's adjournment if an unexpected legal issue arises that could not have been foreseen and addressed by a motion in limine. See Fed. R. Evid. 103. Counsel must also advise the CRD at the end of each trial day of any issues that must be addressed outside the presence of the jury, so that there is no interruption of the trial. **The court will not keep jurors waiting**.

C. Opening Statements, Examining Witnesses and Summation.

1. Counsel must use the lectern at all times.

2. Counsel shall not discuss the law or argue the case in opening statements.

3. Counsel must not consume time by writing out words, drawing charts or diagrams, etc. Counsel must prepare such materials in advance.

4. The court will honor (and may establish) reasonable time estimates for opening and closing arguments, examination of witnesses, etc.

D. Objections to Questions.

1. Counsel must not use objections to make a speech, recapitulate testimony, or attempt to guide the witness.

2. When objecting, counsel must rise to state the objection and state only that counsel objects and the legal ground of objection. If counsel wishes to argue an objection further, counsel must ask for permission to do so.

E. General Decorum.

1. Counsel should not approach the CRD or the witness box, or enter the well of the court, without specific permission and must return to the lectern when the purpose for approaching has been accomplished.

2. Counsel should rise when addressing the court and when the court or the jury enters or leaves the courtroom, unless directed otherwise.

3. Counsel should address all remarks to the court. Counsel are not to address the CRD, the court reporter, persons in the audience, or opposing counsel. If counsel wish to speak with opposing counsel, counsel must ask permission to do so. Any request for the re-reading of questions or answers or to have an exhibit placed in front of a witness shall be addressed to the court.

4. Counsel should not address or refer to witnesses or parties by first names alone, with the exception of witnesses under 14 years of age.

5. Counsel must not offer a stipulation unless counsel have conferred with opposing counsel and have verified that the stipulation will be acceptable.

6. While court is in session, counsel must not leave the counsel table to confer with any person in the back of the courtroom unless permission has been granted in advance.

7. Counsel shall not make facial expressions; nod or shake their heads; comment; or otherwise exhibit in any way any agreement, disagreement, or other opinion or belief concerning the testimony of a witness. Counsel shall admonish their clients and witnesses not to engage in such conduct.

8. Counsel should not talk to jurors at all, and should not talk to co-counsel, opposing counsel, witnesses, or clients where the conversation can be overheard by jurors. Each counsel should admonish counsel's own clients and witnesses to avoid such conduct.

9. Where a party has more than one lawyer, only one may conduct the direct or cross-examination of a particular witness, or make objections as to that witness.

10. Water is permitted in the courtroom. Food is not permitted in the courtroom.

F. <u>Promptness of Counsel and Witnesses</u>.

1. Promptness is expected from counsel and witnesses. Once counsel are engaged in trial, this trial is counsel's first priority. The court will not delay the trial or inconvenience jurors.

2. If a witness was on the stand at a recess or adjournment, counsel who called the witness shall ensure the witness is back on the stand and ready to proceed when trial resumes.

3. Counsel must notify the CRD in advance if any witness needs to be accommodated based on a disability or for other reasons.

4. No presenting party may be without a witness. If a party's remaining witnesses are not immediately available and there is more than a brief delay, the court may deem that party to have rested.

5. The court attempts to cooperate with professional witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be called out of sequence. Counsel must anticipate any such possibility and discuss it with opposing counsel. If there is an objection, counsel must confer with the court in advance.

G. <u>Exhibits</u>.

1. Each counsel should keep counsel's own list of exhibits and should note when each exhibit has been admitted into evidence (if not already admitted pursuant to the pretrial exhibit stipulation).

2. Each counsel is responsible for any exhibits that counsel secures from the CRD and must return them before leaving the courtroom at the end of the session.

3. An exhibit not previously marked should, at the time of its first mention, be accompanied by a request that it be marked for identification. Counsel must show a new exhibit to opposing counsel before the court session in which it is mentioned.

4. Counsel are to advise the CRD of any agreements with respect to the proposed exhibits and as to those exhibits that may be received without further motion.

5. When referring to an exhibit, counsel should refer to its exhibit number. Witnesses should be asked to do the same.

6. Counsel must neither ask witnesses to draw charts or diagrams nor ask the court's permission for a witness to do so. Any graphic aids must be fully prepared before the court session starts.

