Jacob M. Harper (SBN 259463)
*jacobharper@dwt.com*
Heather F. Canner (SBN 292837)
*heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
*josepheliemeyers@dwt.com*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

GT'S LIVING FOODS, LLC,

Defendant.

Case No. 2:19-cv-10920-FMO-DSRx

Assigned to the Hon. Fernando M. Olguín
Magistrate Judge Daniel S. Roberts

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37 FOR DEFENDANT'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO REQUESTS FOR PRODUCTION**

Date: March 10, 2025
Time: 10:00 a.m.

SAC Filed: December 17, 2024
Discovery Cutoff: March 5, 2026

**DISCOVERY MATTER**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTORY STATEMENTS ........ 1

A. GT's Introductory Statement ........ 1

1. Background ........ 2

2. Plaintiffs Refuse to Provide Responsive Documents ........ 3

B. Plaintiffs' Introductory Statement ........ 4

C. Legal Standard ........ 6

II. DISCOVERY REQUESTS IN DISPUTE ........ 6

A. GT'S REQUEST FOR PRODUCTION NO. 21: ........ 6

1. GT'S REASONS FOR COMPELLING PLAINTIFFS' FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 21: ........ 8

2. PLAINTIFFS' RESPONSE TO GT'S REASONS FOR COMPELLING A FURTHER RESPONSE: ........ 12

B. GT's REQUEST FOR PRODUTION NO. 22: ........ 30

1. GT'S REASONS FOR COMPELLING PLAINTIFFS' FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 21: ........ 33

2. PLAINTIFFS' RESPONSE TO GT'S REASONS FOR COMPELLING A FURTHER RESPONSE: ........ 36




DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Defendant GT's Living Foods, LLC ("GT's") and Plaintiffs Amit Patel, Christopher Nunez, and Lauren Schmidt (together, "Plaintiffs") submit the following Joint Stipulation Pursuant to Local Rule 37 for Defendant's Motion to Compel Plaintiffs' Further Responses to Requests for Production.

## I. INTRODUCTORY STATEMENTS

### A. GT's Introductory Statement

The District Court already denied Plaintiffs' first attempt at class certification because former plaintiffs and class counsel had made prior, inconsistent representations in a nearly identical lawsuit against GT's, raising critical adequacy problems, among other issues. Dkt. 129. As a result, class plaintiffs and counsel have now been replaced by entirely new counsel and new plaintiffs. Dkt. 129, 178. Now in their second attempt at class certification, class plaintiffs and counsel face the same issues that led to the withdraw of former counsel and the dismissal of former plaintiffs may infect new plaintiffs and counsel.

The conflict problems now arise from a discrete discovery dispute over two narrow but critical classes of documents. First, unsigned joint prosecution agreements show a sliding scale profit and fee recovery agreement between current and former counsel, and Plaintiffs were unable to conclusively testify whether they had even signed such agreement. Second, Plaintiffs refused to produce retainer or incentive agreements with current counsel, which are directly relevant to potential conflicts of interest with unnamed class members that would preclude adequacy.

GT's now moves to compel the production of documents needed to shed light on critically important questions of adequacy and potential conflict: Plaintiffs' retainer agreements with counsel and the *executed* agreements (if they exist) between current- and former counsel governing the joint prosecution of this action and fee sharing and recovery. Former counsel's fee sharing with current counsel, former counsel's continued involvement in this litigation, and whether it infects current class counsel, is relevant to adequacy and potential conflicts of interest—



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

which Plaintiffs have not timely disputed. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) (sliding scale incentive agreements "put class counsel and the contracting class representatives into a conflict position from day one," and should be disclosed at the class certification stage). Nor have Plaintiffs timely disputed the relevance of retainer and incentive agreements with current or former class counsel, which are relevant to potential conflicts and adequacy. *See id.*, 563 F.3d at 957–60 (retainer and incentive arrangements between plaintiffs and counsel "plainly relevant" to class certification). Plaintiffs' sole basis for withholding these documents is that they are privileged, but binding authority says otherwise. *See Ralls v. U.S.*, 52 F.3d 223, 225 (9th Cir. 1995) ("Generally, the attorney-client privilege does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement . . . because the attorney-client privilege applies only to confidential professional communications, and the payment of fees is usually incidental to the attorney-client relationship."). The Court should compel production of these documents.

**1. Background**

Plaintiffs bring New York and California statutory and common law claims against GTs based on their allegations that GT's (1) falsely labels its Synergy and Enlightened kombucha beverages (the "Kombucha") as non-alcoholic when, they claim, the Kombucha often contains more than 0.5% alcohol and (2) understates the sugar content of the Kombucha on the products labels. GT's disputes these claims, including because Plaintiffs' flawed and limited testing significantly overestimates the alcohol and sugar content of the Kombucha and because the labels at issue include a clear alcohol warning label.

In denying Plaintiffs' motion for class certification, the Court expressed concern regarding the adequacy of named plaintiffs and proposed class counsel. Dkt. 129 at 1. That was because prior counsel were also counsel in a previous, nearly identical class action lawsuit against GT's, *Retta v. Millennium Products,*



**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Inc.*, 15-CV-1801-PSG, which involved the *same* allegations about alcohol and sugar content in the *same* GT's kombucha products and was filed by the *same* attorneys who filed this action. *See* Dkt. 129 at 2.

Prior counsel settled the *Retta* class action for $8.25 million and injunctive relief requiring GT's to implement an alcohol warning label as well as an alcohol and sugar content testing regime, both of which remain in place for all disputed Kombucha products to this day. Dkt. 129 at 2. To obtain approval of that settlement, prior counsel made representations on behalf of the *Retta* class that were contrary to their position in the instant action—namely, that the label disclosure provided "precisely the injunctive relief sought in the Complaint" and provided "adequate protections to minors going forward." *Id.* at 3. The Court held this undermined counsel's ability to fairly and adequately represent this putative class. *Id.*

Counsel from Bursor & Fisher; Smith Krivoshey, PC; and Ahdoot and Wolfson, PC subsequently withdrew, and were replaced by counsel from Dovel & Luner LLP. Dkts. 134, 136–148, 152–153, 156–160. Plaintiffs were granted leave to amend to add new plaintiffs Patel, Schmidt, and Nunez. Dkt. 150.

Upon GT's motion, Dkt. 171, the Court dismissed with prejudice plaintiffs Sharpe, Weiler, Leder, and DiGennaro because, as *Retta* class members, they were jurisdictionally barred from collaterally challenging the terms of the *Retta* settlement. Dkt. 178 at 4–5. As a result, these newly added plaintiffs, Patel, Nunez, and Schmidt, are the only remaining putative class representatives in this action.

### 2. Plaintiffs Refuse to Provide Responsive Documents

On November 13, 2025, GT's served its First Sets of Requests for Production on Plaintiffs. Elie-Meyers Decl. ¶ 7. As relevant here, GT's Requests for Production (RFPs) seek discovery as to (1) the terms by which Plaintiffs retained counsel in this action (RFPs 21) and (2) any fee sharing and joint prosecution agreements between current and former counsel in this action (RFP 22).

Plaintiffs' December 15, 2025, responses largely consist of boilerplate



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

objections that do not justify their failure to produce retainer or fee sharing and joint prosecution agreements. The sole substantive objection that Plaintiffs stand on—privilege—does not apply to retainer or joint prosecution agreements involving putative class representatives and counsel. Despite endeavoring to resolve this dispute through written letters and videoconference pursuant to L.R. 37-1, Plaintiffs have stood on this objection. GT's respectfully requests an Order compelling production of any such records withheld by Plaintiffs.

**B. Plaintiffs' Introductory Statement**

Defendant seeks the production of (1) the retainer agreements between Plaintiffs and their counsel and (2) the versions of the agreements between current counsel and prior counsel related to this litigation that were transmitted to and acknowledged by Plaintiffs.[1] The motion should be denied for three reasons.

First, under controlling law, the requested documents are attorney-client privileged. California privilege law—which governs in this diversity case—protects "confidential communication between client and lawyer" from discovery. Cal. Evid. Code § 954. And by statute and common law, this includes retainer agreements and other confidential documents transmitted and signed by clients like the ones sought here. Cal. Bus. & Prof. Code § 6149 ("A written fee contract shall be deemed to be a confidential communication within the meaning of subdivision (e) of Section 6068 and of Section 952 of the Evidence Code."); *see, e.g.*, *Victorino v. FCA United States LLC*, No. 16-cv-01617-GPC-JLB, 2017 U.S. Dist. LEXIS 234379, at *3 (S.D. Cal. Apr. 25, 2017) (under California law, "retainer agreements are non-discoverable, privileged documents").

---

[1] Plaintiffs have already produced the final, executed agreements themselves; all that's in dispute is version of the agreements that include a signed client acknowledgement page at the end of the document. *See* Brenner Decl. ¶¶ 17-18 & Exs. L, M.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Second, to compel production, Defendant has the burden of establishing relevance. Defendant cannot do so. In the Ninth Circuit, "class representative engagement letters are not relevant unless the defendants can substantiate the existence of a conflict, beyond mere speculation." *Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631-JST (DMR), 2024 U.S. Dist. LEXIS 146799, at *2-3 (N.D. Cal. Aug. 16, 2024) (collecting cases). Defendant cannot substantiate the existence of any conflict. To the contrary, all three Plaintiffs testified that the terms of their engagement of counsel did not involve any sort of incentive agreement or other feature that would potentially give rise to a conflict. By the same token, Defendant cannot substantiate any reason why the attorney-client privileged, signed acknowledgements of the agreements between prior counsel and current counsel might have any possible relevance to this case. This is especially so because—contrary to Defendant's representations—the agreements show that there is no continuing relationship, and no fee sharing, between Plaintiffs' current counsel and the prior counsel involved in this case, and so do not require any client acknowledgement in the first place.

