Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
Gabriel Doble (Cal. Bar No. 335335)
gabe@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

*(Counsel for Defendant listed on signature page)*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>GT'S LIVING FOODS, LLC.,<br><br>　　　*Defendant.* | Case No. 2:19-cv-10920-FMO-DSRx<br><br>**JOINT BRIEF ON PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>**Hearing Date:** April 23, 2026<br>**Time:** 10:00 a.m.<br>**Courtroom:** 6D<br><br>Hon. Fernando M. Olguin |

## Table of Contents

I.      Plaintiffs: Introduction. ...................................................................................1

II.     GT's: Introduction. ........................................................................................2

III.    Plaintiffs: The proposed classes and subclasses. ...........................................3

IV.     The requirements of Rule 23(a) ....................................................................4

        A.      Plaintiffs: Numerosity is satisfied. .....................................................4

        B.      GT's: Plaintiffs Do Not Satisfy Numerosity. ......................................4

        C.      Plaintiffs: There are common questions of law and fact. .....................5

        D.      GT's: Plaintiffs fail to show common answers. ...................................5

        E.      Plaintiffs: Plaintiffs are typical. ........................................................5

        F.      GT's: Plaintiffs Are Atypical. ...........................................................6

        G.      Plaintiffs: Plaintiffs and their counsel are adequate representatives. ...............6

        H.      GT's: Plaintiffs and counsel are not adequate representatives. ..........................7

V.      The requirements of Rule 23(b)(3). ..............................................................8

        A.      Predominance as to the central issues in the case. ..............................8

                1.      Plaintiffs: The central issues are capable of classwide resolution. .........8

                2.      GT's: Predominance (and commonality) bars class certification. ...........9

                3.      Plaintiffs: The Enlightened Kombucha labels were materially
                        identical for all class members. ..................................................9

                4.      GT's: No commonality or predominance as to deception. .................10

                5.      Plaintiffs: That Enlightened Kombucha is an alcoholic beverage
                        is subject to common proof. ......................................................12

                6.      GT's: Alcohol and sugar content cannot be shown by common
                        proof, and individual inquiries predominate as to alcohol. .................14

                7.      Plaintiffs: Materiality and reliance are subject to common proof. .......17

Joint Brief on Plaintiffs' Renewed                    i           Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

8.      GT's: Materiality, reliance, and causation preclude certification......... 18

a.      No classwide materiality: alcohol omission. ......................................... 19

b.      No Classwide Materiality: Sugar Content ................................................ 21

B.      Predominance as to liability for each of Plaintiffs' claims.............................. 22

1.      Plaintiffs: Common questions predominate the "unlawful" California UCL claim....................................................................... 22

2.      GT's: No predominance as to California unlawful UCL claims......... 22

3.      Plaintiffs: Common questions predominate the deception-based California UCL, FAL, and CLRA claims................................................ 23

4.      GT's: No predominance as to the UCL, FAL, and CLRA claims. .................................................................................................. 24

5.      Plaintiffs: Common questions predominate the New York GBL claim........................................................................................................ 24

6.      GT's: Plaintiffs' fail commonality for the NY GBL claim. ................. 25

7.      Plaintiffs: Common issues predominate the implied warranty claim........................................................................................................ 26

8.      GT's: The implied warranty claim fails predominance. ...................... 26

9.      Plaintiffs: Common questions predominate common-law fraud........ 27

10.     GT's: Individual questions predominate common-law fraud. ............ 27

11.     Plaintiffs: Common questions predominate unjust enrichment. ........ 27

12.     GT's: Individual questions predominate unjust enrichment............... 28

C.      Predominance as to damages. ........................................................................... 28

1.      Plaintiffs: Common questions predominate damages.......................... 28

2.      GT's: Plaintiffs cannot satisfy predominance through full refund. .................................................................................................... 28

3.      Plaintiffs: The viability of Plaintiffs' full-refund damages model is a merits question not addressed at class certification. ...................... 29

4.  GT's: Plaintiffs must satisfy *Comcast* and Rule 23(b)(3) now................29

5.  Plaintiffs: A full refund is available as actual damages. .......................30

6.  GT's: Full refund damages do not fit Plaintiffs' theory......................32

7.  Plaintiffs: A full refund is available as restitution because the fraud is in the selling of alcoholic beverages as non-alcoholic beverages..................................................................................33

8.  GT's: Fraud-in-the-selling cases do not apply to Plaintiffs' claims. .......................................................................................36

9.  Plaintiffs: The illegality and danger of selling alcoholic beverages disguised as non-alcoholic beverages further supports a full refund..........................................................................37

10. GT's: Plaintiffs' legality argument cannot justify full refunds............38

11. Plaintiffs: Full-refund damages can be measured classwide. ..............41

12. GT's: Plaintiffs' calculations fail under *Comcast*....................................42

13. Plaintiffs: Restitutionary disgorgement independently supports class certification. .................................................................42

14. GT's: Reframing as "disgorgement" does not permit full refund. .......................................................................................43

15. Plaintiffs: Statutory damages are available for Plaintiffs' New York GBL claim, and can be calculated classwide. .............................44

16. GT's: Statutory damages are unavailable under the NY GBL. ...........44

D.  Plaintiffs: *Retta* membership is not an individualized issue (or an issue at all); the Class definition excludes *Retta* class members...............................45

E.  GT's: Individual inquiries into *Retta* class membership are fatal...................46

F.  Plaintiffs: A class action is the superior way to resolve this controversy...................................................................................48

G.  GT's: Class action is not superior due to numerous individual issues...........48

VI.     Plaintiffs: Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class too. ............................................................................ 48

VII.    GT's: Certification of a 23(b)(2) injunction class is not warranted .......................... 50

VIII.   Plaintiffs: Conclusion. ............................................................................... 50

## Table of Authorities

**Cases**

*Abboud v. Circle K Stores Inc.*,
  2025 WL 2800052 (D. Ariz. Sept. 30, 2025) .......................................................47

*Algarin v. Maybelline, LLC*,
  300 F.R.D. 444 (S.D. Cal. 2014) ........................................................................19

*Alvarez v. NBTY, Inc.*,
  331 F.R.D. 416 (S.D. Cal. 2019) ........................................................................30

*Amavizca v. Nutra Mfg., LLC*,
  2021 U.S. Dist. LEXIS 36009 (C.D. Cal. Jan. 27, 2021)....................................30, 31, 33

*Ambrosio v. Progressive Preferred Ins. Co.*,
  154 F.4th 1107 (9th Cir. 2025) ..................................................................... 17, 47

*Ang v. Bimbo Bakeries USA, Inc.*,
  2018 U.S. Dist. LEXIS 149395 (N.D. Cal. Aug. 31, 2018) ............................32, 40, 44, 49

*Anti Police-Terror Project v. City of Oakland*,
  2021 WL 4846958 (N.D. Cal. Oct. 18, 2021).....................................................48

*B.K. v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) .............................................................................49

*Bally v. State Farm Life Ins. Co.*,
  335 F.R.D. 288 (N.D. Cal. 2020) ......................................................................28

*Beaver v. Tarsadia Hotels*,
  816 F.3d 1170 (9th Cir. 2016) ..........................................................................22

*Beck-Ellman v. Kaz USA, Inc.*,
  283 F.R.D. 558 (S.D. Cal. 2012) .................................................................. 26, 27

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ....................................................................15, 22, 28

*Black Lives Matter L.A. v. City of L.A.*,
  113 F.4th 1249 (9th Cir. 2024) ................................................................... 5, 9, 12

*Bowerman v. Field Asset Servs., Inc.*,
    60 F.4th 459 (9th Cir. 2023) ....................................................................................47

*Bradach v. Pharmavite, LLC*,
    735 F. App'x 251 (9th Cir. 2018) ...........................................................................18

*Brazil v. Dole Packaged Foods, LLC*,
    660 F. App'x 531 (9th Cir. 2016) ...................................................................... 40, 43

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ........................................................................ 45, 47

*Brown v. DirecTV, LLC*,
    562 F. Supp. 3d 590 (C.D. Cal. 2021) ....................................................................46

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011)..............................................................................4

*Bruton v. Gerber Prods. Co.*,
    2018 WL 1009257 (N.D. Cal. Feb. 13, 2018)........................................................50

*Bush v. Rust-Oleum Corp.*,
    2024 U.S. Dist. LEXIS 20131 (N.D. Cal. Feb. 5, 2024) .......................................49

*Cadena v. Am. Honda Motor Co.*,
    2025 U.S. Dist. LEXIS 264956 (C.D. Cal. Dec. 3, 2025) ....................................12

*Capaci v. Sports Rsch. Corp.*,
    2022 U.S. Dist. LEXIS 72856 (C.D. Cal. Apr. 14, 2022)..............................*passim*

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .........................................................................................*passim*

*Corbett v. PharmaCare U.S., Inc.*,
    2024 WL 1356220 (S.D. Cal. Mar. 29, 2024).......................................................40

*Debernardis v. IQ Formulations, LLC*,
    942 F.3d 1076 (11th Cir. 2019) ....................................................................... 37, 40

*Dickey v. Advanced Micro Devices, Inc.*,
    2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) .......................................43

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) ......................................................................... 17, 19

Joint Brief on Plaintiffs' Renewed            vi            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Ebin v. Kangadis Food Inc.*,
   2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ........................................................26

*Ebin v. Kangadis Food, Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ..........................................................................27

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .................................................................................6

*Falcone v. Nestle USA, Inc.*,
   2026 U.S. App. LEXIS 555 (9th Cir. Jan. 9, 2026) ........................................*passim*

*Forcellati v. Hyland's, Inc.*,
   2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ............................... 23, 46

*FTC v. Figgie Int'l*,
   994 F.2d 595 (9th Cir. 1993) ...............................................................33, 34, 35, 36

*Golikov v. Walmart Inc.*,
   2025 WL 847342 (C.D. Cal. Feb. 27, 2025) ........................................................33

*Gottsdanker v. Cutter Labs.*,
   182 Cal. App. 2d 602 (1960) ................................................................................26

*Grace v. Apple, Inc.*,
   328 F.R.D. 320 (N.D. Cal. 2018) .........................................................................28

*Grodzitsky v. Am. Honda Motor Co.*,
   2014 WL 718431 (C.D. Cal. Feb. 19, 2014) .........................................................15

*Grodzitsky v. Am. Honda Motor Co.*,
   957 F.3d 979 (9th Cir. 2020) ...........................................................5, 10, 17, 42

*Gross v. Vilore Foods Co.*,
   2022 WL 1063085 (S.D. Cal. Apr. 8, 2022) ............................................ 10, 26, 27

*Guido v. L'Oreal, USA, Inc.*,
   2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) .................................24, 25, 44, 45

*Hadley v. Kellogg Sales Co.*,
   2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019) ...................................22

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018)................................................................10

Joint Brief on Plaintiffs' Renewed          vii          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) ............................................................... 46, 47

*Iglesias v. Ariz. Beverages USA, LLC*,
2025 WL 2714143 (N.D. Cal. Aug. 14, 2025) ...................................................50

*In re 5-Hour Energy*,
2017 WL 2559615.............................................................................. 21, 29

*In re Amla Litig.*,
282 F. Supp. 3d 751 (S.D.N.Y. 2017).......................................................... 24, 26

*In re Apple iPhone Antitrust Litig.*,
2025 WL 3124160 (N.D. Cal. Oct. 27, 2025)....................................................16

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018) ......................................................*passim*

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,
2021 WL 3878654 (9th Cir. Aug. 31, 2021).....................................................50

*In re Conagra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014)............................................................48

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd* 844 F.3d 1121 ................................................27

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ..............................................................27

*In re Imp. Credit Indus., Inc. Sec. Litig.*,
252 F. Supp. 2d 1005 (C.D. Cal. 2003), *aff'd*, 145 F. App'x 218 (9th Cir. 2005).............15

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022)...................................................37, 38, 40

*In re Lenovo Adware Litig.*,
2018 WL 620145 (N.D. Cal. Jan. 30, 2018)...................................................25

*In re Morning Song Bird Food Litig.*,
320 F.R.D. 540 (S.D. Cal. 2017) ........................................................... 37, 39

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
214 F.R.D. 614 (W.D. Wash. 2003)...........................................................48

*In re POM Wonderful LLC,*
    2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ....................................................40

*In re Tobacco Cases II,*
    240 Cal. App. 4th at 800 (2015) .......................................................................43

*In re Vioxx Class Cases,*
    180 Cal. App. 4th 116 (2009) ..................................................................... 15, 36

*Ironshore Specialty Ins. Co. v. 23andMe, Inc.,*
    2015 U.S. Dist. LEXIS 64145 (N.D. Cal. May 14, 2015) ...................................30

*Jackson-Jones v. Epoch Everlasting Play, LLC,*
    748 F. Supp. 3d 823 (C.D. Cal. 2024), *vacated on other grounds by* 2025 U.S. App. LEXIS
    21288 (9th Cir. Aug. 20, 2025) ..................................................................... 37, 40

*Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.,*
    281 F.R.D. 422 (C.D. Cal. 2012).......................................................................27

*Jones v. ConAgra Foods, Inc.,*
    2014 WL 2702726 (N.D. Cal. June 13, 2014) ............................................... 6, 21

*Kayes v. Pac. Lumber Co.,*
    51 F.3d 1449 (9th Cir. 1995) ............................................................................8

*Keating v. Nordstrom, Inc.,*
    2020 U.S. Dist. LEXIS 63124 (D. Alaska Apr. 10, 2020)........................... 31, 33

*Keilholtz v. Lennox Hearth Prods.,*
    268 F.R.D. 330 (N.D. Cal. 2010) .....................................................................27

*Klein v. Dr. Ing. h.c.F. Porsche AG,*
    2025 WL 2992172 (C.D. Cal. Oct. 22, 2025) ....................................................19

*Kronenberg v. Allstate Ins. Co.,*
    743 F. Supp. 3d 465 (E.D.N.Y. 2024)...............................................................25

*Kumar v. Salov N. Am. Corp.,*
    2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016) ............................. 17, 19

*Lambert v. Nutraceutical Corp.,*
    870 F.3d 1170 (9th Cir. 2017) ..........................................................................30

*Lara v. First Nat'l Ins. Co. of Am.,*
    25 F.4th 1134 (9th Cir. 2022) ...................................................................*passim*

Joint Brief on Plaintiffs' Renewed          ix          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Leyva v. Medline Indus.*,
716 F.3d 510 (9th Cir. 2013) ...................................................................................42

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) ............................................................................48

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................................................................50

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) ..............................................................13, 28, 43, 44

*Makaeff v. Trump Univ., LLC*,
309 F.R.D. 631 (S.D. Cal. 2015) ......................................................................*passim*

*Marshall v. Hyundai Motor Am.*,
334 F.R.D. 36 (S.D.N.Y. 2019) ...............................................................................25

*McCrary v. Elations Co., LLC*,
2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) .........................................45

*McMorrow v. Mondelēz Int'l, Inc.*,
2021 U.S. Dist. LEXIS 42885 (S.D. Cal. Mar. 8, 2021) ........................................44

*Mezzadri v. Med. Depot, Inc.*,
2016 WL 11783673 (S.D. Cal. Nov. 18, 2016)............................................... 32, 36

*Mezzadri v. Med. Depot, Inc.*,
2016 WL 5107163 (S.D. Cal. May 12, 2016) ................................................ 33, 36

*Moore v. Mars Petcare US*,
2024 WL 4336602 (N.D. Cal. Sept. 27, 2024)........................................................10

*Nacarino v. Chobani, LLC*,
668 F. Supp. 3d 881 (N.D. Cal. 2022)............................................................ 22, 23

*O'Connor v. Boeing N. Am., Inc.*,
197 F.R.D. 404 (C.D. Cal. 2000)..............................................................................48

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .............................................................................*passim*

*Ono v. Head Racquet Sports USA, Inc.*,
2016 WL 6647949 (C.D. Cal. Mar. 8, 2016)................................................... 20, 21

Joint Brief on Plaintiffs' Renewed          x          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*,
674 F. Supp. 3d 799 (C.D. Cal. 2023) ...................................................................21

*Pardini v. Unilever U.S., Inc.*,
961 F. Supp. 2d 1048 (N.D. Cal. 2013)................................................................21

*Radcliffe v. Experian Info. Sols. Inc.*,
715 F.3d 1157 (9th Cir. 2013) ...............................................................................8

*Red v. Kraft Foods, Inc.*,
2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ....................................................43

*Retta v. Millennium Products, Inc.*,
No. CV15-1801 (C.D. Cal.) ..........................................................................*passim*

