Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
Gabriel Doble (Cal. Bar No. 335335)
gabe@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELANEY SHARPE, ERIN WEILER, JENNA LEDER, ADRIANA DIGENNARO, AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and all Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> GT'S LIVING FOODS, LLC., <br><br> *Defendant.* | Case No. 2:19-cv-10920-FMO-DSRx <br><br> **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION** <br><br> **Hearing Date:** April 23, 2026 <br> **Time:** 10:00 a.m. <br> **Courtroom:** 6D <br><br> Hon. Fernando M. Olguin |

## Table of Contents

I.    Defendant's critiques of Plaintiffs' alcohol testing are merits arguments that cannot defeat predominance. ...................................................................................................1

II.    Defendant's reliance on the alcohol disclosure on the label is misplaced. ..................2

III.    That consumers sometimes intentionally buy correctly labeled alcoholic beverages is irrelevant. Here, Defendant's misleading labels tricked consumers into unwittingly buying alcoholic beverages. ...............................................3

IV.    Plaintiffs' counsel did not enter any "side deals" affecting their adequacy. ................4

V.    Defendant's damages arguments cannot defeat certification. .....................................5

    A.    Plaintiffs' actual-damages model need not account for value received. ............5

    B.    Plaintiffs' fraud-in-the-selling theory of restitution is a certifiable, classwide damages model. .................................................................................6

    C.    Plaintiffs' illegal-and-unfair-sales theory of restitution is a certifiable, classwide damages model. .................................................................................7

    D.    Plaintiffs' restitutionary disgorgement model is a certifiable, classwide damages model..........................................................................................8

VI.    *Retta* poses no bar to class certification...............................................................9

VII.    This Court already rejected Defendant's arguments about standing to seek injunctive relief. ........................................................................................... 10

## I.  Defendant's critiques of Plaintiffs' alcohol testing are merits arguments that cannot defeat predominance.

Defendant argues that Plaintiffs cannot show elevated alcohol levels in Enlightened Kombucha by common proof. Br. 14-17.[1] This argument fails for several reasons.

First, at class certification, courts are "limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022). "[A] court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.* Based on Dr. Spedding's testing, he opines that *all* Enlightened Kombucha sold at retail contained at least 0.5% alcohol, because the kombucha formula systematically and consistently ferments. If the jury credits his opinion, this resolves the alcohol-content issue classwide, based on this common evidence. All of Defendant's critiques go to the persuasiveness of Dr. Spedding's opinion. Br. 14-15 (arguing that Spedding's testing was too limited, remote in time, and "sloppy"). But whether persuasive or not, his opinion applies class-wide.

Indeed, both parties' evidence on alcohol content—Plaintiffs' testing at retail, and Defendant's testing of undistributed samples—involve extrapolation from testing samples to the entire class. Either way, the jury does not need to make individualized inquiries into individual class members' purchases. So regardless which testing the jury credits, the issue is capable of class-wide resolution. *See Olean*, 31 F.4th at 681 ("Neither Dr. Mangum's pooled regression model nor Dr. Johnson's critique required individualized inquiries into the class members' injuries. If the jury found that Dr. Mangum's model was reliable, then the DPPs would have succeeded in showing antitrust impact on a class-wide basis, an element of their antitrust claim. On the other hand, if the jury were persuaded by Dr. Johnson's critique, the jury could conclude that the DPPs had failed to prove antitrust impact on a class-wide basis.").

---

[1] "Br." refers to the Parties' joint brief on class certification (Dkt. 207-1).

Plaintiffs' Supplemental Memorandum        1        Case No. 2:19-cv-10920-FMO-DSRx

Second, Defendant relies exclusively on critiques of Dr. Spedding's testing that go to weight, not admissibility, and are not even persuasive as to weight. *See* Dkt. 219 at 12-17 (rebutting these arguments and showing the reliability of Dr. Spedding's testing). Whether Dr. Spedding's opinions are "probative as to all purchasers in the class … is a question of persuasiveness for the jury." *Olean*, 31 F.4th at 681 (quotation omitted).

