Jacob M. Harper (Cal. Bar No. 259463)
  jacobharper@dwt.com
Heather F. Canner (Cal. Bar No. 292837)
  heathercanner@dwt.com
Joseph Elie-Meyers (Cal. Bar No. 325183)
  josepheliemeyers@dwt.com
Peter K. Bae (Cal. Bar No. 329158)
  peterbae@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
GT's Living Foods, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ, on Behalf of Themselves and All Others Similarly Situated,<br><br>             Plaintiff,<br><br>      vs.<br><br>GT'S LIVING FOODS, LLC,<br><br>             Defendant. | Case No. 2:19-cv-10920-FMO-DSR<br><br>**GT'S LIVING FOODS, LLC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>**Hearing Date:** April 23, 2026<br>**Time:** 10:00 a.m.<br>**Courtroom:** 6D<br><br>Hon. Fernando M. Olguin |

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

1

With the filing of Plaintiffs' Opposition to GT's Motion to Strike or Exclude their expert, Dkt. 219, there is no remaining doubt that Plaintiffs have not and cannot satisfy their burden of showing commonality or predominance (let alone the other Rule 23 requirements). Plaintiffs repeatedly argue that the numerous flaws in their expert testimony "go to the weight," not admissibility, of their expert evidence. *Id.* at 1 (citing *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018)).  But even if none of Plaintiffs' expert evidence is excluded, it still cannot satisfy Plaintiffs' burden under Rule 23.[1] The Court must still "engage in a rigorous analysis of commonality, rather than merely concluding that, because evidence was admissible, a finding of commonality was appropriate." *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986 (9th Cir. 2020) (cleaned up).

Plaintiffs  fail this test. They were required to show "by a preponderance of the evidence," that there are "questions that are 'central to the validity' of the claims" are "capable of being resolved 'in one stroke" and "on a class-wide basis." *Black Lives Matter L.A. v. City of L.A.*, 113 F.4th 1249, 1260 (9th Cir. 2024).  But Plaintiffs' reports (their critical evidence on commonality and predominance) do not provide evidence or "methods by which plaintiffs propose to use . . . class-wide evidence to prove the common question in one stroke." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1028 (9th Cir. 2024) (cleaned up). Nor do these reports show "by a preponderance of the evidence that . . . a class-member-by-class-member assessment of the individualized issue will be unnecessary or workable." *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023). To the contrary, Plaintiffs' expert evidence (even if admitted) frequently highlights the individualized inquiries required for each claim:

---

[1] GT's Supplemental Brief focuses on Plaintiffs' failure to satisfy their burden on class certification *even if* the Court denies GT's motion to exclude Plaintiff's expert witnesses (Dkt. 208). Additional, independent reasons to deny class certification are set out in GT's sections of the Joint Brief (Dkt. 207).

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

- **The Spedding Report** does not establish elevated alcohol content for all Enlightened products, and provides no methodology to determine which bottles (if any) contained elevated alcohol when sold—even though Spedding concedes that alcohol content depends heavily on storage temperature and, with proper refrigeration, increased alcohol content through fermentation is minimal.

- **The Silverman Report** does not even attempt to opine on whether the claimed small variations in alcohol content are material to consumers, and Mr. Silverman admits that "to consumers, it's not so much a matter of the percentages," even though fractions of a percentage point of alcohol content are all that is at stake here. Further, Silverman does not opine that the sugar disclosure is material to reasonable consumers, but rather admits "not every consumer" cares about sugar content, precluding a finding of commonality as to materiality.

- **The Weir Report** provides no evidence whatsoever to account for the value provided to consumers by Enlightened products, failing *Comcast*.

- **The Dennis Report** highlights the complex, individual inquiries necessary to determine whether any potential class member is excluded from the class by *Retta* class membership—and Plaintiffs' primary defense is that "memory aids" and "open-ended questions" may help class members recall distant, low-salience purchases—that is, witness testimony in individualized "mini-trials," precisely what the Ninth Circuit counsels against. *See Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469-71 (9th Cir. 2023).

