Jacob M. Harper (SBN 259463)
  *jacobharper@dwt.com*
Heather F. Canner (SBN 292837)
  *heathercanner@dwt.com*
Joseph Elie-Meyers (SBN 325183)
  *josepheliemeyers@dwt.com*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
*GT's Living Foods, LLC*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| AMIT PATEL, LAUREN SCHMIDT, and CHRISTOPHER NUNEZ on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GT'S LIVING FOODS, LLC,<br><br>Defendant. | Case No. 2:19-cv-10920-FMO-DSRx<br><br>Assigned to the Hon. Fernando M. Olguín<br>Magistrate Judge Daniel S. Roberts<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE OR EXCLUDE EXPERT REPORTS OF DR. J. MICHAEL DENNIS; COLIN B. WEIR; DR. GARY SPEDDING, AND BRUCE G. SILVERMAN**<br><br>**Hearing Date:** April 23, 2026<br>**Time:** 10:00 a.m.<br>**Courtroom:** 6D<br><br>SAC Filed:  December 17, 2024 |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 2

    A.   Plaintiffs Rely on the Incorrect Legal Standard. ................................. 2

    B.   The 2025 Dennis Report Should Be Stricken. .................................... 4

    1.   Methodological Defects in Dennis's Survey Require Exclusion. ......... 4

    2.   Memory Aids Do Not Cure the Fundamental Recall Problem in Dennis's Survey. ................................................................................ 6

    3.   Dietary Recall Studies Cannot Belatedly Validate Dennis's Extrapolation Method. ........................................................................ 7

    4.   Methodological "Unicorn" Novelty Does Not Excuse Lack of Scientific Support. ............................................................................. 7

    C.   The 2025 Weir Report and Challenged Opinions in the 2021 Weir Report Should Be Stricken. .......................................................... 8

        1.   The 2025 Weir Report Contained Undisclosed Key Data, and Plaintiffs Fail to Show Substantial Justification or Harmlessness. ...................................................................................... 8

            a.   Weir's 2025 Report failed to disclose key data. .............. 9

            b.   Plaintiffs' attempt to shift their misconduct to GT's fails. ..................................................................................... 10

        2.   The Challenged 2021 and 2025 Weir Opinions Supply No Methodology, Only Counsel-Directed Arithmetic. .................. 12

        3.   Weir's Opinions That Rely on Dennis's Should Be Stricken. ................................................................................. 14

    D.   The 2021 Spedding Report Should Be Stricken. ............................... 14

        1.   Spedding's Universal Alcohol Opinion Rests on an Analytical Gap, not Simply a Sample Size Problem. .............. 14

        2.   Plaintiffs' Arguments Regarding Leakage and Ebersole Fail on their Own Terms, and They Make No Argument Regarding the Undisclosed Tests. ........................................... 16

    E.   The 2021 Silverman Report Should Be Stricken. ............................. 18

        1.   Silverman's Opinions Rest on General Marketing Experience and Anecdote, not a Reliable Methodology. ......... 18

        2.   Plaintiffs' "Weight not Admissibility" Framing Fails

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Under Rule 702. ........................................................................ 20

3.    Plaintiffs' Factual Arguments only Underscore the
Absence of Reliable Analysis. ................................................. 21

a.    Contradictory Testimony. ............................................ 21

b.    Government Warning Theory. ....................................... 21

III.    CONCLUSION............................................................................... 22

GT'S REPLY ISO MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asetek Danmark A/S v. CMI USA, Inc.*,
2014 WL 6997670 (N.D. Cal. Dec. 9, 2014)...................................................... 12

*Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.*,
2023 WL 3772817 (C.D. Cal. Apr. 13, 2023) ..................................................... 13

*Brown v. Burlington N. Santa Fe Ry. Co.*,
765 F.3d 765 (7th Cir. 2014) .............................................................................. 20

*Cadena v. Am. Honda Motor Co.*,
2025 WL 3483436 (C.D. Cal. Dec. 3, 2025)........................................................1

*Calamco v. J.R. Simplot Co.*,
2025 WL 2444089 (E.D. Cal. Aug. 25, 2025)..................................................... 10

*Casey v. Home Depot*,
2016 WL 7479347 (C.D. Cal. Sept. 15, 2016) .....................................................8

*City of Pomona v. SQM N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014) ........................................................................ 4, 5

*Cole v. Ecolab, Inc.*,
2023 WL 2609343 (D. Minn. Mar. 23, 2023) .................................................... 16

*Coleman v. United Servs. Auto. Assoc.*,
2023 WL 9110926 (Dec. 22, 2023) .................................................................... 14

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ................................................................... *passim*

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)............................................................................... 7, 14, 15

*Grano v. Sodexo Mgmt., Inc.*,
2023 WL 125590 (S.D. Cal. Jan. 6, 2023).......................................................... 7

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020) ...............................................................................3

*In re AutoZone, Inc.*,
2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) ....................................................6

iv

GT'S REPLY ISO MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
   252 F. Supp. 2d 1005 (C.D. Cal. 2003) ............................................................. 18

*In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   214 F. Supp. 3d 478 (D.S.C. 2016) .................................................................... 16

*Johnson v. Glock, Inc.*,
   2024 WL 4479863 (N.D. Cal. Sept. 30, 2024) ...................................................3

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
   2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ............................................ 13, 14

*Kostelecky v. NL Acme Tool/NL Indus., Inc.*,
   837 F.2d 828 (8th Cir. 1988) .............................................................................. 13

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ...................................................................................... 19, 20

*Lessin v. Ford Motor Co.*,
   2024 WL 5007092 (S.D. Cal. Oct. 31, 2024) .....................................................3

*Lytle v. Nutramax Labs., Inc.*,
   2022 WL 1600047 (C.D. Cal. May 6, 2022) ...................................................... 12

*Martinez v. City of Fresno*,
   2010 WL 761109 (E.D. Cal. Mar. 2, 2010) ....................................................... 12

*McMorrow v. Mondelēz Int'l, Inc.*,
   2021 WL 859137 (C.D. Cal. Mar. 8, 2021) ....................................................... 14

*Medlock v. Taco Bell Corp.*,
   2015 WL 8479320 (E.D. Cal. Dec. 9, 2015) .......................................................5