H. Depositions.

1. The parties shall submit to the CRD all depositions that they intend to use as substantive evidence at trial (i.e., not merely for impeachment purposes) no later than **12:00 p.m. on the day before trial**, with all objections noted in the margins. Counsel should verify with the CRD that the relevant deposition is in the CRD's possession.

2. In using depositions of an adverse party for impeachment, either one of the following procedures may be adopted:

a. If counsel wishes to read the questions and answers as alleged impeachment and ask the witness no further questions on that subject, counsel shall first state the page and line where the reading begins and the page and line where the reading ends, and allow time for any objection. Counsel may then read the portions of the deposition into the record.

b. If counsel wishes to ask the witness further questions on the subject matter, the deposition shall be placed in front of the witness and the witness shall be told to read the relevant pages and lines silently. Then counsel may: (a) ask the witness further questions on the matter and thereafter read the quotations; or (b) read the quotations and thereafter ask further questions. Counsel should have an extra copy of the deposition for this purpose.

3. Where a witness is absent and the witness's testimony is offered by deposition, counsel may: (a) have a reader occupy the witness chair and read the testimony of the witness while the examining lawyer asks the questions; or (b) have counsel read both the questions and answers.

I. <u>Interrogatories and Requests for Admissions</u>.

Whenever counsel expects to offer a group of answers to interrogatories or requests for admissions extracted from one or more lengthy documents, counsel must prepare a new document listing each question and answer and identifying the document from which it has been extracted. Copies of this new document should be given to the court and opposing counsel.

VII. COMPLIANCE WITH THIS ORDER, THE LOCAL RULES, AND THE FEDERAL RULES OF CIVIL PROCEDURE.

All parties and their counsel are ordered to become familiar with the Federal Rules of Civil Procedure, the Local Rules of the Central District of California, and the court's standing orders. The failure of any party or attorney to comply with the requirements of this Order, the Local Rules, or the Federal Rules of Civil Procedure may result in sanctions being imposed.

/ / /

/ / /

/ / /

Delaney Sharpe, et al. v. GT's Living Foods, LLC
Case No. CV 19-10920 FMO (GJSx)

CASE DEADLINES

The court hereby enters the following scheduling order:

1. Any stipulation or motion to amend as to any claims, defenses and/or parties shall be lodged/filed no later than **May 20, 2020**, failing which it shall be deemed that party's waiver of any such amendments in this action. All "Doe" defendants are to be identified and named on or before **May 20, 2020**, on which date all remaining "Doe" defendants will be dismissed, unless otherwise ordered by the court upon a showing of good cause.

2. All fact discovery shall be completed no later than **September 21, 2020**. The court does not bifurcate discovery.

3. All expert discovery shall be completed by **December 7, 2020**. The parties must serve their Initial Expert Witness Disclosures no later than **October 5, 2020**. Rebuttal Expert Witness Disclosures shall be served no later than **November 5, 2020**. The parties should commence expert discovery shortly after the initial designation of experts, because Local Rules 7-3 and 37-1 require ample time to meet and confer as well as brief the matters, and because the final pretrial conference and trial dates will not be continued merely because expert discovery is still underway.

4. The parties shall complete their settlement conference before a private mediator no later than **September 21, 2020**. Plaintiffs' counsel shall contact the mediator with enough time so that the settlement conference date is early enough to comply with the settlement completion deadline imposed by this court. After obtaining available dates from the mediator, counsel for the parties shall confer and select one of the proposed dates. Plaintiffs' counsel shall then advise the mediator of the settlement conference date selected by parties. If the case settles, counsel shall file a Notice of Settlement no later than 24 hours after the case is settled, stating when they expect to file their dismissal papers. Otherwise, **the parties must, no later than 48 hours after the settlement conference is completed, file a Status Report Re: Settlement**. The Status Report shall not disclose the parties' settlement positions, i.e., the terms of any offers or demands. The Status Report shall describe the efforts made by the parties to resolve the dispute informally, i.e.,

the occasions and dates when the parties participated in mediation or settlement conferences. The Status Report shall also include the name of the mediator who assisted the parties with their settlement conference.