Third, Defendant brings this motion in direct violation of Judge Olguin's Scheduling Order. That Order expressly provides that "[a]ny motion … challenging the adequacy of discovery responses must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained … before the discovery cut-off if the motion is granted." Ex. 4 (Dkt. 24) at pp. 2-3. And to make sure this directive is followed and the deadline met, it explicitly instructs Parties to raise discovery disputes early: "any party seeking to file a discovery motion must usually initiate meet and confer discussions" by "serving the letter required by Local Rule 37-1" "at least seven (7) weeks before the discovery cut-off." *Id.* at p. 3. Defendant did not comply with these directives. Although both disputes Defendant raises were ripe in mid-December, Defendant sat on its hands for over six weeks—until January 29—before initiating meet-and-



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

confer discussions on these issues. As a result, this motion will not even be heard—much less decided with enough time for the responses to be obtained—before the March 5 discovery cutoff.

In short: Defendant's motion seeks attorney-client privileged, irrelevant documents. And bringing it violates the Court's Scheduling Order. The Court should deny the motion and admonish Defendant for willfully violating the Court's Scheduling Order.

### C. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Much v. Gessesse*, 339 F.R.D. 625, 628 (C.D. Cal. 2018) (quoting Fed. R. Civ. P. Rule 26(b)(1)). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance. In turn, the party opposing discovery has the burden of showing that discovery should not be allowed." *Netlist Inc. v. Samsung Elecs. Co., Ltd.*, 341 F.R.D. 650, 661 (C.D. Cal. 2022).

## II. DISCOVERY REQUESTS IN DISPUTE

Plaintiffs have refused to produce either (A) the terms by which Plaintiffs retained counsel in this action, including retainer agreements (RFP 21) or (B) signed fee sharing and joint prosecution agreements between current and former counsel in this action (RFP 22).

### A. <u>GT'S REQUEST FOR PRODUCTION NO. 21:</u>

All DOCUMENTS and COMMUNICATIONS RELATING the terms by which YOU retained attorneys for the preparation and filing of any complaint in this Action and the prosecution of this lawsuit.

**<u>PLAINTIFF SCHMIDT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 21:</u>**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to this request as unintelligible with respect to



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

COMMUNICATIONS RELATING the terms by which … .” Plaintiff will interpret this phrase as “COMMUNICATIONS RELATING to the terms by which … .” Plaintiff further objects to the term “RELATING” as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce any documents or communications to or from her attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**<u>PLAINTIFF NUNEZ’S RESPONSE TO REQUEST FOR PRODUCTION NO. 21:</u>**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to this request as unintelligible with respect to “COMMUNICATIONS RELATING the terms by which … .” Plaintiff will interpret this phrase as “COMMUNICATIONS RELATING to the terms by which … .” Plaintiff further objects to the term “RELATING” as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**<u>PLAINTIFF PATEL’S RESPONSE TO REQUEST FOR PRODUCTION NO. 21:</u>**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to this request as unintelligible with respect to “COMMUNICATIONS RELATING the terms by which … .” Plaintiff will interpret this phrase as “COMMUNICATIONS RELATING to the terms by which … .” Plaintiff further objects to the term “RELATING” as overbroad, vague, and ambiguous. Plaintiff further objects to the request because it seeks production of



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce any documents or communications to or from his attorneys or attorney work product. After a reasonably diligent search, there are no non-privileged documents responsive to this request.

**1. <u>GT'S REASONS FOR COMPELLING PLAINTIFFS' FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 21:</u>**

Regarding Request for Production No. 21, the Parties met and conferred by videoconference on February 2, 2026 (after exchanging written conferral correspondence). Elie-Meyers Decl. ¶¶ 13–15. In the interest of compromise, GT offered to narrow this request to seek only retainer agreements. GT's counsel explained that any retainer agreements between putative class representatives and putative class counsel are relevant and non-privileged material that Plaintiffs are required to disclose in response to this Request. *Id.* ¶ 14. Plaintiffs' counsel admitted that such retainer agreements exist, but maintained that they would not produce such documents because, in their view, such documents are privileged and irrelevant absent evidence of impropriety. *Id.* ¶ 14.

Plaintiffs' retainer agreements are plainly relevant to this litigation and are not covered by privilege. Plaintiffs' objection on privilege grounds is without merit, and their remaining, boilerplate objections fail. The Court should compel the production of these responsive documents.

***<u>Relevance</u>.*** Plaintiffs did not object on the basis of relevance. That is for good reason: there is no serious question that Plaintiffs' retainer agreements are relevant to this litigation, including to the adequacy inquiry under Rule 23(b). The Ninth Circuit has held, as a general matter, that class representative fee incentive agreements and fee arrangements can create conflicts of interest and so should be disclosed to the Court for class settlement approval. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 957–60 (9th Cir. 2009) (finding retainer and incentive





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

arrangements between plaintiffs and counsel "plainly relevant" to class certification issue of adequacy as bearing on conflicts of interest between named parties and class sought to represent); *see also Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) ("We once again reiterate that district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."); *Gallegos v. Atria Mgmt. Co., LLC*, 2017 WL 11743704, at *4 (C.D. Cal. Jan. 12, 2017) ("The court finds plaintiffs' retainer agreements with counsel are relevant to determining the adequacy of [plaintiffs] as class representatives."); *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 600 (S.D. Cal. 2014) ("[T]he Court concludes Plaintiff's retainer and fee agreement with counsel in this case is relevant to the Rule 23(a)(4) analysis of whether Plaintiff is an adequate representative of the class."); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1048–49 (N.D. Cal. 2001) ("Accordingly, in order to determine whether a prospective lead plaintiff satisfies the requirements of Rule 23 … a court should consider the manner in which the prospective lead plaintiff retained counsel and negotiated an attorney's fee for the class."); *Bolding v. Banner Bank*, 2020 WL 3667132, at *1–2 (W.D. Wash. 2020) (compelling production of fee arrangement documents because such arrangements are "relevant to the evaluation of the adequacy of the representation under Fed. R. Civ. P. 23") (collecting cases).

Here, the specific terms of Plaintiffs' engagement of counsel—particularly any incentive agreements or fee arrangements—will be critical issues at the class certification stage. The relevance of Plaintiffs' retainer agreements is further heightened here, where prior counsel for the putative class was forced to withdraw from the litigation after the Court found that their prior, inconsistent statements in the *Retta* litigation raised serious questions to their adequacy as class counsel. Whether prior counsel is named or referenced in Plaintiffs' retainer agreements will directly implicate the adequacy of plaintiffs and current counsel—particularly given the overlap between current and former counsel in this litigation.



**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Less than an hour before the Parties' scheduled conferral pursuant to L.R. 37-1, Plaintiffs served GT's with a "response" to GT's conferral letter, in which they raised relevance for the first time, despite never previously objecting to this Request on relevance grounds. Elie-Meyers Decl. ¶ 13 and Ex. 7 (Plaintiffs' response letter). This late-raised objection is waived. *See Gee v. Gallardo*, No. CV 18-2717 JGB (PVC), 2020 WL 2083018, at *2 (C.D. Cal. Mar. 5, 2020) ("Where a party fails to timely respond to properly-served discovery requests, a court may deem any objections to the requests to have been waived."); *Byrne v. Ameris Bank*, No. 8:24-CV-01989-MWC (JDEX), 2025 WL 2995112, at *2 (C.D. Cal. Sept. 12, 2025) ("Generally, a party who fails to make timely objections to a discovery request waives those objections.") (and listing cases).

Even if it were not waived, the objection is meritless. Plaintiffs' 25th-hour letter (which was addressed in the parties' conferral, Elie-Meyers Decl. ¶ 13) cited a single, inapposite Northern District of California case, *Flodin v. Cent. Garden & Pet Co.*, 2024 U.S. Dist. LEXIS 146799, at *2 (N.D. Cal. Aug. 16, 2024). But, as GT's counsel advised in conferral, *Flodin* is inconsistent with the Ninth Circuit's holdings that retainer agreements and incentive awards are relevant—and that district courts have an obligation to scrutinize them to determine adequacy. *Rodriguez*, 563 F.3d at 957–60; *Radcliffe*, 715 F.3d at 1163. *See also Sapan v. Diamond Resorts Holdings, LLC*, No. 82300147DOCADSX, 2023 WL 8229984, at *6 (C.D. Cal. Oct. 6, 2023) (retainer agreements relevant "even absent evidence of a suspect incentive structure or conflict of interest").

Further, *Flodin* confirms that where, as here, there is non-speculative evidence of a potential conflict or adequacy issue, class representative engagement letters are relevant. *Id.* The Court's findings that prior class counsel were likely inadequate and judicially estopped from raising inconsistent claims in this litigation are alone sufficient to establish the relevance of Plaintiffs' retainer agreements and communications regarding incentive awards. This relevance is heightened by



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiffs' production of joint prosecution and fee-sharing agreements between current- and former- class counsel, which included a sliding-scale fee award for Plaintiffs' counsel. *Flodin* recognized that precisely such sliding scale awards are sufficient to make engagement letters relevant–a concern heightened by the potential for an ongoing relationship between withdrawn counsel and current counsel.

***Plaintiffs' Objections Fail.*** In response to RFP No. 21, Plaintiffs (1) refused to provide documents protected by attorney-client privilege or work product doctrine and (2) objected to the Request as unintelligible, overbroad, vague, and ambiguous. Plaintiffs have not produced any retainer agreements or other documents or communications related to conflicts of interest, assurances or expectations of monetary recovery. Plaintiffs' objections do not preclude discovery.