*Robalo LLC v. Taigh Ramey*,
2012 U.S. Dist. LEXIS 89378 (E.D. Cal. June 26, 2012) ................................30

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .................................................................................8

*Roley v. Google LLC*,
2020 WL 8675968 (N.D. Cal. July 20, 2020).....................................................27

*Samet v. P&G Co.*,
2019 WL 13167115 (N.D. Cal. Jan. 15, 2019)...................................................40

*Sanderson v. Whoop, Inc.*,
2025 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 7, 2025)............................ 31, 33

*Sapan v. Yelp, Inc.*,
2021 WL 5302908 (N.D. Cal. Nov. 15, 2021)............................................ 47, 48

*Sateriale v. Rj Reynolds Tobacco Co.*,
2014 U.S. Dist. LEXIS 176858 (C.D. Cal. Dec. 19, 2014) ...............................42

*Shahinian v. Kimberly-Clark Corp.*,
2016 WL 11722907 (C.D. Cal. Nov. 14, 2016) .................................................41

*Shanks v. Jarrow Formulas, Inc.*,
2019 WL 4398506 (C.D. Cal. Aug. 27, 2019).....................................................18

*Shin v. Sanyo Foods Corp. of Am.*,
348 F.R.D. 477 (C.D. Cal. 2025)......................................................27, 30, 32, 44

Joint Brief on Plaintiffs' Renewed                 xi          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Six Mexican Workers v. Ariz. Citrus Growers,*
 904 F.2d 1301 (9th Cir. 1990) ...........................................................................47

*Small v. Allianz Life Ins. Co. of N. Am.,*
 122 F.4th 1182 (9th Cir. 2024) ..........................................................................48

*Small v. Lorillard Tobacco Co.,*
 94 N.Y.2d 43 (1999) ..........................................................................24, 25, 26

*Smith v. Shahidi,*
 2026 U.S. Dist. LEXIS 493369 (C.D. Cal. Mar. 9, 2026) ....................................30

*Spann v. J.C. Penney Corp.,*
 2015 U.S. Dist. LEXIS 42545 (C.D. Cal. Mar. 23, 2015) ............................. 33, 42

*Stanley v. Novartis Pharms. Corp.,*
 11 F. Supp. 3d 987 (C.D. Cal. 2014)....................................................................26

*Stearns v. Ticketmaster Corp.,*
 655 F.3d 1013 (9th Cir. 2011) ...................................................................... 18, 19

*Steroid Hormone Prod. Cases,*
 181 Cal. App. 4th 145 (2010) ....................................................................... 37, 39

*Suchanek v. Sturm Foods, Inc.,*
 311 F.R.D. 239 (S.D. Ill. 2015) ...............................................................35, 36, 37

*Tait v. BSH Home Appliances Corp.,*
 289 F.R.D. 466 (C.D. Cal. 2012)..........................................................................23

*Tietsworth v. Sears, Roebuck & Co.,*
 2013 WL 1303100 (N.D. Cal. Mar. 28, 2013) ......................................................17

*Tortilla Factory, LLC v. GTs Living Foods, LLC,*
 2020 U.S. Dist. LEXIS 219851 (C.D. Cal. Sept. 11, 2020)......................... 18, 19

*Townsend v. Moster Bev. Corp.,*
 303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...............................................................19

*True Health Chiropractic, Inc. v. McKesson Corp.,*
 896 F.3d 923 (9th Cir. 2018) ...............................................................................47

*Urena v. Earthgrains Dist., LLC,*
 2017 WL 4786106 (C.D. Cal. July 19, 2017) .......................................................48

Joint Brief on Plaintiffs' Renewed xii Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Van v. LLR, Inc.*,
    61 F.4th 1053 (9th Cir. 2023) ............................................................... 16, 17, 46

*Vizcarra v. Unilever U.S., Inc.*,
    339 F.R.D. 530 (N.D. Cal. Oct. 27, 2021) ..............................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................... 14, 29

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ..............................................................49

*Werdebaugh v. Blue Diamond Growers*,
    2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ....................................45

*Yeend v. Akima Glob. Servs., LLC*,
    2025 U.S. Dist. LEXIS 61354 (N.D.N.Y. Mar. 31, 2025) ..................................27

*Zakaria v. Gerber Prods. Co.*,
    755 F. App'x 623 (9th Cir. 2018) .........................................................32

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021)......................................................40

*Zinser v. Accufix Rsch. Inst.*,
    253 F.3d 1180 (9th Cir. 2001) ...................................................... 9, 16, 48

**Statutes**

15 U.S.C. §§ 1261–1278......................................................................37

26 U.S.C.
    § 5051 .........................................................................................37
    § 7201 .........................................................................................37

Cal. Bus. & Prof. Code
    § 17204 .......................................................................................23
    § 25658(a).....................................................................................38

Cal. Civ. Code § 1780(a)(1)...................................................................30

N.Y. Alco. Bev. Cont. Law § 65 ..............................................................38

N.Y. Gen. Bus. L. § 349(h)....................................................................44

N.Y. Penal Law § 260.20(2)................................................................................................38

**Rules**

Fed. R. Civ. P. 23.................................................................................................*passim*

Fed. R. Civ. P. 23(a) ........................................................................................ 4, 19, 21

Fed. R. Civ. P. 23(b)(2) .................................................................................8, 48, 49, 50

Fed. R. Civ. P. 23(b)(3) .................................................................................8, 29, 48, 49

Fed. R. Evid. 702................................................................................................42

Fed. R. Evid. 703................................................................................................42

Fed. R. Evid. 704................................................................................................42

**Regulations**

21 C.F.R. § 101.9(g)(5) ........................................................................................16

27 C.F.R. § 16.10 ...............................................................................................12

27 C.F.R. § 16.20 ........................................................................................... 22, 37

27 C.F.R. § 16.21 ......................................................................................11, 22, 38, 49

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions* §§ 12:2, 12:4 (5th ed. 2020).......................41

## I.    Plaintiffs: Introduction.

Defendant sells Enlightened Kombucha as a non-alcoholic beverage.  Its labels do not disclose that it contains more than 0.5% alcohol (the legal threshold for alcoholic beverages), do not state that consumers must be at least 21 to purchase it, and do not contain the government warning required for alcoholic beverages.  This is true of every bottle of Enlightened Kombucha sold.  Plaintiffs will show using common evidence (Dr. Spedding's testimony) that Enlightened Kombucha is actually an alcoholic beverage, because it contains more than 0.5% alcohol when sold at retail.  Reasonable consumers thought they were buying non-alcoholic beverages, but got alcoholic beverages.  Whether this is deceptive and material is evaluated under an objective, reasonable-consumer standard.  So all central issues in this case—what Defendant's labels conveyed, whether it was true, and materiality—are subject to common proof.  This is an ideal class action.

Plaintiffs also present several damages models stemming from Defendant's conduct and capable of classwide measurement.  New York purchasers are entitled to statutory damages of $50 per violation.  California purchasers are entitled to a full refund, for three different reasons.  First, full refunds are available as actual damages because reasonable consumers—who were shopping for non-alcoholic beverages at the time of purchase— would not have made the purchase had they known Enlightened Kombucha was an alcoholic beverage (i.e., they would have spent $0).  Second, full refunds are available as restitution because alcoholic beverages are fundamentally different products from non-alcoholic beverages, as recognized by consumers, the law, and Defendant (who sells a separate, intentionally alcoholic line of kombucha).  So Defendant's fraud in the selling of Enlightened Kombucha as a non-alcoholic beverage induced class members to purchase alcoholic beverages they otherwise would not have purchased.  Third, a full refund is appropriate because selling alcoholic beverages disguised as non-alcoholic beverages is illegal and inherently unfair.  And, as an alternative, Plaintiffs can prove restitutionary disgorgement on a classwide basis for California class members.

In addition, the Court should certify an injunction class to stop Defendant's

Joint Brief on Plaintiffs' Renewed             1             Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

deception.  Defendant's labels not only disguise that Enlightened Kombucha is an alcoholic beverage; they also understate its sugar content.  A single injunction would provide relief to each class member for both deceptive practices: each class member could trust Defendant's alcohol and sugar representations going forward.

**II.    GT's: Introduction.**

Rinse, recycle, repeat. New Plaintiffs' Motion rehashes the same arguments based on the same, now-outdated evidence. But they cannot escape the fatal defects of the last class certification motion. This starts with the fundamental premise of their Motion: they fail to show common proof the *entire* GT's Enlighted product line exceeds threshold alcohol and sugar limits for *over nine years*. Their evidence was inadequate last time; this time they have *no testing whatsoever* of a single bottle of Enlightened from the last five years. The only evidence available—GT's own testing ordered by *Retta*—shows all available Enlightened products have *no alcohol or sugar levels exceeding thresholds*, which destroys Plaintiffs' foundational assumptions for numerosity, commonality, predominance, and damages. Plaintiffs (and counsel) fail to satisfy almost every requirement of Rule 23, fail to address the Court's concerns from the last class certification denial, and entered into side deals with withdrawn counsel that make them inadequate.

*Inadequacy.* This action claims the labels former counsel negotiated and advocated for *Retta v. Millennium Products, Inc.*, No. CV15-1801 (C.D. Cal.) are now misleading and illegal. New counsel, Dovel & Luner LLP, fail to shake those conflicts, as their side agreements with former counsel bar them from opposing former counsel's fees in this action, even if against the class's interest. This is textbook inadequacy.

*Commonality & Predominance.* **Damages.** The Court previously indicated Plaintiffs' full refund damages model did not appear viable. Dkt. 129 at 6. Plaintiffs recycle the same failed arguments as before. But they are still required to account for the value received, rendering full refunds improper and barring certification. None of the theories they rehash—"actual damages," fraud in the selling, illegality, disgorgement—allow full refunds here. Each of these arguments relies on a misapplication or misstatement of the

Joint Brief on Plaintiffs' Renewed                    2            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

law. Without a proper damages model, *Comcast* bars certification.

**Falsity.** Plaintiffs purport to show a classwide method of testing alcohol and sugar content by pointing to the same sparse testing from their 2021 motion. But *Plaintiffs have not tested a single bottle in five years*. As before, their methodology falls short, as it does not account for variation in refrigeration or ingredients across the product lines, both of which affect alcohol and sugar content. Nor do they address other issues: they tested only 19 bottles of relevant products, and tested none of the many new products swept into this action. The only reliable testing in this case is GT's, and it shows essentially no elevated alcohol content for every product from 2017 until the present.

**Deception & Materiality**. Plaintiffs' own testimony directly undermines their only evidence of deception and materiality. Based solely on the expert report of Dr. Silverman, Plaintiffs' theories rely on the false assumption consumers ignore the disclosure on every Enlightened bottle stating it "has naturally occurring alcohol." But all three Plaintiffs *did* read the disclosure before purchasing. Silverman admits he cannot opine as to reasonable consumers that *do* read the disclosure, and that such readings would vary by consumer, meaning common proof does not exist. GT's survey evidence confirms as much, as it shows many consumers do not find the alcohol omission material.

**Retta *Class Members.*** *Retta* class membership is a complete defense to liability and will require fact-intensive individualized inquiries. Plaintiffs' own expert found that a significant percentage of potential class members *also* bought Enlightened during the *Retta* period. This means each class member will be required to demonstrate *both* that they purchased during the class period, and that they did *not* during the *Retta* period.

*Typicality.* Plaintiff Nunez, the sole representative of the class aged 18-21, is atypical and subject to unique defenses. Plaintiffs ask the court to assume no person under 21 would intentionally buy or consume beverages above 0.5% ABV, but that is not the case for Nunez, which raises atypical individualized materiality defenses.

*Injunction Class.* Plaintiffs lack standing to seek injunctive relief, requiring denial.

**III.   Plaintiffs: The proposed classes and subclasses.**

Joint Brief on Plaintiffs' Renewed                3          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs request certification of the following classes and subclasses:

California Class: All persons who purchased Enlightened Kombucha in California between February 28, 2017, and the date that class notice is disseminated, and who did not purchase Enlightened Kombucha between March 11, 2011, and February 27, 2017 (the settlement class period in *Retta et al. v. Millennium Products, Inc.*, No. CV15-1801 (C.D. Cal.)).[1]  The proposed class representatives are Amit Patel and Christopher Nunez.

California Underage Subclass: All members of the California Subclass who purchased Enlightened Kombucha while at least 18 and under 21 years of age.  The proposed subclass representative is Christopher Nunez.

New York Class: All persons who purchased Enlightened Kombucha in New York between February 28, 2017, and the date that class notice is disseminated, and who did not purchase Enlightened Kombucha between March 11, 2011, and February 27, 2017 (the settlement class period in *Retta et al. v. Millennium Products, Inc.*, No. CV15-1801 (C.D. Cal.)).  The proposed class representatives are Lauren Schmidt and Christopher Nunez.[2]

New York Underage Subclass: All members of the New York Subclass who purchased Enlightened Kombucha while at least 18 and under 21 years of age.  The proposed subclass representative is Christopher Nunez.

## IV.    The requirements of Rule 23(a).

### A.    Plaintiffs: Numerosity is satisfied.

Defendant sold tens of millions of Enlightened Kombucha bottles during the class period.  *E.g.*, Exs. 1-2 (Appx. 16-19) (wholesale numbers).  This satisfies numerosity.  *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011) (forty is enough).

### B.    GT's: Plaintiffs Do Not Satisfy Numerosity.

Plaintiffs show, at most, 19 tested bottles contained excessive alcohol and sugar, and nothing competent as to any other bottle. *Infra* §§ V.A.6. That is not enough

---

[1] The Court ruled that it lacks jurisdiction over *Retta* class members. Dkt. 178 at 4.

[2] Mr. Nunez purchased Enlightened Kombucha, while underage, in both California and New York. Nunez Decl. (Appx. 7) ¶ 2.

Joint Brief on Plaintiffs' Renewed            4            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

**C.     Plaintiffs: There are common questions of law and fact.**

Commonality requires only "a single significant question of law or fact." *Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856, at *13 (C.D. Cal. Apr. 14, 2022) (Olguin, J.) (quotation omitted).  This case presents numerous common issues of law and fact. These include whether Defendant's labels convey to reasonable consumers that Enlightened Kombucha is not an alcoholic beverage, whether Defendant's labels make representations and express warranties about the sugar levels, whether Enlightened Kombucha is an alcoholic beverage, whether it contains more sugar than represented, and the materiality of these facts to a reasonable consumer.  *See infra* §§ V.A-C.

**D.     GT's: Plaintiffs fail to show common answers.**

Plaintiffs misstate the commonality standard. They must "prove—not simply assert" commonality. *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1260 (9th Cir. 2024). "[I]t is not enough to merely raise common questions or issues to satisfy Rule 23," as Plaintiffs do above. *Id.* Rather, "plaintiffs must 'be prepared to prove'" "questions that are 'central to the validity' of the claims and capable of being resolved 'in one stroke,'" i.e., "on a class-wide basis," by a "preponderance of actual evidence." *Id.* at 1258-60. The court "must engage in a 'rigorous analysis' of commonality[.]" *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986 (9th Cir. 2020). As discussed below (where Plaintiffs discuss their evidence), Plaintiffs cannot establish common methods to determine: (1) deception; (2) elevated alcohol and sugar levels; or (3) materiality, *infra* §§ V.A.4, .6, .8.

**E.     Plaintiffs: Plaintiffs are typical.**

Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *20 (quotation omitted).

Here, each class member's claims (including Plaintiffs') arise from the same course of events: Defendant's sales of kombucha containing more than 0.5% alcohol as a non-alcoholic beverage, and misrepresentations about sugar content.  And each class member will make the same legal arguments: that Defendant's misrepresentations and omissions

Joint Brief on Plaintiffs' Renewed             5           Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

were illegal, unfair, and deceptive to reasonable consumers.

In addition, Plaintiffs—like all proposed class members—were not *Retta* class members because they started buying Defendant's kombucha after February 27, 2017. Plaintiff Decls. (Appx. 1-9) ¶ 2; Ex. 3 (Appx. 21) (Patel Dep.) 55:24-56:10; Ex. 4 (Appx. 27) (Schmidt Dep.) 77:12-78:11, 79:6-18; Ex. 5 (Appx. 35) (Nunez Dep.) 96:10-97:10, 98:7-19, 145:15-146:10.  And Mr. Nunez—like the rest of the proposed underage subclasses—purchased Defendant's kombucha when he was between 18 and 21 (in both California and New York).  Nunez Decl. (Appx. 7) ¶ 2; Ex. 5 (Appx. 35) (Nunez Dep.) 155:12-156:13.