Third, the Ninth Circuit has rejected Defendant's argument that "plaintiffs must prove that all or nearly all class members were *in fact injured*." *Id.* at 680. Even "more than a de minimis number of uninjured class members" does not defeat predominance. *Id.* at 669; *id.* at 680 (28% did not defeat predominance). Plaintiffs could satisfy predominance even by showing that most bottles purchased at retail contain at least 0.5% alcohol. Here, Plaintiffs present common evidence that *all* bottles tested at retail exceed the limit.

Fourth, unlike in *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023), where the defendant "provided evidence" that certain specific class members were uninjured, *id.* at 1068, Defendant offers no evidence that any specific class members purchased bottles containing less than 0.5% alcohol. Indeed, Defendant conducted no testing whatsoever at retail (the point at which it made the misrepresentations to consumers and consumers relied on them). Br. 13-14. In *Van*, the Defendant's evidence consisted of individualized inquiries into the purpose of specific discounts, which "summon[ed] the spectre of class-member-by-class-member adjudication." 61 F.4th at 1069. Here, both parties' evidence on alcohol content (extrapolation from testing) applies class-wide.

**II.     Defendant's reliance on the alcohol disclosure on the label is misplaced.**

Defendant asserts that "Plaintiffs' theories rely on the false assumption consumers ignore the disclosure on every Enlightened bottle stating it 'has naturally occurring alcohol.'" Br. 3. So it argues that because some consumers may have read that disclosure, Plaintiffs cannot show deception, materiality, and reliance with common proof. Br. 3, 10-12, 19-20. This argument fails on every level.

To begin, deception, materiality, and reliance all fall under the objective reasonable-consumer standard, not the subjective understandings of individual consumers. Br. 10, 17-

Plaintiffs' Supplemental Memorandum          2          Case No. 2:19-cv-10920-FMO-DSRx

18. And Plaintiffs present common evidence capable of resolving this objective question: the labels themselves, and Mr. Silverman's opinions. Br. 10, 18. Whether or not a jury will ultimately find this evidence persuasive is irrelevant to class certification; either way, the verdict will resolve the issue class-wide based on the objective standard.

Defendant is also wrong that Plaintiffs' claims turn on whether reasonable consumers are likely to read the disclosure. The disclosure states only that the bottle "has naturally occurring alcohol." It does not disclose that it has enough alcohol to be considered an alcoholic beverage. A reasonable consumer who reads the disclosure would understand that the bottle might contain trace amounts of alcohol, but not enough to cross the threshold for an alcoholic beverage. Indeed, each named Plaintiff testified that they read the disclosure and understood it might contain trace amounts of alcohol, but still believed it was a non-alcoholic beverage. Dkt. 219-8 (Patel Dep.) 59:3-22, 123:6-22; Dkt. 219-9 (Schmidt Dep.) 142:4-143:9; Dkt. 219-10 (Nunez Dep.) 42:15-43:7, 123:13-22. And that is consistent with Mr. Silverman's opinion that a reasonable consumer can understand that the kombucha has trace levels of alcohol (as the disclosure states) but still think that it is a non-alcoholic beverage (because it does not have the Government Warning or other labeling indicating it is an alcoholic beverage). Dkt. 219-7 (Silverman 2021 depo.) at 74:8-22, 77:23-78:6, 80:4-10. The relevant deception is that any alcohol levels in Enlightened Kombucha are low enough that it is a non-alcoholic beverage (i.e., below 0.5%), not that it has no alcohol whatsoever. *See* Dkt. 219 at 18-19.