Even if the Court does not exclude any of these opinions, these deficiencies require denial of class certification because Plaintiffs still cannot satisfy their burden of showing commonality, predominance, or superiority.

---

3

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## I.   PLAINTIFFS' EXPERTS DO NOT SUPPORT COMMONALITY OR PREDOMINANCE.

Even if not excluded, the Spedding and Silverman reports cannot show commonality or predominance as to alcohol and sugar content or the materiality of the purportedly deceptive statements. This requires denial of class certification.

**A.   Plaintiffs do not show that elevated alcohol or sugar levels are subject to common proof, and individualized questions predominate.**

Plaintiffs have not met their burden of showing that the cornerstone of this lawsuit can be proven by common evidence —whether *all* Enlightened flavors contained elevated alcohol and sugar throughout the class period. Their only evidence on this critical point is the expert testimony of Dr. Spedding. *See* Joint Br. at 12–14 (citing Spedding *passim*). Even setting aside his outdated, limited, and sloppy testing, Spedding admits that Enlightened is a dynamically fermenting product, yet offers no methodology to test or account for variations in refrigeration during the storage, shipment, and display of Enlightened products–even while conceding that such changes in temperature can raise the alcohol content of Enlightened. This alone requires denial of class certification.

**Alcohol.** GT's unrebutted evidence shows that *all* GT's kombucha is shipped with an ABV below 0.5%. GT's has produced thousands of third-party tests, conducted during the class period on its entire product line, *all* of which (save a single test) showed less than 0.5% ABV in properly refrigerated Enlightened bottles tested at both the beginning and end of their expiration dates. Ex. 39 (App. 2091) (Dave Dep. 2021) 267:16-22; Ex. 38 (App. 2082) (Dave Dep. 2018) 61:15-62:22; 70:9-71:6; 77:9-78:3; 80:4-22; Ex. 34 (Dave Decl. 2026) (App. 898) ¶¶ 6-7 & Ex. 28; Ex. 32 (App. 1548) (tests). These tests are further supported by the expert opinions of Dr. McCarroll, which shows that Enlightened kombucha stays below 0.5% ABV when refrigerated throughout its shelf life. Ex. 27 (App. 853) (McCarrol Report) 4-5, 21-22, 24-26 & Ex. 3.

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Plaintiffs have no response to the necessary inference from GT's extensive testing, which is fatal to class certification: any continued fermentation leading to an alcohol content above 0.5% ABV stems from inherently individualized questions of whether (and to what extent) the bottles purchased by class members were improperly refrigerated by third-party distributors and retailers before purchase, and therefore over fermented. But Spedding has no way to measure or account for continued fermentation due to improperly elevated temperatures: he did not test the temperature of his samples either at the point of sale or when they arrived at his lab after being in transit for an unknown period of time, and he proposes no method for measuring or accounting for storage temperature after Enlightened is shipped from GT's to retailers. Ex. 44 (App. 2219) (McCarrol Reb.) 4, 5; Ex. 41 (App. 2165) (Spedding Dep.) 82:11-20, 198:3-20, 223:24-226:17, 224:18-20.

Spedding's own admissions are fatal to class certification. Spedding admitted that, when properly refrigerated, increases in kombucha alcohol content from continued fermentation are "very small." Ex. 44 (App. 2219) (McCarrol Reb. Rep.) 4,5; Ex. 41 (App. 2165) (Spedding Dep.) 82:11-20; 192:9-14; 203:23-204:2; Ex. 45 (App 2262); (Spedding II) 176:1-14. As a result, he admitted, there is "no basis" for saying that a kombucha bottle that starts below 0.5%, and is properly refrigerated thereafter, "is always going to be above 0.5 percent" ABV before it is consumed. Ex. 41 (App. 2165) (Spedding Dep.) 181:12-19; 177:11-18.