*Mytee Prods., Inc. v. HD Prods., Inc.*,
   2009 WL 10672416 (S.D. Cal. Mar. 12, 2009) .................................................. 12

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ........................................................................... 13

*Newsome v. McCabe*,
   2002 WL 548725 (N.D. Ill. Apr. 4, 2002) ..........................................................8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   420 F. Supp. 2d 1070 (N.D. Cal. 2006) ............................................................. 18

v

GT'S REPLY ISO MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Oracle Am., Inc. v. Google Inc.*,
  2016 WL 1743116 (N.D. Cal. May 2, 2016) ........................................................6

*Pollock v. Fed. Ins. Co.*,
  2024 WL 4700637 (N.D. Cal. Nov. 5, 2024) ...................................................... 12

*Reese v. Herbert*,
  527 F.3d 1253 (11th Cir. 2008) ........................................................................ 11

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) ......................................................................... 3, 4

*Senne v. Kansas City Royals Baseball Corp.*,
  2017 WL 897338 (N.D. Cal. Mar. 7, 2017) .......................................................6

*Siqueiros v. Gen. Motors LLC*,
  2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ......................................................... 19

*Thomas v. Smith's Food & Drug Ctrs., Inc.*,
  2025 WL 2637465 (D. Nev. Sept. 12, 2025) ...................................................... 21

*Tortilla Factory, LLC v. GT's Living Foods*,
  2022 WL 3134458 (C.D. Cal. June 9, 2022) .......................................................6

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............................................................. 19

*United States v. Chischilly*,
  30 F.3d 1144 (9th Cir. 1994) ........................................................................... 17

*United States v. Parrish*,
  1996 WL 184457 (9th Cir. Apr. 17, 1996) ........................................................ 17

*United States v. Valencia-Lopez*,
  971 F.3d 891 (9th Cir. 2020) ................................................................. 2, 18, 20

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ............................................. 12, 13

*Wendell v. GlaxoSmithKline LLC*,
  858 F.3d 1227 (9th Cir. 2017) ...........................................................................8

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ..................................................................... 9, 11

GT'S REPLY ISO MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 14

Fed. R. Civ. P. 26 ................................................................................. 1, 9, 10, 12

Fed. R. Civ. P. 37(c) ............................................................................. 9, 11, 12, 17

Fed. R. Evid. 702 ........................................................................................... *passim*

Fed. R. Evid. 702(c) ............................................................................................ 17

Fed. R. Evid. 702(d) ........................................................................................... 17

**Regulations**

27 C.F.R. § 16.21 ............................................................................................... 21

GT'S REPLY ISO MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## I.   INTRODUCTION

Plaintiffs launch their opposition with an outdated, incorrect legal standard and do not let up in applying it. They wrongly insist the myriad problems with their experts are not meant to be resolved now, ignoring that after the 2023 amendments to Rule 702, a proponent must demonstrate by a preponderance that an expert report satisfies the rule *at the class certification stage*.  Mot. at 2–3; *Cadena v. Am. Honda Motor Co.*, 2025 WL 3483436, at *9 (C.D. Cal. Dec. 3, 2025). The Court must resolve the fundamental flaws with Plaintiffs' experts now, and it should exclude their opinions because Plaintiffs do not satisfy their burden of establishing admissibility by a preponderance of the evidence. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025).

**Dennis Report.** Plaintiffs' opposition largely ignores the fundamental problem GT's identified in Dennis's "unicorn" survey: Dennis's opinions are not the product of accepted principles of survey research. His survey required consumers to recall routine, low-salience grocery purchases from many years earlier—a task courts and the survey literature recognize as unreliable—and then compounded that defect through survey design choices that amplified recall error. Dennis also relied on an entirely unsupported extrapolation method, assuming respondents' purchases in their most recent year could be projected backward across every prior year they reported buying Enlightened.

**Weir Report.** Plaintiffs' defense of Weir's damages model ignores both its disclosure defects and its methodological failures. Plaintiffs still do not explain why the core Circana dataset underlying the 2025 report was withheld until the middle of Weir's deposition. And even putting aside that Rule 26 violation, Weir offers no economic methodology at all; he simply assumes Plaintiffs' legal theory and performs non-expert arithmetic.

**Spedding Report**. Plaintiffs cannot salvage Spedding's sweeping claim that "100 percent" of Enlightened kombucha nationwide exceeded the alcohol threshold.

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

That conclusion rests on a tiny, outdated set of tests that did not control for critical variables such as storage conditions and thus cannot plausibly support extrapolation across millions of bottles sold over nearly a decade.

**Silverman Report**. Plaintiffs' opposition confirms the fundamental problem with the Silverman report: it is speculation presented as expertise. Silverman conducted no consumer research of any kind and instead bases his opinions on anecdotal impressions from brief grocery-store observations and generalized advertising experience. Rule 702 requires reliable methodology, not "ipse dixit" conclusions untethered to any verifiable analysis.

The Court should grant GT's Motion and strike, exclude, or limit Plaintiffs' experts.

## II.    ARGUMENT

### A.    Plaintiffs Rely on the Incorrect Legal Standard.

Plaintiffs entire opposition relies on an overly permissive, and incorrect, interpretation of Rule 702's critical gatekeeping function. The Ninth Circuit has recently re-affirmed there is no rule favoring admission of expert evidence. *Engilis*, 151 F.4th at 1049–50; Opp. 1. In fact, that is precisely what the 2023 Amendment was intended to stop: "[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. ***These rulings are an incorrect application of Rule[] 702***." Fed. R. Evid. 702 Advisory comm.'s note to 2023 amendment (emphasis added). *Engilis* since clarified that any "'liberal thrust' favoring admission" (which Plaintiffs rely on, Opp. *passim*) "should not be understood to suggest a presumption of admission." 151 F.4th at 1050. Rather, the trial court must determine whether the "soundness of the expert's methodology … satisfies the threshold requirements established by Rule 702," not just whether it is "junk science," as Plaintiffs wrongly contend. *Id.* (citation modified); *see also United States v. Valencia-Lopez*, 971 F.3d 891, 899 (9th Cir. 2020) ("[D]ismissing

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

an argument as going to the weight, not admissibility, of the expert's testimony is *not* a reliability determination.") (citation modified).