5. Any motion for class certification shall be filed no later than **January 7, 2021**, and noticed for hearing regularly under the Local Rules. Any untimely or non-conforming motion will be denied. *The motion for class certification shall comply with the requirements set forth in the Court's Order Re: Motions for Class Certification issued contemporaneously with the filing of this Order.*

6. Any motion for summary judgment or other potentially dispositive motion shall be filed no later than **February 8, 2021**, and noticed for hearing regularly under the Local Rules. Any untimely or non-conforming motion will be denied. *All potentially dispositive motions shall comply with the requirements set forth in the Court's Order Re: Summary Judgment Motions issued contemporaneously with the filing of this Order.* Each party is allowed one potentially dispositive motion.

7. The court will set dates and deadlines for trial, a pretrial conference, and the parties' pretrial filings after the resolution of any dispositive motions and the motion for class certification.

Dated this 20th day of March, 2020.

/s/
Fernando M. Olguin
United States District Judge

# EXHIBIT 5

Jacob M. Harper (SBN 259463)
*jacobharper@dwt.com*
Heather F. Canner (SBN 292837)
*heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
*josepheliemeyers@dwt.com*
Peter K. Bae (SBN 329158)
*peterbae@dwt.com*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

GT'S LIVING FOODS, LLC,

Defendant.

Case No. 2:19-cv-10920-FMO-GJS

Assigned to the Hon. Fernando M. Olguín

**ORDER GRANTING STIPULATED REQUEST [184] TO FURTHER AMEND DISCOVERY DEADLINE**

Complaint Filed: December 27, 2019
SAC Filed: December 17, 2024
Trial Date: Not Set



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**ORDER**

Having considered the Stipulated Request to Further Amend Discovery Deadline, and for good cause shown, the Court ORDERS that its prior scheduling order (Dkt. 183) shall be modified as follows:

1. Any remaining discovery (related solely to the newly added named plaintiffs) shall be completed by **March 5, 2026**.
2. Depositions of the newly added named plaintiffs shall take at the following places, dates, and times:

| | |
|---|---|
| **Christopher Nunez:** | January 8, 2026, at 10:00 a.m.Pacific<br>Los Angeles office of Davis Wright Tremaine, LLP<br>350 South Grand Avenue, 27th Floor<br>Los Angeles, CA 90071 |
| **Lauren Schmidt:** | January 14, 2026, at 10:00 a.m. Eastern<br>New York City office of Davis Wright Tremaine, LLP<br>1251 Avenue of the Americas, 21st Floor<br>New York, NY 10020-1104 |
| **Amit Patel:** | January 16, 2026, at 10:00 a.m. Pacific<br>Los Angeles office of Davis Wright Tremaine, LLP<br>350 South Grand Avenue, 27th Floor<br>Los Angeles, CA 90071 |

**IT IS SO ORDERED.**

Dated: December 23, 2025

/s/
THE HON. FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE



DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 6

Davis Wright Tremaine LLP

350 South Grand Ave, 27th Floor
Los Angeles, CA 90071

**Jacob M. Harper**
(213) 633-6863 tel
(213) 688-6899 fax

jharper@dwt.com

January 23, 2026

***Via Email & U.S. Mail***

Simon Franzini
Martin Brenner
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
(310) 656-7066
simon@dovel.com
martin@dovel.com

**Re: *Patel v. GT's Living Foods, LLC.*, No. 2:19-cv-10920-FMO-DSR (C.D. Cal.)— Local Rule 37-1 Meet and Confer Letter re: Plaintiffs' Failure to Produce Documents**

Counsel,

We write to meet and confer regarding plaintiffs Chrisopher Nunez, Lauren Schmidt, and Amit Patel (Plaintiffs) and various discovery failures that become apparent during their depositions of January 8, 14, and 16, 2026. Plaintiffs deposition testimony revealed that each of Nunez, Schmidt, and Patel conducted inadequate searches for responsive materials and failed to produce other documents responsive to GT's Living Foods's requests for production. In addition, Plaintiffs testified that they may have destroyed relevant records since being added as plaintiffs in this litigation.

We are hopeful this matter may resolve without court intervention by prompt supplementation of your discovery responses. **As such, pursuant to Local Rule 37-1, GT's requests a conference of counsel within ten days of this letter, i.e., no later than February 2, 2026.** Please be prepared by that time to describe your efforts to conduct adequate records searches; to produce responsive documents identified at deposition; and to provide further information about Plaintiffs' destruction of records possibly relevant to this case and responsive to GT's requests for production. As set forth below, GT's will otherwise proceed with motions to compel further productions of documents. GT's also will not hessite to seek evidentiary and/or monetary sanctions under Federal Rule of Civil Procedure (Rule) 37 and Local Rule 37-4, particularly in light of potential spoliation issues raised by Plaintiffs' document destruction.