***First,*** Plaintiffs' object that the Request seeks documents protected by attorney-client privilege or the work-product doctrine. Their position is meritless. The Ninth Circuit has held that retainer agreements are not protected by attorney-client privilege or the work product doctrine. *Ralls v. U.S.*, 52 F.3d 223, 225 (9th Cir. 1995) ("Generally, the attorney-client privilege does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement . . . because the attorney-client privilege applies only to confidential professional communications, and the payment of fees is usually incidental to the attorney-client relationship."); *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege."). And it is equally well-established that retainer and fee agreements are relevant, discoverable, and are not protected by attorney-client privilege in consumer class actions. *See Gallegos,* 2017 WL 11743704, at *4 (class action plaintiff's retainer agreements and incentive awards relevant and not privileged); *Gusman*, 298 F.R.D. at 600 (holding "the attorney-client privilege generally does not preclude disclosure





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of fee agreements" which are relevant to "whether Plaintiff is an adequate representative of the class"); *Sapan*, 2023 WL 8229984, at *6 (similar).

Plaintiffs have argued that privilege in diversity cases is governed by California law. Elie-Meyers Decl. ¶ 13 Ex. 7 (Plaintiffs' response letter). But Plaintiffs cite no authority for the proposition that the California privilege applies to class certification under the Federal Rules of Civil Procedure, and Central District courts have rejected this argument. *See Pappas v. Naked Juice Co. of Glendora*, 2012 WL 12885109, at *6 (C.D. Cal. Dec. 5, 2012). Even if state law *did* apply, under New York Law "retainer and fee agreements are not privileged communications" and should be disclosed. *Iroquois Master Fund, Ltd. v. GlobePoint, Inc.*, 2018 WL 6929337, at *8 (C.D. Cal. Jan. 9, 2018) (citing *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 20 (N.D.N.Y. 2002) and *Priest v. Hennessy*, 51 N.Y.2d 62, 70 (1980)). Plaintiffs have not explained why New York and federal law do not permit production of these documents.

***Second*** Plaintiffs' remaining, boilerplate objections fail. Plaintiffs object to this Request as "unintelligible," "overbroad, vague, and ambiguous" but provide no explanation of why these vague and generalized objections apply here. Such boilerplate objections are "improper" and should be disregarded. *See Brevoort v. G4S Secure Sols. (USA) Inc.*, 2022 WL 3012529, at *4 (C.D. Cal. June 21, 2022) ("[B]oilerplate objections do *not* suffice[.]") (citations omitted); *accord* Fed. R. Civ. P. 34(b)(2)(B) (objections must be "state[d] with specificity"). In any event, Plaintiffs' objections make clear they understand this interrogatory and the very limited documents GT's seeks here.

The Court should compel production of any retainer agreements between putative class representatives and current or former putative class counsel.

**2. <u>PLAINTIFFS' RESPONSE TO GT'S REASONS FOR COMPELLING A FURTHER RESPONSE:</u>**


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Defendant's motion to compel further documents responsive to RFP 21 violates Judge Olguin's directive that discovery motions "must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained … before the discovery cut-off if the motion is granted," and should be denied for this reason alone.**[2]

Under Judge Olguin's scheduling orders governing this case, the close of fact discovery is March 5. Ex. 5 (Dkt. 185). This is "the date by which all discovery, **including all hearings on any related motions**, is to be completed." Ex. 4 (Dkt. 24), at p. 2 (emphasis in original). The Order emphasizes, in bold, that any hearings on discovery motions must occur before the close of fact discovery deadline. *Id*. It expressly provides that "[a]ny motion … challenging the adequacy of discovery responses must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained … before the discovery cut-off if the motion is granted." *Id.* at p. 2-3. And it explicitly directs the Parties to raise discovery disputes early to make sure that this deadline is met. It instructs that "any party seeking to file a discovery motion must usually initiate meet and confer discussions" by "serving the letter required by Local Rule 37-1" "at least seven (7) weeks before the discovery cut-off." *Id.* at p. 3.

Raising the disputes at issue here at this juncture is a direct violation of Judge Olguin's Scheduling Order and the express directives found within it, with no justification and no attempt to seek relief from them. Both disputes that Defendant raises seek to compel further document productions from Plaintiffs. *See* above § I.A.2 (Defendant's Introduction). These disputes were ripe in December 2025. In

---

[2] Defendant does not address the untimeliness of its motion in its portion of this joint stipulation despite Plaintiffs identifying this issue before and during the Parties' Local Rule 37-1 conference, *e.g.*, Ex. 7, and despite it being dispositive to the motion.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

their December 15 responses to Defendant's document requests, Plaintiffs objected to producing the requested documents and expressly told Defendant that they would not be produced. And Plaintiffs' document productions—completed on December 23, Brenner Decl. ¶ 4—did not include the documents in question. So Defendant could have timely raised these disputes to have the motion heard and granted—and the discovery obtained—before the close of fact discovery.[3] But Defendant sat on its hands for many weeks and—as a result—the disputes cannot be heard (much less decided, and the discovery obtained) until March 10[4]—after the discovery cutoff and after the deadline for Plaintiffs to complete and provide to Defendant their portion of the joint class certification brief. *See* Ex. D (Dkt. 183) (setting deadline to file renewed motion for class certification for March 30) & Ex. E (Dkt. 26) at p. 3-4 (requiring Plaintiffs to serve class certification motion on Defendant by March 2. Even now, Defendant has not moved to extend the discovery cutoff date, and any request to extend the discovery deadline would have to be made to Judge Olguin. *See Hefei Morningstar Healthmate Fitness Co. v. Joy Home United States Int'l Co.*, No. 2:22-cv-04773-FMO-MAR, 2023 U.S. Dist. LEXIS 220497, at *8 (C.D. Cal.

---

[3] For example, if Defendant had served its Local Rule 37-1 letter on January 5, then the Parties would have conferred by January 15 (10 days later per LR 37-1). If Defendant then served its portion of the LR 37-2.2 of the Joint Stipulation on January 19. Plaintiffs would have had until January 26 to serve their response, and Defendant could have timely filed on January 27 for a hearing on February 17.

[4] As of the drafting of this joint stipulation, Defendant has indicated that it intends to improperly notice this hearing for March 5—the day of the discovery cut off. But under Judge Olguin's standing order, discovery motions are referred to the assigned Magistrate Judge. (Dkt. 11.) The first available hearing date before Magistrate Judge Roberts that complies with Local Rule 37-3's 21-day notice period is March 10.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Sept. 26, 2023) (noting that "[a]ny application to modify an order entered pursuant to Rule 16 shall be made to the judicial officer who entered the order"); *King v. Westlake Servs.*, No. 8:20-cv-00530-JLS (JDEx), 2021 U.S. Dist. LEXIS 107288, at *5 (C.D. Cal. June 8, 2021) ("As the assigned magistrate judge lacks authority to extend the discovery cut-off date, and as the request to compel … is untimely under the Civil Trial Order, the Motion … is DENIED in its entirety."); C.D. Cal. Local Rule 16-14 ("Any application to modify an order entered pursuant to F.R.Civ.P. 16 shall be made to the judicial officer who entered the order.").

Worse, the discovery cutoff was supposed to be even earlier, but Defendant recently obtained a stipulated extension. Ex. 5 (Dkt. 185). To obtain this extension, Defendant represented, to both Plaintiffs and the Court, that the extension was needed, and would be used, to conduct any necessary follow-up discovery (including motion practice) stemming from Plaintiffs' early-to-mid January depositions—not so that Defendant could raise stale disputes over document productions that could and should have been raised in December. Ex. F (Dkt. 184) (requesting extension "to preserve the Parties' ability to file any necessary motions arising from [Plaintiffs'] depositions before the end of the discovery cut off"). And having to address these stale disputes now is highly prejudicial to Plaintiffs, whose counsel needs to focus on class certification deadlines coming up in less than two weeks.

In short, Defendant sat on its hands and missed the deadline to raise this dispute and is directly violating a court order by raising it now. In doing so, Defendant is interfering with Plaintiffs' ability to focus on their motion for class certification. Defendant should not be allowed to violate court orders with impunity, much less rewarded for this behavior. Its motion should be denied for this reason alone. *See Hefei*, 2023 U.S. Dist. LEXIS 220497, at *7-9 (denying motion as untimely under Judge Olguin's scheduling order because it did not allow time to complete discovery before cut-off); *Strick v. United Ret. Consultants, Inc.*, No.


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

CV16-08206 AFM, 2018 U.S. Dist. LEXIS 228083, at *1-2 (C.D. Cal. June 14, 2018) (denying motion to compel when motion was untimely under Judge Olguin's scheduling order); *Red Bull GmbH v. Mon Chong Loong Trading Corp.*, No. CV 05-00392 DDP (SSx), 2006 U.S. Dist. LEXIS 110101, at *5-6 (C.D. Cal. June 20, 2006) (denying motion to compel as untimely when it could not be heard (or an order granting the motion complied with) before the discovery cut off); *Medina v. Pitchess Det. Ctr. S. Facility*, No. 2:19-02921 JAK (ADS), 2022 U.S. Dist. LEXIS 162526, at *3 (C.D. Cal. Sept. 7, 2022) ("Untimeliness is sufficient ground, standing alone, to deny a discovery motion." (quotes and citation omitted)).