### F.    GT's: Plaintiffs Are Atypical.

*First*, no Plaintiff has evidence they purchased any products with actually elevated levels of sugar or alcohol, meaning they are atypical. *Infra* § V.A.6. *Second*, Plaintiff Nunez's claims are atypical of the underage classes (the 18-21 class(es)), as he is subject to unique defenses. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Plaintiffs ask the Court to assume no person under 21 would intentionally buy or consume alcoholic beverages, but that is not the case for Nunez, which raises individualized materiality defenses and makes him atypical. *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *7 (N.D. Cal. June 13, 2014). Nunez testified that even when he was under 21 (during the class period), he was a heavy and frequent drinker. Ex. 36 (App. 2026) (Nunez) 7:25–8:1, 50:21–52:19, 53:24-9. He consumed 3-5 drinks per event, up to 6-10 drinks per week, and admitted that when consuming beverages "the specific alcohol content was not important to" him. *Id.* 50:21–52:21; 53:24-9; 60:5-22.

### G.    Plaintiffs: Plaintiffs and their counsel are adequate representatives.

Adequacy involves two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quotation omitted).  Neither Plaintiffs nor counsel have conflicts of interest with other class members, and they will vigorously

prosecute the case.  Plaintiff Decls. (Appx. 1-9) ¶ 3; Franzini Decl. (Appx. 10) ¶¶ 2-5.

The Court previously expressed adequacy concerns about plaintiffs and counsel who were involved in the *Retta* litigation.  Dkt. 129.  They are no longer part of this case.  This motion is brought by new plaintiffs and counsel who had nothing to do with *Retta. See* Dkt. 178 at 4-5 (rejecting Defendant's *Retta* arguments as to the new Plaintiffs).  Prior *Retta* counsel withdrew and is no longer involved, and there is no fee-sharing agreement with prior counsel.  Dkt. 141-144; Ex. 6 (Appx. 48) (2/19/26 Franzini Decl.) ¶¶ 6-7.[3]

## H.    GT's: Plaintiffs and counsel are not adequate representatives.

New class counsel perpetuates the same adequacy concerns that led to former counsel's withdrawal, Dkt. 129 at 5-6, by entering a side deal that prevents them from opposing fees for former counsel, even if class interests require it—a direct conflict.

The Court previously raised concerns about former counsel's inconsistent representations to the *Retta* court regarding the adequacy of the Enlightened warning label at issue here. Dkt. 129 at 3. After former counsel withdrew, Dovel entered into side deals preserving former counsel's right to financially benefit from this litigation. The second deal (1) authorized former counsel to apply for fees or "propose any basis for recovery of fees" and (2) agreed that withdrawal of counsel "shall not preclude [their] rights to be compensated for work done," including "in *quantum meruit* if for some reason a proportionate division is not permitted by the Court." Ex. 8 (App. 58).

Dovel restricted its ability to represent the class. By agreeing former counsel may

_____

[3] Before taking over this case, current counsel initially entered an agreement contemplating that they would work with prior counsel to prosecute this case, and share fees in proportion to their contributions. Ex. 7 (Appx. 52). But a week later—to fully eliminate the Court's adequacy concerns—current counsel and prior counsel entered a second agreement that "specifically supersede[d]" the prior agreement. Ex. 8 (Appx. 58) at 2. That second agreement, which remains in force, states that current counsel is fully responsible for representing Plaintiffs and the putative class, calls for prior counsel to withdraw, and does not provide for any fee sharing (instead, if prior counsel wishes to seek compensation for prior work, it must "apply to the Court for an award of costs or fees"). *Id.* at 1-2. Consistent with that agreement, prior counsel withdrew and has not been involved since. Dkt. 141-144; Ex. 6 (Appx. 48) (2/19/26 Franzini Decl.) ¶¶ 6-7.

Joint Brief on Plaintiffs' Renewed                    7                    Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

apply for fees and "shall not" be "preclude[d]" from compensation, Dovel tied its hands and will not be able to oppose any motion for fees from former counsel, even if in the interests of the class as a whole.[4] That creates divided loyalties and places them at odds with the putative class's interests, making them inadequate. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (class counsel "responsibility … does not permit even the appearance of divided loyalties of counsel."); *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1167-68 & n.6 (9th Cir. 2013) (agreement created divergent potential "independent conflict of interest because of the fee-sharing agreement" among counsel).

## V.    The requirements of Rule 23(b)(3).[5]

### A.    Predominance as to the central issues in the case.

#### 1.    Plaintiffs: The central issues are capable of classwide resolution.

Predominance is satisfied when "one or more of the central issues in the action are common to the class and can be said to predominate." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *27 (quotation omitted).  Common questions predominate when they are "more prevalent or important" than individual questions.  *Id.*  A district court cannot "decline to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir. 2022).

When addressing predominance, courts do not consider "whether the evidence in fact establishes that plaintiffs would win at trial." *Id.* at 667.  Rather, the court is "limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution."  *Id.*  So "a district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and

---

[4] Dovel refuses to produce either (1) copies of side deals that contain Plaintiffs' acknowledgement signatures or (2) Plaintiffs' retainer agreements. Dkt. 191 at 3-4. In light of the concerns above, those agreements are necessary for the Court to analyze adequacy. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 957-60 (9th Cir. 2009).

[5] Plaintiffs seek to certify a Rule 23(b)(3) damages class only on the alcohol claims. The sugar claims are part of Plaintiffs' request for a Rule 23(b)(2) injunction class.

Joint Brief on Plaintiffs' Renewed            8            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.*

Here, the central issues in this case are (1) the contents of Defendant's labels, and what they conveyed to a reasonable consumer; (2) whether Enlightened Kombucha contains more than 0.5% alcohol; and (3) whether the deceptive labeling would be material to a reasonable consumer. Each of these questions can be resolved classwide.

### 2.    GT's: Predominance (and commonality) bars class certification.

Plaintiffs cannot satisfy commonality or predominance as to (1) deception, (2) falsity, (3) materiality, (4) damages, or (5) *Retta* class membership. "Showing predominance is difficult, and it regularly presents the greatest obstacle to class certification." *Black Lives Matter*, 113 F. 4th at 1258. Courts "*must* consider the merits [of the claims] if they overlap with Rule 23 requirements." *Id.* at 1261 n.1. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense," certification should be denied. *Zinser v. Accufix Rsch. Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

### 3.    Plaintiffs: The Enlightened Kombucha labels were materially identical for all class members.

Defendant's labeling was materially identical throughout the class period. *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 366 (N.D. Cal. 2018) (predominance satisfied where "the representations on the product's packaging were substantially similar throughout the class period"). None of the labels disclosed that Enlightened Kombucha contains more than 0.5% alcohol, that it is classified as an alcoholic beverage, or that it is illegal for minors to purchase. Ex. 9 (Appx. 63) (Enlightened labels); Ex. 10 (Appx. 91) (GT Dave Dep.) 123:25-125:17. None of them included the government warning required for alcoholic beverages. Ex. 10 (Appx. 91) (GT Dave Dep.) 104:11-15. And they all contained the same tiny disclosure that kombucha "has naturally occurring alcohol." Ex. 11 (Appx. 107) at 12 (Interrogatory 8). As Defendant admits, "the label used for each of the flavors in its Enlightened/Synergy line of kombucha products (including those flavors newly introduced during the putative class period) has remained materially identical since February 28, 2017 with regard to the flavor-specific label's

Joint Brief on Plaintiffs' Renewed                    9                    Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

disclosure of the presence of alcohol and the amount of sugar in each serving." *Id.* at 11.

What these materially identical labels conveyed is "evaluated according to an objective 'reasonable consumer' standard." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1100 (N.D. Cal. 2018). Under this objective test, there is "no need to inquire into each class member's unique circumstances." *Id.* at 1101 (quotation omitted). So what Defendant's labels conveyed can be determined using common evidence about what a reasonable consumer—not any individual class member—would understand.

Plaintiffs have already put forward such common evidence, consisting of the labels themselves and expert testimony. Mr. Silverman opines that, based on Defendant's advertising, reasonable consumers would think that Enlightened Kombucha was not an alcoholic beverage. Ex. 12 (Appx. 129) (Silverman Rep.) ¶¶ 32, 34-48. This testimony, and the labels themselves, are common proof applicable to the entire class.

### 4. GT's: No commonality or predominance as to deception.

Plaintiffs cannot satisfy commonality or predominance as to deception for alcohol claims, or commonality for their sugar claims. "The question of likely deception … does not automatically translate into a class-wide question," as Plaintiffs suggest. *Moore v. Mars Petcare US*, 2024 WL 4336602, at *4 (N.D. Cal. Sept. 27, 2024).[6] In addition to classwide exposure, "Plaintiffs must point to common evidence that could establish the alleged misrepresentations' likelihood of deception on a classwide basis." *Gross v. Vilore Foods Co.*, 2022 WL 1063085, at *5 (S.D. Cal. Apr. 8, 2022). They fail to do so, requiring denial.

**ALCOHOL.** For alcohol, Plaintiffs rely entirely Silverman's report, which cannot withstand "rigorous analysis" or apply classwide. *Grodzitsky*, 957 F.3d at 986. Rather, Silverman's testimony confirms individualized inquiries predominate for deception.

Silverman improperly ignores Enlightened's alcohol disclosure altogether, based on his false assumption reasonable consumers do not read it. Ex. 12 (App. 129) ¶¶ 45, 62-69,

---

[6] Plaintiffs mistakenly cite to the materiality discussion (not deception) in *In re Arris*, 327 F.R.D. at 366, addressed below. Their other cited case, *Hadley*, 324 F. Supp. 3d at 1100, actually held class-wide exposure to a label statement *could not* be inferred.

Joint Brief on Plaintiffs' Renewed         10         Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

71. He contends consumers perceive "alcoholic" and "non-alcoholic" beverages as "black-and-white": "Usually, the indication of a non-alcoholic is the omission of anything that would say it's alcoholic." Ex. 40 (App. 2095) 21:12-22:4. He thus argues reasonable consumers see the omission of a federal warning to mean the product does not contain alcohol. Ex. 12 (App. 129) ¶ 50.  This cannot satisfy Plaintiffs' burden for several reasons.

*First*, all named plaintiffs *did* in fact read the alcohol disclosure before purchasing Enlightened, and so were aware it "has" alcohol and they should "not consume [it] if [they're] avoiding alcohol." Ex. 36 (Nunez) (App. 2026) 42:7-23; Ex. 35 (Patel) (App. 1997) 58:11-59:9, 122:5-124:1; Ex. 37 (Schmidt) (App. 2057) 140:18-142:18. Thus, some reasonable consumers *do* in fact read the statement.[7] Judge Gutierrez's holding that the alcohol disclosure is sufficient to notify consumers about alcohol content likewise precludes his classwide opinion. *Retta*, 2017 WL 5479637, at *8.

*Second*, Silverman's own reasoning shows his conclusions cannot apply classwide. While contending all consumers would miss the side label disclosure placement, Ex. 12 (App. 129) ¶¶ 64-65, he admits "some" consumers" do "turn the bottle to the side" to read the label. Ex. 40 (App. 2095) at 241:14-20; Ex. 12 ¶ 52. The federal warning likewise can appear on the side or even back label. 27 C.F.R. § 16.21; *e.g.*, Ex. 12 (App. 129) ¶ 66.

*Third*, for those consumers who *do* read the disclosure, Silverman's testimony offers no common proof of deception. He does not "know" how consumers understand it, let alone as compared to the federal warning, Ex. 40 (App. 2095) 94:21-95:7, 98:17-99:17. Rather, he testified consumers would understand it differently. *Id.* at 96:3-97:6 ("some" would understand there's a "small amount of alcohol," but "others might not"), 99:4-17 (understanding "depend[s] on … level of sophistication"). He testified "most consumers" do not know the minimum ABV for the federal warning and don't "think"

---

[7] Silverman did not interview kombucha drinkers, Ex. 40 (App. 2095) 43:23-25, look at consumer research on drinking preferences, *id.* 142:5-16, has no experience with kombucha advertising or marketing, *id.* 43:11-17, admitted it is "different" from other alcoholic beverages, *id.* 59:24-60:12, and conceded the Pabst example in his report was from 1987, *id.* 180:14-23. He should be excluded as set forth in GT's concurrent motion.

Joint Brief on Plaintiffs' Renewed                11                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

about "percentages." *Id.* at 21:12-22:4, 71:23-72:3, 73:3-74:2. This is a critical admission, because the federal warning also does not identify a specific amount of alcohol. *Id.* at 75:10-76:19.

**SUGAR.** Plaintiffs do not mention common proof of their sugar claims, and thus fail to meet their burden. *Black Lives Matter*, 113 F.4th at 1260 (plaintiffs must "prove— not just assert" commonality). To the extent they rely on the Silverman declaration, that fails too, for the reasons discussed for materiality, *infra* § V.A.8, and falsity, *infra* § V.A.6.

**5.    Plaintiffs: That Enlightened Kombucha is an alcoholic beverage is subject to common proof.**

An alcoholic beverage is "any beverage in liquid form which contains not less than one-half of one percent (.5%) of alcohol by volume and is intended for human consumption." 27 C.F.R. § 16.10.  Plaintiffs will show that Enlightened Kombucha is an alcoholic beverage using common proof: Dr. Spedding's opinion that "100% of Enlightened Kombucha sold in the United States since at least 2015 has contained more than 0.5 percent alcohol by volume at the retail level." Ex. 13 (Appx. 192) (Spedding Rep.) ¶ 19.  This is common proof applicable to the entire class.

Dr. Spedding's opinion is "[b]ased on [his] own testing, and a review of the recent literature and studies concerning the alcohol content of Enlightened Kombucha." *Id.* ¶ 39.  He tested over 40 bottles of Enlightened Kombucha between 2015 and 2021. *Id.* ¶ 20.  These bottles were purchased at retail, refrigerated, and tested before their expiration dates. *Id.* ¶¶ 21-22.  "100 percent of the samples tested over the six year period were over the legal limit of 0.5 percent alcohol by volume for purported non-alcoholic." *Id.* ¶ 24.

Dr. Spedding's results are consistent with other testing.  His review showed that "all experts in the field that have tested the alcohol level of Enlightened Kombucha purchased from retail locations have uniformly found that the beverages contain more than 0.5 percent alcohol by volume." *Id.* ¶ 29; *see id.* ¶¶ 29-39; *Cadena v. Am. Honda Motor Co.*, 2025 U.S. Dist. LEXIS 264956, at *53 (C.D. Cal. Dec. 3, 2025) ("[I]t is not error for an expert to extrapolate opinions from data or information handed to him ...."). Thus,

Joint Brief on Plaintiffs' Renewed          12          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

"[w]ell over a hundred samples of Enlightened Kombucha tested over the last six years, purchased from different retail locations around the country, from different lot codes, tested using different methodologies by different laboratories and experts, have all come to the same conclusion: every Enlightened Kombucha at the retail level contains more than 0.5 percent alcohol by volume." Ex. 13 (Appx. 192) (Spedding Rep.) ¶ 39.

Dr. Spedding's testing and review of other studies—both of which show that 100% of Enlightened Kombucha tested at retail contained more than 0.5% alcohol—exceed the standards for class certification. Plaintiffs need not prove that "all or nearly all class members were *in fact injured*." *Olean*, 31 F.4th at 680. Even "more than a de minimis number of uninjured class members" does not defeat predominance. *Id.* at 669; *see id.* at 680 (class certification proper despite argument that 28% of the class was uninjured). So Plaintiffs need not show that every bottle sold exceeded 0.5% alcohol. But they do.

Moreover, "the focus is on the method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1028 (9th Cir. 2024) (cleaned up). Courts do not perform an "actual weighing, at class certification, of whether plaintiffs' evidence could sustain a jury verdict." *Id.* Here, Dr. Spedding's testing and his review of other studies are valid methods to prove that Enlightened Kombucha exceeds 0.5% alcohol when sold at retail. Whether his opinions are "probative as to all purchasers in the class … is a question of persuasiveness for the jury." *Olean*, 31 F.4th at 681 (quotation omitted).