III. **That consumers sometimes intentionally buy correctly labeled alcoholic beverages is irrelevant. Here, Defendant's misleading labels tricked consumers into unwittingly buying alcoholic beverages.**

Defendant relies on the faulty premise that if consumers sometimes intentionally buy alcoholic beverages, then whether Enlightened Kombucha is an alcoholic beverage is immaterial to them. For example, Defendant argues (based on a flawed survey, *see* Dkt. 101-2 (Dennis Rebuttal Rep.)) that consumers would buy Enlightened Kombucha even if it had the Government Warning. Br. 20. It argues that "consumers *do* regularly buy and

Plaintiffs' Supplemental Memorandum      3      Case No. 2:19-cv-10920-FMO-DSRx

consume alcoholic beverages; it is not illegal to do so." *Id.* And it argues that Plaintiff Nunez is atypical because he intentionally drank alcoholic beverages while under 21. Br. 6.

This argument does not make sense. That consumers sometimes intentionally drink alcohol does not address the wrong alleged here: that Defendant's misleading labels trick consumers into unknowingly consuming an alcoholic drink when they are trying to buy a purportedly non-alcoholic drink. A consumer may want to have a beer on Friday after work, but this does not mean they want to be tricked into buying and drinking alcoholic kombucha on a Wednesday lunch break. Here, when consumers bought Enlightened Kombucha (labeled as non-alcoholic), they intended to buy non-alcoholic beverages. (If they had wanted alcoholic kombucha, they could have purchased Defendant's Classic Kombucha.) It is irrelevant that consumers may, in other circumstances, knowingly choose to buy and consume alcoholic beverages.

The same goes for Mr. Nunez. That he knowingly chose to drink alcoholic beverages (even underage) does not mean he wanted to be tricked into doing it. His injury is the same as the other underage class members, who were tricked into (illegally) buying alcoholic beverages when they intended to buy non-alcoholic beverages.

Defendant's argument is especially unpersuasive because materiality is based on the objective reasonable consumer standard, not any individual consumer's shopping habits. Br. 17-18. The subjective preferences (or drinking habits) of any individual consumer are irrelevant to this objective standard. And while an objective, reasonable consumer may sometimes knowingly choose to drink alcoholic drinks, this does not mean that they want to be tricked into unwittingly buying alcoholic drinks. This is true for a variety of legal, health, and practical reasons. *See* Br. 24 (listing some of these reasons).

**IV.    Plaintiffs' counsel did not enter any "side deals" affecting their adequacy.**

Defendant contends that Plaintiffs' counsel is inadequate because it entered "side deal that prevents them from opposing fees for former counsel, even if class interests require it—a direct conflict." Br. 7. This is false. The provision Defendant points to states, "If any Party withdraws from the Litigation, *the withdrawal* shall not preclude the

Plaintiffs' Supplemental Memorandum          4          Case No. 2:19-cv-10920-FMO-DSRx

withdrawing attorneys' rights to be compensated for work done prior to the withdrawal …." Ex. 8 (Appx. 58) at 2 (emphasis added). All that says is that the withdrawal itself does not prevent former counsel from being compensated. Nothing in that provision restricts current counsel's ability to oppose former counsel's application to the Court for compensation, if doing so is in the class's best interests (for example, because former counsel requests more than is fair for its contributions).

## V.    Defendant's damages arguments cannot defeat certification.

### A.    Plaintiffs' actual-damages model need not account for value received.

Courts in this Circuit have repeatedly rejected Defendant's assertion that "'actual damages' require accounting for the value received." Br. 32; *see* Br. 30-31 (citing cases).

Defendant argues that actual damages measures "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received." Br. 32 (citing *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 625 n.2 (9th Cir. 2018)). But that is "not the only model for calculating damages." *Keating v. Nordstrom, Inc.*, 2020 U.S. Dist. LEXIS 63124, at *15-16 (D. Alaska Apr. 10, 2020). As Defendant's own cited case confirms, "a full refund theory of liability would be appropriate" where "the misrepresentations induced the class to purchase a product they would not have otherwise purchased at all." *Mezzadri v. Med. Depot, Inc.*, 2016 U.S. Dist. LEXIS 205239, at *8 (S.D. Cal. Nov. 18, 2016). When plaintiffs purchased a product they would not have otherwise purchased at all, the amount they would have paid absent the misrepresentations is $0. So their actual damages are the full amount paid, even if the product has some value. Br. 31.