Plaintiffs now argue that it was enough that the samples were "shipped on ice (and received cold)." Dkt. 129 at 16. This only highlights the fatal gap in Spedding's methodology. Even setting aside that "cold" is a relative, non-specific term, Plaintiffs concede Spedding never attempted to account for the temperature at which the bottles he tested were stored at the point of purchase, prior to shipment from California. If the tested kombucha was stored at elevated temperatures before shipment to Spedding (either before or after being purchased at retail), that would have increased the alcohol content of each bottle. Just so, whether any individual

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

consumer's purchased bottle of Enlightened exceeded 0.5% will depend on storage temperate before consumption. Spedding does not have a way to account for this.

For this reason, Spedding cannot connect his limited testing to a methodology for proving, in one stroke, all class members were "actually exposed to the business practices at issue"—precluding a finding of commonality. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014); *Grodzitsky v. Am. Honda Motor Co.*, 2014 WL 718431, at *3 (C.D. Cal. 2014). And even if commonality were satisfied, determining whether any individual bottle was improperly stored—and so exceeded 0.5% ABV—will require fact intensive, individualized inquiries that will predominate over common questions. *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023).

**Sugar.** Plaintiffs now concede that Spedding's testing *does not show* that "sugar content was uniformly misstated" across the Enlightened product line. Dkt. 219 at 17. This concession is fatal to certification of Plaintiffs' sugar-based claims: Plaintiffs admit they have no way to evaluate sugar content across the class. But courts deny certification when "the question 'is there a defect?' would not be capable of generating a common answer-yes or no." *Grodzitsky*, 2014 WL 718431, at *3. Indeed, at lest 30% of Spedding's own tests showed sugar levels within the FDA's safe harbor limit (and therefore non-actionable), and Plaintiffs have no way to account for GT's own tests showing sugar contents within FDA limits. Ex. 13 (App. 192) (Spedding Rep.) ¶¶ 47, 47; 21 C.F.R. § 101.9(g)(5).

**B.     Plaintiffs do not show that materiality is subject to common proof, and individualized questions again predominate.**

As common proof of materiality, Plaintiffs offer only the vibes-based, impressionistic report of Mr. Silverman, which is based on "maybe an hour" of informal consumer observations. Dkt. 208-15 at 14. Even if the Court does not exclude this report, it is not sufficient to establish common proof of materiality of the alleged alcohol or sugar representations, a critical element of each of Plaintiffs'

6

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

claims, which is also required to show classwide reliance and causation. Further, Plaintiffs still have no response to GT's 600-respondent survey evidence showing that only 1.3% of consumers found the absence of a federal alcohol material—far fewer than the 6% that this Court has held inadequate to show common evidence of materiality. *See Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at \*13 (C.D. Cal. Mar. 8, 2016) (Olguin, J.) (no common evidence of materiality where Poret survey showed 6% of consumers found statement material).

**Alcohol.** The only empirical evidence on materiality is GT's survey evidence, which shows that there is no statistically significant difference in consumers' willingness when the federal warning label is included compared to when it is excluded. Ex. 24 (App. 664) (Poret Rep.) at 4, 8-25, 45. Plaintiffs do not rebut this evidence, and it is dispositive: there is no measurable difference in the purchasing decisions between consumers who actually read the existing alcohol warning label, and consumers who are exposed to the surgeon general's warning label. *Id.* That is independently sufficient to deny class certification. *Ono*, 2016 WL 6647949 at \*13; *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) (survey showed materiality not subject to common proof). "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022–23 (9th Cir. 2011).

Silverman's report, even if not excluded, cannot show otherwise. His opinions all center on his contention that customers perceive a "black-and-white" difference between "alcoholic" and "non-alcoholic" beverages, with a non-alcoholic beverage omitting "anything that would say it's alcoholic." Ex. 40 (App. 2095) 21:12-22:4. But this completely disregards the warning label that appears on each bottle of Enlightened and advises consumers that the product contains at least some alcohol, which each individual plaintiff read and understood. Ex. 36 (Nunez) (App. 2026) 42:7-23; Ex. 35 (Patel) (App. 1997) 58:11-59:9, 122:5-124:1; Ex. 37