Plaintiffs cite *Sali v. Corona Regional Medical Center*, 909 F.3d 996 (9th Cir. 2018), for the proposition that the admissibility of expert testimony "should go to the weight that evidence is given at the class certification stage," claiming this means "[t]he *Daubert* standard is even more liberal for class certification." Opp. 1.

First, this misreads *Sali*, which expressly held that "in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in *Daubert*." *Sali*, 909 F.3d at 1006.

Second, while *Sali* also held admissibility must not be "dispositive" of the class certification determination, *id.*, it cannot mean that no expert evidence can be excluded at class certification, since the Ninth Circuit has since affirmed the exclusion of flawed expert evidence, *see Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984–86 (9th Cir. 2020) (citing *Sali*). *Grodzitsky* makes clear that *Daubert* applies at class certification, and "the district court judge must ensure that all admitted expert testimony is both relevant and reliable" at that stage. 957 F.3d at 984 (and citing *Sali*).

Third, even if *Sali* stood for a "liberal" admissibility standard, it has been superseded by the 2023 Amendment and subsequent, binding Ninth Circuit precedent. *See Lessin v. Ford Motor Co.*, 2024 WL 5007092, at *2 (S.D. Cal. Oct. 31, 2024) ("The Ninth Circuit has stated that district courts should apply *Daubert* and Rule 702 standards at the class certification stage."). Accordingly, the court should evaluate GT's motion to exclude under Rule 702, applying a preponderance of the evidence burden upon Plaintiffs, not a "liberal" presumption in favor of admission.

Finally, even if admissibility may not be dispositive of class certification under *Sali*, that has no bearing on whether Plaintiffs' expert reports are *methodologically sound* under *Daubert* and Rule 702, and therefore sufficient to

3

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

support class certification. Because they are not, they should be excluded under *Daubert* and Rule 702 or, at a minimum, afforded no weight for class certification purposes.

**B.      The 2025 Dennis Report Should Be Stricken.**

**1.      Methodological Defects in Dennis's Survey Require Exclusion.**

Plaintiffs cannot defend Dennis's failure to conform to accepted principles of survey research. Dennis required respondents to recall routine, low-salience kombucha purchases from as far back as eight to fourteen years earlier—an "impossible" recall task that even Dennis has previously criticized as unreliable. Mot. 4–6. Dennis compounded this problem by extrapolating from distant memories based on an assumption he admitted was unsupported by evidence. *Id.* Plaintiffs' principal response is to recast fundamental methodological defects as mere issues for cross-examination. This fails for multiple reasons.

**First**, Plaintiffs are incorrect as a matter of law that flaws in Dennis's survey go to weight only. Where an opinion rests on unsupported assumptions or unvalidated methods, exclusion, not cross-examination at trial, is the appropriate remedy. *See Engilis*, 151 F.4th at 1049 ("'Judicial gatekeeping is essential' to ensure that an expert's conclusions 'do not go beyond what the expert's basis and methodology may reliably support.'") (quoting Fed. R. Evid. 702 advisory comm.'s note to 2023 amendment).

**Second**, GT's challenges Dennis's methodology itself, not execution flaws in an otherwise accepted methodology. The Ninth Circuit draws a clear distinction: flaws in execution may go only to weight, but opinions resting on a faulty methodological foundation are inadmissible. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014) (citation modified) ("[E]xpert evidence is inadmissible where the analysis is the result of a faulty methodology or theory as opposed to imperfect execution of laboratory techniques."). Indeed, the Ninth Circuit recently clarified that it is "erroneous[]" to treat questions about the

4

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

sufficiency of an expert's basis or the reliability of his methodology as mere issues of weight. *Engilis*, 151 F.4th at 1049 (citing Fed. R. Evid. 702 advisory comm.'s note to 2023 amendment).

Plaintiffs' ask the Court to admit expert opinion first and ask questions about reliability later, but this turns Rule 702's gatekeeping function on its head. Dennis admitted he is unaware of any methodological literature validating surveys that ask respondents to recall low-cost consumer purchases up to eight years earlier, and he conceded his extrapolation technique was simply a "big assumption," not a recognized research method. Mot. 6–8. That is unlike *City of Pomona*, where the expert relied on techniques previously "used and tested" by "several laboratories" and described in a methodological guidance manual. 750 F.3d at 1046–47; Opp. 6.

**Third**, Plaintiffs' cases are distinguishable and do not address the methodological defects present here. While *Medlock v. Taco Bell Corp.* declined to exclude survey evidence, it expressly noted that defendants had provided **no scientific support** for their claim that recall bias undermined the survey. Opp. 3, 6; *Medlock*, 2015 WL 8479320, at *5 (E.D. Cal. Dec. 9, 2015). That premise is absent here, where Dennis himself repeatedly cited scientific literature demonstrating that recall of low-salience consumer purchases rapidly degrades and becomes unreliable beyond short timeframes of less than a year. Mot. 5–6. Dennis previously declared that surveying consumer purchases from more than 12 months prior would produce "unreliable data," yet his new survey required precisely that kind of recall.[1] *Id.* at 6.

Plaintiffs' reliance on *Oracle America, Inc. v. Google Inc.*, 2016 WL 1743116 (N.D. Cal. May 2, 2016) is similarly misplaced. Opp. 3. The survey in

---

[1] Plaintiffs argue that Dennis's 2021 Declaration is irrelevant because "his earlier survey had a 'different' research goal," but do not explain why a different research goal would affect respondent recall. Opp. 7. Dennis declared that "[i]f [he] had surveyed consumers who had not purchased the Products recently, the result would have been unreliable data," a statement which speaks for itself. Elie-Meyers MTS Decl., Ex. B, 2021 Dennis Decl. ¶ 26.

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Oracle* concerned decisions about whether to develop applications for a mobile platform—a high-salience, career-impacting business decision that developers would reasonably remember, which bears no resemblance to routine grocery purchases. 2016 WL 1743116, at *1, *7. As Dennis has repeatedly observed, recall reliability depends heavily on the personal salience of the underlying event. *See* Mot. 4–7. *Tortilla Factory, LLC v. GT's Living Foods*, 2022 WL 3134458 (C.D. Cal. June 9, 2022) fares no better. Opp. 6. *Tortilla Factory* did not involve a survey expert opinion resting on an unvalidated methodology unsupported by the scientific literature. Here, the question is whether Dennis used a reliable method at all.