* * *

As described below, Plaintiffs have conducted inadequate and cursory searches and/or failed to produce responsive documents likely in their possession in response to multiple requests for production:

- **RFPs 1–3 and 40 (all Plaintiffs)** seek documents and communications related to Plaintiffs' purchases of GT's kombucha, including receipts, bank statements, locations, and purchase history from online or brick-and-mortar stores during both the putative class period (February 28, 2017, to the present) and the *Retta* class period (March 11, 2011, to February 26, 2017). These requests go to product identification, damages, and standing. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (actual purchase and exposure to advertising relevant to e.g., standing, reliance).

  Yet deposition testimony of Plaintiffs Nunez, Schmidt and Patel makes clear that each conducted only cursory and inadequate searches for documents related to prior purchases of the products at issues, which is further evidenced by Plaintiff Schmidt and Patel's failure to produce *any* documents reflecting such purchases. As one of several examples, Plaintiff Patel testified that he *only* searched for the phrases "GT's" and "Kombucha" in email and text messages. Patel Depo. Tr. 78:5–14; 82:23–84:3; 85:1–11. He did not search any product names (i.e., Enlightened or Synergy) or flavor names. And his testimony suggests that he did not, in fact, conduct a comprehensive search even using these limited and inadequate search terms: despite searching for "GT's," Patel testified that his search did not reveal even a retainer agreement containing precisely that term, because his searches only reached the *titles* of documents, not their contents. Patel Depo. Tr. 92:2-93:2. Similarly, while Nunez claims to have searched for the terms "GT's" and "kombucha," he did not disclose any retainer agreements that would have included those terms. Nunez Depo. Tr. 115:1-25. Nor did any Plaintiff produce a version of any of the Joint Prosecution Agreement and the Agreement Concerning *Sharpe* Litigation with their signatures, despite signature pages indicating they would do so.

  It also appears that Plaintiffs Patel and Schmidt may have intentionally destroyed relevant records responsive to this and possibly other requests. Plaintiff Patel testified that he "generally" deletes purchased more than "six months to a year old," despite his obligation to retain relevant documents during the pendency of this litigation. Patel Depo. Tr. 79:1–4; 75:25–80:3. Plaintiff Schmidt testified that she "just did, like, the Marie Kondo at my house" in explaining why she was unable to locate any physical receipts or indeed any record whatsoever of a prior purchase of GT's kombucha. Schmidt Depo. Tr. 85:9-86:2. Nunez (along with Schmidt and Patel) testified their searches were so inadequate all three likely deleted or allowed for deletion of

relevant documents. Mr. Patel and Ms. Schmidt were required to retain these records, regardless of whether they sparked joy, and spoliation by a putative class representative is sanctioned by monetary and evidentiary sanctions. *See Doyle v. Chrysler Grp. LLC*, 2014 WL 7690155, at *3 (C.D. Cal. Oct. 9, 2014) (and finding named plaintiff who engaged in spoliation to be inadequate class representative).

Taken together, Plaintiffs cursory searches and possible document destruction raise serious questions about the adequacy of your productions – which again, did not result in a single document suggesting that either Mr. Patel or Ms. Schmidt have every purchased GT's products.

- **RFP 29 (all Plaintiffs)** seeks documents related to Plaintiffs' purchases of any alcoholic beverages during the relevant time period. These documents are relevant to adequacy and damages. Yet while each Plaintiff testified to regularly purchasing alcoholic beverages during the relevant period, none of them provided any documents responsive to this request, despite your agreement to produce them after a reasonably diligent search. It is not plausible that none of your plaintiffs have no documents related to the purchase of alcoholic beverages during the relevant time period.

- **RFPs 19–21 (all Plaintiffs)** seek documents related to the terms by which Plaintiffs retained counsel in this action, including Plaintiffs' retainer agreements; and documents related to conflicts of interest, assurances or expectations of monetary recovery, and prior participation in class actions or other legal proceedings. These documents are relevant to bias and adequacy. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 969 (9th Cir. 2009) (incentive agreements and fee arrangements may create conflicts of interest); *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (same, incentive awards).