During the LR 37 meet and confer, Plaintiffs explained in detail why attempting to raise these disputes now violated Judge Olguin's orders. Brenner Decl. ¶ 2; *see also* Ex. 7. In its portion of the Joint Stipulation, Defendant makes no attempt to justify its delay in raising this dispute, or its intentional violations of Judge Olguin's Orders. *See* above. In its accompanying declaration, however, Defendant complains that Plaintiffs were only available to confer "the final hour and a half of the final day of the 10 day conferral period" allowed under Local Rule 37, presumably so that Defendant can try to blame Plaintiffs for this dispute not being heard until after the discovery cutoff in its subsequent supplemental statement. Elie-Meyers Decl. ¶ 13. Any attempt to pin the blame on Plaintiffs for this delay would be unavailing. Under Local Rule 37-1, Plaintiffs had 10 days to meet and confer with Defendant, and they complied with the Rule to the letter. Plus, the reason Plaintiffs took the 10 full days was not to introduce delay: it was that, first, Defendant's LR 37 letter raised numerous issues (not just the two Defendant ultimately moved on), most of which required Plaintiffs' counsel to confer with the three Plaintiffs (some more than once) to discuss Defendant's complaints for any meet-and-confer efforts to be productive. And second—because Defendant represented to Plaintiffs and the Court that any discovery disputes raised at this late stage would be limited to follow-up from Plaintiffs' depositions—Plaintiffs'



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

counsel was not expecting to receive any LR 37 letter from Defendant at this juncture and had numerous other professional and personal commitments the week of January 25 (the period to confer under LR 37), including work on the class certification papers for this case, which are due in a few weeks; three substantive motions, including a motion for final approval of a class action settlement in other cases; two medical appointments; and several other pre-scheduled meet-and-confer calls for other cases, meetings, and other commitments. Brenner Decl. ¶ 3. Anyway, even if Plaintiffs had met and conferred with Defendant sooner after receipt of its letter, based on Defendant's delay in raising these issues in the first instance, there was no possible way for this to be raised, heard, and calendared "sufficiently in advance of the discovery cut-off date to permit the responses to be obtained … before the discovery cut-off if the motion is granted." Ex. 4 (Dkt. 24) at p. 3.

**Defendant's motion to compel further documents responsive to RFP 21 should be denied because the retainer agreements Defendant seeks are, by statute, attorney-client privileged communications under controlling California law.**

Through RFP 21, Defendant seeks copies of Plaintiffs' retainer agreements with their attorneys. Defendant's motion should be denied because California's privilege law applies, and under California law Plaintiffs' retainer agreements are privileged.

Under California law, "confidential communication between client and lawyer" are privileged and need not be disclosed in litigation. Cal. Evid. Code § 954; *id*. § 952 (defining "confidential communication"). Lawyers are duty-bound to maintain inviolate, and not disclose, such confidential communications with their clients. Cal. Bus. & Prof. Code § 6068.

By statute, retainer agreements between lawyers and their clients "are deemed to be a confidential communication" subject to these protections. Cal. Bus. & Prof. Code § 6149 ("A written fee contract shall be deemed to be a confidential communication within the meaning of subdivision (e) of Section 6068 and of



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Section 952 of the Evidence Code."). Accordingly, both federal and state courts in California hold that "retainer agreements are non-discoverable, privileged documents" under California law. *Victorino*, 2017 U.S. Dist. LEXIS 234379, at *3; *Jensen v. BMW of N. Am., LLC*, No. 18cv104-WQH (NLS), 2019 U.S. Dist. LEXIS 122676, at *6 (S.D. Cal. July 23, 2019) ("[A]s to the issue of privilege, California state law should apply and the retainer agreement would be privileged."); *Iroquois Master Fund, Ltd. v. Glob. ePoint, Inc.*, No. CV 08-7761 UA (SSx), 2018 U.S. Dist. LEXIS 227171, at *21 (C.D. Cal. Jan. 9, 2018) ("Under [California Business & Professions Code] section 6149, fee agreements, as 'confidential communications,' are afforded broad protection from disclosure under California law."); *Dietz v. Meisenheimer & Herron*, 177 Cal. App. 4th 771, 786 (Cal. Ct. App. 2009) ("Among those communications subject to … the attorney-client privilege is a written fee contract between an attorney and a client." (citing Bus. & Prof. Code § 6149)); *Stoba v. Saveology.com, LLC*, No. 13cv2925 BAS (NLS), 2015 U.S. Dist. LEXIS 178140, at *11 (S.D. Cal. July 7, 2015) ("Plaintiffs properly claim privilege by establishing that the contents of their retainer agreement is a confidential communication made in the course of the attorney-client relationship." (citing Cal. Bus. & Prof. Code § 6149)); *Tomaszewski v. AIG Prop. Cas. Co.*, No. CV-24-04661-JFW (AGRx), 2025 U.S. Dist. LEXIS 71934, at *2-3 (C.D. Cal. Mar. 21, 2025) (collecting authority and denying motion to compel retainer agreement); *Parker v. Rodriguez*, No. CV 21-5574-DFM, 2023 U.S. Dist. LEXIS 42058, at *3 (C.D. Cal. Mar. 13, 2023) (applying Cal. Bus. & Prof. Code § 6149 and denying motion to compel retainer agreements); *Don v. Unum Life Ins. Co. of Am.*, No. CV 13-04502-DSF (VBKx), 2014 U.S. Dist. LEXIS 195527, at *7 (C.D. Cal. Nov. 4, 2014) (rejecting defendant's "arguments that disclosure should be mandated based on some relevance as to the adequacy of Plaintiff as a class representative" because retainer agreements "are blanketly protected under California Evidence Code §§



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

952 and 954 and Business and Professions Codes §§ 6068(e) and 6149, in particular”).

As a result, the retainer agreements that RFP 21 seeks are attorney-client privileged communications that are protected and need not be disclosed. Defendant’s motion fails on the merits for this reason alone.

Defendant argues “The Ninth Circuit has held that retainer agreements are not protected by attorney-client privilege or the work product doctrine.” *See* above § II.A.1. In support, Defendant cites several cases involving federal claims, holding that under federal common law, retainer agreements are not privileged. *Id.*; *see Ralls*, 52 F.3d. at 224 (criminal case, so federal privilege law applies under Fed. R. Evid. 501); *Blackman*, 72 F.3d at 1421, 1424 (IRS enforcement action, so federal privilege law applies); *Gusman*, 298 F.R.D. at 594 (involving only claims under the federal Telephone Consumer Protection Act and relying on *Ralls* and *Blackman*, so federal privilege law applies); *Sapan*, No. 8:23-00147 DOC (ADSx), 2023 U.S. Dist. LEXIS 215082, at *17-18 (same); *see also Gallegos*, No. ED CV 16-888-JGB (SPx), 2017 U.S. Dist. LEXIS 238771, at *13-14 (C.D. Cal. Jan. 12, 2017) (relying on *Ralls* and *Blackman* and doing no choice of law analysis); *Pappas v. Naked Juice Co. of Glendora*, 2012 WL 12885109 (C.D. Cal. Dec. 5, 2012) (same).

But in diversity cases like one this, where only state law claims are asserted, federal common law does not apply. Instead, “state law governs privilege.” Fed. R. Evid. 501; *Jensen*, 2019 U.S. Dist. LEXIS 122676, at *6 (concluding California privilege law applies in diversity jurisdiction case); *Stoba*, 2015 U.S. Dist. LEXIS 178140, at *9 (California privilege law applies in class action when federal jurisdiction is based on CAFA); *Cortina v. Goya Foods, Inc.*, No. 14cv169 L (NLS), 2015 U.S. Dist. LEXIS 185651, at *5 (S.D. Cal. Oct. 7, 2015) (same); *Mier v. CVS Pharm., Inc.*, No. 8:20-01979-DOC (ADSx), 2021 U.S. Dist. LEXIS 150468, at *2-3 (C.D. Cal. Apr. 30, 2021) (holding that “[i]n a federal court action based on diversity of citizenship, state law governs questions of attorney-client



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

privilege" and denying motion to compel retainer agreements); *see In re Cal. Pub. Utils. Com.*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law."). Indeed, federal courts in California have repeatedly recognized this distinction between federal and California privilege law in diversity cases. *E.g.*, *Jensen*, 2019 U.S. Dist. LEXIS 122676, at *5-6 (collecting authority and distinguishing other cases on this ground); *Cortina*, 2015 U.S. Dist. LEXIS 185651, at *4 (similar). And contrary to Defendant's contention, this applies to class actions asserting state law in federal court like this one. *E.g.*, *Mier*, 2021 U.S. Dist. LEXIS 150468 (applying California privilege law in a class action case and denying motion to compel retainer agreements); *Cortina*, 2015 U.S. Dist. LEXIS 185651, at *5 (same); *Stoba*, 2015 U.S. Dist. LEXIS 178140 (same).[5]

Defendant next suggests, with no analysis at all, that New York law may apply and that, under New York law, retainer agreements are not privileged. But under California choice of law rules—which apply here[6]—Defendant has the

---

[5] Defendant cites *Pappas*, 2012 WL 12885109, as an example of a class action case going its way. *See* above § II.A.1. But *Pappas* incorrectly applied federal privilege law with no choice of law analysis, no discussion of why federal law applied in that case, and without addressing Rule 501's requirement that state law governs privilege in this context. *Pappas* is, therefore, not as persuasive as the cases Plaintiffs cite directly addressing these questions.