Finally, Plaintiffs' evidence that 100% of Enlightened Kombucha tested *at the retail level* contained more than 0.5% alcohol is unrebutted. Retail is where Defendant makes the misrepresentations and omissions at issue to consumers and where consumers buy Enlightened Kombucha. So what matters is whether the representations and omissions were true at retail. But Defendant has never tested Enlightened Kombucha's alcohol level at retail, and its expert has no opinion about its alcohol level at retail. Ex. 10 (Appx. 91) (GT Dave Dep.) 229:24-230:7; Ex. 15 (Appx. 246) at 12 (RFA 11); Ex. 16 (Appx. 262) (McCarroll Dep.) 105:3-10. It was "not reasonable for GT's to rely on the testing results

Joint Brief on Plaintiffs' Renewed          13          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

from its commissioned labs if GT's wanted to know the actual alcohol by volume content of Enlightened Kombucha at retail." Ex. 14 (Appx. 229) (Spedding Rebuttal Rep.) ¶ 28. In any event, whether retail is the right time to test alcohol content is a merits issue that can be resolved classwide. So this dispute supports (rather than undermines) certification.

### 6. GT's: Alcohol and sugar content cannot be shown by common proof, and individual inquiries predominate as to alcohol.

In contrast to Plaintiffs' sparse and incomplete alcohol and sugar tests from over five years ago, GT's has produced extensive testing—as ordered by the *Retta* court—from the entire class period showing the products (a) uniformly test below 0.5% ABV and 120% sugar, and (b) vary between products and bottles depending on ingredients and storage. *Plaintiffs have not even tried to update their testing to account for changes to the product line in the five years since their last test*. Nor do they offer any reliable methodology for determining, on a classwide basis, the alcohol or sugar content of dozens of flavors of Enlightened sold in two states over an extended period. Even if they could, individualized inquiries as to whether class members purchased Kombucha bottles that *actually* had elevated alcohol or sugar preclude finding that class issues predominate.

### a. Alcohol and sugar content is not subject to common proof.

Plaintiffs' incomplete and flawed evidence offers no way to establish "in one stroke" that Enlightened had elevated alcohol or sugar "classwide." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). They can't show common falsity or Article III standing.

**Alcohol.** Plaintiffs' sole evidence is Dr. Spedding's report. Even if not excluded, he provides no common methodology that accounts for storage and ingredient variation across the product lines, nor can his sparse testing be extrapolated to suggest any classwide result. *First*, the testing is too limited. He tested 27 bottles from the class period, only 19 of which were from California and none from New York. Ex. 41 (App. 2165) (Spedding Dep.) 223:24-226:17; Ex. 44 (App. 2219) (McCarrol Reb.) 3-5.[8] *Second*,

---

[8] Spedding also tested 17 bottles from the *Retta* class period, which predate the formula changes to Enlightened. Dave 2026 Decl. (App. 898) ¶ 6. And while Spedding

Joint Brief on Plaintiffs' Renewed                14                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

the tests are too remote in time. The last was in 2021, many were of discontinued products, and he never tested the many other (at least 18) Enlightened products sold since that time. Dave 2026 Decl. (App. 898) ¶¶ 8-10. *Third*, his testing fails to account for Enlightened's dynamic nature. Spedding did not test the temperatures of his limited samples either at the point of sale or when they arrived at his lab. Ex. 44 (App. 2219) (McCarrol Reb.) 4, 5; Ex. 41 (App. 2165) (Spedding Dep.) 82:11-20, 198:3-20, 223:24-226:17, 224:18-20. *Fourth*, he was sloppy: the 19 California bottles (the only relevant samples) were shipped by former counsel in a single package; 7 were leaking on arrival; and he has no way of knowing if they were consistently refrigerated. Ex. 41 (App. 2165) (Spedding Dep.) 223:15-226:17.

These failures are critical: There is no way to evaluate alcohol content without testing each flavor and accounting for its refrigeration and storage.[9] Ex. 27 (App. 854) (McCarroll Rep.) 19-21, 25 n. 81; Ex. 44 (McCarroll Rebut.) 6-7. Certification requires showing the class was "actually exposed to the business practices at issue." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014); *see also Grodzitsky v. Am. Honda Motor Co.*, 2014 WL 718431, at *3 (C.D. Cal. Feb. 19, 2014) (denying certification because "the question 'is there a defect?' would not be capable of generating a common answer-yes or no."); *In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 133 (2009). In contrast, GT's has, for the entire class period, commissioned regular third-party tests of *every* Enlightened flavor, with only one bottle testing above 0.5% ABV. Ex. 39 (App. 2091) (Dave Dep. 2021) 267:16-22); Ex. 38 (App. 2082) (Dave Dep. 2018) 61:15-62:22; 70:9-71:6; 77:9-78:3; 80:4-22; Dave Decl. 2026 (App. 898) ¶¶ 6-7 & Ex. 28; Ex. 27 (App. 853) (McCarrol Report) 4-5, 21-22, 24-26 & Ex. 3; Ex. 32 (App. 1548) (Old tests). To the extent any bottles exceed

cites the conclusions of expert reports in other litigation, "such reliance by an expert upon an excerpt from an opinion by another expert generated for the purposes of another litigation is improper" and "therefore inadmissible." *In re Imp. Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003), *aff'd*, 145 F. App'x 218 (9th Cir. 2005).

[9] Former counsel acknowledged varying alcohol levels meant some class members potentially received non-alcoholic beverages below" 0.5% ABV, which "would present issues as to commonality and predominance at class certification." 2017 WL 5479637, at 4.

Joint Brief on Plaintiffs' Renewed Motion for Class Certification          15          Case No. 2:19-cv-10920-FMO-DSRx

0.5% ABV at retail, it is likely the product of poor refrigeration. *Id.*

Spedding did not attempt to account for refrigeration of the tested product, and has no way of doing so, even after conceding that alcohol increases are "very small" when kombucha is properly refrigerated. Ex. 44 (App. 2219) (McCarrol Reb. Rep.) 4,5; Ex. 41 (App. 2165) (Spedding Dep.) 82:11-20; 192:9-14; 203:23-204:2; Ex. 45 (App 2262) (Spedding II) 176:1-14. Nor did he attempt to test every flavor, while admitting fermentation "depends and varies, in large degree, based on the specific ingredients used for a specific flavor" of the kombucha at issue, such that to "understand how a particular flavor is impacted by continued fermentation, you have to have a set of tests that are all on that flavor." *Id.* 251:7-25.

**Sugar.** For the same reasons, Plaintiffs identify no way to evaluate sugar content across the class. Spedding cannot account for the many GT's tests showing sugar within FDA thresholds, and his own tests showed significant variation between products: 30% of the samples had sugar levels within FDA's threshold. Ex. 13 (App. 192) (Spedding Rep.) ¶¶ 47, 47; 21 C.F.R. § 101.9(g)(5). Plaintiffs fail commonality for the sugar claims.

**Standing.** Plaintiffs who purchased Enlightened bottles without elevated sugar or alcohol did not suffer concrete injury and so do not show Article III "injury is capable of being established through a common body of evidence, applicable to the whole class." *In re Apple iPhone Antitrust Litig.*, 2025 WL 3124160, at *15 (N.D. Cal. Oct. 27, 2025).

### b. Individual inquiries as to alcohol content predominate.

Plaintiffs fail to prove "by a preponderance of the evidence that . . . a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023). Individualized inquiries into alcohol content will be necessary for each class member to determine whether the label is deceptive, and whether they suffered an Article III injury. Where a meaningful share of purchasers are uninjured, individualized issues predominate. *Olean*, 31 F.4th at 669-72*; Zinser*, 253 F.3d at 1189, 1192 (individualized inquiries of product variation and handling to decide damages defeats predominance and superiority).

Joint Brief on Plaintiffs' Renewed Motion for Class Certification          16          Case No. 2:19-cv-10920-FMO-DSRx

Defendant will be entitled to probe whether individual class members' products actually had elevated alcohol.[10] *See Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025) ( "denying [Defendant]" the right to raise individualize issues "would seem to violate due process"); *Van*, 61 F.4th at 1067. This will require testimony and documents to determine what, when, and where class members purchased, and whether they experienced any effect suggesting elevated alcohol content.[11] Such consumer-by-consumer, or product-by-product, inquiries bar predominance. *See Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138-39 (9th Cir. 2022) (vehicle-specific variables required individualized injury determinations); *Tietsworth v. Sears, Roebuck & Co.*, 2013 WL 1303100, at *6 (N.D. Cal. Mar. 28, 2013) (individualized questions predominated with respect to whether each putative class member experienced claimed product flaw ).

### 7. Plaintiffs: Materiality and reliance are subject to common proof.

"Questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs." *Kumar v. Salov N. Am. Corp.*, 2016 U.S. Dist. LEXIS 92374, at *21 (N.D. Cal. July 15, 2016). Under this "objective standard, the materiality of [Defendant's] alleged misrepresentations and omissions is a question common to all members of the class." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) (quotation omitted).

And although "proof of materiality is not a prerequisite to class certification,"

---

[10] Plaintiffs argue their evidence that "100% of Enlightened Kombucha tested *at the retail level* contained more than 0.5% alcohol is unrebutted," but this ignores the Rebuttal Report of Dr. McCarroll and significantly overstates the sparse, insufficient evidence they have produced. *Supra* § V.A.6. *See Groditsky*, 957 F.3d at 986 ("rigorous analysis" of whether expert evidence satisfies commonality is required).

[11] Plaintiffs misleadingly suggest *Olean*, 31 F.4th at 669, holds class certification may be appropriate "despite argument that 28% of the class was uninjured." *Supra*. But *Olean* did not resolve whether, as requirement of Article III standing, *all* plaintiffs are required to demonstrate standing before class certification, because it concluded that all plaintiffs had in fact done so. *Olean,* 31 F.4th at 682. The Ninth Circuit later held class certification was *not* appropriate due to predominance, where evidence demonstrated that just *18* of 13,680 plaintiffs had been discounted and so had no claim, because that raised the possibility that inquiry into *each* claim might be necessary. *Van*, 61 F.4th at 1068-69.

Joint Brief on Plaintiffs' Renewed          17          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs have it. *Id.* (quotation omitted). Mr. Silverman opines that the absence of the required government warning on the label "would be material to a reasonable consumer, as it would indicate to him or her that the product did not contain alcohol at all, or if it did, that the percentage of alcohol would be so low that it would not require the surgeon general's warning label." Ex. 12 (Appx. 129) (Silverman Rep.) ¶¶ 50, 58.

This Court has already held that Defendant's deception is material because whether its kombucha is an alcoholic beverage goes to "the very nature or an inherent quality or characteristic" of the product. *Tortilla Factory, LLC v. GTs Living Foods, LLC*, 2020 U.S. Dist. LEXIS 219851, at *2 (C.D. Cal. Sept. 11, 2020) (Olguin, J.) (quotation omitted). Furthermore, the Court was "unpersuaded that kombucha-purchasing consumers … would not find the alcohol or sugar content in the drink to be material." *Id.* at *2-3.

For the same reasons, causation (i.e., reliance) is subject to common proof for claims requiring it. "'[C]ausation, on a classwide basis, may be established by materiality,' so that 'if the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'" *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *30-31 (quotation omitted). "[C]lass members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements." *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254 (9th Cir. 2018); *see, e.g.*, *Arris*, 327 F.R.D. at 366 (rejecting argument that the court had to "conduct individualized inquiries to discover which class members read the box and warranty information," and citing cases).

**8.    GT's: Materiality, reliance, and causation preclude certification.**

Plaintiffs failed to identify common proof of materiality, *supra* § V.A.4. Courts deny certification where materiality evidence falls short. *E.g.*, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011) (identifying "myriad reasons" someone might not be misled or influenced by the alleged omissions); *Shanks v. Jarrow Formulas, Inc.*, 2019 WL 4398506, at *4-7 (C.D. Cal. Aug. 27, 2019) (defendant's evidence "rebut[ted] any

presumption" of materiality).[12] The same result is warranted here.

### a. No classwide materiality: alcohol omission.

Plaintiffs again rely on Silverman; his opinions fail for five independent reasons.[13]

*First*, Silverman's opinions do not apply classwide, as they are premised on the incorrect assumption that reasonable consumers did not read the alcohol disclosure, as detailed *supra* § V.A.4. *See Townsend v. Moster Bev. Corp.*, 303 F. Supp. 3d 1010, 1032 (C.D. Cal. 2018) (striking materiality expert declaration based "assumption").

*Second*, Silverman's opinion fails to address whether consumers who *have* read the alcohol disclosure, like named Plaintiffs, would consider the federal warning omission material. *Supra* § V.A.4. Even assuming consumers understood the federal minimum is 0.5% ABV (Silverman says they do not), would they find a disclosure that the product contains 0.6% or 1%, rather than 0.1-0.49%, material? Ex. 40 (App. 2095) (Silverman) 71:22-72:3, 73:3-10, 73:25-74:2; Ex. 36 (App. 2026) 42:15-42:7 (Nunez knew 0.5% cutoff); Ex. 35 (App. 1997) 123:18-124:1 (Patel did not know). Silverman cannot answer that question, as he did not consider the potential ranges of ABV at all. *Id.* 21:12-22:4 ("I think, to consumers, it's not so much a matter of the percentages … it's either indicated to be an alcoholic beverage or … a non-alcoholic beverage."). This fails Rule 23(a).

---

[12] Plaintiffs' authority focusing on consumer intent is irrelevant. *Bradach*, 735 F. App'x at 254-55 (concerning customer "motives"); *In re Arris*, 327 F.R.D. at 366 (concerning whether each class "member[] read the box"). Their other authority is likewise inapposite. *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *11 (C.D. Cal. Apr. 14, 2022) (materiality satisfied for supplement efficacy claims, as plaintiffs "would purchase a product that does not work"); *Tortilla Factory, LLC v. GTs Living Foods, LLC*, 2020 WL 6782056, at *1 (C.D. Cal. Sept. 11, 2020) (denying summary judgment in competitor case based on the Lanham Act's distinct materiality rules); *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *7-8 (N.D. Cal. July 15, 2016) (plaintiff satisfied burden with market research evidence, industry research, and price premium evidence).

[13] *DZ Reserve*, 96 F.4th at 1234, did not eliminate the requirement of common proof of materiality (nor can it overrule *Stearns*). *DZ* recognizes "a case may be unsuited for class treatment if there was a material variation … in the kinds or degrees of reliance" (as here), and district courts have continued deny certification on this basis after *DZ*. *E.g.*, *Klein v. Dr. Ing. h.c.F. Porsche AG*, 2025 WL 2992172, at *11 (C.D. Cal. Oct. 22, 2025).

Joint Brief on Plaintiffs' Renewed          19          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Third*, GT's *unrebutted* survey evidence shows materiality *cannot* be resolved with common evidence, as many consumers did not find the omission material. *See Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) (survey showed materiality not subject to common proof); *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 546 (N.D. Cal. Oct. 27, 2021) (court must "judge the persuasiveness" of "conflicting evidence" and "resolve any factual disputes" necessary). Expert Hal Poret conducted a 600 respondent survey, where the control group saw a 360° view of the current label, and test group an altered label with the federal warning and other alcohol-related disclosures. Ex. 24 (App. 664) (Poret Rep.) at 4, 8-24. There was no statistically significant difference in willingness to buy the product between the actual label and the federal warning label. *Id.* at 25, 45. And only 1.3% of respondents who saw the federal warning mentioned alcohol as a reason they would be unlikely *or likely* to purchase the Kombucha. *Id.* at 26. These figures demonstrate materiality is not susceptible to common proof. *See Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *13 (C.D. Cal. Mar. 8, 2016) (Olguin, J.) (no common evidence of materiality where survey showed 6% of consumers found statement material).

*Fourth*, Silverman's opinion that consumers don't buy products that expose them to "criminal liability" also fails. It too ignores the alcohol disclosure. Ex. 12 (App. 129) ¶ 59. And, consumers *do* regularly buy and consume alcoholic beverages; it is not illegal to do so. For example, another Enlightened purchaser testified "the amount of alcohol in a kombucha does not stop [her] from purchasing the product," and continued purchasing it, even after learning it might contain over 0.5% ABV. Ex. 43 (App. 2200) 171:21-172:2, 75:1-19, 126:16-128:3, 144:20-25, 155:7-21. Even at the Plaintiffs' claimed levels of alcohol (0.6%-2.2%), which Silverman fails to consider at all, there is no risk of approaching anything near the legal driving limits. *See* Ex. 24 (App. 854) (McCarroll) 6-7; *infra* § V.C.10. And any purported risk of "criminal liability" did not stop Plaintiffs from consuming alcoholic beverages when they were under 21. *E.g.*, Ex. 35 (App. 1997) (Patel) at 7:17-18, 111:3–14; 133:9–18; Ex. 37 (App. 2057) (Schmidt) at 118:13-119:15, 121:24-122:6; Ex. 36 (App. 2026) (Nunez) 7:25–8:1, 50:21–52:19, 53:24-9. Nunez even testified "specific

Joint Brief on Plaintiffs' Renewed     20     Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

alcohol content was not important to" him at the time. *Id.* at 25–8:1, 50:21–52:19; 53:24-9; 60:5-22. As buyers have different preferences, individual inquiries predominate.