In Defendant's cited cases, by contrast, the plaintiffs either did not argue or did not provide sufficient evidence that they would not have purchased the products absent the misrepresentations. *See Zakaria v. Gerber Prods. Co.*, 2017 U.S. Dist. LEXIS 221124, at *50 (C.D. Cal. Aug. 9, 2017) (plaintiffs argued only for price premium, not full refund); *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 486 (C.D. Cal. 2025) (plaintiff "merely gesture[d] at a damages model," with no evidence (cleaned up)); *Ang v. Bimbo Bakeries USA, Inc.*, 2018 U.S. Dist. LEXIS 149395, at *34 (N.D. Cal. Aug. 31, 2018) (addressing restitution, not

Plaintiffs' Supplemental Memorandum              5              Case No. 2:19-cv-10920-FMO-DSRx

actual damages); *Mezzadri*, 2016 U.S. Dist. LEXIS 205239, at *8 ("Plaintiff has never argued … that the misrepresentations induced the class to purchase a product they would not have otherwise purchased at all.").

> ### B.    Plaintiffs' fraud-in-the-selling theory of restitution is a certifiable, classwide damages model.

Defendant concedes that full refunds are appropriate where the defendant sells one product disguised as another. Br. 36. For example, this theory applies to sales of mostly-instant coffee marketed as ground coffee. *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 258 (S.D. Ill. 2015). It applies to investment classes lacking Trump-selected teachers advertised as investment classes with Trump-selected teachers. *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 637 (S.D. Cal. 2015). It also applies to alcoholic beverages marketed as non-alcoholic beverages. Br. 33-36; *see* Br. 24 (explaining why alcoholic beverages are fundamentally different products from non-alcoholic beverages).

Defendant cites only one case, and it is not on point. In *Mezzadri*, "[g]iven the nature of patient slings, class members likely would have purchased another manufacturer's sling" even if they did not buy the defendant's sling. *Mezzadri v. Medical Depot, Inc.*, 2016 WL 5107163, at *11 (S.D. Cal. May 12, 2016). In other words, class members would have purchased *the same product* (a sling) from a different manufacturer. The misrepresentations about the purchased sling did not go to the nature of the product. *See id.* (distinguishing *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) on this basis).

As this Court already held, whether Enlightened Kombucha is an alcoholic beverage goes to "the very nature or an inherent quality or characteristic" of the product. *Tortilla Factory, LLC v. GTs Living Foods, LLC*, 2020 U.S. Dist. LEXIS 219851, at *2 (C.D. Cal. Sept. 11, 2020) (Olguin, J.) (quotation omitted). Alcoholic beverages are fundamentally different products from non-alcoholic beverages. *See* Br. 24. And when class members made their purchases, they would not have bought an alcoholic beverage at all (from any manufacturer) because they were trying to buy a non-alcoholic beverage. These are the circumstances of *Figgie*, *Makaeff*, and *Suchanek*. Br. 34-35. Defendant's own

Plaintiffs' Supplemental Memorandum          6          Case No. 2:19-cv-10920-FMO-DSRx

cited case confirms that a full refund is appropriate in these circumstances—where "the fraud in the selling induced the plaintiff to purchase a product" (alcoholic kombucha) "he otherwise would not have purchased." *Mezzadri*, 2016 WL 5107163, at *10.

Defendant argues that the "label advised consumers it contains alcohol" and "the presence of slightly more alcohol than disclosed (a claimed 0.8% ABV difference on average) does not render the product completely different, and many consumers would still purchase it." Br. 36. But the presence of more alcohol than disclosed is what brings Enlightened Kombucha above the 0.5% threshold and makes it an alcoholic beverage (a different product from a non-alcoholic beverage). 27 C.F.R. § 16.10. And that consumers may purchase alcoholic kombucha *when they want an alcoholic beverage* is irrelevant to the sales here, when class members were trying to purchase non-alcoholic beverages. *Supra* § III. For example, that there is a market for instant coffee does not preclude a full refund for purchases made when trying to buy ground coffee. *Suchanek*, 311 F.R.D. at 258.