7

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

(Schmidt) (App. 2057) 140:18-142:18. Silverman cannot and does not opine on whether consumers would find it material that a bottle of Enlightened contains, for example, 0.6% ABV instead of 0.49% ABV, and indeed admits that "to consumers, it's not so much a matter of the percentages." Ex. 40 (App. 2095) (Silverman) 21:12-22:4, 71:22-72:3, 73:3-10, 73:25-74:2. The absence of such evidence is fatal, since Plaintiffs' evidence, at best, shows alcohol levels that barely exceed 0.5% ABV: even if credited, the majority of Plaintiffs' tests during the class period showed less than 1% ABV. Ex. 13 (Appx. 192) (Spedding Rep.) ¶ 26.

Plaintiffs' only response is that Silverman uses the phrase "non-alcoholic" to refer to beverages that "contain less than the 0.5% threshold." Dkt. 219 at 19. That is a distinction without a difference. Silverman does not conclude, and has no basis for concluding, that fractions of a percent more alcohol is material to consumers, because he did not consider potential ranges of ABV at all. Ex. 40 (App. 2095) (Silverman) 21:12-22:4. And the Poret survey provides concrete evidence to the contrary, showing that the inclusion, or absence, of a federal warning label makes no statistical difference to consumer purchase decisions.[2]

Plaintiffs may nitpick the Poret report based on the rebuttal report of Dr. Dennis, which argues the Poret survey did not adequately control for "preconceptions and preexisting beliefs" of survey respondents, and that alternative survey methodologies may have been "more accurate." Dkt. 101-2 Ex. D ¶¶ 84, 85; Dkt. 219 at 19 (citing Dennis rebuttal). But Plaintiffs have produced no survey evidence at all, and indeed Mr. Silverman did not survey, interview, or even speak with *any* kombucha drinkers, much less control for preexisting opinion or attempt to

---

[2] Moreover, Plaintiffs are incorrect, since Silverman's materiality opinions are limited to consumers "wanting to avoid purchasing a product that contains alcohol," which is why he opines that "[i]f the [federal warning] label is present, the product contains alcohol; if it is not present, the product does not." Ex. 13 (Appx. 192) (Spedding Rep.) ¶¶ 51, 52.

8

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

produce statistically significant evidence from such interviews. Ex. 40 (App. 2095) 43:23-25. Dr. Dennis's criticisms therefore apply with even greater weight to the Silverman report and highlight its lack of empirical foundation. Because it is Plaintiffs' burden to establish commonality and predominance as to materiality, these flaws are fatal to class certification. *Cf. Black Lives Matter*, 113 F.4th at 1260.

**Sugar.** Even if not excluded, the Silverman report—nearly pure ipse dixit and Plaintiffs' only evidence of materiality—has critical gaps that bar certification of Plaintiffs' sugar claims. ***First***, he provides no evidence that consumers read and rely on Enlightened sugar levels in making their purchase decisions. *See, e.g.*, *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) (lack of evidence that consumer read and was "deceived by" nutrition facts bars finding of common proof of materiality). ***Second***, Plaintiffs' suggestion that sugar levels can be material to consumers is undercut by Silverman's repeated deposition admissions that (1) "not every consumer cares about sugar content" and (2) for those that do care, there is significant variation as to which size sugar discrepancy is material. Ex. 40 (App. 2095) 209:17-21, 236:6-8, 233:11-249:9. This bars certification of an injunction class, particularly since Plaintiffs' sugar testing does not even show consistently elevated levels of sugar, and, to the extent those levels are elevated, they are only marginally higher than listed on the nutrition facts. *See Ono*, 2016 WL 6647949, at *13 (no common materiality where portion of consumers that found statement material were not coextensive with class members).