Because Plaintiffs cannot identify any accepted methodology supporting Dennis's recall demand or his extrapolation approach, this is not a "battle of the experts" but a failure of Rule 702's threshold requirements.

**2.       Memory Aids Do Not Cure the Fundamental Recall Problem in Dennis's Survey.**

As GT's explained, Dennis attempted to mitigate the survey's extreme recall burden by using "memory aids," such as references to historical events and open-ended prompts about respondents' lives. Mot. 7. But Dennis was unaware of any academic literature validating those prompts as reliable tools for recalling years-old grocery purchases. *Id.* The Motion therefore demonstrated that these ad hoc memory aids do not solve the survey's underlying flaws.

Plaintiffs argue that Dennis's memory aids mitigated recall bias. Opp. 4. But memory prompts cannot salvage a survey when the recall task itself is fundamentally unreliable. *See In re AutoZone, Inc.*, 2016 WL 4208200, at *16, *19 (N.D. Cal. Aug. 10, 2016) (excluding survey requiring respondents to recall events occurring three to eleven years earlier). Plaintiffs' authorities do not support a contrary conclusion. Plaintiffs rely on *Senne v. Kansas City Royals Baseball Corp.*, but that case involved a revised Dennis survey that specifically tested for recall bias and implemented validation checks. 2017 WL 897338, at *5–6, *25 (N.D. Cal. Mar.

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

7, 2017). Here, Dennis admitted he conducted no validation of respondent recall at all. Elie-Meyers Reply Decl., Ex. A, Dennis Dep. 165:25–166:2. Plaintiffs' other authority, *Grano v. Sodexo Management, Inc.*, is even further afield: the survey there involved only a "one-to-two-month delay" between the events and the survey, not an eight-to-fourteen-year recall period. 2023 WL 125590, at *5 (S.D. Cal. Jan. 6, 2023).

### 3. Dietary Recall Studies Cannot Belatedly Validate Dennis's Extrapolation Method.

Plaintiffs also cannot defend Dennis's unsupported extrapolation method. Mot. 8. Dennis measured purchase frequency only for each respondent's most recent year of purchase and then projected that behavior backward across every earlier year of the class period—an approach he admitted was based on a "big assumption" with no supporting literature. *Id.* Dennis collected no data to test whether recent purchasing behavior reflects earlier years, and his extrapolation lacks any reliable methodological foundation. *Id.*

Plaintiffs analogize to dietary recall studies to defend this unsupported approach. Opp. 4–5. But Dennis conceded that dietary recall literature involves recall of recent eating habits, typically from the prior week, not reconstruction of years of routine consumer purchases. Elie-Meyers Reply Decl., Ex. A, Dennis Dep. 103:5–13. The methodological gap between recalling what one ate last week and recalling the timing of kombucha purchases made years earlier is obvious. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert testimony should be excluded where there is "too great an analytical gap between the data and the opinion proffered").

### 4. Methodological "Unicorn" Novelty Does Not Excuse Lack of Scientific Support.

Finally, Plaintiffs fail to defend the admission of this novel, "unicorn" study. Dennis conceded that he was unaware of any academic research validating surveys

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

that ask consumers to recall low-cost purchases from up to eight years earlier, and he described his own approach as a methodological "unicorn." Mot. 6. The Motion therefore demonstrated that Dennis's opinions do not rest on accepted principles of survey research. *See Casey v. Home Depot*, 2016 WL 7479347, at *21 (C.D. Cal. Sept. 15, 2016) (citation modified) ("[S]ubstantial deficiencies that fundamentally undermine the reliability of the survey's results … are grounds for its complete exclusion.").

Plaintiffs argue *Daubert* does not require peer scrutiny of the "exact study." Opp. 5 (citing *Newsome v. McCabe*, 2002 WL 548725 (N.D. Ill. Apr. 4, 2002); *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227 (9th Cir. 2017)). That is true but beside the point; those cases held that an expert need not show that the specific study performed in litigation has been or would be published. *See Newsome*, 2002 WL 548725, at *7; *Wendell*, 858 F.3d at 1235. They do not authorize an expert to rely on a methodology that lacks any scientific support at all, as Dennis did. Indeed, *Engilis* explains that even in cases involving unusual scientific questions, experts must still ground their opinions in existing literature. 151 F.4th at 1054 (noting that opinions in *Wendell* involved an "exceedingly rare cancer," but were admissible because the doctors relied on their clinical experience together with "the studies and literature that did exist"). Without any validating literature, testing, or established methodology supporting his recall framework or his backward extrapolation assumption, Dennis's opinions rest on precisely the type of speculation Rule 702 and *Daubert* forbid.

## C.  The 2025 Weir Report and Challenged Opinions in the 2021 Weir Report Should Be Stricken.

### 1.  The 2025 Weir Report Contained Undisclosed Key Data, and Plaintiffs Fail to Show Substantial Justification or Harmlessness.

Plaintiffs admit that the operative Circana dataset underlying the 2025 Weir Report was not disclosed with the report. Opp. 9. Their answer is that this

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

undisputed failure should be forgiven because GT's did not fix it for them by moving to extend the discovery cut off and reopening the Weir deposition. Opp. 8–10. That is not the applicable standard: the failure to disclose was Plaintiffs' fault and it prejudiced GT's, requiring that the 2025 Weir Report be excluded.

### a.      Weir's 2025 Report failed to disclose key data.

Rule 26(a)(2)(B) required Plaintiffs to disclose with the report the "facts or data considered by the witness" and a complete statement of the opinions and their basis. Fed. R. Civ. P. 26(a)(2)(B). Rule 37(c)(1) therefore requires exclusion unless Plaintiffs carried their burden of proving substantial justification or harmlessness. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001) (district court's discretion "particularly wide" under Rule 37(c); "exclusion is an appropriate remedy" absent showing disclosure failure was "substantially justified or harmless"). They have not done so.