  Despite this, Plaintiffs have not produced any retainer agreement or other agreements describing assurances to Plaintiffs about assurances or expectations of monetary recovery or other compensation, including incentive awards. *See Gallegos v. Atria Mgmt. Co., LLC*, 2017 WL 11743704, at *4 (C.D. Cal. Jan. 12, 2017) (Retainer and fee agreement is relevant, discoverable, and not protected by attorney-client privilege in consumer class actions) ; *Sapan v. Diamond Resorts Holdings, LLC*, No. 82300147DOCADSX, 2023 WL 8229984, at *6 (C.D. Cal. Oct. 6, 2023) (same). It is not plausible that Plaintiffs have not signed retainer agreements, and Plaintiff Patel testified that he believed that a retainer agreement exists that has not been produced. Patel Depo. Tr. 91:2–18; 98:8–18; 99:11–100:1.

- **RFP 22 (all Plaintiffs)** seeks documents related to any fee sharing agreements between current and former counsel for Plaintiffs in this action, as well as any agreements regarding the advancement of and/or responsibility for fees, expense, and costs. While you have produced copies of the Joint Prosecution Agreement (Plaintiff42–46) and the Agreement Concerning *Sharpe* Litigation (Plaintiff47–50), you have not produced any such documents signed by any of the named Plaintiffs. These documents—and whether Plaintiffs executed them— are directly relevant to potential bias, conflicts of interest, and adequacy, particularly in light of the Court's prior order holding prior class counsel inadequate based on representations made in the *Retta* litigation. *See* Dkt. 129; *Gallegos*, 2017 WL 11743704, at *4.

- **RFPs 47–48 (all Plaintiffs)** seek documents related to Plaintiffs' claims that they could not have purchased the products had they not known about the alleged elevated alcohol and sugar contents of the products. The evidence is directly relevant to materiality, adequacy, and damages. Yet Plaintiff Patel testified that he did not even search his Google search history for evidence of prior searches related to information in this case, which is directly relevant to knowledge of purported elevated alcohol and sugar content in GT's products. Patel Depo. Tr. 122:4-12. And no plaintiff has produced any record of prior search history or internet browsing history related to kombucha.

- **RFP 49 (Schmidt)** seeks documents related to Plaintiff Schmidt's allegation that she "was sober (she did not knowingly consume alcohol) in 2021." These documents are relevant to adequacy, damages, and credibility, and you agreed to produce them after a reasonably diligent search. Yet during her deposition. Ms. Schmidt testified that she had only "Vaguely, briefly" searched her social media accounts for records of her purported decision to avoid drinking alcohol, and admitted that while it was "possible" she had exchanged text messages about this topic, she had not conducted a search of her text messages or emails for such communications. Schmidt Depo. Tr. 129:5-130:16.

In sum, GT's requests seek information directly relevant to Plaintiffs' claims and GT's defenses in this action and, at a minimum, are reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs have responded with cursory document searches, scant productions, and potential destruction of evidence.

Plaintiffs' objections do not relieve them of their obligation to produce all responsive, non-privileged documents, as Plaintiffs recognized by agreeing to conduct reasonably diligent searches in response to each and every one of the above requests. *See, e.g.*, *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 313 (C.D. Cal. 2020) (imposing monetary sanctions on plaintiff for failing to produce documents and finding her boilerplate objections insufficient); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate,

generalized objections are inadequate and tantamount to not making any objection at all.") (collecting cases). And absent further explanation, Plaintiffs potential destruction of relevant evidence may expose them to evidentiary and/or monetary sanction. *Doyle*, 2014 WL 7690155, at *3.

* * *

Plaintiffs are required to conduct reasonable searches and produce all responsive, non-privileged documents in response to GT's request for production. Plaintiffs' depositions testimony revealed that they had conducted only cursory, inadequate searches and failed to produce relevant, responsive documents as required. We look forward to receiving at least three dates for Plaintiffs' depositions at our Local Rule 37-1 conference of counsel. GT's reserves all rights and waives none.