[6] *Holley v. Gilead Scis., Inc.*, No. 18-cv-06972-JST (JSC), 2021 U.S. Dist. LEXIS 109317, at *20-21 (N.D. Cal. June 10, 2021) ("Federal courts must apply state choice-of-law rules to resolve which state's privilege law controls" and a "federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 65 (2013))); *Murphy v. Philip Morris Inc.*, CV 99-7155-RAP (JWJx), 2000 U.S. Dist. LEXIS 21128, at *3-4 (C.D. Cal. Mar. 17, 2000).



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

burden of showing that a foreign law applies. *See Rasidescu v. Midland Credit Mgmt.*, 496 F. Supp. 2d 1155, at 1159 (S.D. Cal. 2007) ("[T]he proponent of the foreign state law bears the burden of showing a compelling reason justifying displacement of California law."); *Holley*, 2021 U.S. Dist. LEXIS 109317, at *21-22 (applying "California law to the resolution of this privilege dispute" when party failed to address choice of law analysis). To satisfy this burden, Defendant would need to show that New York law applies under the "governmental interest" analysis. *Holley*, 2021 U.S. Dist. LEXIS 109317, at *21. "Under the governmental interest analysis, California law presumptively applies unless there is a 'true conflict of governmental interests' and a different state's interests 'would be more severely impaired by the application of California law.'" *Id.* (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020). Defendant here "fails to identify any actual conflict or to establish the other state's interest in having its own law applied." *Washington Mutual Bank v. Super. Ct.*, 24 Cal. 4th 906, 920 (Cal. 2001); *Holley*, 2021 U.S. Dist. LEXIS 109317, at *21 ("[T]he Court need not perform a governmental interest analysis where a party 'failed to introduce sufficient evidence addressed to any issues under the governmental interest analysis."). Accordingly, the presumption in favor of California law is not overcome, and California law applies.

Moreover, on the merits of the governmental interest analysis, California's interest prevails. Under that test, "the court analyzes each jurisdiction's respective interests and decides which would be more severely impaired if its law were not applied in that particular case." *Bank of Am., N.A. v. Hensley Props., L.P.*, No. CIV S-07-1584 GEB EFB, 2008 U.S. Dist. LEXIS 111541, at *11-12 n.2 (E.D. Cal. July 10, 2008). When assessing a jurisdiction's interest in having its law applied, courts consider factors like: whether California offers stricter protections than the other state, *id.* (California interest greater when it offers greater evidentiary protections); the location of counsel, *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 916 (9th





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cir. 1987) (stronger interest in state where counsel is located); where the lawsuit was filed, *id.* (stronger interest in state where case was filed); the location of the defendant, *id.* (stronger interest in state where Defendant was connected); and where the communications at issue took place, *Connolly Data Sys., Inc. v. Victor Tech., Inc.*, 114 F.R.D. 89, 92 (S.D. Cal. 1987). Here, the relevant factors overwhelmingly show that California has a stronger interest in having its law applied. To start, California offers stricter protections to retainer agreements than New York. As explained above, California has enacted a statute specifically designating retainer agreements as attorney-client privileged, confidential communications. New York, on the other hand, has no statute addressing whether retainer agreements are privileged, and therefore has expressed little interest in asserting its weaker protections in this California case. Plus, California has a much stronger connection to this case and the retainer agreements at issue. Plaintiffs' counsel is a California law firm located in California with attorneys primarily located in California. Brenner Decl. ¶ 5. The attorneys primarily litigating this case live and primarily practice in California, and are California bar members. *Id.* This lawsuit was filed in California. Defendant is headquartered in California. Ex. 1 ¶ 25. Two of the three plaintiffs live in California, lived in California when they retained counsel, and bring California law claims. *See* Ex. 1 ¶ 17 (Patel); ¶ 19 (Nunez); *see* Ex. 1 at pp. 30-36 (asserting California law claims). And the agreements are with a California law firm, governed by California's Rules of Professional Conduct. For all these reasons, California has a very strong interest in having its own privilege law applied to the retainer agreements in question. Any interest New York has in applying its law—which Defendant has not identified—is small in comparison.

To summarize, California's choice-of-law rules decide the privilege law that applies to this dispute. Under those choice-of-law rules, California privilege law governs. And under California privilege law, the retainer agreements Defendant



**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

seeks are attorney-client privileged communications by statute. Defendant's motion to compel should be denied for this reason alone.[7]

**Defendant's motion to compel further documents responsive to RFP 21 should also be denied because Defendant has failed to carry its burden of showing that the documents are relevant.**

Defendant's motion to compel the production of Plaintiffs' retainer agreements should be denied for a third reason: Defendant has failed to carry its burden that the retainer agreements are relevant.

In class actions, "class representative engagement letters are not relevant unless the defendants can substantiate the existence of a conflict, beyond mere speculation." *Flodin*, 2024 U.S. Dist. LEXIS 146799, at *2-3 (N.D. Cal. Aug. 16, 2024) (collecting cases); *Larsen v. Coldwell Banker Real Estate Corp.*, No. SACV 10-00401-AG (MLGx), 2011 U.S. Dist. LEXIS 160796, at *8, 10 (C.D. Cal. Oct. 4, 2011) (collecting cases) (agreeing with "the majority of courts considering this issue"); *In re Google AdWords Litig.*, No. C08-03369 JW (HRL), 2010 U.S. Dist. LEXIS 146392, at *14 (N.D. Cal. Nov. 12, 2010); *Park v. Webloyalty.com, Inc.*, No. 12CV1380-LAB(JMA), 2018 U.S. Dist. LEXIS 73514, at *8 (S.D. Cal. Apr. 30, 2018) (collecting cases). To substantiate the existence of a conflict, Defendant has to come forward with evidence—usually, deposition testimony—indicating that the retainer agreements in question contain "a suspect incentive structure" or other improper provisions that put the class representatives interests adverse to those of the class. *See Larsen*, 2011 U.S. Dist. LEXIS 160796, at *8. For example, in

---

[7] Plaintiffs already provided non-privileged information relating to the retention of their attorneys. In their responses to RFP 22 (reproduced below), Plaintiffs disclosed the date their attorneys were retained. *Mier*, 2021 U.S. Dist. LEXIS 150468, at *4 ("At most, [defendant] could find out when Plaintiff first retained counsel.").



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Rodriguez*, the class representatives' retainer agreements contained an incentive agreement whereby class counsel agreed to request higher incentive awards for the class representatives as the value of the settlement or verdict increased, to a cap of $75,000 if the settlement or verdict exceeded $10 million. 563 F.3d at 957. This arrangement "put class counsel and the contracting class representatives into a conflict position from day one," because the class representatives had no incentive to seek class recovery over $10 million or to pursue injunctive relief, which would have benefitted the class. *Id.* at 959-60 ("[O]nce the [$10 million] threshold cash settlement was met, the agreements created a disincentive to go to trial; going to trial would put their $75,000 at risk in return for only a marginal individual gain even if the verdict were significantly greater than the settlement."). *Radcliffe*, also relied upon by Defendant, did not involve retainer agreements at all. Instead, there, the settlement agreement provided incentive awards to the class representatives only if they supported the settlement. 715 F.3d at 1164. The Court found that this structure in the settlement agreement created a conflict because "the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness" to absent class members. *Id.* at 1165.

Instead of requiring production of retainer agreements, courts consider plaintiff depositions the proper means of investigating potential adequacy issues caused by the terms upon which a plaintiff retained counsel. *Larsen*, 2011 U.S. Dist. LEXIS 160796, at *9 (finding deposition sufficient to test for potential conflicts); *Bolding v. Banner Bank*, No. C17-0601RSL, 2020 U.S. Dist. LEXIS 118111, at *4-5 (W.D. Wash. July 6, 2020) (cited by Defendant above) (ordering production of retainer agreements only after plaintiffs' counsel instructed plaintiffs not to answer questions about retention at deposition); *Pappas*, 2012 WL 12885109, at *6 (C.D. Cal. Dec. 5, 2012) (cited by Defendant above) (denying motion to compel retainer agreements because they are not relevant and because plaintiffs' depositions would provide adequate opportunity for defendant to explore adequacy issues).


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Here, Defendant had the opportunity to depose each of the Plaintiffs to inquire into potential adequacy issues. If there was any basis to infer a conflict or suspect incentive structure, Defendant would cite it. But Defendant cites no deposition testimony from Plaintiffs suggesting a conflict or suspect incentive structure. There is none. Just the opposite, when asked, Plaintiffs testified that they received no promises or assurance of any kind and had no expectations regarding an incentive award. Ex G (Patel) at p. 153:23-154:1 (no expectation regarding compensation as a class representative); Ex. H (Schmidt) at p. 73:5-12 (testifying she had no expectation of incentive award); Ex. I (Nunez) at p. 87:11-15 ("Q Were you promised anything when you decided to join the class action against GT's Living Foods? A No. … No. No promises were made."). To the extent Defendant seeks to impute some conflict based on prior counsel's work on this case, Plaintiffs Patel and Schmit testified that they never even spoke with prior counsel, Ex. G (Patel) at p. 96:1-5 (testifying that he did not know prior counsel because he only communicated with Dovel & Luner); Ex. H (Schmidt) at p. 62:4-9 ("Q. Other than [Defendant's counsel] and your attorneys at Dovel & Luner, have you spoken with any other attorneys from other law firms about this litigation? A. I do not—to my knowledge, no."); Ex. 8at 63:24-64:25 (testifying she has had no contact with prior counsel).