**Fifth**, Silverman's opinions fail to address the other reasons consumers purchase kombucha, which also precludes materiality, including the brand, Ex. 12 (App. 129) ¶¶ 74–76; health benefits, flavor, and price. *Id.* ¶ 81 ("most important factors" are "taste[]" and "health[]"); Ex. 40 (App. 2095) (Silverman Dep.) 197:21-200:25, 202:23-203:18. *See Jones*, 2014 WL 2702726, at *15-16 (no common materiality where expert failed to assess other purchasing factors); *In re 5-Hour Energy*, 2017 WL 2559615, at *7 (same).

### b. No Classwide Materiality: Sugar Content

For sugar, Plaintiffs identify no common evidence to satisfy Rule 23(a). To the extent they rely on Silverman, his opinions do not fit the claims here, and he concedes sugar preferences differ among consumers—establishing no common proof exists.

**First**, Silverman's materiality opinion has no bearing on sugar claims. He does not opine that consumers read or rely upon the sugar disclosure in the nutrition facts panel, or even find it material. Instead, he opines that if consumers learn of discrepancies in sugar content *after purchase*, they consider that "material." Ex. 12 (App. 129) ¶¶ 87-88. That does not fit Plaintiffs' claims, which require material deception, i.e., a statement customers read and upon which they base their purchase. *See, e.g.*, *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) (if a customer does not read the nutrition panel, she cannot be "deceived by it"). Without such evidence, Plaintiffs fail to show by common proof they were deceived, let alone by a material misrepresentation. *Painters*, 674 F. Supp. 3d at 835-36, 839 (without this evidence, "the issue is not subject to common proof.").

**Second**, Silverman admitted sugar preferences are not the same classwide. Rather, he testified sugar understatement would only be material to the portion of consumers "concerned about … how much sugar is in a product," but "not every consumer cares about sugar content." Ex. 40 (App. 2095) 209:17-21, 236:6-8; *see Ono*, 2016 WL 6647949, at *13 (no common materiality where portion of consumers that found statement material were not coextensive with class members). For consumers that do care, he admits they

Joint Brief on Plaintiffs' Renewed             21             Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

differ as to what size sugar discrepancy is material. Ex. 40 (App. 2095) 233:11-249:9. Sugar preferences vary among even the named plaintiffs, based on unique dietary preferences. Ex. 36 (App. 2026) (Nunez) 101:2-9 ("limit[s] the amount of added sugar" he "consume[s]"); Ex. 35 (App. 1997) (Patel) 35:8-36:4 (cares about sugar because "borderline" "prediabetic"); Ex. 37 (App. 2057) (Schmidt) 156:11-158:15 (did not care about specific sugar level and confirmed sugar discrepancies would not matter).

### B. Predominance as to liability for each of Plaintiffs' claims.

#### 1. Plaintiffs: Common questions predominate the "unlawful" California UCL claim.

The UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (quotation omitted).  The "reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." *Hadley v. Kellogg Sales Co.*, 2019 U.S. Dist. LEXIS 136791, at *71 (N.D. Cal. Aug. 13, 2019) (quotation omitted).

Defendant's conduct is unlawful because it violates federal law, which provides that "no person shall bottle for sale or distribution in the United States any alcoholic beverage unless the container of such beverage bears the health warning statement required by § 16.21."  27 C.F.R. § 16.20.  A specific "GOVERNMENT WARNING" must appear on the label of alcoholic beverages.  *Id.* § 16.21.

Consumer deception is not an element of a violation of this law.  So the only liability questions for this claim are (1) whether Enlightened Kombucha is an "alcoholic beverage"; and (2) whether the labels contained the required warning.  As explained above, both questions are subject to common proof.  *Supra* §§ V.A.3, 5.

#### 2. GT's: No predominance as to California unlawful UCL claims.

Plaintiffs fail commonality and predominance for UCL "unlawful" claims because they cannot show, on a classwide basis, elevated alcohol content. *Supra* § V.A.6; *see Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 891 (N.D. Cal. 2022); *Berger*, 741 F.3d at

Joint Brief on Plaintiffs' Renewed            22            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

1068 ("certification of UCL claims is available only to [] class members who were actually exposed to the business practices at issue"). Plaintiffs also fail to meet commonality and predominance as to statutory standing, i.e., they have "lost money or property as a result of the unfair competition." *Nacarino*, 668 F. Supp. 3d at 891 (quoting Cal. Bus. & Prof. Code § 17204). Plaintiffs fail as to materiality, *supra* § V.A.8, and loss, *infra* § V.C.6.

### 3. Plaintiffs: Common questions predominate the deception-based California UCL, FAL, and CLRA claims.

"For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *28 (quotation omitted). For the UCL and FAL, "it is necessary only to show that members of the public are likely to be deceived." *Id.* at *29 (quotation omitted). "This inquiry does not require individualized proof of deception, reliance and injury." *Id.* at *30 (quotation omitted). Similarly, CLRA claims require only that "(1) the defendant's conduct was deceptive; and (2) the deception caused plaintiff harm." *Id.*

The UCL, FAL, and CLRA are "ideal for class certification" because "whether or not Defendants' claims are misleading is an objective, classwide inquiry." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (first quotation); *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *29 (C.D. Cal. Apr. 9, 2014) (second quotation). The court need not "investigate class members' individual interaction with the product." *Tait*, 289 F.R.D. at 480. So "district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Id.*

Here, Plaintiffs' deception-based claims can all be answered with common proof. The contents of the label were materially identical, and what they conveyed is subject to the objective "reasonable consumer" standard. *Supra* § V.A.3. Whether what the labels conveyed was true—i.e., whether Enlightened Kombucha is not an alcoholic beverage—is subject to the common proof of Dr. Spedding's testimony. *Supra* § IV.A.5. Materiality is based on an objective "reasonable consumer" standard. *Supra* § IV.A.7. And classwide causation (i.e., reliance) may be established by materiality. *Id.*

Joint Brief on Plaintiffs' Renewed        23        Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

**4. GT's: No predominance as to the UCL, FAL, and CLRA claims.**

Plaintiffs fail to show commonality and predominance as to deception, materiality, and falsity, all required for UCL, CLRA, and FAL claims. *Supra* §§ V.A.4, .6, .8.

**5. Plaintiffs: Common questions predominate the New York GBL claim.**

New York's GBL is "similar to the California statutes discussed above." *Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, at *31 (C.D. Cal. July 1, 2013). Like the California statutes, "the standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct." *Id.* (quotation omitted).

The GBL also requires injury, which all class members will show in the same way: they spent money to buy one product (non-alcoholic kombucha,) but received a fundamentally different product (alcoholic kombucha). Alcoholic beverages are subject to numerous regulations, are illegal to drink while driving, are illegal to give to minors, are prohibited in many locations (including workspaces), should not be drunk before operating machinery, can lead to alcoholism, obesity, cancer, and other health problems, and pose a risk of intoxication. For these and other reasons, consumers (and the law) view alcoholic and non-alcoholic beverages as fundamentally different. That is why Defendant has separate alcoholic (Classic) and supposedly non-alcoholic (Enlightened) lines of kombucha, and why its Enlightened line makes up 80-90% of its sales. Ex. 10 (Appx. 91) (GT Dave Dep.) at 211:3-9. Thus, consumers did not receive the product they thought they were buying. In these circumstances, "the injury is the purchase price." *In re Amla Litig.*, 282 F. Supp. 3d 751, 768 (S.D.N.Y. 2017) (quotation omitted).

This distinguishes this case from *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999). In *Small*, plaintiffs sued a cigarette manufacturer for deceiving them about the addictive properties of cigarettes. *Id.* at 50. But because they paid for cigarettes, and got cigarettes of the same value, the only alleged "injury" was the deception itself. *Id.* at 56. They could not allege "deception as both act and injury." *Id.* Here, by contrast, Plaintiffs paid for

Joint Brief on Plaintiffs' Renewed                24                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

non-alcoholic kombucha and received a different product: alcoholic kombucha.  The injury is not just deception; it is paying money but being left without the desired product, and instead receiving a different, unwanted product.  It is as if the *Small* plaintiffs had bought candy cigarettes but received real ones, or bought cigarettes but received marijuana joints.  Paying for a product but receiving a different, unwanted product is an injury, even if people who actually want the different product are willing to pay something for it.

"Accordingly, as with the California claims, liability under the New York statutes can be established with common proof.  Individualized proof of reliance is not necessary, and as explained above, whether a reasonable consumer would have been deceived by [Defendant's] packaging is an objective inquiry that focuses on that packaging.  Common questions therefore predominate regarding [Defendant's] liability under the New York consumer protection statutes." *Guido*, 2013 U.S. Dist. LEXIS 94031, at *32-33.

### 6.  GT's: Plaintiffs' fail commonality for the NY GBL claim.

Plaintiffs cannot certify their GBL claim for the additional reason that Plaintiffs cannot satisfy Rule 23 as to its distinct injury requirement. Plaintiffs fail to distinguish binding New York authority holding their claimed injury is not cognizable under the GBL.

The GBL claim requires deception by a material statement, causation, and injury. *Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 3d 465, 497 (E.D.N.Y. 2024). "[T]he New York Court of Appeals has rejected the argument that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive practices, have necessarily suffered an injury for [GBL] purposes." *In re Lenovo Adware Litig.*, 2018 WL 620145, at *4 (N.D. Cal. Jan. 30, 2018) (cleaned up). Rather, "injury" requires "manifestation of either pecuniary or actual harm" in the form of physical injury or paying more for a product than it is worth. *Small*, 94 N.Y.2d at 56. Where a plaintiff "confine[s] the relief sought solely to . . . recoupment of the purchase price," they have no injury under the GBL. *Id.* (affirming decertification and dismissal of claims that smoking misrepresentations caused purchase); *Kronenberg*, 743 F. Supp. 3d at 497 (plaintiffs cannot seek "refund of the price of a good or service whose purchase was allegedly secured by deception.").

Joint Brief on Plaintiffs' Renewed                25              Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs' failure to satisfy Rule 23 as to this definition of injury bars certification of this claim. *See Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 57 (S.D.N.Y. 2019) ("[W]here it is unclear that some or all class members suffered a measurable monetary harm, [this] requirement often precludes certification."). Plaintiffs fail to distinguish *Small*, and cite no authority supporting their claimed distinction. They offer no common evidence or argument the product's value was affected by the claimed deceptions, nor can they, as Enlightened is equal to (or cheaper than) GT's alcoholic kombucha. Ex. 34 (App. 1995). Plaintiffs cannot certify a class on this claim. Plaintiffs cited case, *In re Amla Litig.*, 282 F. Supp. 3d at 768, relied on a quote taken out of context from *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013), which did not hold the injury can be the "purchase price," but rather required a price premium. The *In re Amla* court later shifted to requiring price premium. 328 F.R.D. 127, 135-39 (S.D.N.Y. 2018).

And, as stated *supra* §§ V.A.4, .6, .8, Plaintiffs also fail to show commonality or predominance for deception, materiality, and causation.

### 7. Plaintiffs: Common issues predominate the implied warranty claim.[14]

Predominance is satisfied for breach of the implied warranty of merchantability where the claims are "based on common contentions of deceptive conduct by Defendants in marketing their products." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012). Here, Plaintiffs' implied warranty claim is based on common contentions of deceptive conduct. The labels were materially identical, and Plaintiffs have classwide evidence that the product was not merchantable as a purported non-alcoholic beverage. And because this case involves food products, privity of contract is not needed. *See Stanley v. Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 1005 (C.D. Cal. 2014) (collecting cases); *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 606 (1960) (exception to privity requirement "where the product is food for human consumption").

### 8. GT's: The implied warranty claim fails predominance.

---

[14] Plaintiffs seek to certify the implied warranty claim only for the California classes.

Joint Brief on Plaintiffs' Renewed                26                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Plaintiffs cannot certify an implied warranty class because they fail to identify common evidence of classwide "vertical privity with the defendant." *Gross*, 2022 WL 1063085, at *8. Courts routinely deny certification, including as to food products, on this basis. *Id.* (juice-based beverages); *Shin*, 348 F.R.D. at 488-89 (packaged noodles); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 986 (C.D. Cal. 2015), *aff'd* 844 F.3d 1121 (cooking oils). Their "food products" exception does not apply here, but only to "adulterated, dangerous foods" that "are not fit for human consumption." *Shin*, 348 F.R.D. at 488-89. The slightly elevated alcohol levels claimed here do not fit the bill, and nothing in the record suggests products were *ever* dangerous or unfit for human consumption. Plaintiffs also lack class wide evidence that sugar or alcohol levels were excessive. *Supra* § V.A.6.

### 9. Plaintiffs: Common questions predominate common-law fraud.

The Ninth Circuit "favors class treatment of fraud claims stemming from a common course of conduct." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (quotation omitted); *see, e.g.*, *Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 432 (C.D. Cal. 2012) (predominance satisfied where sales brochures were "sufficiently similar to justify an inference of class-wide reliance"); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (certifying fraud claim based on "uniform representations"). Here, all class members' fraud claims stem from a common course of conduct: Defendant's materially identical labels.

### 10. GT's: Individual questions predominate common-law fraud.

Plaintiffs' common law fraud fails predominance for the same reason as their other deception-based claims. *Supra* §§ V.A.4, .6, .8; *Roley*, 2020 WL 8675968, at *7.

### 11. Plaintiffs: Common questions predominate unjust enrichment.

"[U]njust enrichment claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members." *Beck-Ellman*, 283 F.R.D. at 568. "Common to all class members and provable on a class-wide basis is whether Defendant[] unjustly profited from the sale of [its kombucha]." *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010); *see*

Joint Brief on Plaintiffs' Renewed          27          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Yeend v. Akima Glob. Servs., LLC*, 2025 U.S. Dist. LEXIS 61354, at *57 (N.D.N.Y. Mar. 31, 2025) (certifying unjust enrichment class).

### 12. GT's: Individual questions predominate unjust enrichment.

Plaintiffs' unjust enrichment claims fail commonality and predominance for the same reasons as the other claims: whether customers' payment for the Kombucha was "unjust or inequitable" rests on the products' actual alcohol and sugar levels, and whether it was material. *Berger*, 741 F.3d at 1070; *supra* §§ V.A.6, .8.

### C.    Predominance as to damages.

### 1.    Plaintiffs: Common questions predominate damages.

At class certification, a plaintiff need only "present a model of damages that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is 'susceptible of measurement across the entire class.'" *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 303 (N.D. Cal. 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). The Ninth Circuit has "not construed *Comcast* as requiring plaintiffs to provide a class-wide method for calculating damages at the class certification stage, but rather as requiring only that plaintiffs demonstrate a logical connection between their damages model and their theory of liability." *Falcone v. Nestle USA, Inc.*, 2026 U.S. App. LEXIS 555, at *5-6 (9th Cir. Jan. 9, 2026). An argument that a damages model is "flawed" does not defeat class certification. *Grace v. Apple, Inc.*, 328 F.R.D. 320, 340 (N.D. Cal. 2018). Rather, to violate *Comcast*, a model must be so "untethered from plaintiff's theory of liability … that it has no possibility of demonstrating the amount of damages." *Lytle*, 114 F.4th at 1027.

Here, Plaintiffs present multiple damages models that stem from Defendant's wrongdoing and can be measured across the entire class.

### 2. GT's: Plaintiffs cannot satisfy predominance through full refund.

This Court indicated Plaintiffs' full refund model might not be "viable." Dkt. 129 at 6. Correct: it fails to account for Enlightened's value (e.g., flavor, effervescence, probiotics), and thus fails under *Comcast*. Despite the Court advising Plaintiffs to address this concern, Plaintiffs instead try to downplay the *Comcast* requirement and recycle the

Joint Brief on Plaintiffs' Renewed             28             Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

same insufficient arguments. In doing so, they reaffirm this bar to certification.