**C.    Plaintiffs' illegal-and-unfair-sales theory of restitution is a certifiable, classwide damages model.**

Courts allow full refunds in restitution for sales that are illegal or inherently unfair. Br. 37-38. Defendant's response is that the label discloses Enlightened Kombucha has some alcohol, and even if it has more than 0.5% it does not pose "any real 'danger.'" Br. 38-39. This argument fails at every level.

First, that the label says kombucha "has naturally occurring alcohol" does not render the products legal. Under government regulations, alcoholic beverages (beverages containing at least 0.5% alcohol) must contain a specific Government Warning, and are subject to other regulations. 27 C.F.R. § 16.20; *see* Br. 37-38. Defendant's label does not contain this warning, and does not otherwise disclose that the kombucha contains enough alcohol to make it an alcoholic beverage. Although Defendant is correct that "[a]lcohol generally is not illegal to purchase, possess, or consume" (Br. 39), it is illegal to sell alcoholic beverages without the Government Warning, and it is illegal for consumers to purchase, possess, or consume alcoholic beverages in certain circumstances (e.g., while

Plaintiffs' Supplemental Memorandum          7          Case No. 2:19-cv-10920-FMO-DSRx

driving, or for or by a minor). Br. 24, 37-38.

Second, Defendant's argument that the alcohol levels are "too low to pose a health risk" runs headlong into the federal government's determination that beverages containing at least 0.5% alcohol are dangerous enough to require a specific Government Warning. 27 C.F.R. §§ 16.10, 16.20. That is not a threshold Plaintiffs came up with for this case; it is a threshold set by government regulations. And Defendant's kombucha is often more than double—or even quadruple—that threshold. Ex. 13 (Appx. 192) (Spedding Rep.) ¶ 27.

Third, this is not a mere "technical" violation. Br. 40 (citing *Corbett v. PharmaCare U.S., Inc.*, 2024 U.S. Dist. LEXIS 58336, at *75 (S.D. Cal. Mar. 29, 2024)). Defendant marketed and sold its kombucha as non-alcoholic, even though it exceeds the threshold for an alcoholic beverage. This exposed unwitting consumers to danger and criminality, because they did not know they were buying and drinking alcoholic beverages. Br. 24, 38. This violation is far more substantial than in *Corbett*, where the defendant merely failed to "provide notice to the FDA" before selling products with blackberry extract, a "'new' dietary ingredient." *Corbett*, 2024 U.S. Dist. LEXIS 58336, at *6-7.

**D.    Plaintiffs' restitutionary disgorgement model is a certifiable, classwide damages model.**

Defendant argues that restitutionary disgorgement "cannot support full refund." Br. 43. But Plaintiffs' restitutionary disgorgement model does not seek a full refund. Instead, it seeks to recover Defendant's "net profits (revenue minus cost)" from its deceptive scheme—a different method of calculating restitution. *Spann v. J.C. Penney Corp.*, 2015 U.S. Dist. LEXIS 42545, at *23 (C.D. Cal. Mar. 23, 2015) (Olguin, J.). This Court has already rejected Defendant's argument that such calculations must account for value received. *Id.* at *23 & n.12. Here, the amount that Defendant unjustly received is the profits it made by selling alcoholic kombucha disguised as non-alcoholic kombucha.

Defendant complains that Plaintiffs have not yet executed this model (Br. 44), but all Plaintiffs have to show at this stage is "that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle*, 114 F.4th at 1024. And here,

Plaintiffs' Supplemental Memorandum          8          Case No. 2:19-cv-10920-FMO-DSRx

Plaintiffs do more than "merely gestur[e] at a model or describe[e] a general method." Br. 44 (quotation omitted). They explain exactly how they will reliably calculate disgorgement: by multiplying Defendant's revenues from Enlightened Kombucha (which Plaintiffs have for some years, and Defendant is under an obligation to produce for the remaining years) and Defendant's profit margins, which Plaintiffs can obtain by calling GT Dave— Defendant's founder, owner, and corporate representative—to testify at trial. Contrast this with *Shin*, relied on by Defendant, where the "the full extent of Plaintiff's damages analysis" was merely "propos[ing] that the Court calculate class damages through either a full refund model or conjoint analysis for premium price model." *Shin*, 348 F.R.D. at 485.