**C.    Plaintiffs' damages model does not satisfy Rule 23 or *Comcast*.**

Even if the Weir report is not excluded, it does not satisfy Plaintiffs' burden of showing that common questions predominate as to damages: Weir assumes, rather than provides evidence for, a full damages model. But he provides no methodology to account for the value received by class members in purchasing Enlightened, including its flavor, effervescence, probiotics, and antioxidants. *See Capaci*, 2022 WL 1133818, at *16 (listing cases rejecting full refund method for

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"beverages," noting such products "provide some value … [like] calories, hydration or good taste"); Joint Br. at 28-35. Lacking any evidence or methodology to account for the value of Enlightened products, Plaintiffs cannot satisfy *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) and class certification must be denied.

## II. *RETTA* CLASS OVERLAP BARS CLASS CERTIFICATION

This Court's holding that *Retta* class members are jurisdictionally barred from pursuing claims in this action is fatal class certification. Dkt. 178 at 4. To establish class membership, each class member must show both that they purchased Enlightened after February 28, 2017 (the *Patel* class period), and that they *did not* purchase Enlightened between March 11, 2011 and February 27, 2017 (the *Retta* class period). This will require fact-intensive individual inquiries, including individual testimony to probe memories of purchases made as many as 9 years ago. Whether this question sounds in predominance or superiority, the necessity of such resource-intensive mini-trials bars class certification. *Bowerman*, 60 F.4th at 469-71 (no class certification where mini-trials over each class member's purchase history and credibility would be necessary); *Sapan v. Yelp, Inc., 2021 WL 5302908,* at *6 (N.D. Cal. Nov. 15, 2021) (no certification where plaintiff "has not proposed a method of identifying class members without individualized inquiries").

Dr. Dennis's "unicorn" report (even if not excluded) does not help Plaintiffs overcome these issues. To the contrary, it confirms that individual testimony will be required for each claimant. Plaintiffs now concede that consumers cannot reliably recall low-salience, low-cost grocery purchases from many years ago, such as Enlightened purchases. Dkt. 219 at 3-4. Their only response is that recall accuracy may be improved through the use of "memory aids" such as "product images" and "open-ended questions." *Id.* at 4. But those are precisely the sorts of techniques to be expected during *testimony* of individual class members. In other words, Plaintiffs describe exactly the sort of "mini-trial" that the Ninth Circuit warns against to accurately determine class membership. *Bowerman*, 60 F.4th at 469-71.

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Further, the Dennis survey, at best, estimates the size of the *Patel* class in aggregate; it does not provide a method for testing individual claims. *See* Joint Br. at 46. Plaintiffs prestng no workable method to determine whether any potential *Patel* class member is also a *Retta* class member, and they concede that due process requires that GT's be given the fair opportunity to challenge "the claim to class membership and to contest the amount owed each claimant." *Id.* at 46 (citing *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021)).

Plaintiffs will likely continue to rely on *Brown* to argue such individual defenses can be raised in the claims administration process. But in *Brown* plaintiffs proposed a "straightforward, objective process" to identify class members and test their claims that did not rely on "uncorroborated affidavits" (specifically, checking phone numbers against customer databases). *Brown*, 562 F. Supp. 3d at 602-603. Here, however, Plaintiffs have presented no such objective methodology, and the Dennis report confirms that there is none. Further, *Brown* is not responsive to the many Ninth Circuit authorities recognizing that "'defenses that must be litigated on an individual basis can defeat class certification … particularly where individualized questions are 'complicated' and there is not 'representative evidence introduced to fill . . . evidentiary gaps.'" *Abboud v. Circle K Stores Inc.*, 2025 WL 2800052, at *16 (D. Ariz. Sept. 30, 2025) (quoting *True Health Chiropractic*, 896 F.3d at 931, and *Bowerman*, 60 F.4th at 471).

Even if these individualized inquiries do not sound in predominance, they preclude a finding of superiority. Additional, complex factual inquiries will be necessary to establish purchased products actually had elevated alcohol levels, and that such elevated alcohol content was material to their purchase decision. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Rsch. Inst.,* 253 F.3d 118, 1192 (9th Cir. 2001).

The Court should deny Plaintiffs' motion for class certification.

11

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: April 9, 2026

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers
Peter K. Bae

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant*
*GT's Living Foods, LLC*

12

GT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO CLASS CERTIFICATION

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899