Plaintiffs contend Weir disclosed everything he was supposed to in his report and was just relying on "updated data." Opp. 9. Not so. Weir himself described the 2021 and 2025 assignments as "two separate engagements." Elie-Meyers MTS Decl., Ex. L, Weir Dep. 16:25–17:15. The 2025 Report introduced new data, new time periods, new *Patel/Retta* and adult/underage allocations, and new calculations that increased full-compensatory damages from about $120.8 million to about $314.1 million and statutory damages from about $329.6 million to about $910.5 million. *Compare* Elie-Meyers MTS Decl., Ex. D, Weir 2021 Decl. Tables 1, 3, *with* Ex. C, Weir 2025 Decl. Tables 1, 4 (mislabeled 3). Yet Weir's list of documents relied on identified only generic categories such as "IRI/Circana Data," not the operative November 2025 spreadsheet. Elie-Meyers MTS Decl., Ex. C, Weir 2025 Decl., Ex. 2. And Weir could not identify the end date of the new data except to "hazard a guess" that it ran through "mid-to-late 2025." Elie-Meyers Reply Decl., Ex. B, Weir 2026 Dep. 20:9–21:5.

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Confirming the problem, Plaintiffs first produced a spreadsheet titled "Sharpe Subpoena Request November 2025" more than five hours into Weir's deposition, three days before discovery closed. *See* Elie-Meyers, MTS Decl., Ex. L Weir 2026 Dep. 111:10–115:9. Plaintiffs offer no answer to the fact that Rule 26 required disclosure of the specific data Weir actually considered for his 2025 opinions, not a generic reference to vendor materials produced years earlier by the company's predecessor or a "Granular Data" exhibit. *See* Opp. at 9.[2] That Circana is the successor to IRI is irrelevant. Rule 26 required disclosure of the actual data considered for the 2025 report.

### b. Plaintiffs' attempt to shift their misconduct to GT's fails.

Plaintiffs fail to show substantial justification or harmlessness from this lack of disclosure. Plaintiffs recognize that courts analyze prejudice; ability to cure; likelihood of disruption of trial; and bad faith or willfulness in determining harmlessness. Opp. 8; *see Calamco v. J.R. Simplot Co.*, 2025 WL 2444089, at *6 (E.D. Cal. Aug. 25, 2025) (applying these factors to exclude expert). But those factors cut against Plaintiffs. GT's had no reason to anticipate that the operative 2025 Circana production would be withheld from the report and first appear mid-deposition. And GT's had no realistic way to cure that surprise before discovery closed.

Plaintiffs argue that GT's was able to question Weir "extensively" during his 2021 deposition based on the timely disclosed dataset that existed at that time. Opp. 8. That has no bearing on the sales data from the years after 2021, which caused

---

[2] Plaintiffs contend that this argument is an "evidentiary objection" that should have been raised in the joint brief because it is "not a *Daubert* argument." Opp. at 10 n.4. But the arguments here are plainly entwined with GT's *Daubert* arguments and seek the same relief: striking the 2025 Weir Declaration. That is why *Engilis*, the Ninth Circuit's most significant recent *Daubert* decision, also discusses exclusion under Rule 26. *Engilis*, 151 F.4th at 1051 ("this opinion was inadmissible for a separate reason: it was not disclosed in his expert report").

10

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

Weir's compensatory damages estimate to balloon from about $120.8 million to about $314.1 million and statutory damages from about $329.6 million to about $910.5 million. *Compare* Weir 2021 Decl. Tables 1, 3, *with* Weir 2025 Decl. Tables 1, 4 (mislabeled 3). For the same reason, Plaintiffs' assertion that GT's already had historical IRI data proves nothing. Opp. 9. The issue is not whether GT's knew the vendor. The issue is whether Plaintiffs disclosed the specific data Weir actually considered for his 2025 opinions, which they did not. *See Reese v. Herbert*, 527 F.3d 1253, 1265–66 (11th Cir. 2008) ("'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons'" for them; compliance is not "aspirational").

Nor could GT's have cured the prejudice. Plaintiffs argue GT's could have reopened the deposition, but this flips the burden and would reward their violation. Rule 37(c)(1) does not ask whether GT's took sufficient curative action after discovering the failed disclosure mid-deposition but instead whether Plaintiffs can show that withholding the operative dataset from the report was substantially justified or harmless. *Yeti*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). They cannot. Producing the spreadsheet during the deposition left GT's with an impossible choice between trying to examine Weir on roughly 100,000 rows of newly produced data after only a few minutes of review, or trying to restart the deposition in the remaining two days before discovery closed—which still would not have provided sufficient time to review the extensive data sets. *See* Elie-Meyers, MTS Decl., Ex. L, Weir 2026 Dep. 111:10–115:9.[3] That is obvious prejudice. *See Asetek*

---

[3] Plaintiffs complain that, after GT's was ambushed the with fact that new data existed, GT's counsel proceeded as planned with the deposition he had prepared for before later asking for the data. Opp. at 9. Again, with less than three days before

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Danmark A/S v. CMI USA, Inc.*, 2014 WL 6997670, at *2 (N.D. Cal. Dec. 9, 2014) ("deposition testimony does not cure the 'ambush' of a late-disclosed opinion").

Plaintiffs have not carried their Rule 37(c)(1) burden, and Weir's 2025 Report should be stricken.[4]

### 2. The Challenged 2021 and 2025 Weir Opinions Supply No Methodology, Only Counsel-Directed Arithmetic.

Weir performed no economic analysis whatsoever, and mere arithmetic in its absence is not expert opinion. Mot. at 12–13 (arguing "Weir applies no economic methods 'help[ful]' to the Court," including a price-premium analysis, and instead simply performed arithmetic based on counsels' full-refund theory). Plaintiffs' argument that an expert can perform arithmetic based on assumed liability fails, and Plaintiffs cannot meet their burden. Opp. at 11.

An individual who merely applies counsel's legal conclusions to a sales spreadsheet is a calculator, not an expert. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017) ("Wagner simply adopted the opinions of others and performed grade-school arithmetic counsel can do on an easel. Where is any specialized knowledge? There is none."); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008) (quoting

---

the close of discovery, GT's needed answers to the questions it prepared. Nothing supports Plaintiffs' suggestion that the Court would have granted a motion to extend discovery filed within three days of the close of discovery—a motion Plaintiffs no doubt would have opposed based on their arguments here. *Contra* Opp. at 10.