Davis Wright Tremaine LLP

Jacob M. Harper

Enclosure

cc: Gabriel Zachiah Doble
Richard E. Lyon, III
Heather F. Canner
Joseph Elie-Meyers
Peter K. Bae

# EXHIBIT 7

DOVEL & LUNER LLP

201 Santa Monica Blvd.,
Suite 600
Santa Monica,
California 90401
TEL 310.656.7066

February 2, 2026

Jacob Harper
Heather Canner
Joseph Elie-Meyers
Peter Bae
Felix Murphet
JHarper@dwt.com
HeatherCanner@dwt.com
JosephElieMeyers@dwt.com
PeterBae@dwt.com
FelixMurphet@dwt.com

**Re: Plaintiffs' Response to GT's Living Foods, LLC's January 23, 2026 Letter**
***Patel v. GT's Living Foods, LLC*, Case No. 2:19-cv-10920-FMO-DSR (C.D. Cal.)**

Dear Counsel,

I write in response to your January 23, 2026 letter.

**Most of the issues you raise in your letter are untimely.**

Most of the complaints in your letter could and should have been identified and raised at least a month earlier.

- You complain that Plaintiffs did not produce documents responsive to RFPs 20 and 21. But Plaintiffs stated in their written responses and objections from December 15 that "[a]fter a reasonably diligent search, there are no non-privileged documents responsive to" these requests. So any dispute about Plaintiffs' responses or production could and should have been raised a month-and-a-half ago.

- You complain that Plaintiffs did not produce their retention agreements with Dovel & Luner in response to RFP 22, and that they did not produce related documents such as signed versions of the superseded Joint Prosecution Agreement or the Agreement Concerning *Sharpe* Litigation with their signatures. But Plaintiffs explained in their December 15 written responses and objections that these documents are "protected by the

attorney-client privilege" and would not be produced. So any dispute about Plaintiffs' responses or productions could and should have been raised a month-and-a-half ago.

- You complain that that Ms. Schmidt did not produce documents from "her social media accounts for records of her purported decision to avoid drinking alcohol" or "text messages about this topic" in response to RFP 49. But RFP 49 does not request every text message or social media post Ms. Schmidt has ever made about her sobriety. And as Ms. Schmidt stated in her December 15 responses and objections, RFP 49 is incomprehensible and so lacking in particularity that she did not understand what documents were requested. Accordingly, and in line with her obligations under the Federal Rules, Plaintiff did her best to parse the request and agreed to produce "non-privileged documents and communications concerning [her] decision to consume Defendant's Enlightened Kombucha PRODUCTS as an alternative to alcoholic beverages in light of her sobriety during the period Plaintiff purchased Defendant's kombucha PRODUCTS." If you believed this to be an improper understanding of the (incomprehensible) request, or that Ms. Schmidt was obligated to search for and produce more than she agreed to, you could and should have raised this a month-and-a-half ago.

Under Judge Olguin's standing order, discovery disputes are to be raised at least 7 weeks before the close of discovery, which you failed to do. Dkt. 24. Moreover, these disputes could have been raised in advance of Plaintiffs' depositions, so that the Parties could meet and confer and attempt to resolve them in advance. Instead, you sat on these ripe disputes for weeks—until after Plaintiffs sat for their depositions—to manufacture urgency, maintain your threat that you will waste Plaintiffs' time by making them sit for a second day of depositions, and distract Plaintiffs and their counsel from preparing class certifications papers due in just a few weeks.

Worse, when requesting a further extension of the fact discovery deadline, you represented both to us and the Court that the additional time was needed to "preserve the Parties' ability to file any necessary motions arising from" the Plaintiffs' depositions—not to belatedly raise discovery disputes that had been ripe for weeks and could have been raised in December. Dkt. 184 at p. 2. We relied on these representations in agreeing to stipulate to the requested extension; and the Court presumably relied on them in granting the stipulation.

In short, most of the disputes you raise in your letter should have been raised in December. They are untimely now, and you are estopped from raising them at this late juncture, during an extended discovery window you obtained by representing that your discovery efforts would be limited to deposition follow-up.

**<u>You repeatedly misstate Plaintiffs' document productions and search efforts.</u>**

While you lodge numerous complaints about Plaintiffs' search for documents, it seems from your letter that you have failed to review the documents that they have produced. You claim that "none of [the Plaintiffs] provided any documents" showing their purchases of alcohol during the relevant time period. This is not true; Ms. Schmidt and Mr. Nunez both produced receipts reflecting alcohol purchases. You claim that "no plaintiff has produced any record of prior search history or internet browsing history related to kombucha." Again not true; Mr. Nunez produced his search history.