Citing *Rodriguez* and *Radcliffe*, Defendant asserts "as a general matter, that class representative fee incentive agreements and fee arrangements can create conflicts of interest and so should be disclosed to the Court for class settlement approval." *See* above § II.A.1. But later cases have repeatedly rejected "[t]his interpretation" as "too broad." *Park*, 2018 U.S. Dist. LEXIS 73514, at *7; *Google AdWords*, 2010 U.S. Dist. LEXIS 146392, at *14 ("[T]he Court does not believe that [*Rodriguez*] can be read to stand for the broad proposition that the fee arrangements between named plaintiffs and plaintiffs' counsel should be



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

discoverable without any reason to think there is a potential conflict."); *Larsen*, 2011 U.S. Dist. LEXIS 160796, at *8 (same).

Defendant next asserts, with no explanation or support, that "the specific terms of Plaintiffs' engagement of counsel—particularly any incentive agreements or fee arrangements—will be critical issues at the class certification stage." *See* above § II.A.1. But as explained above, the terms of Plaintiffs' engagement of counsel only become relevant if there is some reason to believe that those terms include a suspect incentive structure or similar provision that puts their interests at odds with the ones of the class, as was the case in *Rodriguez.* Here, there is no such thing. To the contrary, Plaintiffs' sworn testimony is that no such improper incentives exist here.

Defendant next claims the retainer agreements' relevance is "further heightened here" because the District Court raised concerns about prior counsel's and prior plaintiffs' adequacy because of their connection to the *Retta* action. But unlike prior counsel and prior plaintiffs, current counsel and Plaintiffs had no involvement in the prior *Retta* action. That is why, when the District Court considered these adequacy arguments, it noted that they were "not very strong" now that prior counsel has withdrawn, new counsel has appeared, and new plaintiffs have been added to the case to replace the prior plaintiffs. Ex. J (Dkt. 167) at p. 3 n.3. Plus, the adequacy issues the District Court identified had nothing to do with prior counsel's retention. As Defendant recognizes in its Introduction, the Court was concerned because prior counsel was class counsel in a prior, similar class action case against Defendant, and prior plaintiffs were absent class members in that case. These adequacy concerns would not even make prior counsel's retainer agreements with prior plaintiffs relevant, let alone Plaintiffs' retainer agreements with their counsel who share none of these same issues.

Defendant also claims that some "overlap between current and former counsel" impacts this analysis. It is unclear what this means. The prior counsel with



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

which the Court identified potential adequacy issues have withdrawn from this case, and had been withdrawn for months before the filing of the Second Amended Complaint, which added the current Plaintiffs to the case. *See* Ex. K (Dkts. 156-158, 160) (orders granting request for withdrawal on August 12, 13, and 14); Ex. 1 (Second Amended Complaint filed on December 17, 2024). There is no overlap in attorneys between current counsel and the prior counsel with which the Court raised adequacy concerns. And none of this has anything to do with Plaintiffs' retainer agreements with new counsel.

Defendant next argues that the "relevance is heightened by Plaintiffs' production of joint prosecution and fee-sharing agreements between current- and former- class counsel, which included a sliding-scale fee award for Plaintiffs' counsel." *See* above § II.A.1. Again, this has nothing to do with the retainer agreements between new counsel and Plaintiffs at issue in this motion. Worse, Defendant misrepresents the terms of the agreements between new counsel and prior counsel, which show just the opposite.

Indeed, Plaintiffs produced two agreements between new counsel and prior counsel. Brenner Decl. ¶¶ 17-18. The first-in-time Joint Prosecution Agreement—entered on July 9, 2024—contemplated that prior counsel and current counsel would work together on the case going forward, and set forth the division of labor and fees under that arrangement. *Id.* ¶ 17 & Ex. L at p. 1. But a week after the Joint Prosecution Agreement was executed, current and prior counsel agreed to a different arrangement, and entered a different, superseding agreement. *Id.* ¶ 18 & Ex. M. In that agreement, they agreed that instead of jointly prosecuting the case going forward, prior counsel would withdraw and only current counsel would continue the litigation. Ex. M at p. 1. Consistent with this, under this second agreement, current counsel is not required to share any fees awarded in this case with prior counsel. *Id.* at pp. 1-2. Instead, each law firm that seeks compensation for its work on this case will need to petition the Court for a share of the attorneys'



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fees. *Id.* Then the Court shall determine costs and fees to be awarded to each law firm. *Id.*

The second agreement expressly provides that it "specifically supersedes" any prior agreements between current counsel and prior counsel. *Id.* at p. 2. So the second agreement rendered the first agreement null and void. And, consistent with that second agreement, prior counsel swiftly withdrew from the case following the execution of the second agreement, and has not been involved since. *See* Ex. K.

Defendant has both these agreements, so it is fully aware that there is no "fee-sharing agreements between current- and former- class counsel" and no "sliding scale fee award for Plaintiffs' counsel." *See* above § II.A.1. In short, the agreements between current counsel and prior counsel—both of which were produced in December—show that there is no ongoing relationship between new counsel and former counsel related to this case. And anyway, none of this has anything to do with the retainer agreements between new counsel and Plaintiffs.

Finally—in a last-ditch attempt to avoid this controlling law—Defendant argues that Plaintiffs waived arguments that their retainer agreements are relevant. This flips the burden on its head. As the party seeking to compel discovery, Defendant has the burden to show that the discovery it seeks is relevant. *Medina*, 2022 U.S. Dist. LEXIS 162526, at *2-3 ("On a motion to compel discovery, the moving party carries the 'initial burden of demonstrating relevance.'"); *see* above § I.C (Defendant acknowledging as much). Accordingly, there was no need for Plaintiffs to object to "preserve" their ability to refuse to produce irrelevant documents. *See, e.g., Cengage Learning, Inc. v. Davis Textbooks*, No. 2:15-cv-2401 TLN AC, 2016 U.S. Dist. LEXIS 126686, at *4 (E.D. Cal. Sept. 16, 2016) (rejecting waiver argument because "propounding party has the initial burden to establish relevance on a motion to compel"). Anyway, Plaintiffs *did* timely object "on the grounds and to the extent that they seek documents that are irrelevant." Exs. A, B, C, at p. 3 (stating this objection); *see id.* at p. 21 (incorporating this objection



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

into RFP 21). Especially considering that the request facially seeks information that courts regularly hold is not relevant, this objection is specific enough to put Defendant on notice of the objection and preserve the claim.

* * *

There are three independent reasons to deny Defendant's motion to compel the production of Plaintiffs' retainer agreements. First, Defendant's motion is untimely, and bringing it now is an intentional violation the District Court's Scheduling Order requiring these disputes to be resolved before the close of fact discovery. Second, the requested retainer agreements are protected from discovery by the attorney-client privilege. Third, Defendant has failed to carry its burden of establishing that the retainer agreements are relevant.



**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B. GT's REQUEST FOR PRODUTION NO. 22:**

All DOCUMENTS RELATED to any agreement YOU have with YOUR attorneys, or any other PERSON or entity, or any agreement YOUR attorneys have with any other PERSON or entity, concerning:

i. the payment or advancement of attorneys' fees, expenses, and costs with respect to this lawsuit;

ii. who will advance, and who is responsible for, payment of the costs and expenses incurred in connection with the prosecution of this lawsuit;

iii. whether a fee in this lawsuit will be shared with any PERSON not a member of YOUR attorneys' law firm; or

iv. the fee sharing arrangement by or among Dovel & Luner, LLP, Smith Krivoshey, PC, Bibiyan Law Group, Freeman Mathis and Gary, Bursor and Fisher PA, and/or any other lawyer, firm, or PERSON.

**PLAINTIFF SCHMIDT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to this request as duplicative of Request for Production No. 21. Plaintiff further objects to this request as irrelevant to the extent it seeks documents unrelated to this lawsuit.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff entered a retention agreement with Dovel & Luner, LLP on or around August 2, 2024. Plaintiff's retention agreement with her lawyers is protected by the attorney-client privilege and will not be produced. Plaintiff will produce a copy of the July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Law Corp. relating to this lawsuit. Plaintiff will also produce a copy of the July 16, 2024, Agreement Concerning *Sharpe* Litigation between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit, which superseded the July 9 joint prosecution agreement. Other than the Plaintiffs' retention agreements with Dovel & Luner, LLP, and the aforementioned agreements, there are no other agreements between Dovel & Luner, LLP and any other lawyer, law firm, entity, or person that are responsive to this request.

**PLAINTIFF NUNEZ'S RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to this request as duplicative of Request for Production No. 21. Plaintiff further objects to this request as irrelevant to the extent it seeks documents unrelated to this lawsuit.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff entered a retention agreement with Dovel & Luner, LLP on or around July 13, 2024. Plaintiff's retention agreement with her lawyers is protected by the attorney-client privilege and will not be produced. Plaintiff will produce a copy of the July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit. Plaintiff will also produce a copy of the July 16, 2024, Agreement Concerning *Sharpe* Litigation between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit, which superseded the July 9 joint prosecution agreement. Other than the Plaintiffs' retention agreements with Dovel



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

& Luner, LLP, and the aforementioned agreements, there are no other agreements between Dovel & Luner, LLP and any other lawyer, law firm, entity, or person that are responsive to this request.

**PLAINTIFF PATEL'S RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiff incorporates the General Objections above as if fully stated herein. Plaintiff further objects to the extent the request purports to seek production of documents protected by the attorney-client privilege and the attorney work product doctrine. Plaintiff will not produce documents protected by any such privilege or protection. Plaintiff further objects to this request as duplicative of Request for Production No. 21. Plaintiff further objects to this request as irrelevant to the extent it seeks documents unrelated to this lawsuit.