"The Ninth Circuit rule that damage calculations do not defeat certification does not relieve Plaintiffs of the *requirement* of putting forth a damages model that ties the theory of liability to damages" under *Comcast*. *In re 5-Hour Energy*, 2017 WL 2559615, at *9. Countless courts have rejected the full refund theory for mislabeled beverages claims, as it fails to account for the value received, and is not sufficiently linked to the theory of liability. *See Capaci*, 2022 WL 1133818, at *16 (listing cases rejecting full refund method for "beverages," noting such products "provide some value … [like] calories, hydration or good taste"). Plaintiffs' full refund model likewise fails here.

### 3. Plaintiffs: The viability of Plaintiffs' full-refund damages model is a merits question not addressed at class certification.

In its prior ruling, the Court asked whether the viability of Plaintiffs' full-refund damages model "is an issue for the class certification or the merits stage of litigation." Dkt. 129 at 6.  The Ninth Circuit recently held that the viability of a full-refund damages model for UCL and CLRA claims is "a merits issue not decided at class certification." *Falcone*, 2026 U.S. App. LEXIS 555, at *6 (full-refund model supported class certification where labels falsely stated chocolate was "sustainably" or "responsibly" sourced).  In any event, Plaintiffs' full-refund model is viable for the reasons explained below.

### 4. GT's: Plaintiffs must satisfy *Comcast* and Rule 23(b)(3) now.

Plaintiffs' exclusive reliance on *Falcone* does not save their full refund model from *Comcast* scrutiny. **First**, Plaintiffs do not address, or satisfy, their burden to establish *at class certification* that damages are measurable on a classwide basis. *Olean*, 31 F.4th at 664 (plaintiffs must "prove—not simply plead … each requirement of Rule 23 … before class certification"). *Comcast* makes clear no damages class can be certified unless plaintiffs "establish" a model that "measures only damages attributable to [their damages] theory." 569 U.S. at 35. "Refusing to entertain arguments against respondents' damages model …simply because those arguments would also be pertinent to the merits determination" is error. *Id.* at 34. Yet Plaintiffs ask the Court to do exactly that. Nothing excuses Plaintiffs

Joint Brief on Plaintiffs' Renewed              29              Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

from their burden of "establishing that damages are measurable on a classwide basis." *Id.*; *Dukes*, 564 U.S. at 350 & n.6 ("Frequently … rigorous analysis will entail some overlap with the merits"). Plaintiffs fail: there is no legal basis for full damages, *Shin*, 348 F.R.D. at 486 n.4, nor common proof supporting this method should apply, *Alvarez v. NBTY, Inc.*, 331 F.R.D. 416, 416 (S.D. Cal. 2019) (no full refund; "even under Plaintiff's theory [that product was 'worthless'], some people benefitted from the products").

*Second*, *Falcone* does not save their claims. No. 24-7707, Dkt. 60.1 (petition for rehearing *en banc* pending). There, plaintiffs presented evidence the product was "worthless" based on "strong consumer" preferences because it was made using "abhorrent practices of child slave labor" rather than sustainably. 2024 WL 4868298, at *13 (S.D. Cal. Sept. 26, 2024). Plaintiffs here offer no such evidence: many purchasers *do* value Enlightened. *Infra* § V.C.6. Next, *Falcone* is unpublished cannot contradict *Comcast*, which does not permit plaintiffs to simply assert a product is worthless to justify a full refund. Further, *Falcone* rests its holding on *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183-84 (9th Cir. 2017), which held a full refund method was appropriate only because plaintiff proffered *evidence* supporting the product was valueless. *Id.* Last, after *Falcone*, district courts continue to deny class certification on full refund method absent evidence the product is "worthless." *E.g.*, *Smith v. Shahidi*, 2026 U.S. Dist. LEXIS 493369, at *22-26 (C.D. Cal. Mar. 9, 2026). Plaintiffs no longer dispute Enlightened has value (as courts), and thus concede it. They instead argue it is "legally worthless" as illegal, and that certain legal theories do not require accounting for value. These arguments fail, as detailed below.

### 5. Plaintiffs: A full refund is available as actual damages.

Actual damages are available for Plaintiffs' CLRA, implied warranty, and fraud claims.  *See* Cal. Civ. Code § 1780(a)(1); *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, 2015 U.S. Dist. LEXIS 64145, at *13 (N.D. Cal. May 14, 2015) (implied warranty); *Robalo LLC v. Taigh Ramey*, 2012 U.S. Dist. LEXIS 89378, at *1 (E.D. Cal. June 26, 2012) (fraud).

Courts in this Circuit have repeatedly held that a full refund is an appropriate measure of actual damages in deceptive-advertising class actions.  For example, in

Joint Brief on Plaintiffs' Renewed                30                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

*Amavizca*, the court held that a full-refund model of actual damages supported class certification in a deceptive-labeling case. *Amavizca v. Nutra Mfg., LLC*, 2021 U.S. Dist. LEXIS 36009, at *33-34 (C.D. Cal. Jan. 27, 2021). It rejected the defendant's argument that the plaintiffs had to account for value received, because that argument "pertained only to the remedy of restitution, not the remedy of damages." *Id.* at *34. Where the consumer would not have purchased the product but for the deception, actual damages need not account for value received. *Id.* Other courts have held the same. *See Sanderson v. Whoop, Inc.*, 2025 U.S. Dist. LEXIS 42118, at *35 n.18 (N.D. Cal. Mar. 7, 2025) (agreeing that "actual damages, instead of restitution, … does not require Plaintiff to account for value received"); *Keating v. Nordstrom, Inc.*, 2020 U.S. Dist. LEXIS 63124, at *15 (D. Alaska Apr. 10, 2020) (accepting full-refund damages model under CLRA, and stating that the benefit-received argument applies only "in the context of restitutionary damages, or … where the plaintiffs did not contend that consumers never would have purchased the product absent the [deception]") (quotation omitted).

In these cases, plaintiffs did not need to show that the products were valueless to obtain a full refund in actual damages. Rather, full refunds were appropriate because the plaintiffs had evidence that, but for the deception, consumers would not have purchased the products (even though the products may have had value). In *Keating*, for example, the plaintiffs purchased clothes because of misleading discounts, but the clothes still had some value. One of the plaintiffs even admitted that her item was "worth $28.90 to me." *Id.* at *9. But because consumers would not have purchased the items absent the deceptive discounts—i.e., but for the deception, they would have spent $0—a full-refund model was an appropriate measure of actual damages. *Id.* at *15-16.

Here, similarly, class members would not have made their purchases of Enlightened Kombucha had they known they were alcoholic beverages. *See* Ex. 12 (Appx. 129) (Silverman Rep.) ¶ 91 ("[C]onsumers would not have purchased the Challenged Products had they come to know that they could not trust that the products are not alcoholic."); *see, e.g.*, Ex. 3 (Appx. 21) (Patel Dep.); 127:10-16; Ex. 4 (Appx. 27) (Schmidt Dep.) 167:20-

Joint Brief on Plaintiffs' Renewed            31            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

168:2; Ex. 5 (Appx. 35) (Nunez Dep.) 50:3-7, 125:14-126:1.  Consumers buy alcoholic beverages only when they want an alcoholic beverage, not when they want a soft drink. Thus, because class members would not have purchased Enlightened Kombucha when they made the purchases at issue—i.e., they would have spent $0 on Enlightened Kombucha (and bought something else instead)—a full refund is appropriate.

### 6.  GT's: Full refund damages do not fit Plaintiffs' theory.

As "actual damages" require accounting for the value received, Plaintiffs' claims for full refund "damages" also fail under *Comcast*. "'Actual damages' is 'the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received.'" *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 625 n.3 (9th Cir. 2018) (cleaned up); *Shin*, 348 F.R.D. at 485 (fraud and implied warranty). Courts reject the full refund model because, whether plaintiffs seek restitution or damages for mislabeling claims, their damages model must account for the value of the products. *See, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896, at *12-14 (N.D. Cal. Aug. 31, 2018) (rejecting full refund for CLRA damages); *Mezzadri v. Med. Depot, Inc.*, 2016 WL 11783673, at *3 (S.D. Cal. Nov. 18, 2016) (same for implied warranty damages).

Plaintiffs' full refund model fails for the same reasons. **First,** under any theory, Plaintiffs lack common proof for excessive alcohol content. *Supra* § V.A.6. **Second**, the *Retta* court acknowledged full refund fails to account for Enlightened's "value" provided by "multiple vitamins, enzymes, and probiotics in the Subject Products that provide hydration and calories to consumers," even assuming the alcohol content for some bottles exceeded 0.5% ABV. *Retta*, 2017 WL 5479637, at *4. **Third**, Plaintiffs themselves testified to the many benefits from which they derive value, which their damages model must account for. Ex. 35 (App. 1997) (Patel) 68:10-16; Ex. 36 (App. 2026) (Nunez) 69:14-70:25; Ex. 37 (App. 2056) (Schmidt) 166:5-167:19. Despite Plaintiffs' claims they would not have purchased Enlightened had they known it contained alcohol, each knew it contained *some* alcohol when they purchased it. Ex. 36 (Nunez) (App. 2026) 42:7-23; Ex. 35 (Patel) (App. 1997) 58:11-59:9, 122:5–124:1; Ex. 37 (Schmidt) (App. 2056) 140:18-142:18. **Fourth**, the

Joint Brief on Plaintiffs' Renewed                 32                 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

record does not support any assertion that Enlightened should be treated as worthless even if it had slightly more alcohol than expected, *supra* § V.A.8 and *infra* § V.C.10.

Plaintiffs' cases are inapposite.[15] In *Amavizca v. Nutra Mfg., LLC*, 2021 WL 682113, at *12 (C.D. Cal. Jan. 27, 2021), Judge Klausner permitted full refund, but in a later opinion clarified he only so held because "the product was 'worthless'" as a mislabeled supplement, "justifying a full refund," *Golikov v. Walmart Inc.*, 2025 WL 847342, at *8 n.2 (C.D. Cal. Feb. 27, 2025). *Sanderson v. Whoop, Inc.*, 2025 WL 744036, at *13 n.18 (N.D. Cal. Mar. 7, 2025), relies on *Amavizca*, and bases damages on violation of an auto-renewal statute that rendered full return of the challenged subscription fee appropriate.

### 7. Plaintiffs: A full refund is available as restitution because the fraud is in the selling of alcoholic beverages as non-alcoholic beverages.

Plaintiffs' UCL, FAL, CLRA, and unjust enrichment claims all provide for restitution, which courts give "a broad, liberal reading." *Spann v. J.C. Penney Corp.*, 2015 U.S. Dist. LEXIS 42545, at *8-9 (C.D. Cal. Mar. 23, 2015) (Olguin, J.). As this Court has held, "the difference between what the plaintiff paid and the value of what the plaintiff received" is not "the only way restitution can be calculated." *Id.* at *11. Rather, courts have "broad discretion to craft a restitutionary remedy" to "effectively return the plaintiff to the status quo." *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 637 (S.D. Cal. 2015).

Defendant agrees that full refunds are available in restitution when either "the product (1) is completely valueless, or (2) the fraud in the selling induced the plaintiff[s] to purchase a product [they] otherwise would not have purchased." Dkt. 113 at 36 (quoting *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *10 (S.D. Cal. May 12, 2016)). Thus, a product need not be worthless to obtain a full refund in restitution; a full refund is also available if fraud in the selling induced the plaintiff to purchase a product they otherwise would not have purchased (even if the product has some value). *See FTC v. Figgie Int'l*, 994

---

[15] *E.g., Keating v. Nordstrom, Inc.*, 2020 WL 1846988, at *7 (D. Alaska Apr. 10, 2020) (ruling on summary judgment in deceptive pricing case, and specifically distinguishing class actions from the individual damages claims at bar).

Joint Brief on Plaintiffs' Renewed      33      Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

F.2d 595, 606 (9th Cir. 1993) ("reject[ing] the contention" that full refunds are "available only when the goods purchased are essentially worthless").[16]

The quintessential example of this second option is a merchant who sells rhinestones claiming they are diamonds. *See id.* Although rhinestones have value, courts awarding restitution "would not limit [consumers'] recovery to the difference between what they paid and a fair price for rhinestones." *Id.* That is because rhinestones and diamonds are fundamentally different products. A consumer looking for diamonds would not buy rhinestones, even though rhinestones have some value. "The fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds." *Id.*

The Ninth Circuit applied this reasoning in *Figgie* to permit full refunds for consumers who purchased heat detectors from a company that misrepresented their effectiveness as fire safety devices. *Id.* There was a conclusive factual finding in that case that the "heat detectors have some value." *Id.* But the fraud was not in "the value of the thing sold"; it was in whether the product was an effective fire safety device. *Id.* If consumers had known they were not effective fire safety devices, they would not have bought them in the first place. *Id.* So full refunds were appropriate in restitution. *Id.*

In *Makaeff*, the court applied *Figgie* to find a full-refund restitution model appropriate for students who paid for courses at Trump University but did not actually learn "Donald Trump's unique secrets to success." *Makaeff*, 309 F.R.D. at 637. Full refunds were appropriate because "the fraud was in the selling by TU, not in the value of the thing sold. … [T]he issue is not the value or appeal of the classes they did not sign up for (i.e., the rhinestones)—the issue is that they did not receive what they thought they

---

[16] This Court addressed the first option (completely valueless) in the context of weight-loss pills that did not work, and found it satisfied because the plaintiff had sufficiently shown that the dysfunctional pills had no value. *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *46-52. That case did not address the second option (fraud in the selling that induced a purchase that otherwise would not have occurred). Also, since then, the Ninth Circuit has clarified that "whether the products are worthless is a merits issue not decided at class certification." *Falcone*, 2026 U.S. App. LEXIS 555, at *6.

Joint Brief on Plaintiffs' Renewed                34                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

were buying (i.e., the diamonds)." *Id.* at 638.

The *Suchanek* case from Illinois is especially on point. In that case, the plaintiffs alleged that what the defendant marketed as premium, ground coffee was really over 95% instant coffee. *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 243 (S.D. Ill. 2015). The court held that a full-refund damages model supported class certification. *Id.* at 258. Although instant coffee indisputably has value—there is an entire market for it—it is a fundamentally different product than premium, ground coffee. *Id.* And the consumers in *Suchanek* were looking to buy premium, ground coffee, not instant coffee. *Id.* In other words, the fraud was in the selling and was about the nature of the product, not its value.

Here, too, the fraud is in the selling—about the nature of the product—not in the product's value. There is a market for alcoholic kombucha, just like there are markets for instant coffee, rhinestones, and heat detectors. But an alcoholic beverage is a fundamentally different product from a non-alcoholic beverage. *Supra* § V.B.5. And when consumers buy Enlightened Kombucha, they mean to buy a non-alcoholic beverage, not an alcoholic one. So class members would not have made their purchases of Enlightened Kombucha had they known it was an alcoholic beverage. *See* Ex. 12 (Appx. 129) (Silverman Rep.) ¶ 91; Ex. 3 (Appx. 21) (Patel Dep.); 127:10-16; Ex. 4 (Appx. 27) (Schmidt Dep.) 167:20-168:2; Ex. 5 (Appx. 35) (Nunez Dep.) 50:3-7, 125:14-126:1.

Thus, the fraud in the selling of the product (selling an alcoholic beverage as a non-alcoholic beverage) induced class members to purchase products that they otherwise would not have purchased. This supports restitution in the form of a full refund. *See id.*; *Figgie*, 994 F.2d at 606; *Makaeff*, 309 F.R.D. at 637-38; *Suchanek*, 311 F.R.D. at 258. And Plaintiffs need not actually prove this theory of restitution here; that is a merits question for trial. *Falcone*, 2026 U.S. App. LEXIS 555, at *6.

This is not a case where plaintiffs "put valuation at issue by alleging that due to the alleged misrepresentations they paid more for a [product] tha[n] it was worth." *Makaeff*, 309 F.R.D. at 637 (distinguishing such cases). For example, in some consumer class actions, the theory of harm is that the defendant's misrepresentations artificially inflated

Joint Brief on Plaintiffs' Renewed                35                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

prices, causing the class to pay more than they otherwise would have (a price premium). *See, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). In such cases, the proper measure of restitution is the difference in the value paid versus the value received. Here, the theory of harm is not that Class members overpaid—it is that they paid at all, because they bought a product they did not want: alcoholic kombucha (like instant coffee or rhinestones). The only way to put Class members in the position they would otherwise be in is to refund the amount they spent. *See Figgie*, 994 F.2d at 606.

### 8. GT's: Fraud-in-the-selling cases do not apply to Plaintiffs' claims.

Plaintiffs fraud-in-the-selling cases do not save their full refund model.