## VI.    *Retta* poses no bar to class certification.

Defendant argues that individual questions about *Retta* class membership preclude certification here. Defendant is wrong for three reasons.

First, because Defendant's liability will be determined in the aggregate, and because that aggregate calculation excludes purchases by *Retta* class members, Defendant has "no due process interest in challenging class membership that stands in the way of certification." *Forcellati v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *16 (C.D. Cal. Apr. 9, 2014). Defendant will have to pay the same amount regardless. And "a defendant's interest is 'only in the total amount of damages for which it will be liable,' not 'the identities of those receiving damage awards.'" *Id.* at *16-17 (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996)).

Courts in this Circuit routinely reject arguments—like Defendant's here—that questions about class membership defeat certification when damages are calculated in the aggregate. *See, e.g., id.*; *Lewert v. Boiron USA, Inc.*, 2014 U.S. Dist. LEXIS 199486, at *14 (C.D. Cal. Nov. 5, 2014) (defendant "has no due process interest in determining class members' identities" when "liability will be determined in the aggregate"); *Ortega v. Nat. Balance, Inc.*, 300 F.R.D. 422, 430 (C.D. Cal. 2014) (applying the same reasoning); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 659-60 (C.D. Cal. 2014) (same); *Werdebaugh v. Blue Diamond Growers*, 2014 U.S. Dist. LEXIS 71575, at *36 n.4 (N.D. Cal. May 23, 2014) (same); *In re*

Plaintiffs' Supplemental Memorandum          9          Case No. 2:19-cv-10920-FMO-DSRx

*JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 1001 (N.D. Cal. 2022) (same); *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 476 (S.D. Cal. 2015) (same).

Second, even for individual damages calculations, "so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected." *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) (quotation omitted). Determining class membership during the claims process does not "affect predominance or overcome the superiority of a class action." *Id.*

Third, Plaintiffs need not "identify a method to 'confirm' class membership at this stage." *Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856, at *54 (C.D. Cal. Apr. 14, 2022) (Olguin, J.). Class membership can be assessed in the claims administration process, through affidavit or other means. *See, e.g.*, *Krueger*, 310 F.R.D. at 476 ("[C]ourts in this circuit have found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits."); *Allen*, 300 F.R.D. at 659 (rejecting argument against "identify[ing] class members based on self-identification"); *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *36 n.4 (rejecting defendant's argument that "allowing class members to self-identify would violate its due process right to raise individual challenges to class members"); *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *25 (C.D. Cal. Jan. 13, 2014) ("A prospective plaintiff would have sufficient information to determine whether he or she was an Elations customer who viewed the specified label during the stated time period."). Courts have rejected memory-based challenges because "sufficient notice can cure confusion and these issues may be addressed later in the litigation." *McCrary*, 2014 U.S. Dist. LEXIS 8443, at *26.

**VII.  This Court already rejected Defendant's arguments about standing to seek injunctive relief.**

This Court previously rejected Defendant's argument that former Plaintiffs lacked standing to seek injunctive relief. Dkt. 53 at 3-5. Defendant's arguments fail here for the same reasons. *See* Dkt. 168 (SAC) ¶¶ 18, 21, 24; Plaintiff Decls. (Appx. 1-9) ¶ 6.

Plaintiffs' Supplemental Memorandum       10       Case No. 2:19-cv-10920-FMO-DSRx

Dated: April 9, 2026

Respectfully submitted,

By: */s/ Gabriel Doble*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
Gabriel Doble (Cal. Bar No. 335335)
gabe@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

Plaintiffs' Supplemental Memorandum        11        Case No. 2:19-cv-10920-FMO-DSRx