[4] Plaintiffs' cases are inapposite. *See Lytle v. Nutramax Labs., Inc.*, 2022 WL 1600047, at *5 (C.D. Cal. May 6, 2022) (unable to ask about testimony in single other case, not core data in expert report); *Mytee Prods., Inc. v. HD Prods., Inc.*, 2009 WL 10672416, at *3 (S.D. Cal. Mar. 12, 2009) (no harmlessness from "minimally tardy disclosures," unlike one three days before discovery closes); *Pollock v. Fed. Ins. Co.*, 2024 WL 4700637 (N.D. Cal. Nov. 5, 2024) (merits case with no discussion of Rules 26 or 37); *Martinez v. City of Fresno*, 2010 WL 761109, at *4 (E.D. Cal. Mar. 3, 2010) (granting reopening of discovery to cure prejudice).

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988))("[E]vidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible."). In both Reports, Weir began from Plaintiffs' dubious legal premise that the challenged sales "were illegal and should not have taken place" and that, "[a]s such," consumers should receive a full refund. Elie-Meyers, MTS Decl., Ex. D, Weir 2021 Decl. ¶ 7; *Id.*, Ex. C, Weir 2025 Decl. ¶ 7. He then multiplied units by price and labeled the result "full compensatory damages." *Id.*, Ex. D, Weir 2021 Decl. ¶¶ 10–12 & Table 1; *Id.*, Ex. C, Weir 2025 Decl. ¶¶ 10–12 & Table 1. He offered no economic analysis or anything the Court cannot do if Plaintiffs' legal theory is correct. *See, e.g.*, *Waymo*, 2017 WL 5148390, at *6 ("The jury can do the grade-school arithmetic and follow counsel's closing argument on an easel.").[5]

The same defect infects Weir's New York statutory-damages opinions, where he simply applied counsel's instruction that each unit sold constituted a $50 violation. Elie-Meyers, MTS Decl., Ex. D, Weir 2021 Decl. ¶¶ 17–19 & Table 3; *Id.*, Ex. C, Weir 2025 Decl. ¶¶ 21–23 & Table 4 (mislabeled 3). Plaintiffs' cases predated or did not apply the correct legal standard, now improperly relegating questions about Weir's mere arithmetic to "weight." *Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.*, 2023 WL 3772817, at *5 (C.D. Cal. Apr. 13, 2023); *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *4 (C.D. Cal. Sept. 23, 2020) (agreeing with case that stated at the class certification stage, "robust gatekeeping of expert evidence is not required"); *McMorrow v. Mondelēz Int'l, Inc.*, 2021 WL 859137, at *6 (C.D. Cal. Mar. 8, 2021) (citing *Kaupelis* for purportedly relaxed Rule 23 criteria).

---

[5] For example, he conducted no price-premium model, no conjoint analysis, no hedonic regression, and no comparison to any economic alternative.

13

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 3. Weir's Opinions That Rely on Dennis's Should Be Stricken.

Finally, Plaintiffs' "independent verification" argument dodges the issue. Opp. at 12; *see* Mot. at 13. The point is not that Weir is prohibited from relying on Plaintiffs' other experts, it is that the 2025 *Patel/Retta* and adult/underage allocations are purely derivative (and therefore rise or fall) with Dennis's opinions. Weir admits those calculations are direct applications of Dennis's survey outputs to sales data. Elie-Meyers MTS Decl., Ex. L, Weir Dep. 33:22–36:9. If Dennis's methodology is excluded, Weir's calculations relying on the methodology fall with it.

### D. The 2021 Spedding Report Should Be Stricken.

#### 1. Spedding's Universal Alcohol Opinion Rests on an Analytical Gap, not Simply a Sample Size Problem.

In defending Spedding's flawed testing, Plaintiffs focus almost entirely on his limited sample sizes. *Contra* Opp. at 14–16.[6] But it is not the small sample sizes, but the analytical gap between what Spedding tested and what he opines that requires exclusion of his report. *See Joiner*, 522 U.S. at 146 (an expert cannot have "too great an analytical gap" in a report.) Spedding tested only 27 bottles from the class period, none of which were from New York, and no tests occurred after 2021. Elie-Meyers MTS Decl., Ex. E, 2021 Spedding Rep. ¶¶ 19–20, 28. Yet he nevertheless opines that "100% of Enlightened Kombucha sold in the United States since at least 2015" exceeded 0.5% ABV. *Id.* ¶ 19. That is exactly the type of "analytical gap" that Rule 702 forbids: Spedding leaps from a limited, uncontrolled set of bottles to a global opinion about all flavors of Enlightened sold over a nine-

---

[6] Plaintiffs' sample size cases are thus irrelevant, though they notably predate the 2023 amendment to Rule 702 or apply the wrong legal standard. *E.g.*, *Coleman v. United Servs. Auto. Assoc.*, 2023 WL 9110926, at *4 (S.D. Cal. Dec. 22, 2023) ("Defendants' challenges go to the weight—not admissibility—of the opinions of Plaintiffs' experts"; citing outdated standard "favoring admission").

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

year period. *See Joiner*, 522 U.S. at 146. Plaintiffs have not come close to justifying that leap by a preponderance of the evidence. *See Engilis*, 151 F.4th at 1049.

Spedding offers no methodology to test or account for variations in refrigeration during the storage, shipment, and display of Enlightened products– even while conceding that such changes in temperature can raise Enlightened's alcohol content. And he has no way to measure or account for continued fermentation due to improperly elevated temperatures: he did not test the temperature of his samples either at the point of sale or when they arrived at his lab after being in transit for an unknown period of time (though they "seemed fine," Opp. at 19), and he proposes no method for measuring or accounting for storage temperature after Enlightened is shipped from GT's to retailers. Elie-Meyers Reply Decl., Ex. C, Spedding Dep. 82:11–20; Elie-Meyers MTS Decl., Ex. M., Spedding Dep. 198:3–20, 223:24–226:17, 224:18–20.