You also misrepresent Mr. Patel's deposition testimony. Mr. Patel did not testify that he "*only* searched for the phrases 'GT's' and 'Kombucha' in email and text messages." He testified that he searched his Amazon records for his purchases from Whole Foods (which is where he purchased GT's kombucha from). Patel Dep. Tr. 79:14-18. He testified that he searched his social media. *Id.* 79:20-24; 83:16-19. He testified he searched for physical receipts. *Id.* 84:4-5. He testified that he searched websites of other retailers that track purchases, including Target and Walmart. *Id.* 84:5-8. He testified he reviewed the photos on his phone. *Id.* 84:14. He testified that he went through *every email* in at least one of his email accounts. *Id.* 85:9-13. Mr. Patel performed a diligent search far exceeding what is required.

**Plaintiffs did not destroy records.**

Your suggestion that any Plaintiff has spoliated evidence has no support and is wrong. To begin, as Plaintiffs would have testified if you had asked them, they have each specifically been preserving any records relevant to this litigation—including specifically records of kombucha purchases—since they first retained my law firm to represent them in connection with this dispute. So none of the records you speculate might have been destroyed could have possibly been destroyed after Plaintiffs became aware of the litigation.

Moroever, you again misrepresent Plaintiffs' testimony. Ms. Schmidt did not testify that she "intentionally destroyed relevant records." When you asked whether she searched for paper records, she explained that she "went through all of [her] documents, attic, office, everywhere, junk drawers" Schmidt Dep. Tr. 84:11-15. You misconstrue her reference to Marie Kondo, which she mentioned to illustrate that she recently did a very thorough search for paper documents for the very purpose of identifying records relevant to this case. Moreover, you were free to examine Ms. Schmidt on this topic at her deposition. But you never asked her whether she destroyed, deleted, or threw away any records relevant to this case. If you had, she would have testified that she didn't.

The same is true for Mr. Patel. He never testified that he deleted or destroyed relevant records, and he did not. Moreover, like with Ms. Schmidt, you were free to examine Mr. Patel on this topic at his deposition. But again, you failed to do so. And while he testified that he "generally" deletes old email receipts, you never asked him if he deleted any kombucha or alcohol receipt from the relevant time period.

Finally, you claim with no cite or explanation or support for your accusation that "Mr. Nunez (along with Schmidt and Patel) testified their searches were so inadequate all three likely deleted or allowed for deletion of relevant documents." Not only does this sentence make no sense, it is also baseless. Again, you were free to examine Mr. Nunez on his document retention, but chose not to.

In short, there is no good faith basis for your contention that Plaintiffs destroyed records, or your threat to seek sanctions as a result.

**RFPs 1-3, 40**

You complain about Plaintiffs' document collection efforts for requests relating to their purchases of GT's kombucha. As explained above, you seriously misstate the scope and extend

of Plaintiffs' searches, which were extensive and far more than required under the Federal Rules.[1] To support your complaint, you point out that Plaintiffs did not produce their retainer agreements and therefore could not have performed an adequate search. But Plaintiffs stated in their written responses and objections that they would not be producing their privileged retainer agreements. The agreements' exclusion from Plaintiffs' document production is consistent with what they agreed to produce and does not support your claim that Plaintiffs' searches were inadequate.

In any event, as a compromise and to avoid a dispute, Plaintiffs will perform the additional searches you request in your letter related to Plaintiffs' purchases of kombucha ("Enlightened," "Synergy," and flavors), and will produce responsive documents consistent with their responses and objections, if any.

**<u>RFP 29</u>**

You complain that Plaintiffs searches for records showing alcohol purchases were inadequate, and claim that none of the Plaintiffs have produced records showing their alcohol purchases during the relevant time period. First, you are wrong. Both Ms. Schmidt and Mr. Nunez produced documents showing alcohol purchases. And all three Plaintiffs performed extensive searches of their records and produced what could be found through a reasonably diligent search. Second, you did not even ask any of the Plaintiffs the steps they took to search for records of their alcohol purchases, so your complaints about their search efforts are entirely baseless. And it is entirely consistent for Plaintiffs to have few or no records of alcohol purchases; as Plaintiffs have repeatedly explained, they each rarely drink alcohol.