Notwithstanding the above objections, Plaintiff responds as follows: Plaintiff entered a retention agreement with Dovel & Luner, LLP on or around July 16, 2024. Plaintiff's retention agreement with her lawyers is protected by the attorney-client privilege and will not be produced. Plaintiff will produce a copy of the July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit. Plaintiff will also produce a copy of the July 16, 2024, Agreement Concerning *Sharpe* Litigation between Dovel & Luner, LLP; Smith Krivoshey, PC; Bursor & Fisher, P.A.; and Zimmerman Reed LLP and Westerman Law Corp. relating to this lawsuit, which superseded the July 9 joint prosecution agreement. Other than the Plaintiffs' retention agreements with Dovel & Luner, LLP, and the aforementioned agreements, there are no other agreements between Dovel & Luner, LLP and any other lawyer, law firm, entity, or person that are responsive to this request.


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**1. <u>GT'S REASONS FOR COMPELLING PLAINTIFFS' FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 22:</u>**

Regarding Request for Production No. 22, the Parties met and conferred by videoconference (after letter exchanges) on February 2, 2026. Elie-Meyers Decl. ¶ 15. In the interest of compromise, GT's offered to narrow this request to seek only joint prosecution agreements and fee sharing agreements. GT's counsel explained these documents are relevant and non-privileged material that Plaintiffs were required to disclose in response to this Request. *Id.* ¶ 15. GT's counsel further explained that, while Plaintiffs had produced copies of a "Joint Prosecution Agreement" and "Agreement Concerning *Sharpe* Litigation," Plaintiffs had not produced any copies of these agreements that were signed by the current named Plaintiffs, who are the putative class representatives. Plaintiffs' counsel maintained that they would not produce such documents because, in their view, client signatures and consent to such agreements are privileged. *Id.* ¶ 15.

Plaintiffs' *signed* copies of joint prosecution and fee sharing agreements are relevant to this litigation and are not covered by privilege. Plaintiffs' objection on privilege grounds is without merit, and their remaining, boilerplate objections fail. The Court should compel the production of these responsive documents.

***<u>Relevance</u>.*** Plaintiffs did not timely contest, and so waive, any argument that joint prosecution and/or fee sharing agreements related to this lawsuit are relevant. Plaintiffs raised a boilerplate objection to this request as "irrelevant to the extent it seeks documents unrelated to this lawsuit," but have waived any argument that such agreements related to the litigation of this lawsuit are not relevant. *See Byrne*, 2025 WL 2995112, at *2 (C.D. Cal. Sept. 12, 2025) ("Generally, a party who fails to make timely objections to a discovery request waives those objections.") (and listing cases); *Gee*, 2020 WL 2083018, at *2 (similar).





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In any case, there is no doubt that these documents are relevant. The unsigned Joint Prosecution Agreement that Plaintiffs disclosed contains a sliding-scale fee arrangement of exactly the sort that generates divided interests between class counsel and class representatives, which is relevant to adequacy. *See Rodriguez*, 563 F.3d at 957, 959 (sliding scale incentive agreements "put class counsel and the contracting class representatives into a conflict position from day one," and should be disclosed at the class certification stage); *Flodin*, 2024 U.S.Dist.LEXIS 146799, at *3 (distinguishing sliding incentive agreements from retainer agreements). Staged fee percentage schedules that increase counsel's compensation can create, at a minimum, the appearance of divided loyalties that would incentivize class counsel to delay favorable settlement to obtain a higher percentage of fees. The Ninth Circuit has emphasized that "the responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Rodriguez*, 563 F.3d at 968 (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)). Further, the question of whether former counsel remains actively engaged in this litigation raises unique adequacy issues, since they are judicially estopped from pressing claims in this case based on their representations in the *Retta* litigation (and had they remained counsel in this case, it would implicate grounds for disqualification).

As to signatures, whether individual Plaintiffs in fact *signed* any such agreements is also relevant—and Plaintiffs have never argued otherwise. Class counsel violate their fiduciary and ethical obligations when they fail to disclose fee and incentive arrangements "to the court, and to the class." *Rodriguez v. Disner*, 688 F.3d 645, 657 (9th Cir. 2012) ("*Rodriguez II*"). *See also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 226 (2d Cir. 1987) ("[C]ounsel must inform the court of the existence of a fee sharing agreement *at the time it is formulated*.") (emphasis added). And since at least two Plaintiffs could not clearly recall whether or not they had ever signed the unsigned Joint Prosecution Agreements they had





**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

produced, production of such documents is directly relevant to their knowledge and understanding of the terms of any such agreements. Elie-Meyers Decl. ¶¶ 16–17, Exs. 8, 9 (Schmidt and Patel Depo. excerpts)

***Plaintiffs' Objections Fail.*** In response to RFP No. 22, Plaintiffs (1) refused to provide signed agreements on the basis of attorney-client privilege and (2) objected to the Request as irrelevant to the extent it seeks documents unrelated to this lawsuit.

***First***, Plaintiffs provide no support for their contention that the *signed* copies of joint prosecution and fee sharing agreement between counsel are privileged, while *unsigned* agreements are not. As a general matter (and as discussed for RFP No. 21), fee arrangements and incentive award agreements between putative class counsel and putative class representatives are not protected by attorney-client privilege. *See Ralls*, 52 F.3d at 225; *Blackman*, 72 F.3d at 1424; *Gallegos*, 2017 WL 11743704, at *4; *Gusman*, 298 F.R.D. at 600; *Sapan*, 2023 WL 8229984, at *6. And where, as here, incentive arrangements create potential conflicts with putative, unnamed class members, their disclosure is *required*. *Rodriguez II*, 688 F.3d at 657. *See also Bauman v. Saxe Mgmt., LLC*, 2016 WL 11791830, at *2 (D. Nev. Jan. 27, 2016) (compelling production of attorney association and contingency fee agreement between associated class counsel);

***Second***, Plaintiffs raise a boilerplate relevance objection, but only to the extent this Request seeks documents "unrelated to this lawsuit." As explained above, this objection is inapplicable to agreements governing joint prosecution and fee arrangements for this lawsuit. *See Brevoort*, 2022 WL 3012529, at *4 ("[B]oilerplate objections do *not* suffice[.]") (citations omitted); *accord* Fed. R. Civ. P. 34(b)(2)(B) (objections must be "state[d] with specificity").

The Court should compel production of any copies of joint prosecution or fee sharing agreements, including copies signed by named Plaintiffs.


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**2. PLAINTIFFS' RESPONSE TO GT'S REASONS FOR COMPELLING A FURTHER RESPONSE:**

Plaintiffs have already produced copies of the only two agreements between their current counsel and their prior counsel: the superseded July 9, 2024, Joint Prosecution Agreement between Dovel & Luner, Smith Krivoshey, PC, Bursor & Fisher, P.A., Zimmerman Reed LLP, and Westerman Law Group; and the operative July 16, 2024, Agreement Concerning *Sharpe* Litigation between those same parties. *See* Ex. A (Patel) at pp. 22-23; Ex. B (Schmidt) at pp. 22-23; Ex. C (Nunez) at pp. 22-23 (explaining this). The copies that were produced were the final execution copies of those agreements, signed by all parties to the agreement (*i.e.*, the law firms among which the agreements were entered). Brenner Decl. ¶¶ 17-18 & Exs. L, M. And as explained above, they show that there is no longer any financial or working relationship between new counsel and former counsel.

Attached to each of the agreements is a form acknowledgement page which states "I have read, understood, and consent to the terms of this agreement" and has placeholders for a client name and signature (as well as a date). The purpose of this additional page—which derives from current counsel's template joint prosecution agreement—is to make it easy to document client consent to joint representation agreements that require it. Critically, Plaintiffs are not parties to either of the agreements among counsel; rather, the signature page in question is merely a blank form that can be used to obtain written acknowledgment of the already-fully-executed-agreement in question.

Despite having both agreements in question since December, Defendant waited until now to move to compel production of the versions of the agreements that were transmitted to clients and that clients acknowledged using the signature form attached to the last page. Like the first part of Defendant's motion, the second part is untimely: it raises disputes that could and should have been raised in December, and that now cannot be resolved within the discovery cut-off, in direct


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

violation of Judge Olguin's order. Moreover—unlike the underlying agreements, which were exchanged among counsel—the versions that were transmitted and signed by the clients are confidential client communications that are privileged and protected from discovery under governing California law. And, Defendant fails to carry its burden of showing that the versions of the agreements including client acknowledgements are relevant.

**Defendant's motion to compel further documents responsive to RFP 22 violates the Scheduling Order and is untimely, and should be denied for this reason alone.**

Like Defendant's motion to compel further responses to RFP 21, Defendant's motion to compel further responses to RFP 22 was ripe in December and should have been brought then. Bringing it now violates Judge Olguin's orders, is contrary to the representations Defendant's counsel made to Plaintiffs' counsel and Judge Olguin when seeking a further extension of the discovery cut off, and is a highly prejudicial distraction from Plaintiffs' efforts to timely complete their class certification briefing. The motion should be denied for this reason alone.

**Defendant's motion to compel further responses to RFP 22 should also be denied because the documents it seeks are attorney-client privileged communications that are protected from discovery under controlling California law.**

As explained above, California privilege law governs this dispute. *See* above § II.A.2. Under California law, "confidential communication between client and lawyer" are privileged and need not be disclosed in litigation. Cal. Evid. Code § 954; *id*. § 952 (defining "confidential communication"). And like the retainer agreements Defendant seeks in response to RFP 21, the client-acknowledged copies of the agreements between new counsel and prior counsel are documents transmitted from counsel to the clients and signed by the clients in confidence. They are therefore "confidential communication[s] between client and lawyer" that are



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

privileged, and that counsel is duty-bound to protect from disclosure. Cal. Evid. Code § 954; *id*. § 952; Cal. Bus. & Prof. Code § 6068. Defendant's motion should be denied for this reason alone.