*First*, Plaintiffs' full refund arguments are all premised on Enlightened being alcoholic, but Plaintiffs lack common proof as to that claim. *Supra* § V.A.6.

*Second*, Plaintiffs misapply their cases. The fraud-in-the-selling rule applies only when the purchaser has bought a product that is (a) wholly useless for its stated purpose (like a supplement), or (b) constitutes an entirely different object at its core. *See Mezzadri*, 2016 WL 5107163, at *11; *e.g.*, *Makaeoff*, 309 F.R.D. at 636-67, 639 (educational courses "worthless" where "[plaintiffs] received was nothing of what was promised", and distinguishing from food products). It does not apply where, as here, a plaintiff was dissatisfied with a characteristic of the product, but would have "purchased another manufacturer's product instead"; in that case, plaintiffs cannot say that *no purchase would have occurred at all. Mezzadri*, 2016 WL 5107163, at *11. *Mezzadri* distinguishes Plaintiffs' diamond example and *Figgie* on this basis

*Third*, even if the cases applied, Plaintiffs fail to support their theory. The label advised consumers it contains alcohol and to not drink it if avoiding alcohol. Ex. 30 (App. 1486) (labels). As discussed *supra* § V.A.8, *infra* § V.C.10, the presence of slightly more alcohol than disclosed (a claimed 0.8% ABV difference on average) does not render the product completely different, and many consumers would still purchase it. *Suchanek*, 311 F.R.D. 239, is inapposite for this reason. There, Plaintiffs provided "plenty of evidence" consumers would not have purchased but for the deceptive labeling, because customers

"only" wanted fresh, "ground" coffee as represented, not instant coffee, and Defendants "produced absolutely no evidence" consumers would have purchased the product "had they known [it] was instant coffee." *Id.* at 258. Here, Plaintiffs have no such evidence.

### 9. Plaintiffs: The illegality and danger of selling alcoholic beverages disguised as non-alcoholic beverages further supports a full refund.

Another situation where courts permit full-refund damages models is where the sale of the product at issue is illegal or inherently unfair. *See Jackson-Jones v. Epoch Everlasting Play, LLC*, 748 F. Supp. 3d 823, 832 (C.D. Cal. 2024) ("When a party sells products to consumers that are 'inherently unfair or illegal,' a full refund damages model is appropriate."), *vacated on other grounds by* 2025 U.S. App. LEXIS 21288 (9th Cir. Aug. 20, 2025). Examples of sales warranting full refunds under this doctrine include selling controlled substances over-the-counter, selling nicotine products to minors, selling toys with small parts to children in violation of the Federal Hazardous Substances Act, and selling bird food that poisons birds. *See, respectively*, *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 160 (2010); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022); *Jackson-Jones*, 748 F. Supp. 3d at 832; *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 556 (S.D. Cal. 2017).

Awarding anything less than a full refund for an illegal sale "would legitimatize the illegal sale." *Makaeff*, 309 F.R.D. at 640. So when it is "illegal or inherently unfair" to sell a product, consumers are deemed to "receive[] no value from it at all" and may receive a full refund. *JUUL*, 609 F. Supp. 3d at 976; *see also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019) (accepting argument "that a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value"). Thus, a plaintiff "does not put valuation at issue when he alleges that he bought a product that was illegal to sell or possess." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 160.

Here, Defendant's sales of alcoholic Enlightened Kombucha were illegal. It is illegal to sell alcoholic beverages without the required government warning. 27 C.F.R. § 16.20. It is illegal to sell alcoholic beverages without paying excise taxes imposed on

Joint Brief on Plaintiffs' Renewed Motion for Class Certification      37      Case No. 2:19-cv-10920-FMO-DSRx

alcoholic beverages (and willful failure to do so is criminal tax evasion).  *E.g.*, 26 U.S.C. §§ 5051, 7201.  And it is illegal to sell alcoholic beverages to people under 21.  Cal. Bus. & Prof. Code § 25658(a); N.Y. Penal Law § 260.20(2); N.Y. Alco. Bev. Cont. Law § 65.

Defendant's sales were also inherently unfair and dangerous.  The government warning is required precisely because inducing people to unknowingly drink alcoholic beverages (any beverages with 0.5% or more alcohol) is unfair and dangerous.  *See* 27 C.F.R. § 16.21 ("Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems.").  Consumers who think an alcoholic beverage is non-alcoholic are likely to drink it when they otherwise would not (e.g., before driving or operating machinery, with a personal or family history of addiction, or while trying to avoid other health issues).  Such consumers are also likely to unknowingly engage in criminal behavior (e.g., drinking while driving or giving alcoholic beverages to minors).  This unfairly puts consumers at risk without them knowing it.

All of this is especially true for the underage subclasses, for whom it was illegal (and especially dangerous) to purchase, possess, or consume Enlightened Kombucha.  In *JUUL*, the court approved of a full-refund damages model for a "Youth Purchaser" class who purchased the defendant's nicotine products while underage.  *JUUL*, 609 F. Supp. 3d at 975-76.  (Unlike here, JUUL disclosed its products as nicotine products so it was not illegal or inherently unfair to sell them to adults.)  The full-refund model supported certification for this class on the theory that "because it was illegal or inherently unfair to market and sell the JUUL product to youth, youth purchasers received no value from it at all."  *Id.* at 976.  Here, like in *JUUL*, a full refund is especially appropriate for the underage subclasses because it was illegal and inherently unfair to sell alcoholic beverages to minors.

### 10. GT's: Plaintiffs' legality argument cannot justify full refunds.

Plaintiffs cannot justify a full refund model based on the label's legality.

Plaintiffs' lack of common proof of excessive alcohol, *supra* § V.A.6, which destroys their damages claim. Further, Enlightened is lawful, had ample value to many consumers, its alcohol content is minimal, and it does not fall under the illegal sale cases Plaintiffs cite.

Joint Brief on Plaintiffs' Renewed            38            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Their theory—that Enlightened is "dangerous" and "illegal" such that consumers would purchase it if it contained 0.49% alcohol, but not at all if the ABV increased to 0.5%—is unsupported and illogical.

Even as to products with potentially excessive alcohol, Enlightened's label undisputedly discloses it has alcohol, and that consumers should not drink it if they are avoiding alcohol. Ex. 30 (App. 1486). Plaintiffs were all aware it contained alcohol. *Supra* § V.A.4 (discussing testimony). Alcohol generally is not illegal to purchase, possess, or consume—and all the Plaintiffs do in fact voluntarily purchase and consume alcohol, and have since they were 18 or younger. Ex. 37 (App. 2057) (Schmidt) at 118:13-119:15, 121:24-122:6; Ex. 36 (App. 2026) (Nunez) 7:25-8:1, 50:21-52:19, 53:24-9; Ex. 35 (App. 1997) (Patel) 8:17-18, 111:3-14; 133:9-18. Plaintiffs fail to explain how the Kombucha posed any real "danger" classwide, even assuming it contained an average of 1.2% ABV, or max of 2.2% ABV. Ex. 13 (Spedding) (App. 192) ¶¶ 25-27. Those levels are too low to pose a health risk, particularly as compared to the at least 0.49% Plaintiffs concede consumers knew could be present. To consume the same amount of alcohol present in a "standard" alcoholic drink (e.g., beer, wine), a person would have to drink nearly four bottles of 1% ABV kombucha in the same time it would take to consume a standard drink. Ex. 27 (App. 854) (McCarroll) 6–7. Plaintiffs do not testify to drinking anywhere near that amount, indicate they never felt inebriated from drinking the Kombucha, and admitted to drinking multiple alcoholic drinks on single occasions, including while under 21. Ex. 37 (App. 2057) (Schmidt) 80:5-12, 122:2-6, 148:13-22; Ex. 35 (App. 1997) (Patel) 32:20-33:3, 134:11-18 ,135:17-136:1, ; Ex. 36 (App. 2026) (Nunez) 7:25-8:1, 44:4-11, 50:21-52:19, 53:24-9, 68:25-69:13. And many consumers would buy the product even with the surgeon general's warning. *Supra* § V.A.8.

Plaintiffs' cited cases bear no resemblance to this case, and are inapposite. In *Morning Song*, the defendant sold a bird food that was poisonous to birds, making it "worthless" because it did not function as bird food. 320 F.R.D. at 556. In *Steroid Hormone Products*, the state court assessed materiality and injury based on customers' purchases of

Joint Brief on Plaintiffs' Renewed        39        Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

supplements containing untested and illegal steroids. 181 Cal. App. 4th at 153. The court did not discuss the full refund method or classwide damages, and Plaintiffs rely only on an unexplained and inapplicable sentence that plaintiffs there "did not put valuation at issue." *Id.* at 160; *In re POM Wonderful LLC*, 2014 WL 1225184, at *4 n.3 (C.D. cal. Mar. 25, 2014) (distinguishing *Steroid Hormone Cases*). *JUUL* involved a class of minors to whom defendant intentionally marketed illegal nicotine products. *JUUL*, 609 F. Supp. 3d at 975-76. *Jackson-Jones* involved children's toys that constituted "banned hazardous substances," and the court specifically distinguished cases "where plaintiffs had received some value or benefit from misbranded or misrepresented products." 748 F. Supp. 3d at 832.

Moreover, a product generally is not "worthless" simply because a misleading label makes the product illegal to sell or possess. *E.g.*, *Samet v. P&G Co.*, 2019 WL 13167115, at *10 (N.D. Cal. Jan. 15, 2019) (citing *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016)) (rejecting full refund).[17] The "line of cases focusing on illegal sales" is a "limited exception to the general rule" that "a product must be shown to be *worthless* to … support a full refund." *Corbett v. PharmaCare U.S., Inc.*, 2024 WL 1356220, at *25 (S.D. Cal. Mar. 29, 2024). This "limited exception" does not apply to all products characterized in some way as "illegal." *Id.* In *Corbett*, the court held full refund would not apply to a supplement containing an illegal ingredient because the illegality "is more technical than the more blatantly illegal actions" in the illegal sales cases. *Id.; see also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 675 (N.D. Cal. 2021) (no full refund model for mislabeled pet food that allegedly contained "unsafe" chemicals, as plaintiff proffered "no evidence that any individual []product was a health risk," only "cumulatively" "meaning not every bag … had zero value"). Enlightened is not illegal; even if it were, it would fall in the category of "technical" illegality under *Corbett*. Enlightened is not a poisonous birdseed, a hazardous children's product, nor do Plaintiffs allege GT's specifically markets it to children.

Plaintiffs' citation of criminal statutes purportedly about *selling* alcohol are also

---

[17] Plaintiffs' Eleventh Circuit case, *Debernardis*, 942 F.3d 1076, is contrary to this Ninth Circuit authority, and irrelevant here. *See Ang*, 2018 WL 4181896, at *13.

Joint Brief on Plaintiffs' Renewed        40        Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

irrelevant, as the inquiry for restitution and damages looks to the loss or value *to consumers*. *See Shahinian v. Kimberly-Clark Corp.*, 2016 WL 11722907, at \*15 (C.D. Cal. Nov. 14, 2016).

### 11. Plaintiffs: Full-refund damages can be measured classwide.

Damages calculations "'need not be exact' at the class-certification stage." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at \*51 (quoting *Comcast*, 569 U.S. at 35). "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving" and require "only that some reasonable basis of computation of damages be used, … even if the result reached is an approximation." *Id.* (quotation omitted).

Here, Plaintiffs can prove classwide full-refund damages in two ways: by calculating aggregate damages for the entire class, and by providing a common method to calculate individual damages for each class member. *See* William B. Rubenstein, *Newberg on Class Actions* § 12:4 (5th ed., June 2020 update) ("*Newberg*") § 12:2 (aggregate damages), § 12:4 (individual damages). Either method is sufficient, and both satisfy the above standard.

Plaintiffs' damages expert, Mr. Weir, has already calculated classwide aggregate damages. He multiplied the average retail price per unit of Enlightened Kombucha by the number of units sold. Ex. 17 (Appx. 266) (Weir Decl.) ¶ 12. He did this for each of the proposed classes and subclasses. *Id.* ¶¶ 16-19. And he excluded purchases made by *Retta* class members (who are not part of the proposed classes) from his calculations. *Id.* ¶¶ 13-19. To calculate damages for the underage subclasses, and to exclude *Retta* class members, he used Dr. Dennis's survey that determined the percentages of Enlightened Kombucha purchased during the class period by underage purchasers and by *Retta* class members. *Id.*; *see* Ex. 19 (Appx. 321) (Dennis Decl.).[18] Using Mr. Weir's methodology, aggregate full-refund damages can be—and have been—calculated classwide using common evidence.

As an alternative, Plaintiffs can calculate individual damages classwide by providing "a single or common *method* that can be used to measure and quantify the damages of each

---

[18] Mr. Weir and Dr. Dennis created updated reports following this Court's ruling that it lacked jurisdiction over *Retta* class members. *See* Dkt. 178 at 4. Their former reports provide further support. *See* Ex. 18 (Appx. 295); Ex. 20 (Appx. 455).

Joint Brief on Plaintiffs' Renewed Motion for Class Certification      41      Case No. 2:19-cv-10920-FMO-DSRx

class member." *Newberg* § 12:4.  Differences in the "amount … owed" to each class member "cannot defeat certification" so long as the method for calculating them is the same. *Leyva v. Medline Indus.*, 716 F.3d 510, 513 (9th Cir. 2013) (quotation omitted).  Here, a common method can be used to estimate damages for each class member: multiplying the number of units the class member purchased by the average retail price per unit.  Class membership, as well as the number of units purchased, can be determined during the claims administration process. *See, e.g.*, *Sateriale v. Rj Reynolds Tobacco Co.*, 2014 U.S. Dist. LEXIS 176858, at *31 (C.D. Cal. Dec. 19, 2014) ("[T]he number of C-Notes held by any single class member can be determined through the claims administration process"); *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *54 (plaintiffs need not "identify a method to 'confirm' class membership at this stage"); *infra* § V.D.

## 12. GT's: Plaintiffs' calculations fail under *Comcast*.

Plaintiffs advance two calculation methods based on the Dennis and Weir declarations, but as set forth in GT's motion to exclude, the data and opinions Plaintiffs rely on to calculate any full refund—Dennis's survey and Weir's pricing data—are unreliable and inadmissible under Rule 702-704 and *Daubert. Groditsky*, 957 F.3d at 984.

## 13. Plaintiffs: Restitutionary disgorgement independently supports class certification.

Restitutionary disgorgement is "based on the net profits defendant obtained" through its unlawful and deceptive acts. *Spann*, 2015 U.S. Dist. LEXIS 42545, at *22.  The measure of disgorgement is "based upon defendant's benefit and not plaintiff's losses." *Id.* at *24 (quotation omitted).  This Court has rejected the argument that restitutionary disgorgement "must account for the benefits received." *Id.* at *23 & n.12.

At trial, Plaintiff will be able to prove restitutionary disgorgement classwide, using common evidence.  All that is required is to multiply Defendant's wholesale revenues derived from sales to class members by its percent profit margins.  Defendant produced its wholesale revenues from Enlightened Kombucha sold in California from the beginning of the class period through 2019.  Ex. 1 (Appx. 17); *see* Ex. 10 (Appx. 91) (GT Dave Dep.)

Joint Brief on Plaintiffs' Renewed              42              Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

199:17-203:3.  Defendant maintains this data for the remaining class period, so Plaintiffs will be able to present updated numbers for the entire class period at trial.  *Id.* at 203:14-24 (testifying that Defendant could create updated versions of this document for more recent sales).  And Plaintiffs will call GT Dave—Defendant's founder, owner, and corporate representative—to testify about Defendant's profit margins.

With this information, restitutionary disgorgement can be calculated either in the aggregate or individually based on the number of purchases by each class member.  An aggregate calculation will exclude *Retta* purchases in the same way as Plaintiffs' full-refund model: by excluding the percentage of purchases made by *Retta* class members, as determined by Dr. Dennis.  *See* Ex. 17 (Appx. 266) (Weir Decl.) ¶¶ 13-19; Ex. 19 (Appx. 321) (Dennis Decl.).  And an individual calculation will exclude *Retta* purchases through the claims administration process, which will determine class membership.

Although Plaintiffs have not yet executed a restitutionary disgorgement model, "class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial."  *Lytle*, 114 F.4th at 1024.  Nor is expert testimony required.  "So long as Plaintiffs demonstrate damages to be measurable on a class-wide basis, expert testimony is not required to support a damages model."  *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *17-18 (N.D. Cal. Jan. 17, 2019).