Plaintiffs' counter that the "base formula" somehow guarantees all bottles will *always* test above 0.5% ABV, Opp. at 14–15, but that is contradicted by Spedding's own testimony. Spedding admits there is "no basis" for saying that a kombucha bottle that starts below 0.5%, and is properly refrigerated thereafter, "is always going to be above 0.5 percent" ABV before it is consumed. Elie-Meyers Reply Decl., Ex. C, Spedding Dep. 181:12–19; 177:11–18. And he admits that storage temperature is "critical" to the rate at which alcohol can increase. Elie-Meyers MTS Decl., Ex. M, Spedding Dep. 110:25–111:4. Spedding further admits that continued fermentation varies "absolutely" based on the specific ingredients used for a specific flavor and that, to understand how a particular flavor behaves, "you have to have a set of tests that are all on that flavor" and "[e]ach one has to be taken separately." *Id*., Spedding Dep. 251:7–25. He acknowledged "batch-to-batch variation" and agreed that testing multiple batches of each particular flavor would be a "valid point." Elie-Meyers Reply Decl., Ex. C, Spedding Dep. 252:20–253:7. That testimony is wholly incompatible with any "base formula" theory. Indeed,

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

when asked whether a bottle that started below 0.5% ABV and was thereafter refrigerated would always end up above 0.5% ABV before consumption, Spedding answered: "I'm not saying that. I can't say that. There's no basis for saying that." *Id.*, Spedding Dep. 181:12–19.

Spedding therefore provides no "reliable bridge tying his results to the larger population," as Plaintiffs assert. Opp. at 15; *see Cole v. Ecolab, Inc.*, 2023 WL 2609343, at *5 (D. Minn. Mar. 23, 2023) (excluding opinion where plaintiffs "failed to show that the product … was unexpired, and that it was properly stored"). Plaintiffs thus fail to rebut the cases in GT's Motion. Mot. at 14. Nor can they: Spedding performed no statistical analysis, no representativeness assessment, and no disclosed method bridging his limited tests to every bottle sold nationwide. *Id.* He admitted he is not an expert in statistics, not an expert in extrapolating from random sampling, and not an expert in selecting random samples. Elie-Meyers MTS Decl., Ex. M, Spedding Dep. 24:14–25:7. Even reliable testing of some bottles (which did not occur here) does not authorize unreliable extrapolation to all of them. *See In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 490–92 (D.S.C. 2016) (limited inspected or tested units did not support extrapolation to a much broader product population).

Spedding's report should be stricken.

**2. Plaintiffs' Arguments Regarding Leakage and Ebersole Fail on their Own Terms, and They Make No Argument Regarding the Undisclosed Tests.**

Spedding's report has other, fatal flaws.

***Undisclosed and unproven other testing.*** Spedding testified that his opinion rested in part on "maybe the hundred other samples" of GT's kombucha he had tested in other matters, none of which were disclosed because they were supposedly "client privileged." Elie-Meyers MTS Decl., Ex. M, Spedding Dep. 29:22–32:6.

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

These undisclosed tests should have been disclosed and offer a separate basis for exclusion. Fed. R. Civ. P. 37(c)(1).

*Ebersole and sugar.* Plaintiffs insist Spedding did not "adopt" Ebersole; he simply cited corroboration, Opp. 16–17, but his report says otherwise. Spedding did not merely cite Ebersole's data. He declared that Ebersole is a "qualified expert" and that his testing is "valid, reliable, and accurate." Elie-Meyers MTS Decl., Ex. E, 2021 Spedding Rep. ¶ 37. That goes beyond neutral corroboration. It is conduit testimony—an expert vouching for another expert's reliability to import otherwise inadmissible opinions from separate litigation. *See In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012–13 (C.D. Cal. 2003) ("The rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation."). At minimum, the Court should strike the Ebersole material and limit any remaining sugar testimony to the 19 flavors Spedding actually tested.[7]

*Storage and leakage.* Spedding admitted that seven of the nineteen California bottles leaked in transit, that leakage could affect alcohol content, and that in such circumstances he would ordinarily request a fresh sample. Elie-Meyers MTS Decl., Ex. M, Spedding Dep. 199:7–200:2, 223:15–226:3. He did not know how long those bottles were in transit, did not know the temperature of the source refrigerators, and did not check their temperature on arrival. *Id.* 223:15–226:3. Nor did he disclose any objective threshold separating "minor" from "significant" leakage, any correction for the leakage he observed, or any methodology showing that the leaked bottles remained representative.

---

[7] Plaintiffs' case involves an expert who reviewed another expert's report while the other expert "was within the subpoena power of the Court" and could have been called to testify. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006).

17

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Plaintiffs claim this doesn't matter, because the California bottles were purchased by counsel and shipped on ice, arrived "cold," showed "minor effervescence," and "seemed fine." *See* Opp. 16. That is a risible level of quality control for products Spedding admits change depending on how they are handled. In defending this, Plaintiffs once again cite distinguishable cases applying an outdated legal standard, attempting to make this obvious flaw into a question of "weight." Opp. at 16; *see United States v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994) (where the defendant had failed to challenge methodology under *Daubert*, the impact of the DNA lab's possible errors "might therefore be approached more properly as an issue going … to the weight"); *United States v. Parrish*, 1996 WL 184457, at *2 (9th Cir. Apr. 17, 1996) (quoting *Chischilly*, recasting attempt to characterize errors as "fatal," and affirming conclusion that DNA lab's handling was a jury issue). Such flawed methodology is plainly unreliable under Rule 702(c) & (d) and provides no basis to extrapolate so widely, both across products and across the entire country.

**E.     The 2021 Silverman Report Should Be Stricken.**

Plaintiffs' defense of Silverman's report ignores the fundamental defect identified in GT's motion: Silverman offers sweeping opinions about consumer perception without applying any reliable methodology. As GT's showed, Silverman conducted no kombucha-specific consumer research and based his conclusions in part on anecdotal observations from "maybe an hour" spent watching shoppers in a handful of grocery stores. Mot. 19. Rule 702 requires more. Because Silverman provides no reliable methodological basis for his opinions, his testimony should be excluded.

**1.     Silverman's Opinions Rest on General Marketing Experience and Anecdote, not a Reliable Methodology.**

Plaintiffs emphasize Silverman's decades of advertising experience and are apparently satisfied that his experience alone supports his conclusions. Opp. 17. But

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE PLAINTIFFS' EXPERT DECLARATIONS

Rule 702 requires more than credentials. When an expert relies primarily on experience, he must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory comm.'s note (2000); *see also Valencia-Lopez*, 971 F.3d at 898–900 (reversing admission of expert testimony where "the record contain[ed] no evidence as to why [the expert's] experience, by itself, equal[ed] reliability for his testimony" and he did not explain the methodology by which he reached his conclusions).