As a compromise and to avoid a dispute, Plaintiffs will double check their records for receipts showing alcohol purchases during the time period they were drinking GT's kombucha and will produce responsive documents consistent with their responses and objections, if any.

**<u>RFPs 19-21 and 22.</u>**

As mentioned above, your complaints over Plaintiffs not producing retainer agreements and related communications are untimely and should have been raised over a month ago. In Plaintiffs' discovery responses and objections, they clearly stated that Plaintiffs would not be producing such documents. These retainer agreements are privileged under California law and, therefore, not discoverable. *See* Cal. Bus. & Prof. Code § 6149; *Jensen v. BMW of N. Am., LLC*, 2019 U.S. Dist. LEXIS 122676, at *5-6 (S.D. Cal. July 23, 2019) (retainer agreement privileged under California law) ("[I]n a diversity case, a claim of privilege for evidence relevant to a state law claim is governed by state law."). They also are not discoverable because they are irrelevant. *See Flodin v. Cent. Garden & Pet Co.*, 2024 U.S. Dist. LEXIS 146799, at *2 (N.D. Cal. Aug. 16, 2024) (collecting authority). Moreover, when asked, Plaintiffs testified that they were not promised any incentive for serving as named Plaintiffs. *See* Nunez Depo. Tr. 87:11-15 ("Q. Were

[1] You go on at length about how Plaintiffs' searches did not turn up their retainer agreements for this case. Again, Plaintiffs said in their written responses and objections that they would not be producing their privileged retainer agreements. Plaintiffs also did not produce other communications with their lawyers—which include the retainer agreements—because those communications are privileged.

you promised anything when you decided to join the class action against GT's Living Foods? A. No … No. No promises were made."); Schmidt Depo. Tr. 73:5-12 (testifying she had no expectation of fees or awards other than the relief the class would receive).

Plaintiffs agreed to produce all agreements between Dovel & Luner and prior counsel regarding this case, and have done so. These documents are all you need to assess whether Dovel & Luner is somehow inadequate as a result of some relationship with prior counsel. And those agreements show that there is no such relationship.

**<u>RFPs 47-48</u>**

Plaintiffs explained in their written discovery responses and objections that they do not understand what documents you were requesting in RFP 48. You now claim that RFPs 47 and 48 call for Plaintiffs to search for and produce their internet search history "for evidence of prior searches related to information in this case." This is not a plausible reading of either request, and such an expansive search of internet history is unduly burdensome, not proportional, and is overbroad in that it seeks private information that is not relevant to the case. Still, Plaintiffs did search their web browsing history for searches related to kombucha. Mr. Nunez was the only Plaintiff with responsive material, and he produced that document over a month ago.

**<u>RFP 49 (Schmidt)</u>**

As with RFP 48, and as explained above, Ms. Schmidt stated in her discovery responses that she did not understand what Plaintiffs were requesting in RFP 48, which is incomprehensible. In your discovery letter you, for the first time, claim that RFP 48 required Ms. Schmidt to search her social media and all text messages for any material potentially suggesting she was sober. The request does not call for those materials, and you were free to cross examine Ms. Schmidt on her sobriety at her deposition. Your eleventh-hour revision of your own document request is untimely and is no basis to cast aspersions on Ms. Schmidt's document search efforts.

Sincerely,

Martin Brenner
Dovel & Luner
Counsel for Plaintiffs
martin@dovel.com
(310) 656-7066

# EXHIBIT 8

Redacted Version of Document Proposed to be Filed Under Seal

# EXHIBIT 9

Redacted Version of
Document Proposed to be
Filed Under Seal

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On February 12, 2026, I served the foregoing document(s) described as: **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL] DECLARATION OF JOSEPH-ELIE MEYERS IN SUPPORT OF JOINT STIPULATION PURSUANT TO LOCAL RULE 37 FOR DEFENDANT'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO REQUESTS FOR PRODUCTION** by placing a true copy of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

Simon Carlo Franzini
Gabriel Zachiah Doble
Richard E Lyon, III
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
Email: simon@dovel.com
Email: gabe@dovel.com
Email: rick@dovel.com

__X__ (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **linapearmain@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on February 12, 2026, at Los Angeles, California.

☐ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

[signature]
Lina Pearmain



**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899