In arguing that these documents are not privileged, Defendant relies on the same federal authority addressed above. But these cases—*Ralls*, *Blackman*, *Gallegos*, *Gusman*, and *Sapan*—each apply federal privilege law. They do not apply here, in this diversity case, where California law governs.[8]

Defendant also argues that Plaintiffs "provide no support for their contention that the *signed* copies of [these arguments] are privileged, while the unsigned agreements are not." *See* above § II.B.1. Not so. The versions of the agreements that Plaintiffs produced were communications transmitted and signed between and among law firms—not "communication[s] between client and lawyer." By contrast, the versions of the agreements that were sent to and signed by the clients are, of course, "communication[s] between client and lawyer." So those fall squarely within the protections afforded under sections 952 and 954. They are privileged for this reason.

In short, Defendant's motion to compel production of the Joint Prosecution Agreement and Agreement Concerning *Sharpe* Litigation signed by Plaintiffs should be denied for the same reasons its motion to compel production of Plaintiffs' retainer agreements should be denied: these are privileged attorney-client communications that cannot be produced under California law.

---

[8] Defendant also cites *Bauman v. Saxe Mgmt., LLC*, 2016 WL 11791830, at *2 (D. Nev. Jan. 27, 2016), which is not a California case, applies federal law, and does no choice of law analysis, so it has no bearing on the issues here.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Defendant's motion to compel further responses to RFP 22 should also be denied because Defendant has failed to carry its burden of showing that the documents are relevant.**

Defendant's motion to compel the production of client-acknowledged versions of the agreements between Plaintiffs' current counsel and prior counsel should also be denied for a third reason: Defendant has failed to carry its burden of showing they are relevant.

As explained above, under controlling law, "class representative engagement letters are not relevant unless the defendants can substantiate the existence of a conflict, beyond mere speculation," that production of the engagement letters might reveal. *Flodin*, 2024 U.S. Dist. LEXIS 146799, at *2-3; *see* above at § II.A.2 (collecting cases). By the same logic, the client acknowledgement letters acknowledging the existence of a joint prosecution agreement or other agreement among counsel are not relevant unless Defendant can substantiate the existence of a conflict that production of the acknowledgement might reveal. Defendant cannot do so here.

Rather than seeking to carry its burden to show relevance, Defendant begins by asserting that Plaintiffs waived their relevance objections. As explained above, this flips the burden on its head. As the party seeking to compel discovery, Defendant has the burden to show that the discovery it seeks is relevant. *Medina*, 2022 U.S. Dist. LEXIS 162526, at *2-3 ("On a motion to compel discovery, the moving party carries the 'initial burden of demonstrating relevance.'"); *see* above § I.C (Defendant acknowledging as much). Accordingly, there was no need for Plaintiffs to object to "preserve" their ability to refuse to produce irrelevant documents. *See, e.g.*, *Cengage Learning, Inc.*, 2016 U.S. Dist. LEXIS 126686, at *4-5 (rejecting waiver argument because "propounding party has the initial burden to establish relevance on a motion to compel"). Anyway, Plaintiffs *did* timely object "on the grounds and to the extent that they seek documents that are irrelevant." Exs.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

A, B, C, at p. 3 (stating this objection); *see id.* at p. 22 (incorporating this objection into RFP 22).

Defendant next claims, citing *Rodriguez,* that "The unsigned Joint Prosecution Agreement that Plaintiffs disclosed contains a sliding-scale fee arrangement of exactly the sort that generates divided interests between class counsel and class representatives, which is relevant to adequacy." *See* above § II.B.1. According to Defendant, "Staged fee percentage schedules that increase counsel's compensation can create, at a minimum, the appearance of divided loyalties that would incentivize class counsel to delay favorable settlement to obtain a higher percentage of fees." *Id.* This misrepresents both *Rodriguez* and the agreements at issue here. *Rodriguez* did not involve any "sliding scale" regarding counsel's compensation; it involved class representatives' compensation through an incentive agreement. 563 F.3d at 958-59. And as to the agreements between counsel, as explained above, there is no "sliding-scale fee arrangement"—the Joint Prosecution Agreement that Defendant cites was "specifically supersede[d]" by the later Agreement Concerning *Sharpe* Litigation. Ex. M at p. 2. The latter, operative agreement contains no fee arrangement between the lawyers at all; instead, any attorney seeking attorneys' fees or costs must apply to the Court. *Id.* at pp. 1-2. And in any event, these are all arguments for requiring Plaintiffs to produce the agreements between their new and prior counsel, which they have already done. It has nothing to do with the production of the client-signed acknowledgment of those agreements.

Defendant next argues that "the question of whether former counsel remains actively engaged in this litigation raises unique adequacy issues, since they are judicially estopped from pressing claims in this case based on their representations in the *Retta* litigation (and had they remained counsel in this case, it would implicate grounds for disqualification)." *See* above § II.B.1. This, again, has nothing to do with the dispute at hand: the production of client-acknowledged



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

agreements between counsel would not shed any light on these topics. Plus, Defendant already knows that prior counsel is no longer involved in the case, both because prior counsel withdrew, *see* Ex. K (Dkts. 156-158, 160), and because the operative Agreement Concerning *Sharpe* Litigation confirms it. Ex. M at p. 1.

Finally, Defendant argues, citing *Rodriguez II* and *Agent Orange*, that "whether individual Plaintiffs in fact signed any such agreements is also relevant" because "Class counsel violate their fiduciary and ethical obligations when they fail to disclose fee and incentive arrangements 'to the court, and to the class.'" *See* above § II.B.1. But neither *Rodriguez* or *Agent Orange* say anything of the sort. As described above, *Rodriguez* involved the disclosure of an incentive agreement between class counsel and the class representatives—not disclosure of an agreement among lawyers to the named plaintiff with completely different terms than those at issue in *Rodriguez*. *Agent Orange* is an out-of-circuit case that was primarily concerned with a fee-sharing agreement between different law firms that determined each firm's compensation based on the amount of money they invested in the litigation. This arrangement violated Second Circuit law requiring fee distributions to "bear some relationship to the services rendered." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.3d 216, 223 (2d Cir. 1987). As a prophylactic, the Second Circuit adopted a rule requiring disclosure of fee sharing agreements. The Ninth Circuit has not adopted this rule. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (distinguishing *Agent Orange* and rejecting argument based on "the Second Circuit's requirement that the district court must be notified prior to awarding fees of any fee-splitting arrangement"). In any event, the concerns present in *Agent Orange* are not present here: the Joint Prosecution Agreement—the only agreement with any fee sharing—was in place for only a week before being "specifically supersede[d]," Brenner Decl. ¶¶ 17-18 & Ex. M; the operative arrangement between former counsel and prior counsel does not involve any fee sharing, Ex. M at p. 1, so it would not fall under *Agent*



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Orange's* rule even if it applied; and each Plaintiff testified that they received the agreements. Ex. 9 (Patel Depo. Tr.) at 97:22-98:2, Ex. G at 99:14-17, 106:10-15 (reviewed JPA and *Sharpe* Agreement); Ex. 8 (Schmidt Depo. Tr.) at 63:10-11, 67:17-20 (same); Ex. I (Nunez Depo. Tr.) at 87:20-88:9, 92:23-93:1 (same). So there is no potential ethical or fiduciary concern that Defendant can even speculate about, much less "substantiate," that might render these signed acknowledgements relevant. *See Flodin*, 2024 U.S. Dist. LEXIS 146799, at *2-3.

DATED: February 12, 2026

*/s/ Jacob M. Harper*

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
Heather F. Canner (SBN 292837)
Joseph Elie-Meyers (SBN 325183)
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Attorneys for Defendant
GT's Living Foods, LLC

DATED: February 12, 2026

*/s/ Martin Brenner*

DOVEL & LUNER, LLP
Martin Brenner (SBN 333540)
martin@dovel.com
Simon Franzini (SBN 287631)
simon@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
Attorneys for Plaintiffs
Amit Patel, Lauren Schmidt, and
Christopher Nunez

## CERTIFICATE OF AUTHORIZATION TO FILE

Pursuant to L.R. 5-4.3.4(a)(2)(i), I attest that all other signatories listed in this document and on whose behalf this filing is submitted concur in this filing's content and have authorized this filing.

DATED: February 12, 2026

*/s/ Jacob M. Harper*

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper (SBN 259463)
Heather F. Canner (SBN 292837)
Joseph Elie-Meyers (SBN 325183)
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Attorneys for Defendant
GT's Living Foods, LLC

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2700, 350 South Grand Avenue, Los Angeles, California 90071.

On February 12, 2026, I served the foregoing document(s) described as: **JOINT STIPULATION PURSUANT TO LOCAL RULE 37 FOR DEFENDANT'S MOTION TO COMPEL PLAINTIFFS' FURTHER RESPONSES TO REQUESTS FOR PRODUCTION** by placing a true copy of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

Simon Carlo Franzini
Gabriel Zachiah Doble
Richard E Lyon, III
Dovel and Luner LLP
201 Santa Monica Boulevard Suite 600
Santa Monica, CA 90401
Email: simon@dovel.com
Email: gabe@dovel.com
Email: rick@dovel.com

__X__ (VIA MAIL) I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__ (VIA EMAIL) By forwarding a portable document file to the electronic mail address(es) below from electronic mail address **linapearmain@dwt.com**, at Floor 27, 350 South Grand Avenue, Los Angeles, California.

Executed on February 12, 2026, at Los Angeles, California.

☐ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

X Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Lina Pearmain



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899