### 14. GT's: Reframing as "disgorgement" does not permit full refund.

Plaintiffs' undeveloped "disgorgement" theory likewise cannot support full refund.

*First*, in mislabeling cases, "restitution and disgorgement are functionally the same remedy," and present the same problems for full refunds. *Brazil*, 660 F. App'x at 535; *In re Tobacco Cases II*, 240 Cal. App. 4th at 800 (same). As Plaintiffs note, disgorgement allows a plaintiff "to recover all profits the defendant received unjustly." *Brazil*, 660 F. App'x at 535. "But in most cases, the defendant's benefit is equal to the plaintiff's loss …: the total price premium paid by all misled purchasers," *id.*, as profits must be limited to those

Joint Brief on Plaintiffs' Renewed              43              Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

"received unjustly," not by other purchasing factors. *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012). **Second**, even if disgorgement could help, Plaintiffs fail to show "that the model will be able to reliably calculate damages" classwide. *Lytle*, 114 F.4th at 1024. "Merely gesturing at a model or describing a general method will not suffice." *Id.* at 1032; *Shin*, 348 F.R.D. at 484 (same). But that is all Plaintiffs do. Their proposed multiplication—based on "revenues" that need to be updated, as well as "profit margins" they do not have and have never seen, but assume GT's owner can testify about at a deposition they have no grounds to seek—cannot reliably provide any accurate measure of GT's "profits" for the products. *See Shin*, 348 F.R.D. at 484-86. It also fails to account for the value received. *Ang*, 2018 WL 4181896, at *13-14 (rejecting disgorgement theory that "assumes" "class members receive zero value from … products").

### 15. Plaintiffs: Statutory damages are available for Plaintiffs' New York GBL claim, and can be calculated classwide.

Section 349 of the GBL provides for "actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. L. § 349(h). "It is well settled that statutory damages under the relevant sections of the GBL are available as a class-wide remedy in class actions brought in federal courts under Federal Rules of Civil Procedure, irrespective of New York legislature's limitation of class actions to causes of actions brought under statutes with specific authorization of class recovery." *McMorrow v. Mondelēz Int'l, Inc.*, 2021 U.S. Dist. LEXIS 42885, at *45 (S.D. Cal. Mar. 8, 2021). So statutory damages are available for Plaintiffs' GBL claim. "[B]ecause awarding classwide relief only requires that a fixed amount of statutory damages be granted to each class member, no individualized damages inquiries are necessary." *Guido*, 2013 U.S. Dist. LEXIS 94031, at *46.

### 16. GT's: Statutory damages are unavailable under the NY GBL.

For GBL statutory damages, Plaintiffs must show commonality and predominance for injury. *See* GBL § 349(h) (statutory damages available only if "injured by reason of any violation" of the GBL). Plaintiffs fail to do so, nor show classwide deceptive conduct, materiality, or causation, *supra* §§ V.A.4, .6, .8. Plus, Plaintiffs' GBL theory also requires

Joint Brief on Plaintiffs' Renewed         44         Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

special scrutiny. They purport to seek nearly $1 billion in statutory damages for NY purchases of Kombucha alone, based on the NY GBL's $50 statutory damages, despite Plaintiffs' estimate that NY consumers spent only $76 million on the products. Weir Decl. (App. 265) ¶¶ 19, 23. Such a disproportionate award violates due process, and GT's reserves its right to challenge the propriety of any such damages on that basis and others.

### D.     Plaintiffs: *Retta* membership is not an individualized issue (or an issue at all); the Class definition excludes *Retta* class members.

In its prior briefing, Defendant argued that identifying *Retta* class members is an individualized inquiry.  Dkt. 113 at 21.  Here, though, the class definitions exclude *Retta* class members.  *Supra* § III.  No class member is subject to the *Retta* settlement.  So this challenge is not about predominance (i.e., whether class members' claims are subject to common proof); it is about ascertainability (i.e., determining who is a class member).  And the "Ninth Circuit has declined to adopt an ascertainability and/or administrative feasibility requirement."  *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *54 (quotation omitted); *see Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017).

Regardless, any ascertainability requirement is satisfied because the "parameters for membership in the class are set by objective criteria." *Werdebaugh v. Blue Diamond Growers*, 2014 U.S. Dist. LEXIS 71575, at *41 (N.D. Cal. May 23, 2014).  Class membership is determined objectively based on when a person purchased Enlightened Kombucha.  *Supra* § III; *see Guido*, 2013 U.S. Dist. LEXIS 94031, at *53 ("[B]ecause the requirement for membership in the class is whether a consumer purchased a particular product after a particular date, the class is easily identifiable.").  This provides "a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *25 (C.D. Cal. Jan. 13, 2014).  Any potential memory issues do not defeat certification because "sufficient notice can cure confusion and these issues may be addressed later in the litigation." *Id.* at *26.  Plaintiffs need not "identify a method to 'confirm' class membership at this stage." *Capaci*, 2022 U.S. Dist. LEXIS 72856, at *54.

Joint Brief on Plaintiffs' Renewed            45          Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

Moreover, Plaintiffs' aggregate damages models exclude *Retta* purchases by reducing aggregate damages proportional to the percentage of purchases during the class period that were made by *Retta* class members. *Supra* §§ V.C.11, 13; *see* Ex. 17 (Appx. 266) (Weir Decl.) ¶¶ 13-19. So the total damages Defendant must pay accounts for *Retta*; "whether any given individual is or is not a rightful class member is entirely immaterial to Defendant['s] monetary liability in this case." *Forcellati*, 2014 U.S. Dist. LEXIS 50600, at *16. "[A] defendant's interest is 'only in the total amount of damages for which it will be liable,' not 'the identities of those receiving damage awards.'" *Id.* at *16-17 (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996)). So Defendant has "no due process interest in challenging class membership that stands in the way of certification." *Id.* at *16. And even for individual damages calculations, "so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected." *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) (quotation omitted). Determining class membership during the claims process does not "affect predominance or overcome the superiority of a class action." *Id.*

**E.    GT's: Individual inquiries into *Retta* class membership are fatal.**

Litigating *Retta* class membership will require fact-intensive individualized inquiries that independently require denial. This Court held that it "lacks jurisdiction" over, and so dismissed, *Retta* class members' claims. Dkt. 178 at 4. ***But Plaintiffs offer no way to distinguish between those who purchased Enlighted during the* Retta *period from those who did not*. Because *Retta* class membership is a jurisdictional bar and complete defense to liability, each class member must demonstrate that they both purchased Enlighted after February 28, 2017 *and* did *not* purchase Enlighted between March 11, 2011 and February 27, 2017. That is impossible absent individual inquiries.

GT's is entitled to invoke these defenses to each class member. *Supra* § V.A.6. The Dennis study suggests each year between 60% and 17% of potential class members also purchased during the *Retta* period. Ex. 19 (Dennis Rep.) (App. 321 ) ¶¶ 38-40. That far

Joint Brief on Plaintiffs' Renewed            46            Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

outstrips the 18 of 13,680 discounts (0.13%) requiring individualized inquiries in *Van,* 61 F.4th at 1068. Plaintiffs do not even suggest a method to adjudicate GT's defense without thousands of mini-trials testing memories of 9-year-old purchases.[19] *Bowerman*, 60 F.4th at 469-71 (no certification where mini-trials over each class member's purchase history and credibility necessary); *Sapan*, 2021 WL 5302908, at *6 (no certification where plaintiff "has not proposed a method of identifying class members without individualized inquiries").

Plaintiffs cannot sidestep this fatal issue by baking an individualized factual determination into the class definition and calling it "ascertainability." *Briseno* "did not overrule the many Ninth Circuit authorities recognizing that 'defenses that must be litigated on an individual basis can defeat class certification'…particularly where individualized questions are 'complicated' and there is not 'representative evidence introduced to fill . . . evidentiary gaps.'" *Abboud v. Circle K Stores Inc.*, 2025 WL 2800052, at *16 (D. Ariz. Sept. 30, 2025) (quoting *True Health Chiropractic*, 896 F.3d at 931, and *Bowerman*, 60 F.4th at 471). And Plaintiffs' argument that memory issues can cured with "notice" does not address the administrative complexity of the required mini-trials.

In seeking to determine damages only "in aggregate," Plaintiffs ignore the long line of Ninth Circuit cases holding Rule 23 does not permit "dispensing with individual proof of damages" and rejecting attempts to "allow[] gross damages by treating unsubstantiated claims of class members collectively." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); *Ambrosio*, 154 F.4th at 1112 ("denying [Defendant]" the right to raise individualized issues for each plaintiff "would seem to violate due process"). Plaintiffs' single cited case relied on inapposite language from *Hilao v. Est. of Marcos*, rejecting a due process challenge to a class damages award after trial. 103 F.3d 767, 784 (9th Cir. 1996). And, as explained in the motion to exclude, Plaintiffs have not presented a

---

[19] Dennis agreed there is a "large literature" that consumers' memory "degrade[s] rapidly" and "there's not a methodological literature around how to conduct studies of consumer products" purchased "as much as eight years ago." Ex 42 (App. 2185) (Dennis Dep.) 99:8–13, 132:9–10, 136:12–22, 170:13-17. He could not think of any consumer survey seeking recall of purchases made over eight years ago." *Id.* 169:1-26, 170:11.

Joint Brief on Plaintiffs' Renewed 47 Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

workable methodology for calculating aggregate damages.

**F.      Plaintiffs: A class action is the superior way to resolve this controversy.**

Superiority asks "whether the objectives of the particular class action procedure will be achieved in the particular case." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014) (quotation omitted).  Here, "no class members have any significant interest in pursuing individual litigation" for the price of a kombucha bottle; there is no "already-commenced litigation concerning the controversy" (the controversy post-dates *Retta* and excludes *Retta* class members); "economies of scale make it desirable to concentrate the claims" in this forum, where Defendant is based; and there are "no likely difficulties in managing this case as a class action." *Id.*  So superiority is satisfied.

**G.      GT's: Class action is not superior due to numerous individual issues.**

Even if *Retta* class membership does not sound in predominance, the complexity of individualized hearings fatally undermines superiority. *Supra* § V.E. Many fact-intensive individual inquiries are required to establish class membership, liability, and damages, making the class unmanageable. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192. Courts routinely deny class certification as unmanageable where class member identification and misclassification issues require complex individualized inquiries, as would be required here. *Supra* § V.E*; Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1200 (9th Cir. 2024); *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 415 (C.D. Cal. 2000); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 617 (W.D. Wash. 2003) ("individual factual inquiries" "required for identification of the proposed class"); *Urena v. Earthgrains Dist., LLC*, 2017 WL 4786106, at *10 (C.D. Cal. July 19, 2017) (same); *Anti Police-Terror Project v. City of Oakland*, 2021 WL 4846958, at *9 (N.D. Cal. Oct. 18, 2021) (same); *Sapan*, 2021 WL 5302908, at *6 (same).

**VI.   Plaintiffs: Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class too.**

The Court may certify both a damages class under Rule 23(b)(3) and an injunction

Joint Brief on Plaintiffs' Renewed                48                Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

class under Rule 23(b)(2).  *See In re Conagra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class.").  Because the primary relief sought under Rule 23(b)(2) is injunctive, the Court may certify an injunction class even though Plaintiffs separately seek damages under Rule 23(b)(3).  *See Ang v. Bimbo Bakeries USA, Inc.*, 2018 U.S. Dist. LEXIS 149395, at *30 (N.D. Cal. Aug. 31, 2018) (seeking damages does not preclude an injunction class "where a plaintiff seeks certification under both Rule 23(b)(2) and (b)(3)").  It should do so here.

"Rule 23(b)(2) applies … when a single injunction … would provide relief to each member of the class."  *B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (quotation omitted).  Under Rule 23(b)(2), courts do not "examine the viability or bases of class members' claims"; they look only to "whether class members seek uniform relief from a practice applicable to all of them."  *Bush v. Rust-Oleum Corp.*, 2024 U.S. Dist. LEXIS 20131, at *16-17 (N.D. Cal. Feb. 5, 2024) (quotation omitted).  Nor does it matter if "some class members may have suffered no injury or different injuries," as long as at least one Plaintiff has standing to seek an injunction.  *Id.* at *17 (quotation omitted); *see Olean*, 31 F.4th at 682 n.32.  There is no predominance or cohesiveness requirement for a Rule 23(b)(2) class.  *Bush*, 2024 U.S. Dist. LEXIS 20131, at *17-18.  And "questions of manageability and judicial economy are irrelevant."  *Id.* at *17.  In short, for Rule 23(b)(2), it is "sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Here, Defendant's practices of selling alcoholic beverages without the required labeling, and misrepresenting the sugar content, apply to the class as a whole.  And the injunctive relief Plaintiffs seek would provide relief to each class member.  Plaintiffs seek an injunction requiring Defendant to place the government warning required by 27 C.F.R. § 16.21 on its Enlightened Kombucha labels, or, in the alternative, barring Defendant from selling Enlightened Kombucha unless it contains less than 0.5% alcohol at retail.  Ex. 21 (Appx. 573) at 21 (Interrogatory 16); Ex. 22 (Appx. 604) at 21 (same); Ex. 23

Joint Brief on Plaintiffs' Renewed           49           Case No. 2:19-cv-10920-FMO-DSRx
Motion for Class Certification

(Appx. 634) at 22 (same). Plaintiffs also seek an injunction barring Defendant from selling Enlightened Kombucha without accurately displaying the sugar content on the labels. *Id.* These injunctions would allow each class member to trust Defendant's labels in the future.

**VII. GT's: Certification of a 23(b)(2) injunction class is not warranted**

Certification of a Rule 23(b)(2) class is not warranted because plaintiffs have not shown commonality or adequacy. *Supra* §§ IV.D, V.A.4, 6, 8. Additionally, no named plaintiff has standing to represent a 23(b)(2) class. "A Rule 23(b)(2) class can only be certified if the named plaintiff shows that she herself is subject to a likelihood of future injury." *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *5 (N.D. Cal. Feb. 13, 2018).

**First**, no plaintiff has testified to a "specific desire" to purchase Enlightened again, which is required for standing. *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021). Instead, each testified they would "consider" purchasing the product again if the requested injunctive relief were issued, Ex. 1 (App. 1) ¶ 6; Ex. 2 (App. 5) ¶ 6; Ex. 3 (App. 8) ¶ 6, which courts routinely hold is not enough, *In re Coca-Cola*, 2021 WL 3878654, at *2; *Iglesias v. Ariz. Beverages USA, LLC,* 2025 WL 2714143, at *7 (N.D. Cal. Aug. 14, 2025) (A "declaration that [plaintiff] would 'consider' purchasing the beverages [if correctly labeled] falls short of demonstrating an ongoing injury.").

**Second**, Plaintiffs have not shown the requisite "actual or imminent" threat of *future* injury resulting in elevated alcohol or sugar levels. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). As explained *supra* § V.A.6, plaintiffs rely on testing of a small subset of Enlightened flavors from *2019.* They have done no testing since, let alone on any bottle of the 18 flavors currently offered for sale. Plaintiffs thus cannot show any "ongoing" mislabeling (GT's more recent testing shows none). Dave Decl. (App. 898) ¶ 7 & Ex. 1, meaning they lack standing. *Bruton*, 2018 WL 1009257, at *6 (declining to certify 23(b)(2) class where labeling "is no longer inaccurate").

**VIII. Plaintiffs: Conclusion.**

Plaintiffs respectfully request that the Court certify the classes and subclasses, appoint Plaintiffs as class representatives, and appoint their counsel as class counsel.

Joint Brief on Plaintiffs' Renewed Motion for Class Certification        50        Case No. 2:19-cv-10920-FMO-DSRx

Dated: March 20, 2026

Respectfully submitted,

By: /s/ Gabriel Doble
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
Gabriel Doble (Cal. Bar No. 335335)
gabe@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Dated: March 20, 2026

Respectfully submitted,

By: /s/ Jacob M. Harper
Jacob M. Harper (SBN 259463)
jacobharper@dwt.com
Heather F. Canner (SBN 292837)
heathercanner@dwt.com
Joseph Elie-Meyers (SBN 325183)
josepheliemeyers@dwt.com
Peter K. Bae (SBN 329158)
peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant
GT's Living Foods, LLC*

Joint Brief on Plaintiffs' Renewed
Motion for Class Certification

51

Case No. 2:19-cv-10920-FMO-DSRx

## <u>SIGNATURE ATTESTATION</u>

Pursuant to Local Rule 5-4.3.4, I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ Gabriel Doble*

Gabriel Doble