Silverman does not do so. As GT's explained, Mot. 19–21, he conducted no kombucha-specific consumer research and offers no analytical framework "explain[ing] the methodology he used to arrive at [his] conclusions" about kombucha consumers. *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *13–14 (N.D. Cal. Jan. 7, 2022) (excluding expert opinions). Instead, Silverman's conclusions rely largely on anecdotal observations from what he described as "maybe an hour" spent observing shoppers in grocery stores. Mot. 19. Such casual observation is no more "expert" than the opinion of anyone who has regularly spent time at a grocery store, and amounts to speculation, not methodology. *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1032 (C.D. Cal. 2018) (excluding expert testimony about consumer behavior where the expert identified no objective basis such as market research or other data). Rule 702 does not permit expert testimony "connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999).

The insufficiency of Silverman's experience-based reasoning is exemplified by his treatment of Plaintiffs' sugar labeling claims. Silverman simply assumes Plaintiffs' scientific experts are correct and asserts that understated sugar "would be material" to consumers because consumers generally care about health and sugar intake. Elie-Meyers Decl., Ex. F, Silverman Rep. ¶¶ 4, 80–88. But he performs no analysis of the alleged discrepancy, how consumers interpret sugar disclosures on

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

kombucha labels, or how such differences would affect purchasing decisions. Instead, he relies solely on generalized observations about consumer interest in health and nutrition. *See id.* That kind of unsupported assertion, untethered to any identifiable methodology, is precisely the type of conclusory expert opinion Rule 702 does not permit. *See Siqueiros*, 2022 WL 74182, at *14 ("Without … information or explanation of the methodology that [the expert] applied to reach these conclusions, [the expert's] conclusions are grounded in nothing more than his say so.").

### 2. Plaintiffs' "Weight not Admissibility" Framing Fails Under Rule 702.

Plaintiffs argue that GT's criticisms go only to weight and should be left to the jury. Opp. 18. But the 2023 amendment to Rule 702 requires reliable principles and methods that are reliably applied. *Engilis*, 151 F.4th at 1049. Plaintiffs therefore cannot simply recite "weight, not admissibility" and defer the issue to the jury. *See Valencia-Lopez*, 971 F.3d at 898 (citation modified) ("*Daubert* and *Kumho Tire* may be harder to apply when the expert testimony is experience-based rather than science-based. But any such difficulty cannot simply lead to a 'that goes to weight, not admissibility' default."). The burden rests with them to demonstrate that Silverman's opinions are grounded in a reliable methodology, and they have not done so. Silverman identifies no analytical framework for evaluating consumer perception and no reliable method for connecting his experience to his conclusions about kombucha purchasers. Mot. 19–21. His report instead consists of unsupported assertions about how consumers behave. *Id.*; *see Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 776 (7th Cir. 2014) ("The vagueness of this testimony is a good illustration of why mere expertise and subjective understanding are not reliable scientific evidence.").

For the same reason, this case does not present a "battle of the experts." Opp 19. That principle applies where competing experts apply reliable

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

methodologies and disagree about the results. Where an expert offers no reliable method at all, Rule 702 requires exclusion. *Kumho Tire*, 526 U.S. at 157.

### 3. Plaintiffs' Factual Arguments only Underscore the Absence of Reliable Analysis.

Plaintiffs' remaining arguments focus on the testimony of named Plaintiffs and the absence of a government alcohol warning, but those arguments only highlight the speculative nature of Silverman's opinions.

#### a. Contradictory Testimony.

Plaintiffs argue that any conflict between Silverman's conclusions and the named Plaintiffs' testimony goes only to credibility. Opp. 18. But the fact that Plaintiffs' testimony contradicts Silverman's assumptions underscores the absence of any reliable analytical basis for his opinions. GT's does not argue that this contradiction alone requires exclusion. Rather, it illustrates the problem with Silverman's vibes-based reasoning: because his conclusions were never grounded in any identifiable methodology, they collapse when compared with actual evidence.

*Thomas v. Smith's Food & Drug Centers, Inc.*, 2025 WL 2637465 (D. Nev. Sept. 12, 2025) does not help Plaintiffs. In that case, it was unclear how the plaintiff's testimony and the expert's opinion were "irreconcilable," and the expert had applied a recognized medical methodology based on medical records and testing. *Id.* at *3–4. Here, by contrast, the contradiction is straightforward and undisputed, and the problem is not a disagreement about interpretation of evidence—it is the absence of any methodology at all.

#### b. Government Warning Theory.

Silverman's theory that consumers would perceive Enlightened Kombucha differently if the label included the government alcohol warning is equally unsupported. His opinion ignores the undisputed fact that the government warning label could appear on a "back or side label," just like the existing label disclosure. Mot. 22 (citing 27 C.F.R. § 16.21). His assertion that consumers would notice one

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

but ignore the other is therefore unsupported speculation rather than expert analysis. Plaintiffs' assertion that GT's argues that consumers may not "read the government warning anyway" actually quotes Silverman's own testimony, which concedes the speculative nature of his analysis. Mot. 22 (citing Silverman Dep. 98:13–14).

In summary, Plaintiffs attempt to recast Silverman's unsupported conclusions as disputes about credibility or competing expert views. But the issue here is not credibility—it is methodology. Because Silverman offers no reliable method connecting his experience to his conclusions about kombucha consumers, his opinions do not satisfy Rule 702. The Court should therefore strike the Silverman report.

### III.    CONCLUSION

For the above reasons and those stated in the Motion, the Court should grant the Motion and strike the 2025 Dennis Report and 2025 Weir Report, strike or heavily limit the 2021 Weir Report, Spedding Report, and Silverman Report, and exclude the opinions set forth therein.

DATED: April 9, 2026

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers

By: */s/ Jacob M. Harper*
Jacob M. Harper

*Attorneys for Defendant*
*GT's Living Foods, LLC*

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant GT's Living Foods, LLC, certifies that this brief contains 6,872 words, which complies with the word limit of 11-6.1.

DATED: April 9, 2026

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
Heather F. Canner
Joseph Elie-Meyers


By: */s/ Jacob M. Harper*
    Jacob M. Harper

*Attorneys for Defendant*
 *GT's Living Foods, LLC*

GT'S REPLY ISO ITS MOTION TO STRIKE OR EXCLUDE
PLAINTIFFS' EXPERT DECLARATIONS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899